1  MEYERS LAW GROUP, P.C.
   MERLE C. MEYERS, ESQ. CA Bar #66849
2  MICHELE THOMPSON, ESQ. CA Bar #241676
   44 Montgomery Street, Suite 1010
3  San Francisco, CA  94104
   Telephone: (415) 362-7500
4  Facsimile:  (415) 362-7515
   Email: mmeyers@mlg-pc.com
5          mthompson@mlg-pc.com

6  Counsel for Gabriel Technologies Corporation and
   Trace Technologies, LLC, Debtors
7

8              IN THE UNITED STATES BANKRUPTCY COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11

12 In re                              Case No. 13-30340 - DM
                                      (Case no. 13-30341)
13 GABRIEL TECHNOLOGIES
   CORPORATION, et al,                Chapter 11
14
                                      (Jointly Administered)
15              Debtors.

16
   E.I.N.s 22-3062052;  20-1711149
17

18

19
              **DEBTORS' JOINT PLAN OF REORGANIZATION**
20                      **(April 24, 2013)**

21

22

23

24

25

26

27

28

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

# TABLE OF CONTENTS

I.  DEFINITION AND CONSTRUCTION OF TERMS...........................................…........  1
    1.1  Definitions…………………………………………………....................  1
    1.2  Other Terms……………………………………………………………........  1
    1.3  Construction of Certain Terms…………………………………....……………....  1
        1.3.1……………………………………………………………………….....  1
        1.3.2……………………………………………………………………….....  1
        1.3.3……………………………………………………………………….  1
    1.4  Action by Holders of Secured Claim........................................................  2
    1.5  Plan Controls………………………………………………………………....  2

II.  CLASSIFICATION OF CLAIMS AND INTERESTS; IMPAIRMENT……………….....  2
    2.1  Classification…………………………………………………………………....  2
        2.1.1  Class A(Priority Claims)…………………………………………………..  3
            2.1.2  Class B (Senior Secured Claims)………………………………  3
        2.1.2.1 Class B1 (NW Secured Claim)……………………………………  3
        2.1.2.2 Class B2 (Munck Carter School)………………………….............  3
        2.1.2.3 Class B3 (Wang Hartman Secured Claim)………......…………  3
        2.1.2.4 Class B4 (HHR Secured Claim)…………………………………  3
        2.1.3  Class C (Junior Secured Claims and Senior Unsecured Claims)………….  3
        2.1.3.1 Class C1 (Secured Noteholders)……………………………………  3
        2.1.3.2 Class C2 (Clark Guaranty Fee)…………………………………  3
        2.1.3.3 Class C3 (Elliston Bond Fee)…………………………………………  3
        2.1.4  Class D (Whittle Noteholders)…………………………………………  3
        2.1.5  Class E1 (General Unsecured Claims)……………………………………  3
        2.1.6  Class E2 (Qualcomm Claim)……………………………………………  4
        2.1.7  Class F (Interests)……………………………………………………  4
    2.2  Impairment…………………………………………………………………....  4

III.  TREATMENT OF NONCLASSIFIED PRIORITY CLAIMS…………………………....  4
    3.1  Generally………………………………………………………………………  4
    3.2  Administrative Claims…………………………………………….......…………  4
    3.3  Contingency Professionals………………………………………………………  5
    3.4  Penalties and Interest……………………………………......…………………  5
    3.5  Payment…………………………………………………………………………  5

        3.5.1  Administrative Expense Claims Other Than Professional Fees……....……  5
        3.5.2  Professional Fees………………………………………………………  5
        3.53  Priority Tax Claims……………………………………………………  6

IV.  TREATMENT OF UNIMPAIRED CLASSES…………………………………………  6
    4.1.  Class A (Priority Claims Other Than Nonclassified Priority Claims)…………...  6

V.  TREATMENT OF IMPAIRED CLASSES………………………………………………  6
    5.1  Class B1 (NW Secured Claim)……………………………………………………  7
    5.2  Class B2 (Munck Carter Secured Claim)…………………………………………  7
    5.3  Class B3 (Wang Hartman Secured Claim)...............……………………………  7
    5.4  Class B4 (HHR Secured Claim)…………………………………………………  7
        5.4.1……………………………………………………………………………  7
        5.4.2………………………………………………………………………....  7
        5.4.3……………………………………………………………………………  8
    5.5  Class C1(Secured Noteholders)…………………………………………………  8
    5.6  Class C2 (Clark Guaranty Fee)………………………………………………  8

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

i

DEBTORS JOINT PLAN OF REORGANIZATION
28414.DOC

5.7    Class C3 (Elliston Bond Fee)………………………………………….......  8
5.8    Class D (Whittle Noteholders)………………………………………………  8
5.9    Class E1 (Unsecured Claims)…………………………………………………  8
5.10   Class E2 (Qualcomm Claim)…………………………………………………  9
5.11   Class F (Interests)……………………………………………………………  9

VI      EXECUTORY CONTRACTS ………………………………………………  10
6.1    Generally………………………………………………………………………  10
6.2    Assumption and Rejection……………………………………………………  10
      6.2.1   Assumption Schedule……………………………………………  10
      6.2.2   Rejection…………………………………………………………  10
6.3    Cure Amounts…………………………………………………………………  10
6.4    Payment of Cure………………………………………………………………  11
6.5    Approval of Assumption or Rejection…………………………………….........  11
6.6    Bar Date for Rejection Claims………………………………………………  12
6.7    Assignment of Assumed Contracts……………………………………………  12

VII.     MEANS FOR EXECUTION OF THE PLAN ………………………………  12
7.1    Plan Effectiveness……………………………………………………………  12
7.2    Consolidation of Debtors' Estates……………………………………………  12
7.3    Reorganization Loans…………………………………………………………  13
      7.3.1 ………………………………………………………………………  13
      7.3.2 ………………………………………………………………………  13
      7.3.3 ………………………………………………………………………  13
      7.3.4 ………………………………………………………………………  13
      7.3.5 ………………………………………………………………………  14
7.4    Revesting of Estates Assets…………………………………………………  14
      7.4.1   Purpose of Litigation Trust……………………………………  14
      7.4.2   Appointment of Litigation Trustee……………………………  14
      7.4.3   Powers of Litigation Trustee……………………………………  15
      7.4.4   Resolution of Committee Claims………………………………  15
      7.4.5   Distributions……………………………………………………  16
7.5    Post-Effective Date Corporate Governance…………………………………  16
7.6    Duties and Powers of Reorganized Debtor…………………………………  16
      7.6.1   Implementation…………………………………………………  16
            7.6.1.1 ……………………………………………………  17
            7.6.1.2 ……………………………………………………  17
            7.6.1.3 ……………………………………………………  17
            7.6.1.4 ……………………………………………………  17
      7.6.2   Distributions……………………………………………………  17
      7.6.3   Use of Funds……………………………………………………  18
      7.6.4   Resumption of Business Operations……………………………  18
      7.6.5   Bank Accounts…………………………………………………  18
      7.6.6   Retention of Professionals………………………………………  18
      7.6.7   SEC Filings………………………………………………………  18
      7.6.8   Tax Reporting Compliance………………………………………  18
7.7    Plan Committee………………………………………………………………  18
      7.7.1 ………………………………………………………………………  19
      7.7.2 ………………………………………………………………………  19
      7.7.3 ………………………………………………………………………  19
7.8    Creditors' Committee…………………………………………………………  19
7.9    Qualcomm Event Distributions………………………………………………  19
      7.9.1   Category 1: Reorganization Loan and DIP Loan………………  20
      7.9.2   Category 2: Prior Professional Fee Payments………………….........  20
            7.9.2.1 ……………………………………………………  20
            7.9.2.2 ……………………………………………………  20

LAW OFFICES
MEYERS LAW GROUP, P. C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

ii

| | | | |
|---|---|---|---|
| | 7.9.3 | Category 3: NW Principal and Hourly Professionals………………........ | 20 |
| | | 7.9.3.1 ………………………………………………………........ | 20 |
| | | 7.9.3.2 ………………………………………………………........ | 20 |
| | | 7.9.3.3 ………………………………………………………........ | 20 |
| | 7.9.4 | Category 4: Lead Counsel ……………………………………… | 21 |
| | 7.9.5 | Category 5: Other Secured and Unsecured Claims………………… | 21 |
| | | 7.9.5.1 ………………………………………………………........ | 21 |
| | | 7.9.5.2 ………………………………………………………........ | 21 |
| | | 7.9.5.3 ………………………………………………………........ | 21 |
| | 7.9.6 | Category 6: Shareholders and Beneficiaries……………………… | 21 |
| 7.10 | Whittle Event Distributions……………………………………… | | 22 |
| | 7.10.1 Category 1: Professional Fee Payments……………………… | | 22 |
| | 7.10.2 Category 2: Claims Payments……………………………… | | 22 |
| 7.11 | Other Event Distributions……………………………………… | | 22 |
| 7.12 | Professional Retention and Compensation……………………… | | 23 |
| | 7.12.1 Reorganized Debtor's Professionals………………………… | | 23 |
| | 7.12.2 Plan Committee's Professionals…………………………… | | 23 |
| | 7.12.3 Compensation……………………………………………… | | 23 |
| | | 7.12.3.1 Contingency Professionals……………………… | 23 |
| | | 7.12.3.2 Hourly Professionals Other Than Bankruptcy Counsel………… | 23 |
| | | 7.12.3.3 Hourly Professionals Who Are Bankruptcy Counsel………… | 23 |
| | | 7.12.3.4 Notice and Opportunity for Objection………………… | 24 |
| 7.13 | Preservation of Cause of Action……………………………………… | | 24 |
| 7.14 | Reserves……………………………………………………………… | | 24 |
| | 7.14.1 Calculation………………………………………………… | | 24 |
| | 7.14.2 Reserve Maintenance And Interest………………………… | | 24 |
| | 7.14.3 Release of Reserved Funds………………………………… | | 25 |
| 7.15 | Unclaimed Distributions……………………………………………… | | 25 |
| 7.16 | De Minimis Distributions……………………………………………… | | 25 |
| 7.17 | Compliance With Tax Requirements………………………………… | | 25 |
| 7.18 | Quarterly Fees……………………………………………………… | | 26 |
| 7.19 | Objections to Claims………………………………………………… | | 26 |
| 7.20 | Other Actions……………………………………………………… | | 26 |
| 7.21 | Terms of Injunctions and Stays……………………………………… | | 26 |
| 7.22 | Discharge of Reorganized Debtor…………………………………… | | 26 |
| 7.23 | Permanent Satisfaction And Injunction……………………………… | | 27 |
| 7.24 | Exculpation, Indemnification and Insurance………………………… | | 27 |
| 7.25 | Estimation of Claims………………………………………………… | | 28 |
| 7.26 | Postconfirmation Reports…………………………………………… | | 28 |
| VIII. | RETENTION OF JURISDICTION........................................................... | | 28 |
| | 8.1 | Generally……………………………………………………… | 28 |
| | | 8.1.1 …………………………………………………………… | 29 |
| | | 8.1.2 …………………………………………………………… | 29 |
| | | 8.1.3 …………………………………………………………… | 29 |
| | | 8.1.4 …………………………………………………………… | 29 |
| | | 8.1.5 …………………………………………………………… | 29 |
| | | 8.1.6 …………………………………………………………… | 29 |
| | | 8.1.7 …………………………………………………………… | 29 |
| | | 8.1.8 …………………………………………………………… | 29 |
| | | 8.1.9 …………………………………………………………… | 29 |
| | | 8.1.10 ………………………………………………………… | 29 |
| | 9.1 | Exemption from Transfer Taxes……………………………… | 30 |
| | 9.2 | Binding Effect………………………………………………… | 30 |
| | 9.3 | Ratification…………………………………………………… | 30 |
| | 9.4 | Notices………………………………………………………… | 30 |

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

iii

| | | |
|---|---|---|
| 9.5 | Governing Law……………………………………………........ | 31 |
| 9.6 | Headings……………………………………………………....... | 31 |
| 9.7 | Exhibits…………………………………………………………. | 31 |
| 9.8 | Closing Cases…………………………………………………… | 31 |

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iv

DEBTORS' JOINT PLAN OF REORGANIZATION
28414.DOC

GABRIEL TECHNOLOGIES CORPORATION, a Delaware corporation ("Gabriel"), and TRACE TECHNOLOGIES, LLC, a Nevada limited liability company ("Trace"), the debtors-in-possession herein (collectively, the "Debtors"), hereby jointly propose this Debtors' Joint Plan Of Reorganization (as it may be amended or modified hereafter, the "Plan") in the within chapter 11 case, for reorganization under chapter 11 of the United States Bankruptcy Code, pursuant to the provisions of Section 1121(a) of Title 11 of the United States Code.

## ARTICLE I

## DEFINITION AND CONSTRUCTION OF TERMS

1.1.    <u>Definitions</u>.  As used herein, capitalized terms shall have the meanings set forth in the schedule of definitions attached hereto and incorporated herein as **Exhibit "A."**

1.2.    <u>Other Terms</u>.  Any term used in the Plan that is not defined herein or in Exhibit "A" shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.  A term used in this Plan and not defined herein or in the Bankruptcy Code, but which is defined in the Bankruptcy Rules, shall have the meaning assigned to the term in the Bankruptcy Rules.

1.3.    <u>Construction of Certain Terms</u>.   In addition to the foregoing, the following shall apply:

1.3.1.    The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan, unless otherwise indicated.

1.3.2.    Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter.

1.3.3.    Where the Plan expressly requires the "reasonable consent" or "reasonable approval" of a party as a condition to implementation of a transaction or other event, if such consent is requested and not provided, the requesting party shall be entitled to seek approval for such transaction or other event by the Bankruptcy Court, *provided* that such requesting party demonstrates, based on a preponderance of evidence, that the requested consent was

1

unreasonably withheld. Where the Plan does not expressly require that consent or approval be "reasonable," consent or approval shall be in the sole discretion of the party that is asked for such consent or approval, and the requesting party shall not be entitled to seek alternative approval by the Bankruptcy Court.

1.4. <u>Action by Holders of Secured Claim</u>. Where the Plan provides for notice, election or other action (other than acceptance or rejection of the Plan) by the holder(s) of a Secured Claim, in the event that more than one person holds such Secured Claim in undivided or pari passu portions or percentages, such notice, election or other action shall be effective only if expressly undertaken by a majority of those portions or percentages. For example, and as an illustration only, if a Secured Claim is held by seven holders of equal priority, and if one such holder owns a 40% interest therein and all other holders each hold a 10% undivided interest, then a notice by such holders shall be effective only if expressly given by all six holders of 10% interests, or by the holder of the 40% interest and two holders of 10% interests. None of the foregoing shall affect the determination of acceptance or rejection of the Plan by a Class, which is governed by the provisions of Section 1126 of the Bankruptcy Code.

1.5. <u>Plan Controls</u>. To the extent of any inconsistencies between the Plan and the Disclosure Statement, the provisions of this Plan shall control and prevail.

## <u>ARTICLE II</u>

## <u>CLASSIFICATION OF CLAIMS AND INTERESTS; IMPAIRMENT</u>

2.1. <u>Classification</u>. The following is a designation of the Classes of Claims and Interests in the Plan. Administrative Expense Claims and Priority Tax Claims (that is, the Nonclassified Priority Claims) have not been classified and are excluded from the following Classes, in accordance with the provisions of Section 1123(a)(1) of the Bankruptcy Code. The treatment accorded Administrative Expense Claims and Priority Tax Claims is set forth in Article III herein. Consistent with the provisions of Section 1122 of the Bankruptcy Code, a Claim or Interest shall be deemed classified by the Plan in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent that the Claim or Interest qualifies within the description of that different Class. A Claim or Interest

2

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

is in a particular Class only to the extent that the Claim or Interest is an Allowed Claim or Allowed Interest in that Class, as the case may be. To the extent that property serving as collateral for a Secured Claim is no longer property of the Estates at any point in time prior to the Effective Date, whether as a result of foreclosure, voluntary sale or otherwise, the Class designated for such Secured Claim and property shall be deemed to no longer exist as of the date that such property ceases to be property of the Estates.

2.1.1. Class A (Priority Claims) consists of all Priority Claims, if any, other than Nonclassified Priority Claims.

2.1.2. Class B (Senior Secured Claims) consists of the following subclasses:

2.1.2.1. Class B1 (NW Secured Claim) consists of all Secured Claims held by NW.

2.1.2.2. Class B2 (Munck Carter Secured Claim) consists of all Secured Claims held by Munck Carter.

2.1.2.3. Class B3 (Wang Hartman Secured Claim) consists of all Secured Claims held by Wang Hartman.

2.1.2.4. Class B4 (HHR Secured Claim) consists of all Secured Claims held by HHR.

2.1.3. Class C (Junior Secured Claims and Senior Unsecured Claims) consists of the following subclasses:

2.1.3.1. Class C1 (Secured Noteholders) consists of all Secured Claims held by the Secured Noteholders.

2.1.3.2. Class C2 (Clark Guaranty Fee) consists of the Clark Guaranty Fee Claim.

2.1.3.3. Class C3 (Elliston Bond Fee) consists of the Elliston Bond Fee Claim.

2.1.4. Class D (Whittle Noteholders) consists of all Whittle Proceeds Claims held by the Whittle Noteholders.

2.1.5. Class E1 (General Unsecured Claims) consists of all Unsecured Claims other

than the Qualcomm Claim.

2.1.6. Class E2 (Qualcomm Claim) consists of the Qualcomm Claim, to the extent it is an Allowed Claim.

2.1.7. Class F (Interests) consists of all Equity Interests.

2.2. Impairment. Under the terms of the Plan, Allowed Claims within Class A will not be impaired. Allowed Claims and Interests within all other Classes will be impaired under the terms of the Plan.

## ARTICLE III

## TREATMENT OF NONCLASSIFIED PRIORITY CLAIMS

3.1. Generally. Subject to the provisions of all other sections of this Article III, each holder of an Allowed Nonclassified Priority Claim shall receive on account of such Claim, Cash from the Reorganized Debtor equal to the allowed amount of such Claim.

3.2. Administrative Claims. Subject to the provisions of Section 3.3 below, no Administrative Expense Claim, including without limitation Professional Fees, incurred before the Effective Date, other than ordinary course expenses incurred by the Debtors, shall become an Allowed Claim unless (a) a formal application, motion, request or proof therefor has been filed with the Court and served upon the Reorganized Debtor, the Plan Committee and the United States Trustee, within forty-five (45) days following the Effective Date (the "Administrative Bar Date") or by such earlier deadline as may apply to such claim pursuant to an earlier order of the Court, and (b) such application, motion, request or proof has not been withdrawn, denied or dismissed. The Reorganized Debtor, the Plan Committee and the United States Trustee shall have the right to object to any such applications, motions, requests and proofs, and the Reorganized Debtor shall schedule a hearing or hearings with respect to any such applications, motions, requests and proofs as to which any disputes exist or as to which Court approval is required by the Bankruptcy Rules and Local Rules, as soon as practicable following the Administrative Bar Date, and shall provide notice of such hearings and any objections to the requesting claimants, the Plan Committee and the United States Trustee (except to the extent that such applications, motions, requests and proofs have been resolved prior thereto).

4

3.3.    Contingency Professionals.    Notwithstanding the provisions of Section 3.2 above, Professionals need not file applications for allowance of any portion of fees that are contingent on an event, such as a litigation outcome, including without limitation the Qualcomm Event, until thirty (30) days following the occurrence of such event.

3.4.    Penalties and Interest.    Except as may be expressly set forth in the Plan or by an order of the Court, no holder of a Priority Tax Claim or an Administrative Expense Claim (other than such Claims as are held by governmental units and based upon tax liabilities arising after the Petition Date) shall be entitled to payment on account of any postpetition interest or penalties arising with respect to such Claim.

3.5.    Payment.    Payment of Allowed Nonclassified Priority Claims shall occur as follows:

3.5.1.    Administrative Expense Claims Other Than Professional Fees.    All payments required by the terms of this Plan on account of Allowed Administrative Expense Claims other than Professional Fees, unless made earlier by prior agreement or order of the Court, shall be made by the Reorganized Debtor on the latest of the following dates:  (a) on, or as soon as practicable after, the Effective Date, or on such later date as to which the holder of such Claim may have consented; (b) on the date when such Claim becomes due according to contractual, statutory or other terms applicable thereto; or (c) as soon as practicable after entry of the order allowing such Claim, if the Claim is disputed or if applicable provisions of the Bankruptcy Code otherwise require Court approval.

3.5.2.    Professional Fees.    All payments required by the terms of this Plan on account of Allowed Professional Fees, unless made earlier by prior agreement or order of the Court, shall be made by the Reorganized Debtor, net of retainers received by Professionals, on the latest of the following dates:  (a) on, or as soon as practicable after, the Effective Date; (b) on the date when such Claim becomes due according to contractual, statutory or other terms applicable thereto; (c) as soon as practicable after entry of the order allowing such Claim, if the Claim is disputed or if applicable provisions of the Bankruptcy Code otherwise require Court approval; or (d) as to each Hourly Professional that consents in writing, received by the Debtors prior to the Confirmation Date, to having the entirety of such Hourly Professional's

compensation and expense reimbursements (net of retainers) be governed by this subsection (d), when and to the extent payments are made pursuant to the terms of Section 7.9.3.2 and 7.11(a) below.

        3.5.3. <u>Priority Tax Claims</u>. All payments required by the terms of this Plan on account of Priority Tax Claims shall be made by the Reorganized Debtor no later than the latest of the following: (a) in four (4) equal, annual payments on each anniversary of the Effective Date until paid in full, together with interest at the nonbankruptcy rate applicable thereto as of the calendar month in which the Confirmation Date occurs, paid on each such anniversary and accruing from the Effective Date; (b) on the date when such Claim becomes due according to contractual, statutory or other terms applicable thereto, plus interest as described above; or (c) as soon as practicable after entry of the order allowing such Claim, if the Claim is disputed or if applicable provisions of the Bankruptcy Code require Court approval, plus interest as described above.

**ARTICLE IV**

**TREATMENT OF UNIMPAIRED CLASSES**

Classes of unimpaired Claims and Interests shall be treated as follows:

        4.1. <u>Class A (Priority Claims Other Than Nonclassified Priority Claims)</u>. Class A consists of the Priority Claims other than the Nonclassified Priority Claims. Each holder of an Allowed Claim within Class A shall receive on account of such Claim Cash equal to the allowed amount of such Claim, unless such holder shall have agreed to a less favorable treatment of such Claim. Payment or payments on account of such Claims shall be made by the Reorganized Debtor on or before the latest of the following dates: (a) on, or as soon as practicable after, the Effective Date, or on such later date as to which such holder has consented; (b) on the date that such Claim becomes due pursuant to contractual, statutory or other terms applicable thereto; or (c) as to Disputed Claims, as soon as practicable after the order allowing the Claim has become a Final Order.

**ARTICLE V**

**TREATMENT OF IMPAIRED CLASSES**

Classes of impaired Claims and Interests shall be treated as follows:

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

6

5.1.    Class B1 (NW Secured Claim).  Class B1 consists of the NW Secured Claim shall be deemed fully satisfied by all payments, if any, made in accordance with the provisions of Sections 7.9.2.2, 7.9.3.1 and 7.9.5.1 of the Plan.

5.2.    Class B2 (Munck Carter Secured Claim).  Class B2 consists of the Munck Carter Secured Claim, which shall be deemed fully satisfied by all payments, if any, made in accordance with the provisions of Section 7.9.2.1(a) of the Plan.

5.3.    Class B3 (Wang Hartman Secured Claim).  Class B3 consists of the Wang Hartman Secured Claim, which shall be deemed fully satisfied by all payments, if any, made in accordance with the provisions of Section 7.9.2.1(b) of the Plan.

5.4.    Class B4 (HHR Secured Claim).  Class B4 consists of the HHR Secured Claim, which shall be deemed fully satisfied by all payments, if any, made in accordance with the provisions of Section 7.9.4 of the Plan.  Such Secured Claims shall be allowed in the amount owed in accordance with the terms set forth in the HHR Retention Agreement, subject to the following:

5.4.1.   In the event that the Reorganized Debtor's appeal of the Qualcomm Judgment results in reversal and remand of the Qualcomm Litigation to the United States District Court, in whole or in part, and HHR then declines, for any reason, to continue representation of the Reorganized Debtor in the remanded civil action on the terms of the HHR Retention Agreement, then:  (a) HHR shall fully and reasonably cooperate with successor counsel designated by the Reorganized Debtor in turning over files and familiarizing the successor counsel with the status and circumstances of the litigation; and (b) HHR's *Pro Rata* allocation of Qualcomm Event Proceeds, as compared to all other Lead Counsel, shall be based on the contribution of HHR as compared with the contribution of all other Lead Counsel, with HHR's share not to exceed fifteen percent (15%) of the Qualcomm Event Proceeds if the Qualcomm Litigation is settled prior to the return or response date of any discovery after reversal and remand on appeal, and five percent (5.0%) of the Qualcomm Event Proceeds if the Qualcomm Litigation is settled or otherwise resolved thereafter.

5.4.2.   In the event that the Reorganized Debtor's appeal of the Qualcomm Judgment results in reversal and remand of the Qualcomm Litigation to the United States District

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

Court, in whole or in part, and the Reorganized Debtor retains counsel in place of HHR to represent it in the remanded civil action, despite HHR's express willingness to continue as counsel for the Reorganized Debtor in the remanded civil action on the terms of the HHR Retention Agreement, then: (a) HHR shall fully and reasonably cooperate with successor counsel designated by the Reorganized Debtor in turning over files and familiarizing the successor counsel with the status and circumstances of the litigation; and (b) HHR's *Pro Rata* allocation of Qualcomm Event Proceeds, as compared to all other Lead Counsel, shall be based on the contribution of HHR as compared with the contribution of all other Lead Counsel, with HHR's share not to exceed fifteen percent (15%) of the Qualcomm Event Proceeds.

5.4.3. Nothing herein shall be deemed to prejudice, impair or waive, in part or in whole, (a) any claim held by either of the Debtors prior to the Effective Date as against HHR, which claims, if any, shall become Committee Claims as of the Effective Date, or (b) any defenses or offsets thereto held by HHR.

5.5. <u>Class C1 (Secured Noteholders)</u>. Class C1 consists of all Secured Noteholders Claims, which shall be deemed fully satisfied by all payments, if any, made in accordance with the provisions of Section 7.9.5.2(a) of the Plan.

5.6. <u>Class C2 (Clark Guaranty Fee)</u>. Class C2 consists of the Clark Guaranty Fee Claim, which shall be deemed fully satisfied by all payments, if any, made in accordance with the provisions of Section 7.9.5.2(b) of the Plan.

5.7. <u>Class C3 (Elliston Bond Fee)</u>. Class C3 consists of the Elliston Bond Fee Claim, which shall be deemed fully satisfied by all payments, if any, made in accordance with the provisions of Section 7.9.5.2(c) of the Plan.

5.8. <u>Class D (Whittle Noteholders)</u>. Class D consists of all Whittle Proceeds Claims, which shall be deemed fully satisfied by all payments, if any, made in accordance with the provisions of Section 7.10.2(a) of the Plan.

5.9. <u>Class E1 (Unsecured Claims)</u>. Class E1 consists of Unsecured Claims other than the Qualcomm Claim and any other Unsecured Claim within any other designated Class. All Allowed

Claims within Class E1 shall be deemed fully satisfied by all payments, if any, made in accordance with the provisions of Sections 7.9.5.3, 7.10.2(b)(ii) and 7.11 below, which payments, to the extent available under such sections, shall continue until all available funds and assets of the Reorganized Debtor, net of payment of, or reasonable reserves for, administrative expenses incurred or to be incurred by the Reorganized Debtor or the Plan Committee in the implementation of the Plan, have been exhausted or until the Claim has been paid in full, *provided* that in no event shall any payments be made on account of Allowed Claims within Class E1 in excess of amounts owing under such Allowed Claims as of the Effective Date, plus interest thereafter at the rate of ten percent (10%) per annum. Notwithstanding anything to the contrary herein, any intercreditor agreements among holders of Allowed Unsecured Claims in Class E1 that remain in full force and effect as of the Effective Date shall continue to be enforceable in accordance with their terms and shall not be affected by the provisions of the Plan.

5.10. <u>Class E2 (Qualcomm Claim)</u>. Class E2 consists of any Claim held by Qualcomm. The Allowed Unsecured Claim, if any, within Class E2 shall be deemed fully satisfied by all payments, if any, made in accordance with the provisions of Sections 7.10.2(b)(ii) and 7.11 below, which payments, to the extent available, shall continue until all available funds and assets of the Reorganized Debtor, net of payment of, or reasonable reserves for, administrative expenses incurred or to be incurred by the Reorganized Debtor or the Plan Committee in the implementation of the Plan, have been exhausted or until the Claim has been paid in full, *provided* that in no event shall any payments be made on account of the Allowed Claim, if any, within Class E2 in excess of amounts owing under such Allowed Claim as of the Effective Date, plus interest thereafter at the rate of ten percent (10%) per annum.

5.11. <u>Class F (Interests)</u>. Until all Allowed Claims within Classes E1 and E2 have been fully satisfied in accordance with the terms of the Plan, (a) all voting, distribution and other rights incident to Allowed Interests within Class F shall be suspended, and nothing of value shall be conferred upon holders of such Interests. Upon full satisfaction of all Allowed Claims within Classes E1 and E2 in accordance with the terms of the Plan, such rights of holders of Allowed Interests within Class F may be resumed, to the extent provided in Section 7.9.6 below.

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

9

## ARTICLE VI

## EXECUTORY CONTRACTS

6.1.    Generally.   Unexpired executory contracts, including without limitation unexpired leases, entered into by either of the Debtors prior to the Petition Date, shall be treated in the manner set forth in this Article VI.

6.2.    Assumption and Rejection.  The assumption and rejection of executory contracts shall be determined as follows:

6.2.1.    Assumption Schedule.  Prior to the Effective Date, after consultation with the Committee, the Debtors shall jointly file with the Bankruptcy Court, and serve upon the United States Trustee, all parties requesting special notice and each party to a contract identified therein, a schedule ("Schedule 6.2.1") identifying each executory contract to be assumed by the Reorganized Debtor as of the Effective Date, *provided* that if no such contracts are to be assumed as of the Effective Date (other than as provided in Section 6.2.2 below), no such schedule need be filed or served.  Each executory contract identified on Schedule 6.2.1 shall be deemed assumed as of the Effective Date.

6.2.2.    Rejection.  Except as otherwise provided elsewhere in the Plan or by the terms of the Confirmation Order, as of the Effective Date, all executory contracts shall be deemed rejected as of the Effective Date, except for any executory contract (i) which is listed on Schedule 6.2.1 to be assumed, (ii) which has been assumed by the Debtors pursuant to an order of the Court granting a motion filed by the Debtors prior to the Effective Date, (iii) which has been rejected pursuant to an order of the Bankruptcy Court or by applicable law prior to the Effective Date, or (iv) any insurance policy or contract of insurance, all of which shall be deemed assumed as of the Effective Date.  Notwithstanding anything to the contrary herein, any rights of the Debtors in any insurance policies or contracts of insurance shall vest in the Reorganized Debtor and shall not be deemed rejected by virtue of the Plan.

6.3.    Cure Amounts.  Schedule 6.2.1 shall also identify (a) the Cure amount that the Debtors believe is owing pursuant to Section 365(b)(1) of the Bankruptcy Code for each executory contract to be assumed by the Reorganized Debtor as of the Effective Date, and (b) the adequate

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

assurance of future performance to be provided with respect to such executory contract.

        6.3.1.  Objections.  Within ten (10) days following the Effective Date, any party to an executory contract to be assumed as of the Effective Date may file, and serve upon the Reorganized Debtor, an objection to Schedule 6.2.1 to the extent that such party disputes the Cure amount stated for a particular contract, or disputes the adequacy of proffered assurance of future performance.  The Reorganized Debtor shall schedule hearings and briefing before the Bankruptcy Court with respect to any such disputes not consensually resolved, as soon as practicable after the Effective Date and in accordance with applicable Bankruptcy Rules.

        6.3.2.  Resolution.  The amounts set forth in Schedule 6.2.1 shall be conclusively presumed to be the amounts of Cure, if any, for each contract identified therein, and it shall be conclusively presumed that no Cure amounts are owed other than those (if any) identified in Schedule 6.2.1, unless, and except to the extent that, an objection is timely filed and served in accordance with the provisions of Section 6.3.1.  Any amount of Cure in excess of those set forth in the Schedule 6.2.1 or such amounts as determined by the Bankruptcy Court in resolution of timely filed objections, shall be fully discharged and barred, and shall not be a liability of the Reorganized Debtor to any extent.

      6.4.  Payment of Cure.  Any and all Cash payments necessary to Cure a default existing under an executory contract assumed pursuant to the provisions of Section 6.2 herein shall be paid by the Reorganized Debtor on or before the latest of the following dates:  (a) within twenty-one (21) days following the Effective Date, or on such later date as to which the holder of the right to such Cure may have consented; (b) on the date that any disputes regarding assumption or the Cure amount have been resolved by a Final Order; or (c) on the date when such Cure of defaults becomes due according to contractual, statutory or other terms applicable thereto.

      6.5.  Approval of Assumption or Rejection.  Entry of the Confirmation Order shall constitute (i) the approval, pursuant to the provisions of Section 365(a) of the Bankruptcy Code, of the assumption of the executory contracts assumed pursuant to the provisions of Section 6.2 hereinabove; (ii) the extension of time pursuant to the provisions of Section 365(d)(4) of the Bankruptcy Code, to the extent necessary, within which the Debtors may assume or reject the

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

11

executory contracts specified in Section 6.2 hereinabove through the Effective Date; and (iii) the approval, pursuant to the provisions of Section 365(a) of the Bankruptcy Code, of the rejection of the executory contracts rejected pursuant to the provisions of Section 6.2 hereinabove.

6.6.   Bar Date for Rejection Claims.  Except to the extent that the Bankruptcy Court, the Bankruptcy Code or the Bankruptcy Rules may establish an earlier deadline with regard to the rejection of executory contracts, any Claims arising out of the rejection of executory contracts pursuant to the provisions of Section 6.2 herein must be filed with the Bankruptcy Court and served upon the Reorganized Debtor no later than thirty (30) days after the Effective Date.  Any Claims not filed within such time will be forever barred from assertion.  Any Claims arising from the rejection of executory contracts (a) may be asserted only to the extent permitted by Section 365(g) of the Bankruptcy Code; and (b) shall be classified and treated within Class E1.  Following the Effective Date, the Reorganized Debtor shall file a notice with the Bankruptcy Court identifying the executory contracts that have been assumed by the Reorganized Debtor under the Plan.

6.7.   Assignment of Assumed Contracts.   Any executory contracts assumed by the Reorganized Debtor pursuant to the provisions of this Article VI, or by other orders of the Court, may be assigned to another party by the Reorganized Debtor pursuant to the provisions of Section 365 of the Bankruptcy Code at any time after the Effective Date, upon notice and opportunity for hearing provided by the Reorganized Debtor to the other party to such contract, *provided* that no such notice or opportunity for hearing shall be required for an assignment consistent with the terms of the executory contract or with the consent of the other parties to the contract.

## ARTICLE VII

## MEANS FOR EXECUTION OF THE PLAN

7.1.   Plan Effectiveness.   The Plan shall become fully effective and binding upon all parties on the Effective Date.

7.2.   Consolidation of Debtors' Estates.  Immediately prior to the Effective Date, the assets and Estates of the Debtors shall be deemed substantively consolidated into the chapter 11 Estate of Gabriel, and upon the Effective Date, all such assets shall become the property of the Reorganized Debtor.

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

12

7.3. <u>Reorganization Loans</u>. As of the Effective Date and thereafter, the Reorganization Lender shall from time to time lend to the Reorganized Debtor such funds as reasonably necessary in order to satisfy the obligations of the Reorganized Debtor under the following Sections of the Plan, as well as to fund the Reorganized Debtor's reasonable estimate of ongoing expenses of implementation of the Plan: Section 3.5 (administrative claims); Section 6.5 (cure of executory contracts); Section 7.6.7 (fresh-start registration); Section 7.6.8 (tax reporting compliance); and Section 7.18 (quarterly fees), up to the aggregate principal amount of $500,000, subject to the following terms and conditions:

7.3.1. The DIP Loan Balance shall be repaid upon the same terms as the Reorganization Loan, on a *Pro Rata* basis with advances made under the Reorganization Loan.

7.3.2. The Reorganization Lender shall be required to make advances under the terms of this Section 7.3 only to fund payment of obligations of the Reorganized Debtor, when requested to do so, that are either (a) less than $10,000, or (b) determined to be reasonable expenses in the implementation of the Plan pursuant to the provisions of the following sentence. Such obligations shall be deemed to be reasonable in any of the following circumstances: (i) if approved in writing by the Reorganization Lender, (ii) if determined to be reasonable by the Bankruptcy Court upon no less than ten (10) Business Days' notice to the Reorganization Lender, or (iii) if the Reorganization Lender fails to object to the reasonableness of the obligation in a writing received by the Reorganized Debtor within ten (10) Business Days following written notification to the Reorganization Lender of the intended payment of such obligation.

7.3.3. The Reorganization Lender may in its sole discretion lend under this Section 7.3 funds in excess of the maximum amount set forth above, subject to the reasonable consent of the Plan Committee, but shall not be required to do so.

7.3.4. Notwithstanding any other provision of the Plan, the Reorganization Lender shall not be obligated to advance any funds for fees and costs incurred in the Whittle Litigation.

13

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

7.3.5. All advances under this Section 7.3 shall accrue interest at the rate of fifteen percent (15%) per annum until repaid, and shall be repaid only as provided in Section 7.9.1 of the Plan.

7.4. <u>Revesting of Estates Assets</u>. As of the Effective Date, all assets of the Estates of either of the Debtors, other than Committee Claims, shall be revested in the Reorganized Debtor, free and clear of any and all claims, interests, liens, security interests and obligations other than those that are expressly created or preserved by the provisions of this Plan or the Confirmation Order. As of the Effective Date, any and all Committee Claims shall be deemed transferred by the Debtors and their Estates to a litigation trust (the "Litigation Trust") pursuant to the terms of a litigation trust agreement (the "Litigation Trust Agreement") approved by the Bankruptcy Court, free and clear of any and all claims, interests, liens, security interests and obligations other than those that are expressly created or preserved by the provisions of this Plan or the Confirmation Order. It is intended that the Litigation Trust shall qualify as a liquidating trust for federal income tax purposes. The sole beneficiaries of the Litigation Trust shall be holders of Allowed Claims within Class E1, *provided* that distributions by the Litigation Trust shall be made to such beneficiaries by and through the Reorganized Debtor in accordance with Section 7.11 of the Plan. For federal income tax purposes, the beneficiaries of the Litigation Trust shall be treated as the grantors of the Litigation Trust and shall be deemed to be the owners of the assets of the Litigation Trust, and the transfer of the Committee Claims to the Litigation Trust shall be deemed a transfer to such beneficiaries by the Debtors followed by a deemed transfer by such beneficiaries to the Litigation Trust. The Litigation Trust shall be governed by the following provisions:

7.4.1. <u>Purpose of Litigation Trust</u>. The Litigation Trust shall be established for the primary purpose of investigating and, if appropriate, prosecuting and liquidating the Committee Claims and distributing the proceeds thereof in accordance with Treasury Regulation section 301.7701-4(d).

7.4.2. <u>Appointment of Litigation Trustee</u>. The Litigation Trust shall be administered by a trustee (the "Litigation Trustee") who shall be appointed as proposed by the Committee and approved by the Bankruptcy Court, and supervised by the Plan Committee. On the

14

Effective Date and subject to the oversight of the Plan Committee, the Litigation Trustee shall be the sole authorized representative and signatory of the Litigation Trust, with authority to render any and all services necessary to effectuate the terms of the Plan as they relate to the Litigation Trust. From and after the Effective Date, the Litigation Trustee shall be deemed to have been appointed as the representative of the Debtors' Estates by the Bankruptcy Court pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code for purposes of the Committee Claims, including the right to object to or seek estimation of any Claims asserted by the targets of the Committee Clams.

7.4.3.  Powers of Litigation Trustee.  The powers, authority, responsibilities and duties of the Litigation Trustee shall be governed by the Plan, the Confirmation Order and the Trust Agreement.  Specifically, subject to the oversight of the Plan Committee, the powers of the Litigation Trustee to administer the Litigation Trust shall, without any need for approval of the Bankruptcy Court in each of the following instances, include *inter alia*, (a) the power to invest funds of the Litigation Trust as permitted in the Trust Agreement, withdraw funds, make distributions and pay taxes and other obligations owed by the Litigation Trust from funds held by the Litigation Trustee in accordance with the Plan and the Trust Agreement, (b) the power to engage and compensate, without prior Bankruptcy Court order or approval, employees and professionals to assist the Litigation Trustee with respect to his or her responsibilities, (c) the power to prosecute, compromise and settle Claims asserted by parties identified by the Litigation Trustee as targets of the Committee Claims, (d) the power to abandon, pursue, litigate, or settle any Committee Claim, and (e) such other powers as may be vested in or assumed by the Litigation Trustee pursuant to the Plan, the Trust Agreement, order of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions of the Plan.

7.4.4.  Resolution of Committee Claims.  Subject to the oversight of the Plan Committee as set forth in the Plan and the Trust Agreement, the Litigation Trustee, on behalf of the Litigation Trust, shall have absolute discretion to pursue or not to pursue any and all Committee Claims or objections to Claims asserted by targets of the Committee Clams, as he

15

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

or she determines is in the best interests of the beneficiaries and consistent with the purposes of the Litigation Trust, and shall have no liability for the outcome of his/her decision, other than those decisions constituting gross negligence or willful misconduct. Any determination by the Litigation Trustee as to what actions are in the best interests of the Litigation Trust shall be conclusive.

7.4.5. <u>Distributions</u>. The Litigation Trust shall have no objective to continue or engage in the conduct of a trade or business and shall not be deemed a successor-in-interest of the Debtors or their Estates for any purpose other than as specifically set forth herein. The Litigation Trust shall make distributions of available funds to the Reorganized Debtor for the benefit of holders of Allowed Unsecured Claims in Class E1, and the Reorganized Debtor shall distribute such proceeds as Other Event Proceeds in accordance with Section 7.11 of the Plan.

7.5. <u>Post-Effective Date Corporate Governance</u>. The officers and directors of Gabriel shall remain as the officers and directors of the Reorganized Debtor following the Effective Date. As soon as practicable following the Effective Date, the Reorganized Debtor shall obtain approval of the Bankruptcy Court, on no less than fourteen (14) days' notice to the Postconfirmation Recipients, of proposed charter amendments and bylaws for the continuing governance of the Reorganized Debtor, succession of directors, and shareholder voting rules, including without limitation provisions effectuating full compliance with the requirements of Section 1123(a)(6) of the Bankruptcy Code.

7.6. <u>Duties and Powers of Reorganized Debtor</u>. Subject to the oversight of the Plan Committee as provided below, the Reorganized Debtor shall be responsible for the management and disposition of all of its assets, including without limitation the prosecution, as appropriate, of all Claims owned by the Reorganized Debtor (but not Committee Claims, which shall be administered by the Plan Committee as set forth in Section 7.7.2 below), and the implementation of the Plan, and shall have the following duties, powers and authorities in order to do so:

7.6.1. <u>Implementation</u>. Except for actions expressly conferred upon the Plan Committee or the Litigation Trust, the Reorganized Debtor shall take any and all actions reasonably necessary or appropriate in order to implement and administer the Plan, including

16

without limitation filing and prosecuting estate causes of actions or claims excluding Committee Claims, but otherwise including avoidance claims, objecting to Claims (excluding Claims held by persons who are targets of Committee Claims), requesting estimations of Claims (excluding Claims held by persons who are targets of Committee Claims), negotiating and entering into settlements, prosecuting pending litigation, and generally taking actions consistent with the terms of the Plan, all in accordance with the terms of the Plan, subject to the following:

7.6.1.1.    The Reorganized Debtor shall keep NW, until fully paid, and the Plan Committee, until terminated, reasonably apprised of its actions in implementation of the Plan.

7.6.1.2.    The Reorganized Debtor shall permit NW, until fully paid, and the Plan Committee, until terminated, to participate in any settlement negotiations involving the Qualcomm Litigation, to the extent practicable.

7.6.1.3.    The Reorganized Debtor may enter into a settlement of the Qualcomm Litigation or of objections to Claims in excess of $100,000.00 only upon (a) the written approval of NW, until fully paid, and the Plan Committee, until terminated; or (b) entry of an order of the Bankruptcy Court approving such settlement upon notice to NW, until fully paid, and the Plan Committee, until terminated.

7.6.1.4.    The Reorganized Debtor may enter into a settlement of the Whittle Litigation only upon (a) the written approval of the Plan Committee; (b) the termination of the Plan Committee; or (c) entry of an order of the Bankruptcy Court approving such settlement upon notice to the Plan Committee.

7.6.2.    <u>Distributions</u>.  The Reorganized Debtor shall make distributions to creditors in accordance with the terms of the Plan, upon (a) the written approval of NW, until fully paid, and the Plan Committee, until terminated; or (b) entry of an order of the Bankruptcy Court approving such distributions upon notice to NW, until fully paid, and the Committee, until terminated.

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

7.6.3. <u>Use of Funds</u>. The Reorganized Debtor shall manage its funds and shall use such funds, as appropriate and if practicable, to obtain and pay for appropriate insurance coverages and indemnification of the Reorganized Debtor, NW, members of the Plan Committee, and their respective professionals, officers and directors, with respect to actions taken in implementation of the Plan, and to pay administrative costs of Plan implementation, all in accordance with the terms of the Plan.

7.6.4. <u>Resumption of Business Operations</u>. Following the occurrence of a Qualcomm Event, the Reorganized Debtor shall determine whether to resume business operations that are based on the intellectual property rights recovered or preserved as part of the Qualcomm Event, pursuant to a reasonable business plan and feasible funding.

7.6.5. <u>Bank Accounts</u>. The Reorganized Debtor shall open and maintain any necessary bank accounts in accordance with the terms of the Plan.

7.6.6. <u>Retention of Professionals</u>. The Reorganized Debtor shall retain, after consultation with the Plan Committee but without the necessity of Bankruptcy Court approval, counsel and other professionals for the purpose of advising the Reorganized Debtor and representing the Reorganized Debtor with respect to the implementation of the Plan, including professionals who represented the Debtors prior to the Effective Date.

7.6.7. <u>SEC Filings</u>. The Reorganized Debtor shall take such actions as reasonably necessary, to the extent practicable and economically feasible, in order to cause its filings and registration with respect to securities issued by Gabriel to be current and in good standing.

7.6.8. <u>Tax Reporting Compliance</u>. As soon as practicable following the Effective Date, the Reorganized Debtor shall comply with all applicable tax reporting requirements, including without limitation the filing of returns or informational reports for any unreported tax years prior to the Petition Date, but only to the extent feasible and required by applicable law.

7.7. <u>Plan Committee</u>. The Plan Committee shall be comprised of no more than five unsecured creditors selected by the Committee and disclosed to the Bankruptcy Court. The Plan Committee shall establish its bylaws and rules of governance. Members of the Plan Committee shall

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

18

not be entitled to any compensation for time or efforts spent as members. The Plan Committee shall be terminated upon the earlier of (a) full payment of all Allowed Claims within Class E1 to the extent provided in the Plan; or (b) or upon exhaustion of all assets of the Reorganized Debtor, and all prosecution of Committee Claims, that might produce distributions on account of such Allowed Claims under the terms of the Plan. The Plan Committee shall monitor the actions and decisions of the Reorganized Debtor, specifically including the right and duty to:

7.7.1. Reasonably approve any compromise or settlement of litigation or controverted matter proposed by the Reorganized Debtor as set forth in Section 7.6.1 of the Plan, *provided* that the Plan Committee shall be deemed to have approved any such compromise or settlement if it fails to object thereto in a writing received by the Reorganized Debtor within ten (10) Business Days following written notification to the Plan Committee by the Reorganized Debtor of the intended compromise or settlement; and

7.7.2. Supervise the Litigation Trust in investigating and, if appropriate, filing and prosecuting actions based on the Committee Claims, including objections to Claims related thereto, and settling, compromising or otherwise disposing of such actions or objections to Claims, on notice to the Reorganized Debtor; and

7.7.3. Retain, without the necessity of Bankruptcy Court approval, counsel and other professionals for the purpose of advising the Plan Committee and representing the Plan Committee with respect to the implementation of the Plan, including professionals who represented the Committee prior to the Effective Date.

7.8. Creditors' Committee. The Committee shall be dissolved and terminated as of the Effective Date, and shall be replaced by the Plan Committee.

7.9. Qualcomm Event Distributions. All funds received by the Reorganized Debtor as Qualcomm Event Proceeds, net of payment or reasonable reserves for administrative expenses incurred or to be incurred by the Reorganized Debtor or the Plan Committee, shall be distributed in the following manner and in the following order of Qualcomm Categories, as and when available to the following Categories (within each Qualcomm Category, payments shall be made to each subcategory of recipients on a *Pro Rata* basis until paid in full):

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

**7.9.1. <u>Category 1:  Reorganization Loan and DIP Loan</u>.**  First, payment shall be made of all principal and interest owing under the DIP Loan and the Reorganization Loan.

**7.9.2. <u>Category 2:  Prior Professional Fee Payments</u>.**  Second, after full payment within Section 7.9.1, payment shall be made on account of the following Allowed Claims:

7.9.2.1.    On a *Pro Rata* basis, (a) Allowed Claims within Class B2, up to two percent (2.0%) of the Qualcomm Event Proceeds, and (b) Allowed Claims within Class B3, up to one half of one percent (0.50%) of the Qualcomm Event Proceeds; and

7.9.2.2.    After full payment of Allowed Claims in accordance with the terms of Section 7.9.2.1 of the Plan, the Allowed Claim within Class B1 up to $200,000, plus interest thereon at the rate of fifteen percent (15%) per annum from the Effective Date.

**7.9.3. <u>Category 3:  NW Principal and Hourly Professionals</u>.**  Third, after full payment within Section 7.9.2, payment shall be made to the following on a *Pro Rata* basis (*provided*, that once the Allowed Claims within a subcategory has been fully paid in accordance with the terms of the Plan, any further distributions under this Section 7.9.3 shall be made only to the remaining subcategories in the same proportions as previously existed between those subcategories):

7.9.3.1.    Allowed Claims within Class B1, up to the amount of $3,100,000.

7.9.3.2.    Hourly Professionals that have timely consented to delayed payment pursuant to Section 3.5.2(d) above, to the extent of fees and expenses  (net of retainers) allowed pursuant to Section 3.2 above, plus 6.5% of Qualcomm Event Proceeds (to be shared by such Professionals on a *Pro Rata* basis based on allowed hourly compensation and costs), *provided* that in no event shall any such Hourly Professional receive under this Section 7.9.3.2 payments (including allowed fees and expenses net of retainers) in excess of five times the sum of all fees and expenses (net of retainers) allowed pursuant to Section 3.2 above.

7.9.3.3.    Hourly Professionals retained by the Reorganized Debtor or the

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

MEYERS LAW GROUP, P.C.

LAW OFFICES

44 MONTGOMERY STREET, SUITE 1010

SAN FRANCISCO, CALIFORNIA 94104

Plan Committee, pursuant to Sections 7.6.6 or 7.7.3 above, to the extent of fees and expenses earned in the implementation of the Plan, plus 6.5% of Qualcomm Event Proceeds (to be shared by such Professionals on a *Pro Rata* basis based on hourly compensation and costs), *provided* that in no event shall any such Hourly Professional receive under this Section 7.9.3.3 payments (including allowed fees and expenses net of retainers) in excess of five times the sum of all fees and expenses (net of retainers) earned pursuant to Sections 7.6.6 or 7.7.3 above for services rendered on and after the Effective Date and through the date of such payments.

7.9.4.   Category 4:  Lead Counsel.  Fourth, after full payment within Section 7.9.3, all amounts owing to Lead Counsel on account of the prosecution of the Qualcomm Litigation (to be shared by such Lead Counsel on a *Pro Rata* basis based on their respective contingency fee rates).

7.9.5.   Category 5:  Other Secured and Unsecured Claims.  Fifth, after full payment within Section 7.9.4, payment shall be made as follows (*provided*, that once the Allowed Claims within a subcategory has been fully paid in accordance with the terms of the Plan, any further distributions under this Section 7.9.5 shall be made only to the remaining subcategories in the same proportions as previously existed between those subcategories):

7.9.5.1.    Thirty-five percent (35%) to NW, until the Allowed Secured Claim within Class B1 has been paid in full in accordance with the terms of the Plan (including all payments made pursuant to Sections 7.9.2.2 and 7.9.3.1 of the Plan);

7.9.5.2.    Thirty-five percent (35%), on a *Pro Rata* basis to the following: (a) Allowed Claims within Class C1; (b) Allowed Claims within Class C2; and Allowed Claims within Class C3; until such Allowed Claims have been paid in full in accordance with the terms of the Plan; and

7.9.5.3.    Thirty percent (30%) on account of Allowed Claims within Class E1, until such Allowed Claims have been paid in full in accordance with the terms of the Plan.

7.9.6.   Category 6:  Shareholders and Beneficiaries.  Sixth, after full payment within

21

Section 7.9.5, distributions shall be made on account of Equity Interests and other beneficiaries of a Qualcomm Event as set forth in Sections 8.1(vii), (viii), (ix), (x) and (xi) of the Note Purchase Agreement, with due consideration of the need to preserve funds in the event of resumption of business operations pursuant to Section 7.6.4 above.

7.10.  <u>Whittle Event Distributions</u>.  All funds received by the Reorganized Debtor as Whittle Event Proceeds shall be distributed in the following manner and in the following order of Whittle Categories, as and when available to the following Categories (within each Whittle Category, payments shall be made to each subcategory of recipients on a *Pro Rata* basis until paid in full):

      7.10.1.  <u>Category 1:  Professional Fee Payments</u>.  First, full payment of all unpaid fees and expenses owing to special counsel retained by the Debtors or the Reorganized Debtor for services rendered after the Petition Date in the prosecution of the Whittle Litigation, and full payment of any attorneys' liens and other liens and security interests encumbering the Whittle Event Proceeds, to the extent enforceable and valid (other than any liens or security interests granted pursuant to the Note Purchase Agreement).

      7.10.2.  <u>Category 2:  Claims Payments</u>.  Second, after full payment within Section 7.10.1, (a) fifty percent of all remaining Whittle Event Proceeds shall be paid on a *Pro Rata* basis on account of Whittle Proceeds Claims, and (b) fifty percent of such remaining Whittle Event Proceeds shall be retained by the Reorganized Debtor (i) to pay, or fund a reasonable reserve for, administrative expenses incurred or to be incurred by the Reorganized Debtor or the Plan Committee in the implementation of the Plan, and (ii) to the extent of any balance remaining after such payments or reserves, to distribute on account of Allowed Claims within Classes E1 and E2 on a *Pro Rata* basis.

7.11.  <u>Other Event Distributions</u>.  All Other Event Proceeds, net of payment of, or reasonable reserves for, administrative expenses incurred or to be incurred by the Reorganized Debtor or the Plan Committee in the implementation of the Plan, shall be paid (a) on account Hourly Professionals that have timely elected treatment under Section 3.5.2(d) of the Plan, to the extent of allowed hourly fees and cost reimbursements not already paid under other provisions of the Plan,

22

DEBTORS' JOINT PLAN OF REORGANIZATION
28414.DOC
Case: 13-30340    Doc# 81    Filed: 04/24/13    Entered: 04/24/13 18:16:48    Page 27 of 45

and following full payment thereof, (b) on account of all Allowed Claims within Classes E1 and E2 on a *Pro Rata* basis.

7.12. <u>Professional Retention and Compensation</u>. Post-Effective Date retention and compensation of professionals (excluding professionals of the Litigation Trust, who shall be subject to the terms of the Trust Agreement) shall be governed by the following provisions:

7.12.1. <u>Reorganized Debtor's Professionals</u>. Pursuant to the provisions of Section 7.6.6 of the Plan, the Reorganized Debtor shall be entitled to employ and retain professionals without the necessity of notice or approval by the Bankruptcy Court.

7.12.2. <u>Plan Committee's Professionals</u>. Pursuant to the provisions of Section 7.7.3 of the Plan, the Plan Committee shall be entitled to employ and retain professionals without the necessity of notice or approval by the Bankruptcy Court.

7.12.3. <u>Compensation</u>. Professionals retained by the Reorganized Debtor or by the Plan Committee shall be compensated as follows, subject to the provisions of Section 7.12.3.4 below:

7.12.3.1. <u>Contingency Professionals</u>. Contingency Professionals retained by the Reorganized Debtor or by the Plan Committee shall be paid upon the occurrence of the contingent event giving rise to compensation, pursuant to the terms of engagement of such professionals, as affected by the terms of the Plan.

7.12.3.2. <u>Hourly Professionals Other Than Bankruptcy Counsel</u>. Hourly Professionals retained by the Reorganized Debtor or by the Plan Committee shall be paid in accordance with the terms of engagement of such professionals.

7.12.3.3. <u>Hourly Professionals Who Are Bankruptcy Counsel</u>. Hourly Professionals retained by the Reorganized Debtor or by the Plan Committee to provide general bankruptcy services, including implementation of the Plan, shall be compensated for services rendered, and reimbursed for expenses incurred, after the Effective Date only upon the occurrence of a Qualcomm Event, a Whittle Event or an Other Event, pursuant to the provisions of Sections 7.9, 7.9.3.3, 7.10.2(b)(i) and 7.11 above.

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

DEBTORS' JOINT PLAN OF REORGANIZATION
28414.DOC

7.12.3.4. <u>Notice and Opportunity for Objection</u>. All compensation and expense reimbursements payments to Professionals retained by the Reorganized Debtor or by the Plan Committee shall be made by the Reorganized Debtor upon no less than ten (10) days' notice to the Reorganized Debtor and to the Plan Committee, and in the event that an objection thereto is received by the Reorganized Debtor from the Plan Committee, or by the Plan Committee from the Reorganized Debtor, prior to the expiration of such 10-day period, unless such objection is withdrawn, such compensation and expense reimbursement shall be made only upon an order of the Bankruptcy Court, on notice to the Plan Committee and the Reorganized Debtor.

7.13. <u>Preservation of Causes of Action</u>. Each and every claim, right, cause of action, claim for relief and other entitlement held by the Estates as of the Effective Date, whether arising under Sections 502, 506, 510, 541, 542, 543, 544, 545, 550, 551, 552 or 553 of the Bankruptcy Code or arising otherwise (including without limitation Committee Claims and any other claims arising prior to the Petition Date), other than those waived or released by the express terms of the Plan or the Confirmation Order, shall be deemed fully preserved and vested in the Reorganized Debtor or the Litigation Trust, as set forth in the Plan, and such claims and causes of action shall be administered by the Reorganized Debtor or the Litigation Trust in a manner consistent with the terms of the Plan.

7.14. <u>Reserves</u>. Prior to making a *pro rata* distribution (the "Triggering Distribution") upon Allowed Claims within a Class, the Reorganized Debtor shall establish a reserve for Claims within that Class to the extent that such Claims are Disputed Claims or are Claims for which payments are to be deferred in accordance with the terms of the Plan, as follows:

7.14.1. <u>Calculation</u>. The amount reserved for each such Claim shall be on the same *pro rata* basis as the Triggering Distribution, based upon the lesser of (a) the amount asserted by the holder of the Claim to be owing and (b) such amount as the Bankruptcy Court may estimate for all distribution purposes upon motion of the Reorganized Debtor, which motion may be made initially or from time to time.

7.14.2. <u>Reserve Maintenance And Interest</u>. Such reserves may be established and maintained by the Reorganized Debtor as accounting entries, without the necessity of

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

transfers of funds out of its general accounts, *provided* that sufficient funds are maintained in such general accounts to support the accounting entries. Any interest earned upon such reserved funds shall be earned for the account of, and retained by, the Reorganized Debtor for its general purposes, and not for the benefit of the holder of the Disputed or unmatured Claim.

7.14.3. <u>Release of Reserved Funds</u>. Reserved funds shall be released as Disputed Claims are resolved by a Final Order or as unmatured Claims mature, as the case may be, as follows: (a) a payment to the holder of such Claim, calculated on the same *pro rata* basis as the Triggering Distribution, based upon the portion, if any, of the Claim that has become a matured Allowed Claim, by virtue of a Final Order; and (b) retention by the Reorganized Debtor, for its general purposes, of all other funds reserved for such Claim.

7.15. <u>Unclaimed Distributions</u>. If any holder of a Claim fails to deposit or accept a distribution tendered by the Reorganized Debtor to such holder with respect to such Claim within ninety (90) days following the date of such distribution, then the distribution with respect to such holder shall be cancelled, such Claim shall be deemed fully released, waived and discharged, and there shall be no further distributions required with respect to such Claim.

7.16. *De Minimis* Distributions. The Reorganized Debtor shall not be required to make any payment of less than $50.00 on account of an Allowed Claim, unless it is the final payment to be made on account of such Allowed Claim under the terms of the Plan. In the event that a *pro rata* distribution with respect to such an Allowed Claim would otherwise require such a payment of less than $50.00, the Reorganized Debtor may withhold such payment and aggregate it with a subsequent payment upon such Allowed Claim.

7.17. <u>Compliance With Tax Requirements</u>. In connection with the Plan, to the extent applicable, the Reorganized Debtor shall comply with all tax withholding and reporting requirements imposed by any governmental unit, and all distributions made pursuant to the Plan shall be subject to, and reduced by, such withholding and reporting requirements. The Reorganized Debtor shall be deemed to be authorized to take any actions that may be necessary or appropriate in order to comply with such withholding and reporting requirements, including but not limited to requiring recipients

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

to fund the payment of such withholding as a condition to delivery. Notwithstanding any other provision of the Plan, each person or entity receiving a distribution of Cash pursuant to the Plan will have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on him, her or it by any governmental unit on account of such distribution, including income withholding and other tax obligations.

7.18. <u>Quarterly Fees</u>. At all times on and after the Effective Date, the Reorganized Debtor shall, for deposit into the United States Treasury, the quarterly fees owing to the United States Trustee pursuant to the provisions of Section 1930(a)(6) of Title 28 of the United States Code, for each calendar quarter (including any fraction thereof) until the Consolidated Case has been closed by the entry of a final decree, converted or dismissed. At all times on and after the Effective Date, such quarterly fees shall be calculated on the basis of one consolidated debtor and case.

7.19. <u>Objections to Claims</u>. On and after the Effective Date, only the Reorganized Debtor may file, serve, prosecute or compromise objections to any Claim, or request estimations of Claims, except as to Claims that are held by parties that are identified by the Litigation Trustee from time to time as targets of Committee Claims, as to which Claims only the Litigation Trustee may file, serve, prosecute, compromise or request estimations.

7.20. <u>Other Actions</u>. On and after the Effective Date, the Reorganized Debtor, the Plan Committee, the Litigation Trustee and other parties, as appropriate, shall execute and deliver such documents, and take such actions, as reasonably necessary to complete and evidence the transactions contemplated and described in this Plan, *provided* that if any such party fails to so act, the Reorganized Debtor shall be authorized to so act on such party's behalf, pursuant to an order of the Court issued on no less than ten (10) Business Days' notice under the provisions of Section 1142(b) of the Bankruptcy Code.

7.21. <u>Term of Injunctions and Stays</u>. Unless otherwise provided herein or by an order of the Court, any injunctions or stays issued or effective as of the Effective Date in the Chapter 11 Cases, whether under the provisions of Sections 105 or 362 of the Bankruptcy Code or otherwise, shall remain in full force and effect until the Effective Date.

7.22. <u>Discharge of Reorganized Debtor</u>. Notwithstanding any other provision of the Plan

26

or of the Bankruptcy Code, and except as expressly provided in the Plan, the Reorganized Debtor shall be discharged of all Claims, liens, obligations and charges of any kind existing or arising prior to the Effective Date as of the Effective Date.

7.23. <u>Permanent Satisfaction And Injunction</u>. The rights afforded herein, and the treatment of all Claims and Interests set forth herein, shall be in full exchange for, and in complete satisfaction, discharge and release of, all Claims and Interests of any kind or nature whatsoever, whether known or unknown, matured or contingent, liquidated or unliquidated, existing, arising or accruing, whether or not yet due, prior to the Effective Date, including without limitation any Claims, or interest on Claims, accruing on or after the Petition Date, against either of the Debtors, the Estates, the Litigation Trust or any assets or property of any of the foregoing parties. Except as expressly provided in the Plan, (a) all such Claims against the Debtors, the Estates, the Litigation Trust or any assets or property of either of the foregoing parties, shall be deemed fully and finally satisfied, discharged and released; and (b) all persons shall be fully and finally barred, enjoined and precluded from asserting against the Reorganized Debtor, the Litigation Trust or any of their resepctive assets, any such Claims or Interests, or any other claims or interests based upon any act or omission, transaction, agreement, right, privilege, duty, entitlement, obligation or other event or activity of any kind or nature whatsoever that occurred prior to the Effective Date.

7.24. <u>Exculpation, Indemnification and Insurance</u>. As of and subject to the occurrence of the Effective Date, for good and valuable consideration, including the consideration provided under the Plan, each of the Debtors, the members of the Committee (acting in such capacity) and their respective professionals, officers, directors and representatives, shall neither have nor incur any liability to any person or entity for any act taken or omitted to be taken, in connection with, or related to, the formulation, preparation, dissemination, implementation, administration, confirmation or consummation of the Plan or any contract, instrument, waiver, release or other agreement or document created or entered into, in connection with the Plan, or any other act taken or omitted to be taken in connection with the Chapter 11 Cases up to and including the Effective Date; provided, however, that the foregoing provisions of this subsection shall have no effect on the liability of any person or entity that results from any such act or omission that is determined in a Final Order to have

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

constituted gross negligence or willful misconduct. Further, the Reorganized Debtor's, the Plan Committee's, and the Litigation Trust's members, professionals, officers and directors, including the Litigation Trustee, shall be indemnified by the Reorganized Debtor with respect to their implementation of the Plan and their post-Effective Date activities in connection with the administration and implementation of the Plan, but not as to their own gross negligence or intentional misconduct. To the extent reasonably available, the Reorganized Debtor may purchase errors and omissions insurance coverage for the Reorganized Debtor, the Plan Committee, the Litigation Trust and their members, officers, directors and professionals, including the Litigation Trustee.

7.25.   <u>Estimation of Claims</u>.  At any time after the Effective Date, the Reorganized Debtor may request estimation of a Disputed Claim, including without limitation any Claim that is contingent or unliquidated in amount, pursuant to the provisions of Section 502(c) of the Bankruptcy Code, except as to Claims that are held by parties that are identified by the Litigation Trustee from time to time as targets of Committee Claims, as to which Claims only the Litigation Trustee may file, serve, prosecute, compromise or request estimations.  Such request may be made by motion or complaint, and may seek such estimation for all purposes, including final allowance of the Claim for purposes of distributions under the Plan.

7.26.   <u>Postconfirmation Reports</u>.  Within thirty (30) days following the end of each calendar quarter occurring after the Effective Date and until, the Consolidated Case has been closed by the entry of a final decree, converted or dismissed, the Reorganized Debtor shall file with the Bankruptcy Court, and serve upon the Postconfirmation Recipients, a postconfirmation report, the purpose of which is to explain the progress made toward full administration of the Plan.  The first such report shall be filed for the portion of the calendar quarter from the Effective Date until the end of the calendar quarter in which it occurs.

## **ARTICLE VIII**
## **RETENTION OF JURISDICTION**

8.1.   <u>Generally</u>.  Until the Chapter 11 Cases have been closed, and thereafter upon a

28

Case 13-30340   Doc# 81   Filed: 04/24/13   Entered: 04/24/13 18:16:48   Page 33 of 45

motion to reopen each case, the Bankruptcy Court shall have exclusive jurisdiction of all matters concerning the allowance of Claims and Interests, and the interpretation and implementation of the Plan, pursuant to, and for all purposes of, Sections 105(a) and 1142 of the Bankruptcy Code, including without limitation the following purposes:

8.1.1.   to hear and determine applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending on the Effective Date, and the allowance of Claims resulting therefrom;

8.1.2.   to determine any and all claims, causes of action, adversary proceedings, applications and contested matters which are pending on the Effective Date or which are thereafter commenced by or related to the Reorganized Debtor or the Litigation Trust;

8.1.3.   to hear and determine any objection to, or requests for estimation of, Claims;

8.1.4.   to enter and implement such orders as may be appropriate in the event that the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

8.1.5.   to issue such orders in aid of execution of the Plan, to the extent authorized by the provisions of Section 1142 of the Bankruptcy Code;

8.1.6.   to consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Court, including, without limitation, the Confirmation Order;

8.1.7.   to hear and determine all applications for Professional Fees accrued through the Effective Date, and for professional fees incurred thereafter in the event of a timely objection;

8.1.8.   to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

8.1.9.   to hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code; and

8.1.10.   to enter final decrees closing said cases, and orders reopening said cases as appropriate.

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

LAW OFFICES

**MEYERS LAW GROUP, P. C.**

44 MONTGOMERY STREET, SUITE 1010

SAN FRANCISCO, CALIFORNIA 94104

# ARTICLE IX

# MISCELLANEOUS PROVISIONS

9.1.     Exemption from Transfer Taxes.  Pursuant to the provisions of Section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust or other security interest, the making or assignment of any lease or sublease, the sale or other transfer of any assets by the Reorganized Debtor to a third party, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, shall not be subject to any stamp, sales, transfer, real estate transfer, mortgage recording or other similar tax.

9.2.     Binding Effect.   The Plan shall be binding upon and inure to the benefit of the Reorganized Debtor and all holders of Claims and Interests and their respective successors and assigns, whether or not they have accepted the Plan.

9.3.     Ratification.  Subject to all of the terms of this Plan, the Confirmation Order shall be deemed to ratify all transactions effectuated by the Debtors during the pendency of the Chapter 11 Cases to the extent either in the ordinary course of business or pursuant to an order of the Court.

9.4.     Notices.  Any notice required or permitted to be provided under the terms of the Plan shall be in writing and shall be served by the quickest practical available method of delivery (which shall be conclusively presumed to be (a) by hand delivery or (b) by facsimile or electronic mail with hard copy to follow by overnight courier, as to the Reorganized Debtor, the Plan Committee and the Litigation Trust).  All notices to the Reorganized Debtor, the Plan Committee or the Litigation Trust shall be delivered as follows (or as otherwise directed by such party by notice given pursuant hereto):

To the Reorganized Debtor:

        Gabriel Technologies Corporation
        Attn:  Byron G. Nelson, President
        220 Avenue I, Lower Level
        Redondo Beach, CA 90277
        Telephone:  310 850-1228
        Facsimile:  310 540-3437

DEBTORS' JOINT PLAN OF REORGANIZATION
28414.DOC

Case: 13-30340    Doc# 81    Filed: 04/24/13    Entered: 04/24/13 18:16:48    Page 35 of
45

Email:  byron@bnelsonlaw.com

*With a copy to:*

Merle C. Meyers, Esq.
Michele Thompson, Esq.
MEYERS LAW GROUP, P.C.
44 Montgomery Street, Suite 1010
San Francisco, CA  94104
Telephone:  (415) 362-7500
Facsimile:  (415) 362-7515
Email:  mmeyers@mlg-pc.com
          mthompson@mlg-pc.com

To the Plan Committee and the Litigation Trust:

Maxim B. Litvak, Esq.
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA  94111-4500
Telephone:  (415) 263-7000
Facsimile:  (415) 263-7010
Email:  mlitvak@pszjlaw.com

9.5.    <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of California, without giving effect to the conflict of laws provisions thereof.

9.6.    <u>Headings</u>.  Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

9.7.    <u>Exhibits</u>.  Any and all exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

9.8.    <u>Closing Cases</u>.  The Trace Chapter 11 Case shall be deemed closed as of the Effective Date by the terms of the Confirmation Order.  At such point as the Bankruptcy Court determines, upon a motion of the Reorganized Debtor, and following ten (10) Business Days' notice and an opportunity for hearing to all Postconfirmation Recipients, that all pending claims objections, contested matters and adversary proceedings have been resolved, or that the Consolidated Case need remain open no longer despite the pendency of such objections, matters or proceedings, the

1   Consolidated Case may be closed by the terms of a final decree of the Bankruptcy Court, *provided*

2   that such case may be reopened thereafter if necessary in order to facilitate any of the actions

3   contemplated by the terms of this Plan.

4   DATED: April 23, 2013

5

6   GABRIEL TECHNOLOGIES CORPORATION      TRACE TECHNOLOGIES, LLC

7   By: _Mark Bandsuch_                   By: _Mark Bandsuch_

8          Mark Bandsuch, C.E.O.                 Mark Bandsuch, C.E.O.

9   Approved and submitted by:
    MEYERS LAW GROUP, P.C.

10

11

12  By: _____
           Merle C. Meyers, Esq.

13         Attorneys for Debtors

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

DEBTORS' JOINT PLAN OF REORGANIZATION
28414.DOC

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

## EXHIBIT "A"

## SCHEDULE OF DEFINITIONS

As used herein or in the Plan, the following terms have the meanings specified below, unless the context otherwise requires:

1.      Administrative Bar Date shall have the meaning ascribed to it in Section 3.2 of the Plan.

2.      Administrative Expense Claim means any Claim arising before the Effective Date under Sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Estates, any actual and necessary expenses of operating the business of the Estates, all compensation or reimbursement of expenses allowed by the Court under the provisions of Sections 330, 331 or 503 of the Bankruptcy Code, and any fees or charges assessed against the Estates under the provisions of Section 1930 of chapter 123 of title 28 of the United States Code, except for Claims that are also Secured Claims.

3.      Allowed means, with respect to a Claim, any Claim that is neither a Disputed Claim nor a Disallowed Claim, and proof of which was timely and properly filed or, if no proof of claim was filed, which has been or hereafter is listed by the Debtors on the Schedules as liquidated in amount and not disputed or contingent.  "Allowed Administrative Expense Claim" or "Allowed Claim" shall not include interest on such Administrative Expense Claim or Claim from and after the applicable Petition Date except as expressly specified in the Plan.

4.      Ballot means each of the voting forms to be distributed with the Plan and the Disclosure Statement to holders of Claims or Interests in Classes that are impaired under the terms of the Plan and are entitled to vote in connection with the solicitation of acceptances of the Plan.

5.      Bankruptcy Code means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

6.      Bankruptcy Court means the United States Bankruptcy Court for the Northern District of California, San Francisco Division, or such other court having competent jurisdiction over the Chapter 11 Cases.

7.      Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Cases, including the Local Rules of the Bankruptcy Court.

8.      Business Day means any day on which commercial banks are generally open for business in San Francisco, California, other than a Saturday, Sunday or legal holiday in the State of California.

9.      Cash means the legal tender of the United States of America.

10.     Chapter 11 Cases means, collectively, the Gabriel Chapter 11 Case and the Trace Chapter 11 Case, which cases are jointly administered by the Bankruptcy Court.

11.     Claim means (a) any right to payment from the Debtors or the Estates, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured,

33

disputed, undisputed, legal, equitable, secured, or unsecured, (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment from the Debtors or the Estates, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured, or (c) any claim as defined by the provisions of Section 101(5) of the Bankruptcy Code.

12. <u>Claimant</u> means a person asserting a Claim against either of the Debtors or the Estates.

13. <u>Clark</u> means David B. Clark, a creditor, director and shareholder of Gabriel.

14. <u>Clark Guaranty</u> means Clark's guarantee of certain litigation expenses, up to $2,500,000, as recognized in the Note Purchase Agreement.

15. <u>Clark Guaranty Fee</u> means the fee, in the amount of $250,000, that the Debtors agreed to pay Clark in exchange for the Clark Guaranty, as recognized as fair by Marshall & Stevens Inc. in an independent fairness opinion.

16. <u>Clark Guaranty Fee Claim</u> means all Claims held by or on behalf of Clark or by his successors or assigns, to the extent arising from the Clark Guaranty Fee.

17. <u>Class</u> means a category of holders of Claims or Interests as established by the terms of Article II of the Plan, including any designated subclasses within a designated Class.

18. <u>Committee</u> means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases pursuant to the provisions of Section 1102 of the Bankruptcy Code.

19. <u>Committee Claims</u> means any all claims or causes of action, including avoidance actions, owned by either of the Debtors as of the Petition Date as against any current or former insider (as that term is defined by the provisions of Section 101 of the Bankruptcy Code) of either of the Debtors or as against any professional retained by either of the Debtors prior to the Petition Date.

20. <u>Confirmation Date</u> means the date on which the Bankruptcy Court enters the Confirmation Order.

21. <u>Confirmation Hearing</u> means the hearing before the Bankruptcy Court held for the purpose of determining whether the Plan will be confirmed by the Bankruptcy Court pursuant to the provisions of Section 1129 of the Bankruptcy Code.

22. <u>Confirmation Order</u> means the order of the Bankruptcy Court confirming the Plan pursuant to the provisions of Section 1129 of the Bankruptcy Code.

23. <u>Consolidated Case</u> means the Gabriel Chapter 11 Case, on and after the Effective Date, into which all assets of either of the Estates has been consolidated by the terms of the Plan.

24. <u>Contingency Professionals</u> means Professionals retained by the Reorganized Debtor or the Plan Committee to the extent that such Professionals' compensation is contingent upon events or outcomes in litigation in which such Professionals are employed to represent the Reorganized Debtor, according to the terms of such Professionals' engagement.

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

34

25.    Court means the Bankruptcy Court.

26.    Creditor means a Claimant.

27.    Cure means the distribution of Cash as and to the extent required for the cure and assumption of an unexpired executory contract pursuant to the provisions of Section 365(b) of the Bankruptcy Code, or for the cure and reinstatement of a secured obligation pursuant to the provisions of Section 1124(2) of the Bankruptcy Code.

28.    Debtors means, collectively, Gabriel and Trace, the debtors-in-possession in the Chapter 11 Cases.

29.    DIP Lenders means, collectively, those lenders who participate in making advances under the DIP Loan.

30.    DIP Loan means, collectively, any and all loans made to the Debtors during the pendency of the Chapter 11 Cases and prior to the Effective Date pursuant to the provisions of Section 364(c) of the Bankruptcy Code.

31.    DIP Loan Balance means the aggregate balance of principal and interest, net of any repayments, owing under the DIP Loan as of the Effective Date.

32.    Disallowed Claim means:

        i.    Any Claim, proof of which was not timely and properly filed and, in the case of a Claim other than an Administrative Expense Claim, which is listed in the Schedules as unliquidated, disputed or contingent, or is not listed in the Schedules; and

        ii.    Any Claim, or portion of a Claim, that has been disallowed by a Final Order.

33.    Disclosure Statement means the disclosure statement relating to the Plan, as approved by the Bankruptcy Court pursuant to the provisions of Section 1125 of the Bankruptcy Code, together with any supplements or amendments thereto approved by the Court.

34.    Disputed Claim means any Claim that is not a Disallowed Claim and that has not been allowed by an earlier order of the Court or by the terms of the Plan and as to which the Reorganized Debtor or any other party with authority to file objections to Claims, has filed an objection or request for estimation, except to the extent that such objection or request for estimation has been withdrawn or determined by a Final Order.

35.    Effective Date means the effective date of the Plan, which shall be a date jointly designated by the Debtors and the Committee, but which date shall be no less than fourteen (14) days, and no more than thirty (30) days, following the Confirmation Date or, in the event that effectuation of the Plan is enjoined or stayed by a court of competent jurisdiction for any period of time, no later than thirty (30) days following expiration of such stay or injunction.

36.    Elliston means Gary D. Elliston, a creditor of the Debtors.

37.    Elliston Bond Fee means a fee of $40,000.00 that the Debtors agreed to pay to Elliston in partial consideration for his guarantee of indebtedness with respect to the posting of a

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

bond in the Qualcomm Litigation, pursuant to the terms of a *Bond Collateral Guaranty Agreement*, dated as of March 31, 2011, entered into by the Debtors, Elliston and other parties.

38.   <u>Elliston Bond Fee Claim</u> means all Claims held by or on behalf of Elliston or by his successors or assigns, to the extent arising from the Elliston Bond Fee.

39.   <u>Equity Interests</u> means the rights and interests of shareholders of Gabriel as of the Effective Date.

40.   <u>Estates</u> means the estates of the Debtors and all property thereof, as provided by Section 541 of the Bankruptcy Code.

41.   <u>Final Order</u> means an order or judgment of a court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargument or rehearing shall have been waived, or, in the event that an appeal, writ of certiorari, reargument or rehearing thereof has been sought, such order shall have been determined by the highest court to which such order was appealed, or certiorari, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired.

42.   <u>Gabriel</u> means Gabriel Technologies Corporation, a Delaware corporation and one of the Debtors herein.

43.   <u>Gabriel Chapter 11 Case</u> means the chapter 11 case of Gabriel, case no. 13-30340, commenced by the filing of one of the Petitions by Gabriel on February 14, 2013 and pending in the Bankruptcy Court.

44.   <u>HHR</u> means Hughes Hubbard & Reed LLP, a law firm retained by the Debtors prior to the Petition Date to act as lead counsel for the plaintiffs in the Qualcomm Litigation.

45.   <u>HHR Retention Agreement</u> means the retention agreement entered into by and between the Debtors and HHR as of March 25, 2010, for the representation of the Debtors in the Qualcomm Litigation.

46.   <u>HHR Secured Claim</u> means all Secured Claims held by or on behalf of HHR, or by its successors or assigns.

47.   <u>Hourly Professionals</u> means Professionals retained by the Debtors, the Reorganized Debtor, the Committee or the Plan Committee, either under Sections 327 *et seq*. of the Bankruptcy Code or under the terms of the Plan, as the case may be, for services to be rendered on or after the Petition Date, to the extent that compensation agreed to be paid to such Professional is based on hourly rates, and not on contingent events.

48.   <u>Interest</u> means Equity Interest.

49.   <u>Lead Counsel</u> means HHR and such other counsel, if any, retained by the Debtors or the Reorganized Debtor to act as primary counsel for the plaintiffs in the Qualcomm Litigation.

36

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

50.     Litigation Trust is intended to have the meaning ascribed to it in Section 7.4 of the Plan.

51.     Litigation Trust Agreement is intended to have the meaning ascribed to it in Section 7.4 of the Plan, and shall be filed with the Bankruptcy Court and served upon the Debtors, the United States Trustee and all parties requesting special notice, no less than five (5) Business Days prior to the Confirmation Hearing.

52.     Litigation Trustee is intended to have the meaning ascribed to it in Section 7.4 of the Plan.

53.     Munck Carter means Munck Carter, LLP, a law firm and the initial counsel for plaintiffs in the Qualcomm Litigation.

54.     Munck Carter Secured Claim means all Secured Claims held by or on behalf of Munck Carter or by its successors or assigns.

55.     Munck Settlement Agreement means Settlement Agreement And Mutual Releases, dated as of August 30, 2010, entered into by Munck Carter and the Debtors.

56.     Nonclassified Priority Claim means a Priority Claim that is either a Priority Tax Claim or an Administrative Expense Claim.

57.     Note Purchase Agreement means the *Note Purchase Agreement Among Trace Technologies, LLC, Gabriel Technologies Corporation, And The Purchasers Party Hereto*, dated as of September 2, 2011, entered into by the Debtors, NW and various other creditors and parties.

58.     NW means North Water Intellectual Property Fund L.P. 3A.

59.     NW Secured Claim means all Secured Claims held by or on behalf of NW or by its successors or assigns.

60.     Other Event means the recovery and/or receipt by the Reorganized Debtor, the Litigation Trust or the Plan Committee of any amount of funds or other remuneration paid by or on behalf of any person, defendant or third party, or the amount of other value received, including the present fair market value of any business/non-monetary consideration, which amounts relate directly or indirectly to any claim held or prosecuted by the Reorganized Debtor, the Litigation Trust or the Plan Committee, other than a Qualcomm Event or a Whittle Event, regardless of whether such payments are made in cash, stock, by payment or assumption of liabilities of the Reorganized Debtor, or otherwise, and regardless of whether such payment is styled as an amount paid in settlement, a royalty, a licensing fee, a purchase price for the sale or transfer of stock or assets of the Reorganized Debtor or otherwise.

61.     Other Event Proceeds means the aggregate amount of the proceeds or other consideration received by the Reorganized Debtor, the Litigation Trust or the Plan Committee with respect to an Other Event, as and when liquidated into cash or cash equivalents.

62.     Petition Date means February 14, 2013, the date of filing of the Petitions.

63.     Petitions means the voluntary petitions filed by the Debtors with the Bankruptcy

37

Court on February 14, 2013.

64.    Plan means this *Debtors' Joint Plan of Reorganization* (including all exhibits and schedules annexed hereto or filed separately), either in its present form or as it may be legally altered, amended or modified from time to time.

65.    Plan Committee means the committee of creditors established pursuant to the provisions of Section 7.6 of the Plan.

66.    Postconfirmation Recipients means the United States Trustee, the Reorganized Debtor, the Plan Committee and those parties who, subsequent to the Confirmation Date, file with the Bankruptcy Court and serve upon the parties named above written requests for special notice as provided by the terms of the Plan, *provided*, that any such requesting party may be eliminated from the list of Postconfirmation Recipients from time to time by consent of such party or by order of the Bankruptcy Court on notice to the then-constituted Postconfirmation Recipients, upon a showing that such party no longer holds a Claim or interest in the Consolidated Case.

67.    Priority Claim means a Claim entitled to priority treatment under the provisions of Section 507(a) of the Bankruptcy Code.

68.    Priority Tax Claim means a Priority Claim of a governmental unit entitled to priority treatment pursuant to the provisions of Sections 502(i) and 507(a)(8) of the Bankruptcy Code, other than Secured Claims.

69.    *Pro Rata* means, regarding Claims, the ratio of the amount of an Allowed Claim in a particular Class (or designated group of Claims) to the aggregate amount of all Allowed Claims (together with reserves for Disputed Claims) in such Class or designated group.

70.    Professionals means persons, including without limitation attorneys and accountants, whose employment by a debtor-in-possession or a creditors' committee in a chapter 11 case requires Bankruptcy Court approval pursuant to Sections 327 *et seq*. of the Bankruptcy Code.

71.    Qualcomm means Qualcomm Incorporated, a Delaware corporation.

72.    Qualcomm Category means each category of claimants entitled to distributions, on a *Pro Rata* basis, under one of the subsections of Section 7.9 of the Plan.

73.    Qualcomm Claim means the Claim held by Qualcomm based on the Qualcomm Judgment, subject to dispute by the Debtors.

74.    Qualcomm Event means the recovery and/or receipt by the Reorganized Debtor of any amount of funds or other remuneration paid by or on behalf of any person, defendant or third party, or the amount of other value received, including the present fair market value of any business/non-monetary consideration, which amounts relate directly or indirectly to the Qualcomm Litigation, regardless of whether such payments are made in cash, stock, by payment or assumption of liabilities of the Reorganized Debtor, or otherwise, and regardless of whether such payment is styled as an amount paid in settlement, a royalty, a licensing fee, a purchase price for the sale or transfer of stock or assets of the Reorganized Debtor or otherwise.

75.    Qualcomm Event Proceeds means the aggregate amount of the proceeds or other

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

consideration received by the Reorganized Debtor with respect to a Qualcomm Event, as and when liquidated into cash or cash equivalents.

76.     Qualcomm Judgment means, collectively, the judgments entered in the Qualcomm Litigation on March 13, 2012 and September 28, 2012 granting partial and final summary judgment in favor of the defendants in that litigation.

77.     Qualcomm Litigation means all claims asserted by the Debtors in the civil action entitled *Gabriel Technologies Corporation and Trace Technologies, LLC v. Qualcomm Incorporated, SnapTrack, Inc., and Norman Krasner*, civil action no. 3:08-CV-I 992, filed in the United States District Court for the Southern District of California, San Diego Division, and presently pending before the United States Court of Appeals for the Federal Circuit, case nos. 13-1058 and 13-1211.

78.     Professional Fees means a Claim for compensation or reimbursement of expenses earned prior to the Effective Date by a professional retained in either of the Chapter 11 Cases in accordance with the provisions of Sections 327 *et seq.* of the Bankruptcy Code.

79.     Reorganization Lender means NW.

80.     Reorganization Loan means the advances made by NW to the Reorganized Debtor pursuant to the terms of Section 7.3 of the Plan.

81.     Reorganized Debtor means the Gabriel, after the consolidation of assets and estates asset forth in Section 7.2 of the Plan, at all times on or after the Effective Date.

82.     Schedule 6.2.1 means the schedule, if any, to be filed and served pursuant to the provisions of Section 6.2.1 of the Plan.

83.     Schedules means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors in the Chapter 11 Cases, as required by the provisions of Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments or modifications filed with respect thereto.

84.     Secured Claim means a Claim against either of the Debtors secured by a valid, perfected and enforceable lien that is not subject to avoidance under bankruptcy or non-bankruptcy law, equal to the lesser of: (a) the Allowed amount of such Claim; or (b) the value, as determined by the Bankruptcy Court pursuant to Sections 506(a) and 1129(b) of the Bankruptcy Code and Bankruptcy Rule 3012, of: (i) the interest of the holder of such Claim in the property of the Debtors securing such Claim, or (ii) the amount subject to setoff under Section 553 of the Bankruptcy Code.

85.     Secured Creditor means the holder of a Secured Claim.

86.     Secured Noteholders means, collectively, the following persons, who were granted security interests in assets of the Debtor under the terms of Section 7 of the Note Purchase Agreement:  Robert C. Buford; Jack B. Manning; J. Douglas Rippeto; Stephen Moore; Russell Walker; and Clifford Holloway.

87.     Secured Noteholder Claims means all Secured Claims held by or on behalf of any of the Secured Noteholders or by their successors or assigns.

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

MEYERS LAW GROUP, P.C.
LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

88.  **Trace** means Trace Technologies, LLC, a Nevada limited liability company and one of the Debtors herein.

89.  **Trace Chapter 11 Case** means the chapter 11 case of Trace, case no. 13-30341, commenced by the filing of one of the Petitions by Trace on February 14, 2013 and pending in the Bankruptcy Court..

90.  **Triggering Distribution** shall have the meaning ascribed to it in Section 7.14 of the Plan.

91.  **Unsecured Claim** means any Claim that is not a Secured Claim or Priority Claim.

92.  **Wang Hartman** means Wang, Hartmann, Gibbs & Cauley, P.L.C., a law firm.

93.  **Wang Hartman Secured Claim** means all Secured Claims held by or on behalf of Wang Hartman or by its successors or assigns.

94.  **Whittle Category** means each category of claimants entitled to distributions, on a *Pro Rata* basis, under one of the subsections of Section 7.10 of the Plan.

95.  **Whittle Event** means the recovery and/or receipt by the Reorganized Debtor of any amount of funds or other remuneration paid by or on behalf of any person, defendant or third party, or the amount of other value received, including the present fair market value of any business/non-monetary consideration, which amounts relate directly or indirectly to the Whittle Litigation, regardless of whether such payments are made in cash, stock, by payment or assumption of liabilities of the Reorganized Debtor, or otherwise, and regardless of whether such payment is styled as an amount paid in settlement, a royalty, a licensing fee, a purchase price for the sale or transfer of stock or assets of the Reorganized Debtor or otherwise.

96.  **Whittle Event Proceeds** means the aggregate amount of the proceeds or other consideration received by the Reorganized Debtor with respect to a Whittle Event, as and when liquidated into cash or cash equivalents..

97.  **Whittle Litigation** means all claims asserted by Gabriel in the civil action entitled *Gabriel Technologies Corporation, etc. v. Keith Feilmeier, etc., et al.*, doc. No. 1092 No. 798, pending in the District Court of Douglas County, Nebraska.

98.  **Whittle Noteholders** means, collectively, the following persons, who were granted senior payment rights with respect to Whittle Event Proceeds, under the terms of Section 8.1(c) of the Note Purchase Agreement:  Robert C. Buford; David B. Clark; Gary D. Elliston; Robert Lamse; Meridian Investors; Stephen D. Moore; Dan Robison; and Robert F. Vickers.

99.  **Whittle Proceeds Claim** means any Claim held by or on behalf of the Whittle Noteholders or by their successors or assigns, with respect to the Whittle Event Proceeds, pursuant to the terms of Section 8.1(c) of the Note Purchase Agreement.