# EXHIBIT A

MEYERS LAW GROUP, P.C.
MERLE C. MEYERS, ESQ. CA Bar #66849
MICHELE THOMPSON, ESQ. CA Bar #241676
44 Montgomery Street, Suite 1010
San Francisco, CA 94104
Telephone: (415) 362-7500
Facsimile: (415) 362-7515
Email: mmeyers@mlg-pc.com
        mthompson@mlg-pc.com

Counsel for Gabriel Technologies Corporation and
Trace Technologies, LLC, Debtors

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 13-30340 - DM |
| GABRIEL TECHNOLOGIES CORPORATION, et al, | (Case no. 13-30341) |
| | Chapter 11 |
| Debtors. | (Jointly Administered) |
| E.I.N.s 22-3062052;  20-1711149 | |

**[PROPOSED]**
**DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION**
**(April 24, 2013)**

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

# TABLE OF CONTENTS

**I. INTRODUCTION OF PLAN CONFIRMATION PROCESS**................................ 5
    A. Filing of the Plan...................................................................... 5
    B. Right to Vote on the Plan.......................................................... 6
    C. Voting Instructions................................................................... 7
    D. Confirmation Hearing................................................................ 7

**II. INFORMATION REGARDING THE CHAPTER 11 ESTATES**.................... 8
    A. Events Leading to Commencement of Chapter 11 Cases....................... 8
    B. Whittle Litigation..................................................................... 9
    C. 2011 Note Purchase Agreement.................................................. 10

**III. SIGNIFICANT EVENTS DURING THE CHAPTER 11 CASES**................. 10
    A. Filing and Joint Administration.................................................. 11
    B. Representation of the Debtors.................................................... 11
    C. Claims Deadlines.................................................................... 12
    D. Appointment of Official Unsecured Creditors' Committee in the Cases..... 12
    E. Negotiation and Support of the Plan........................................... 12
    F. Qualcomm Motion to Convert.................................................... 13
    G. Assignment of Claims to Committee............................................ 13
    H. Postpetition Loan................................................................... 14
    I. Other Insider Advances............................................................ 15

**IV. ESTATE ASSESTS AND LIABILITIES**.......................................... 15

**V. DECRIPTION OF THE PLAN**........................................................ 18
    A. Treatment of Administrative Expense Costs.................................. 18
    B. Classification and Treatment of Classes of Claims........................... 18
    C. Material Elements of the Plan.................................................... 20
        1. Consolidation and Reorganization........................................ 20
        2. Reorganization Loan...................................................... 21
        3. Prosecution of Qualcomm Litigation.................................... 21
        4. Whittle Litigation.......................................................... 21
        5. Litigation Trust............................................................ 22
        6. Distribution of Qualcomm Event Proceeds.............................. 22
        7. Distribution of Whittle Event Proceeds................................. 24
        8. Distribution of Other Event Proceeds................................... 25
        9. Treatment of Nonclassified Priority Claims............................. 25
        10. Treatment of Unimpaired Classes....................................... 26
        11. Treatment of Impaired Classes......................................... 27
        12. Preservation of Causes of Action....................................... 30
    D. Recommendation as to Plan...................................................... 31

**VI. CONFIRMATION AND CONSUMMATION PROCEDURE**...................... 31
    A. Solicitation of Votes................................................................ 31
    B. The Confirmation Hearing......................................................... 32
    C. Nonconsensual Confirmation..................................................... 32
        a. Secured Creditors........................................................ 33
        b. Unsecured Creditors..................................................... 33
        c. Shareholders............................................................. 33
    D. Consummation....................................................................... 35

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION
28452.DOC

    E. Effect of Confirmation of the Plan........................................................ 35

**VII.    CERTAIN RISK FACTORS TO BE CONSIDERED**................................. 35
    A. Certain Bankruptcy Law
       Considerations........................................................ 35
    B. Certain Practical
       Considerations........................................................ 36

**VIII.   CONCULSION AND RECOMMENDATIONS**...................................... 37



LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

3

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION
28452.DOC

GABRIEL TECHNOLOGIES CORPORATION, a Delaware corporation ("Gabriel"), and TRACE TECHNOLOGIES, LLC, a Nevada limited liability company ("Trace"), the debtors-in-possession herein (collectively, the "Debtors"), hereby present this disclosure statement (the "Disclosure Statement") for the purpose of providing parties in interest with information pertinent to the Debtors' Joint Plan of Reorganization (as it may be amended or modified hereafter, the "Plan") filed on April 24, 2013 by the Debtors.

**ALL CREDITORS AND HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN, THE DEBTORS ARE ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETIES. PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETIES BY REFERENCE TO THE PLAN, OTHER EXHIBITS ANNEXED HERETO, EXHIBITS TO THE PLAN AND OTHER DOCUMENTS REFERENCED AS FILED WITH THE BANKRUPTCY COURT PRIOR TO OR CONCURRENT WITH THE FILING OF THIS DISCLOSURE STATEMENT. ALL CREDITORS AND HOLDERS OF CLAIMS AND INTERESTS IN THE DEBTORS' CASES SHOULD READ CAREFULLY AND CONSIDER FULLY THE "RISK FACTORS" SECTION HEREOF BEFORE VOTING FOR OR AGAINST THE PLAN.**

**THE DEBTORS BELIEVE THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF THE ESTATES HEREIN AND ALL CREDITORS AND SHAREHOLDERS.**

**THE BANKRUPTCY COURT HAS APPROVED THIS DISCLOSURE STATEMENT, WHICH APPROVAL DOES NOT CONSTITUTE A DETERMINATION OF THE MERITS OF THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. THE APPROVAL OF THIS DISCLOSURE STATEMENT MEANS THAT THE BANKRUPTCY COURT HAS FOUND THAT THIS DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION TO PERMIT CREDITORS AND HOLDERS OF CLAIMS AND INTERESTS IN THE DEBTORS' ESTATES TO MAKE REASONABLY INFORMED DECISIONS IN EXERCISING THEIR RIGHT TO VOTE UPON THE PLAN.**

**THIS DISCLOSURE STATEMENT HAS NEITHER BEEN APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "SEC"), ANY STATE SECURITIES COMMISSION OR ANY OTHER REGULATORY AUTHORITY, NOR HAS THE SEC OR SUCH OTHER COMMISSION OR AUTHORITY PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.**

**THE DEBTORS ARE UNABLE TO WARRANT OR REPRESENT THAT ALL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT OR IN EXHIBITS ATTACHED HERETO IS WITHOUT ERROR, ALTHOUGH ALL REASONABLE EFFORTS UNDER THE CIRCUMSTANCES HAVE BEEN MADE TO BE ACCURATE. IN PARTICULAR, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, THE DEBTORS NOTE THAT THE ASSUMPTIONS AND PROJECTIONS REFERENCED**

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION
28452.DOC

HEREIN REGARDING FUTURE RESULTS, REVENUES AND INCOME OF THE DEBTORS' ESTATES, POSSIBLE OUTCOMES OF PENDING LITIGATION, AND THE TIMING AND FEASIBILITY OF DISTRIBUTIONS TO CREDITORS AND SHAREHOLDERS, ARE ONLY PREDICTIONS OF FUTURE EVENTS, AND THEREFORE THERE CAN BE NO ASSURANCES THAT THE ASSUMPTIONS WILL IN FACT MATERIALIZE OR THAT THE PROJECTED EVENTS WILL IN FACT OCCUR AS PREDICTED.

## I.  INTRODUCTION OF PLAN CONFIRMATION PROCESS

**A.  Filing of the Plan**

The Debtors have filed the Plan and this Disclosure Statement with the Bankruptcy Court pursuant to the provisions of Section 1125 of the Bankruptcy Code, for distribution to holders of Claims[1] against, and Interests in, the assets of the Debtors, in connection with (i) the solicitation of acceptances of the Plan, and (ii) a hearing to consider confirmation of the Plan (the "Confirmation Hearing") to be scheduled by the Bankruptcy Court.

Attached as exhibits to this Disclosure Statement are copies of the following:

- The Plan (**Exhibit "A"**);
- Illustrations of Possible Distributions of Qualcomm Event Proceeds (**Exhibit "B"**); and
- The order of the Bankruptcy Court approving this Disclosure Statement and establishing voting and tabulation procedures (**Exhibit "C"**).

Also enclosed with this Disclosure Statement is a ballot (the "Ballot") for the acceptance or rejection of the Plan, for use by those holders of Claims and Interests that are entitled to vote to accept or reject the Plan.

After notice and a hearing, the Bankruptcy Court has approved this Disclosure Statement as containing adequate information of a kind and in sufficient detail to enable hypothetical, reasonable investors typical of the Debtors' creditors and interest holders to make an informed judgment whether to accept or reject the Plan.  Each holder of a Claim or Interest that is entitled to vote to accept or reject the Plan should read this Disclosure Statement and the Plan in their entireties before voting on the Plan.

///

---

[1] All capitalized terms not otherwise defined herein are intended to have the meanings ascribed to them in the Plan.

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

**B.** **Right to Vote on the Plan**

Pursuant to the provisions of the Bankruptcy Code, only holders of allowed claims and interests in classes that are impaired under the terms and provisions of a chapter 11 plan are entitled to vote to accept or reject that plan. Holders of Allowed Claims in classes of claims that are unimpaired under the terms and provisions of a chapter 11 plan are conclusively presumed to have accepted the Plan and therefore are not entitled to vote with respect to that plan. Holders of Claims within Class A of the Plan are unimpaired, are conclusively presumed to have accepted the Plan, and therefore do not have the right to vote on the Plan. Holders of Claims and Interests in all other Classes are impaired and therefore are entitled to vote to accept or reject the Plan.

The Bankruptcy Code defines "acceptance" of a plan by a class of claims as acceptance by creditors in that class that hold at least two-thirds in dollar amount, and more than one-half in number, of claims within that class that cast ballots for acceptance or rejection of the plan. For a more complete description of the requirements for confirmation of the Plan, see Section VI, "Confirmation and Consummation Procedure."

If a Class of Claims or Interests rejects the Plan or is deemed to reject the Plan, the Debtors have the right, and do intend, to request confirmation of the Plan pursuant to the "cram-down" provisions of Section 1129(b) of the Bankruptcy Code. Section 1129(b) permits the confirmation of a plan notwithstanding the non-acceptance of such plan by one or more impaired classes of claims or interests if the proponent thereof complies with the provisions of that section. Under that section, a plan may be confirmed by a bankruptcy court if it does not "discriminate unfairly" and is "fair and equitable" with respect to each non-accepting class. For a more detailed description of the requirements for confirmation of a nonconsensual plan, see Section VI(C), "Nonconsensual Confirmation."

The Debtors believe that through the Plan, creditors will obtain a greater recovery upon their claims than the recovery that would be available if the assets of the Debtors were liquidated under chapter 7 of the Bankruptcy Code. Therefore, the Debtors believe that after carefully reviewing the Plan and this Disclosure Statement, including the Exhibits, each holder of an Allowed Claim or an Allowed Interest that is entitled to vote with respect to the Plan should vote to accept the Plan.

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

**C.**   **Voting Instructions**

If you are entitled to vote to accept or reject the Plan, you should use the Ballot that is enclosed for the purpose of voting on the Plan. If you hold a Claim or Interest in more than one Class and you are entitled to vote Claims or Interests in more than one Class, you may submit separate ballots, by making copies of the enclosed Ballot. A separate Ballot must be used for each separate Class of Claims or Interests. Your Ballot(s) must be returned, by facsimile or scan/email (if followed by delivery or mail of original), hand-delivery or U.S. mail to:

> GABRIEL/TRACE JOINT PLAN OF REORGANIZATION
> c/o Meyers Law Group, P.C.
> Attn: Michele Thompson, Esq.
> 44 Montgomery Street, Suite 1010
> San Francisco, CA 94104
> Email: mthompson@mlg-pc.com
> Telephone no. 415.362.7500
> Facsimile no. 415.362.7515

DO NOT RETURN YOUR ORIGINAL NOTES OR SECURITIES WITH YOUR BALLOT. TO BE COUNTED, YOUR BALLOT INDICATING ACCEPTANCE OR REJECTION OF THE PLAN MUST BE **RECEIVED** NO LATER THAN THE TIME AND DATE STATED ON THE BALLOT.

If you are a creditor or interest holder entitled to vote on the Plan and did not receive a Ballot, received a damaged Ballot or lost your Ballot, or if you have any questions concerning the Disclosure Statement, the Plan or the procedures for voting on the Plan, please call Michele Thompson, Esq., one of the Debtors' counsel, at (415) 362-7500, ext. 230.

**D.**   **Confirmation Hearing**

Pursuant to Section 1128 of the Bankruptcy Code, the Confirmation Hearing will be commenced on the date set forth in documents provided with this Disclosure Statement before the Honorable Dennis Montali, United States Bankruptcy Judge, at the United States Bankruptcy Court, Northern District of California, San Francisco Division, 235 Pine Street, 22nd Floor, San Francisco, California. The Bankruptcy Court has directed that objections, if any, to confirmation of the Plan be served and filed so that they are received on or before the deadline stated in such documents, in the

manner described below in Section VI(B), "The Confirmation Hearing." The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for the announcement of the adjournment date made at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.

## II.  INFORMATION REGARDING THE CHAPTER 11 ESTATES

The following information is provided in summary form with respect to the Debtors, their chapter 11 estates, and related topics:

### A.  Events Leading to Commencement of Chapter 11 Cases

Gabriel, founded in 2003, is a publicly traded technology corporation. Through its subsidiary Trace, Gabriel holds intellectual property assets involved in location-based products using global positioning systems. Trace is a Nevada limited liability company, and was created as a joint venture between Loc8.net, also known as Locate Networks, Inc. ("Locate"), and Gabriel. Trace subsequently acquired substantially all of the assets of Locate, including all rights and interests that Locate maintained under a license agreement with SnapTrack, Inc. ("SnapTrack").

On March 2, 2000, Qualcomm Incorporated ("Qualcomm") acquired SnapTrack, which became a wholly owned subsidiary of Qualcomm (the "Qualcomm Acquisition"). The Debtors believe that some of the trade secrets and patents acquired in the Qualcomm Acquisition were derived from, or identical to, intellectual property owned by the Debtors.

On October 24, 2008, the Debtors filed a complaint against Qualcomm, initiating a civil action entitled *Gabriel Technologies Corporation, et.al. v. Qualcomm Incorporated, et. al*., case no. 08CV1992 (the "Qualcomm Litigation") in the United States District Court for the Southern District of California (the "District Court"). The complaint charged Qualcomm, SnapTrack and Norman Krasner, a founding member of SnapTrack, with misappropriating trade secrets, breach of contract, fraud and other claims. In March 2010, the Debtors engaged HHR as their counsel in order to replace the Debtors' original counsel in Qualcomm Litigation. HHR has represented the Debtors in that litigation ever since, on a contingency fee basis, and the Debtors' granted to HHR a lien encumbering the claims asserted in the Qualcomm Litigation to secure payment of fees and costs.

Litigation ensued, and ultimately, the District Court decided the Qualcomm Litigation in

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

favor of the defendants, by granting partial summary judgment on March 13, 2012 and final summary judgment on September 28, 2012 (collectively, the "Qualcomm Judgment"). Additionally, on October 12, 2012, the defendants filed a motion in the District Court seeking reimbursement of attorneys' fees and costs, based on an argument that the complaint was baseless and had been prosecuted in bad faith. The motion sought the award against the Debtors and their counsel, including HHR and the Debtors' local counsel. Prior to the hearing of the motion, HHR reached a confidential settlement with the defendants, and the Debtors were represented in defending against the motion by separate counsel. On February 1, 2013, the District Court entered an order (the "Fee Order") granting the defendants' motion, and awarding to the defendants the amount of $12,401,014.51 as against the Debtors, and the amount of $64,316.50 as against local counsel. In the Fee Order, the District Court found that the complaint had been prosecuted in bad faith and without merit.

The Debtors have filed notices of appeal of the Qualcomm Judgment and the Fee Order. Both appeals are pending in the United States Court of Appeals for the Federal Circuit, due to the intellectual property issues upon which the complaint is based. The Debtors believe that both the Qualcomm Judgment and the Fee Order are manifestly unjust and contrary to applicable law. In the Debtors' view, the District Court erred as a matter of law in numerous respects that will be reviewed on appeal, including without limitation, the District Court's preclusion of meaningful discovery by the Debtors, the District Court's application of State procedural law rather than Federal procedural law, the District Court's misinterpretation of fundamental intellectual property issues and its failure to comply with well-established rules in articulating its legal conclusions. The Debtors believe that their appeals of both the Qualcomm Judgment and the Fee Order are meritorious, compelling and likely to prevail, resulting in reversal and remand to the District Court for further proceedings.

Both appeals initiated by the Debtors are in preliminary or briefing stages before the Federal Circuit Court of Appeals. The Debtors do not anticipate a ruling on those appeals until 2014.

**B.**  **Whittle Litigation**

The Whittle Litigation consists of a civil action entitled *Gabriel Technologies Corp., etc. v. Keith Feilmeier, etc., et al.*, Doc. 1092 No. 798, pending in state court in Omaha, Nebraska, in which

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION
28452.DOC

Gabriel is the plaintiff and the only remaining defendants are the personal representatives of the probate estate of Rick Whittle ("Whittle"). The claims asserted by Gabriel against Whittle arise from prior Gabriel management's issuance to Whittle of 271,860 publicly traded shares of stock of Gabriel in 2004, in apparent discharge of an alleged debt of $27,186 owed to a third party. At the time of the issuance to Whittle, the Debtors believe that the shares had an aggregate value of between $800,000 and $900,000 according to market trading. Gabriel asserts claims against Whittle's probate estate based on unjust enrichment and constructive trust, among other causes of action.

In 2012, Whittle's representatives filed a motion for summary judgment based on the alleged expiration of a statute of limitations. In August 2012, the Court denied the motion, on the basis that the statute of limitations defense raised genuine issues of material fact that must be determined at trial. The action is presently in the discovery stage, with no trial date set. The Debtors cannot estimate the timing or outcome of the civil action at this time.

C.    **2011 Note Purchase Agreement**

As of September 2, 2011, the Debtors and most of their creditors entered into a Note Purchase Agreement (the "Note Purchase Agreement"), pursuant to which Trace granted security interests to North Water and certain other noteholders, and all signing parties agreed upon relative priorities, amounts and distribution rights of noteholders, lenders and other creditors, particularly with respect to any potential monetary recoveries in the Qualcomm Litigation. The agreement allowed the parties to reconcile numerous earlier inconsistencies among notes' terms, and allowed the Debtors to accommodate new obligations to be owed to North Water and other prospective lenders.

Potential distributions under the terms of the Plan are intended to partially replicate the "waterfall" order of priorities contained in the Note Purchase Agreement, albeit not identically. Modifications have been made in order to facilitate the DIP Loan and the Reorganization Loan (as described below), to provide for payment of administrative expenses of the Chapter 11 Cases and implementation of the Plan, and to provide earlier and enhanced prospective distributions to general unsecured creditors, including unsecured noteholders.

III.    **SIGNIFICANT EVENTS DURING THE CHAPTER 11 CASES**

The following is a brief description of some of the major events that have occurred during the

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

10

Chapter 11 Case.

**A.     Filing and Joint Administration**

On February 14, 2013 (the "Petition Date"), the Debtors each commenced a chapter 11 case by filing a voluntary petition for relief under the provisions of chapter 11 of the Bankruptcy Code with the Bankruptcy Court. Each of the Debtors remains in possession of its property and estate, pursuant to the provisions of Sections 1107(a) and 1108 of the Bankruptcy Code, no trustee having been appointed. By order entered on February 25, 2013, this Court granted the Debtors' motions seeking joint administration of their chapter 11 cases.

Since the commencement of the Chapter 11 Cases, the Gabriel and Trace, through their board of directors and board of managers, respectively, have managed the affairs of the Debtors, in consultation with the Committee and the United States Trustee. An immediate effect of the commencement of the Chapter 11 Case was the imposition of the automatic stay under Section 362(a) of the Bankruptcy Code, which, with limited exceptions, enjoins the commencement or continuation of all prepetition litigation filed against the Debtors. This injunction remains in effect unless and until modified or lifted by order of the Bankruptcy Court. The Debtors have used this respite to plan and negotiate a restructuring of their obligations, as described below.

**B.     Representation of the Debtors**

Under applicable provisions of the Bankruptcy Code, the Debtors are entitled to retain needed professionals, subject to approval by the Bankruptcy Court. Those professionals' compensation and reimbursement of costs must be paid from funds of the Debtors' estates and are treated as administrative expenses, unless other arrangements are made with Bankruptcy Court approval. In the Chapter 11 Cases to date, the following professionals have been retained by the Debtors:

- **General Bankruptcy Counsel.** The Debtors have retained the law firm of Meyers Law Group, P.C. ("MLG") as its general bankruptcy counsel. Such retention was approved by the Bankruptcy Court on March 12, 2013. MLG received retainers in the aggregate amount of $140,000 prior to the Petition Date, of which the balance as of the Petition Date was approximately $80,147.20.

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION
28452.DOC

- **Special Litigation Counsel.** The Debtors have retained two law firms as its special litigation counsel:
  - The law firm of Hughes Hubbard & Reed LLC ("HHR") as special litigation counsel to prosecute the appeal of the Qualcomm Judgment, as approved by the Bankruptcy Court on April 15, 2013. HHR's compensation, as well as reimbursement of expenses, is contingent upon recoveries by the Debtors in the Qualcomm Litigation.
  - The law firm of Chapin Fitzgerald LLP ("Chapin") as special litigation counsel to prosecute the appeal of the Fee Order, as [approved] by the Bankruptcy Court on May ___, 2013. Chapin's compensation is based on hourly rates and cannot exceed $75,000.00, all of which will be advanced by North Water (as defined *infra*) under its secured prepetition loan to the Debtors.

**C.   Claims Deadlines**

The Bankruptcy Court established June 10, 2013 (the "Claims Bar Date") as the last date for filing nongovernmental claims in these cases.

**D.   Appointment of Official Unsecured Creditors' Committee in the Cases**

On March 18, 2013, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee"), pursuant to the provisions of Section 1102 of the Bankruptcy Code, to represent the interests of general unsecured creditors of the Debtors. The Committee currently consists of three members, as follows: (1) Gary D. Elliston, of DeHay & Elliston, LLP; (2) DVQ, LLC (through Thomas P. Lawler, Manager); and (3) Robert Lamse. Mr. Lamse is the Chair of the Committee. Pursuant to an authorizing order of the Bankruptcy Court entered on May 9, 2013, the Committee has retained the law firm of Pachulski Stang Ziehl & Jones LLP as its general bankruptcy counsel, which has received a retainer of $20,000.00.

**E.   Negotiation and Support of the Plan**

As soon as practicable following the Petition Date, the Debtors formulated reorganization terms and presented them, in the form of a draft plan, to North Water (the Debtors' primary prepetition secured lender); representative claimants within Classes C1, C2 and C3; HHR; and the

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION
28452.DOC

Committee, leading to negotiation of the proposed plan's terms. Those discussions ultimately led to the final terms of the Plan, which the Debtors then filed on April 24, 2013. Because of those discussions, and modifications made as a result of input from North Water, other secured creditors, HHR and the Committee, it is the Debtors' understanding that the Plan is supported by all such groups, and in particular by North Water and the Committee, and that the Committee believes that the Plan is in the best interests of all unsecured creditors. The Plan is supported by virtually all creditor groups, secured and unsecured alike, other than Qualcomm.

Under the terms of the Plan, the Reorganized Debtor, through consolidation of the two Debtors, restructuring of its financial obligations and new funding to be provided by North Water, will be able to complete, to the extent deemed prudent and appropriate, its prosecution of the Qualcomm Litigation, the Whittle Litigation and any other claims that it holds (other than any claims against insiders, which will be investigated and, if appropriate, prosecuted by the Litigation Trust, as described below), all for the benefit of its creditors and shareholders. In the event that creditors are paid in full, with interest, through recoveries from such litigation and claims, the Reorganized Debtor will then consider resumption of business operations, if feasible and in the best interests of shareholders.

The Debtors believe that through that process, made possible by the restructuring set forth in the Plan, the Reorganized Debtor will be able to maximize recoveries for all holders of Allowed Claims and Allowed Interests.

**F.** **Qualcomm Motion to Convert**

On April 3, 2013, Qualcomm filed a motion seeking either conversion of the Chapter 11 Cases to a chapter 7 liquidation or the appointment of a chapter 11 trustee. In its motion, Qualcomm argued that the Chapter 11 Cases were filed in bad faith, that no reorganization is possible, and that a trustee should be appointed to resolve matters without further prosecution of the Qualcomm Litigation. The motion was opposed by the Debtors, on the basis that the filing of the Chapter 11 Cases was in good faith, for the proper and legitimate purpose of restructuring the Debtors' financial obligations and permitting the Debtors to complete the prosecution of the Qualcomm Litigation and all other pending or prospective claims, for the benefit of creditors and shareholders. Qualcomm's

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

13

motion was also opposed by the Committee.

Underlying much of Qualcomm's motion was its repeated contention that the Qualcomm Litigation was frivolous and utterly meritless, and that continued prosecution of the appeal of the Qualcomm Judgment and the Fee Order was improper and certain to result in failure. The Debtors pointed out the facts and circumstances of the litigation in the District Court, and the many instances in which the District Court had, in the Debtors' view, erred as a matter of law, justifying the appeal. The Debtors argued that the restructuring of the Debtors' financial obligations and continued prosecution of the Qualcomm Litigation were proper objectives of their Chapter 11 Cases, contrary to Qualcomm's contentions.

Qualcomm's motion was heard by the Bankruptcy Court on May 17, 2013. On May____, 2013, the Bankruptcy Court entered an order [sustaining] the Debtor's and the Committee's opposition, and [denying] Qualcomm's motion.

**G.   Assignment of Claims to Committee**

Because allegations have been raised by Qualcomm as to purported claims held by the Debtors against officers and directors of the Debtors, particularly with respect to the prosecution of the Qualcomm Litigation, and in light of the conflict of interest that would be present if the Debtors' officers and directors were to investigate such claims themselves, the Debtors entered into a stipulation with the Committee to assign any such claims to the Committee, for investigation and, to the extent deemed appropriate, prosecution of any such claims. That stipulation was [approved] by the Bankruptcy Court on _____, 2013.

The Debtors are not aware of any valid claims against its officers or directors, each of whom has supported the prosecution of the Qualcomm Litigation upon the advice of counsel. Nonetheless, it is appropriate that any such claims be investigated by an independent party such as the Committee, and the Debtors will therefore defer to the Committee in that regard. Under the terms of the Plan, any prosecution of such claims will be conducted by a Litigation Trust, as described elsewhere herein.

**H.   Postpetition Loan**

[_____

_____ [TO BE COMPLETED] _____

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

14

_____

_____ ]

## I.    Other Insider Advances

The Debtors entered their Chapter 11 Cases with virtually no funds.  In order to allow the Debtors to pay for essential services, such as storage, rent and travel costs, during the pendency of the Chapter 11 Cases, two of the directors and creditors of Gabriel, David Clark and Jack Manning, have advanced personal funds on behalf of the Debtors.  To date, those advances have been in an aggregate amount that is less than $[_____].

## IV.    ESTATE ASSETS AND LIABILITIES

At present, the Debtors' assets consist primarily of claims against third parties, including those stated in the Qualcomm Litigation and the Whittle Litigation, and intellectual property assets involved in the Qualcomm Litigation.  The Debtors are unable to estimate the values of any of those claims or other assets, due to the uncertain outcome of the litigation to which they are integrally related.

The Debtors' liabilities consist of the following, in summary form:

- ■ Postpetition Loan.  [_____
  _____  [TO BE COMPLETED] _____
  _____ ].

- ■ Administrative Claims.  The Debtors estimate that allowed and unpaid administrative expenses to be incurred through the Effective Date will total approximately $600,000 in the aggregate, including fees earned by the Debtors' and the Committees' professionals after the Petition Date, net of retainers.  For purposes herein, the Effective Date is assumed to be September 30, 2013.  The foregoing estimate of administrative expenses may be significantly greater, however, if confirmation of the Plan is contested.

- ■ Secured Claims.  Secured claims consist of the following categories of claims, to the extent secured by assets of the Debtors (the Debtors reserve all rights to challenge the

15

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

amount, validity and relative priority of all security interests or other liens asserted by any Claimant):

- North Water, the Debtors' primary secured lender, was owed in excess of $15,000,000, plus a percentage of certain net proceeds of any Qualcomm Event Proceeds, as of the Petition Date, according to North Water's calculation, payment of which is secured by all assets of Trace.

- Munck Carter, the Debtors' original counsel in the Qualcomm Litigation, is owed a contingent amount equal to 3.999% of any recoveries in the Qualcomm Litigation, and possibly other charges, under the terms of an agreement reached with the Debtors prior to the Petition Date. The claim is alleged to be secured by any recoveries in the Qualcomm Litigation.

- Wang Hartman, the Debtors' local counsel in the Qualcomm Litigation, is owed a contingent amount equal to 1.00% of any recoveries in the Qualcomm Litigation up to $100 million and 0.5% thereafter, and possibly other charges, under the terms of an agreement reached with the Debtors prior to the Petition Date. The claim is alleged to be secured by any recoveries in the Qualcomm Litigation.

- Hughes Hubbard, the Debtors' present lead counsel in the Qualcomm Litigation, is owed a contingent amount equal to 30.0% of any recoveries in the Qualcomm Litigation, and possibly other charges, under the terms of the HHR Retention Agreement entered into with the Debtors in March 2010. The claim is secured by any recoveries in the Qualcomm Litigation.

- Secured Noteholders, consisting of six individuals (including two directors of the Debtors) who were granted security interests in all assets of the Debtors under the terms of Section 7 of the Note Purchase Agreement in 2011, hold secured claims in an aggregate principal amount of $920,000, to the extent of actual advances made thereunder. Under the terms of applicable

MEYERS LAW GROUP, P.C.
LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

16

documentation, those advances are entitled to returns that are multiples of the initial amounts, resulting in aggregate claims of approximately $4,600,000..

- <u>Junior Claims</u>. The following categories of Claims, to the extent Allowed, are entitled to share in the priorities of NW and the Secured Noteholders, by virtue of sharing and subordination arrangements with those Secured Claimants identified in the tiered distributions of the Note Purchase Agreement:

  - <u>David Clark</u>, one of the Debtors' directors, is owed a principal amount of $250,000 as a fee for providing a guarantee of certain obligations of the Debtors (in addition to other unsecured claims held by Mr. Clark). The claim is entitled to share in NW's and the Secured Noteholders' priority distribution under the terms of the Note Purchase Agreement, and is entitled to a multiple of the initial amount, resulting in an aggregate claims in the approximate amount of $1,250,000.

  - <u>Gary Elliston</u>, a member of the Committee, is owed a principal amount of $40,000 as a fee for providing a guarantee of certain bond obligations of the Debtors in the Qualcomm Litigation (in addition to other unsecured claims held by Mr. Elliston). The claim is entitled to share in NW's and the Secured Noteholders' priority distribution under the terms of the Note Purchase Agreement, and is entitled to a multiple of the initial amount, resulting in an aggregate claims in the approximate amount of $200,000.

  - <u>Whittle Noteholders</u>, consisting of eight individuals and entities (including a director of the Debtors and two members of the Committee), are owed a total principal amount of approximately $500,000. North Water and the Secured Noteholders have subordinated their security interests in any recoveries in the Whittle Litigation to payment of the claims of the Whittle Noteholders.

- <u>Priority Claims</u>. The Debtors estimate that there are no significant Priority Claims.

- <u>Uncontested Unsecured Claims</u>. The Debtors estimate that the aggregate principal amount of allowable general unsecured claims, consisting primarily of claims under

17

Case: 13-30340    Doc# 82-1    Filed: 04/24/13    Entered: 04/24/13 18:31:52    Page 18
of 21

promissory notes, is in the approximate principal amount of $12,400,000. In addition, holders of certain of those claims are entitled to multiples of their initial advances, resulting in aggregate claims that are significantly higher. The Debtors have not determined the amount of such aggregate claims to date.

■ <u>Qualcomm Unsecured Claim</u>. Qualcomm asserts a general unsecured claim in the amount of $11,601,014.51, based upon the Fee Order. The Debtors intend to contest the claim and have commenced an appeal of the Fee Order, as described elsewhere herein.

## V.    <u>DESCRIPTION OF THE PLAN</u>

The Plan represents the product of negotiations and agreement among the Debtors, North Water and the Committee, and is supported by all three groups. The Debtors in particular believe that the terms of the Plan are in the best interests of all creditors and shareholders of the Debtors. The following is a summary of the primary features of the Plan.

### A.    <u>Treatment of Administrative Expense Costs</u>

Costs incurred by the Debtors in the administration of the Chapter 11 Cases, consisting primarily of fees and costs owed to counsel or other professionals, will be paid on the latest of: (a) as soon as practicable following the Effective Date, (b) when those costs become due, or (c) at such later date as to which the claimant agrees. In particular, the Plan provides that professionals owed fees on an hourly basis may consent to a delay in payment of all earned fees (net of retainers) until there are recoveries in pending or anticipated litigation, in exchange for which such professionals will be owed their hourly fees and costs plus a contingent amount calculated as 6.5% of any recoveries in the Qualcomm Litigation (up to a cap as described below). The Debtors estimate that the fees and costs owed to hourly-rate professionals as of the Effective Date, net of retainers, will be approximately $600,000. That amount may be significantly greater, however, if confirmation of the Plan is contested.

### B.    <u>Classification and Treatment of Classes of Claims</u>

The Plan designates multiple Classes of Claims and Interests. Those Classes take into account the differing nature and priority of the various kinds of classified Claims and Interests under

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION
28452.DOC

the Bankruptcy Code. The following table briefly summarizes the classification and treatment of all overall Classes of Claims and Interests under the Plan and the general treatment provided on account of those Claims and Interests under the Plan. The information set forth in the following table is a summary only for convenience of reference, and each holder of a Claim or Interest should refer to the Plan for a full understanding of the classification and treatment of Claims Interests provided for under the Plan. The terms of the Plan (and not this Disclosure Statement) shall govern the treatment of Claims asserted against, and Interests held in, the Debtors.

Claims and Interests will receive designated treatment within a Class only to the extent Allowed within that class. The Claim allowance procedure is an ongoing process and the actual amount of Allowed Claims may vary from the estimates.

| CLASS | CLAIMS | SUMMARY OF TREATMENT |
|-------|--------|---------------------|
| Class A | Priority Claims | Paid in full on latest of (a) Effective Date; (b) when due; or (c) when allowed by Final Order |
| Class B1 | NW Secured Claim | Paid in full to the extent of available Qualcomm Event Proceeds, per designated priority categories – see Section V(C)(6) below. |
| Class B2 | Munck Carter Secured Claim | Paid 3.0% of Qualcomm Event Proceeds, per designated priority category – see Section V(C)(6) below. |
| Class B3 | Wang Hartman Secured Claim | Paid 0.75% of Qualcomm Event Proceeds, per designated priority category – see Section V(C)(6) below. |
| Class C1 | Secured Noteholder Claims | Paid in full to the extent of available Qualcomm Event Proceeds, per designated priority category – see Section V(C)(6) below. |
| Class C2 | Clark Guaranty Fee Claim | Paid in full to the extent of available Qualcomm Event Proceeds, per designated priority category – see Section V(C)(6) below. |
| Class C3 | Elliston Bond Fee Claim | Paid in full to the extent of available Qualcomm Event Proceeds, per designated priority category – see Section V(C)(6) below. |

DRAFT OF APRIL 24, 2013

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION
28452.DOC

| CLASS | CLAIMS | SUMMARY OF TREATMENT |
|-------|--------|----------------------|
| Class D | Whittle Noteholder Claims | Paid in full to the extent of available Whittle Event Proceeds, per designated priority category – see Section V(C)(7) below. |
| Class E1 | General Unsecured Claims (other than Qualcomm Claim) | Paid in full to the extent of available Qualcomm Event Proceeds, Whittle Event Proceeds or Other Event Proceeds, net of distributions to other Classes of Claims and administrative expenses – see Sections V(C)(6), (7) and (8) below. |
| Class E2 | Qualcomm Claim | Paid in full to the extent of available Whittle Event Proceeds or Other Event Proceeds, net of distributions to certain other Classes of Claims and administrative expenses and subject to a sharing mechanism with Classes B1, C1, C2 and C3 – see Sections V(C)(7) and (8) below. |
| Class F | Interests | No voting or distribution rights until all Allowed Claims have been fully satisfied in accordance with the terms of the Plan – see Section V(C)(11) below. |

C.  **Material Elements of the Plan.**

The following is a brief summary of certain of the material provisions of the Plan that allow for the distributions and treatments contemplated by the Plan.  This overview is qualified in its entirety by reference to the provisions of the Plan itself, a copy of which is annexed hereto as **Exhibit "A,"** as well as financial and other information contained elsewhere in this document and in the exhibits attached hereto. In summary form only (each creditor is urged to review the details of treatment of its claim, as set forth in the Plan itself), the various categories of treatments are as follows:

1.  **Consolidation and Reorganization.**

As of the Effective Date, all of the assets of Gabriel and Trace will be substantively consolidated into Gabriel's estate, and Gabriel will become the Reorganized Debtor.  The Debtors believe that the standards for consolidation of their two estates are satisfied, as the Debtors' creditors have historically dealt with the two Debtors as if they were the same, and the affairs and obligations of the two Debtors are so integrally mixed as to make it infeasible to separate them. *In re Bonham,*

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

20
DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION
28452.DOC

Case: 13-30340    Doc# 82-1    Filed: 04/24/13    Entered: 04/24/13 18:31:52    Page 21 of 21