229 F.3d 750, 764 (9th Cir. 2000); *In re Augie/Restivo Baking Co.,* 860 F.2d 515 (2nd Cir. 1988). As a result of such consolidation, all assets of both Debtors will be available for the satisfaction of all Claims against either of the Debtors, in accordance with the terms of the Plan.

**2. Reorganization Loan.**

North Water has agreed to lend to the Reorganized Debtor the Reorganization Loan, consisting of advances of funds necessary in order to satisfy certain obligations under the Plan, including administrative expenses that must be paid following the Effective Date and costs of Plan implementation, provided that any material payments will be approved by North Water as reasonable, and in no event will North Water have any obligation to make advances in excess of the principal amount of $500,000. The Reorganization Loan will be repaid, with interest at the rate of 15% per annum, only to the extent of available Qualcomm Event Proceeds, on a *Pro Rata* basis with repayment of the DIP Loan, as described in Section V(C)(6) below.

**3. Prosecution of Qualcomm Litigation.**

The Plan contemplates the continued prosecution of the Qualcomm Litigation, through the pending appeals to the Federal Circuit Court of Appeals, and, assuming reversal of the Qualcomm Judgment and the Fee Order, through discovery and trial in the underlying civil action. All recoveries from a successful prosecution of the litigation will be distributed, after appropriate reserves and payment of secured claims, to unsecured creditors and shareholders in the manner set forth in Section 7.9 of the Plan, as described in Section V(C)(6) below. There is of course no certainty or guarantee of either a successful appeal of the Qualcomm Judgment or Fee Order, or a successful recovery in the Qualcomm Litigation after a successful appeal. Although the Debtors believe that both appeals are meritorious, descriptions herein of the treatment of any Qualcomm Event Proceeds should not be interpreted as a promise or representation of the likelihood of any such outcome.

**4. Whittle Litigation.**

The Plan contemplates the continued prosecution of the Whittle Litigation, through existing or replacement counsel in Omaha, Nebraska, to the extent deemed prudent and beneficial. The Reorganized Debtor may enter into such retention agreements with such counsel as deemed

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION
28452.DOC

appropriate, in consultation with the Plan Committee. There is of course no certainty or guarantee of a successful recovery in the Whittle Litigation. Descriptions herein of the treatment of any Whittle Event Proceeds should not be interpreted as a promise or representation of the likelihood of any such outcome.

**5.  Litigation Trust.**

As of the Effective Date, all Committee Claims (claims of the Debtors against any insiders or professionals retained by the Debtors prior to the Petition Date) will be assigned to a Litigation Trust, which will be administered by a Litigation Trustee appointed by the Committee with the approval of the Bankruptcy Court. The Litigation Trustee will be charged with the duty of investigating and, if appropriate, prosecuting the Committee Claims, and will have the authority to settle any such claims. Any and all proceeds of such claims will be disbursed by the Reorganized Debtor for the benefit of creditors as Other Event Proceeds, as described elsewhere herein. There is of course no certainty or guarantee of a successful recovery with respect to Committee Claims. Descriptions herein of the treatment of any Other Event Proceeds should not be interpreted as a promise or representation of the likelihood of any such outcome.

**6.  Distribution of Qualcomm Event Proceeds.**

Section 7.9 of the Plan provides for a tiered, or waterfall, distribution of proceeds in the event of a recovery by the Reorganized Debtor in the Qualcomm Litigation, whether by settlement or enforcement of a final judgment in the Reorganized Debtor's favor. For the most part, the distribution replicates the distribution scheme of the Note Purchase Agreement, with the following modifications: (a) treatment of each class of secured creditors has been impaired, primarily by reducing that class's distribution rights, in order to (i) allow for additional funding through the Reorganization Loan, repayment of which will be secured by a senior lien, and (ii) facilitate earlier and improved distributions to general unsecured creditors; (b) North Water and holders of Claims within Classes C1, C2 and C3 have agreed to share distributions to which they would otherwise be solely entitled, with general unsecured creditors, in order to maximize recoveries by unsecured creditors; and (c) certain of the professionals providing services in order to administer the Chapter 11

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION
28452.DOC

Cases and implement the Plan have agreed to defer, and to put at risk, their compensation and cost reimbursements, in exchange for which the Plan provides for contingent bonuses.

In summary form, the distribution priorities under Section 7.9 of the Plan are as follows:

- <u>Reserves</u>: First, prior to any distribution to creditors, the Reorganized Debtor will reserve an amount of funds reasonably anticipated to be needed for ongoing implementation of the Plan.

- <u>DIP Loan and Reorganization Loan</u>: Second, the DIP Loan and the Reorganization Loan will each be paid in full, together with any interest at the rate of 15% per annum.

- <u>Prior Counsel</u>: Third, Munck Carter and Wang Hartman, to the extent that they hold Allowed Secured Claims, will be paid 2.00% and 0.50%, respectively, of the Qualcomm Event Proceeds. After those payments are made in full, the amount of $200,000 shall be paid to North Water as a partial payment upon the Allowed Secured Claim within Class B1.

- <u>North Water and Hourly Professionals</u>: Fourth, North Water and the Hourly Professionals (pre-Effective Date hourly professionals who have agreed to delay payment of fees, and post-Effective Date hourly professionals whose compensation has been deferred pending litigation outcomes) will be paid on a *Pro Rata* basis, up to the following amounts:

  o  Up to $3,100,000 to North Water;

  o  Up to approved hourly fees and costs, plus 6.5% of the Qualcomm Event Proceeds, to pre-Effective Date Hourly Professionals, subject to an overall cap of all payments hereunder equal to five times approved hourly fees and costs (the "Professional Fee Cap");[2] and

  o  Up to approved hourly fees and costs, plus 6.5% of the Qualcomm Event Proceeds, to post-Effective Date Hourly Professionals, subject to the Professional Fee Cap.

---

[2] For example, and only as an illustration, if the fees and expenses subject to this provision equal $400,000 in total, then the Professional Cap will be $2,000,000.

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION
28452.DOC

Case: 13-30340    Doc# 82-2    Filed: 04/24/13    Entered: 04/24/13 18:31:52    Page 3 of 22

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

- <u>Lead Counsel</u>: Fifth, Lead Counsel will be paid their agreed contingency fee equal to 30.0% of the Qualcomm Event Proceeds. Lead Counsel consists of (a) HHR and, in the event of reversal of the Qualcomm Judgment, if HHR does not agree to continue to represent the Reorganized Debtor in the resumed litigation, (b) HHR's successor counsel. In the event of a successor counsel, HHR's share of any contingent fee will be reduced on a quantum meruit basis, as compared to the services of replacement counsel, not to exceed 5.0% of the Qualcomm Event Proceeds. In addition, in the event that the Qualcomm Litigation is resolved prior to the full resumption of active discovery (as defined in the Plan) in the remanded civil action, HHR's contingency fee rate will be reduced from 30.0% to 25.0%.

- <u>North Water, Secured Noteholders, Junior Creditors and Unsecured Creditors</u>: Sixth, North Water, Secured Noteholders, Junior Creditors (Clark Guaranty Fee Claim and Elliston Bond Fee Claim), and Unsecured Creditors will be paid as follows, up to the following amounts, on a *Pro Rata* basis:

  o 35% to North Water, up to full payment of its Allowed Claim;

  o 35% to the Secured Noteholders and the junior creditors, up to the full amount of their Allowed Claims; and

  o 30% to Class E1 claimants (general unsecured creditors), up to the full amount of their Allowed Claims.

To the extent that distributions to one of such subcategories produces full payment prior to full payment in the other subcategories, distributions thereafter will be made to the remaining subcategories in the same relative priorities. For example, and by way of illustration only, if all distributions owing to Secured Noteholders and junior creditors within this priority have been completed, and distributions to North Water and Class E1 claimants have not been completed, then distributions thereafter will be made on an approximate 54% (North Water) to 46% (Class E claimants) basis – the same relative proportion as 35%/30%.

24

7.   **Distribution of Whittle Event Proceeds**.

Any proceeds of a recovery in the Whittle Litigation will be distributed as follows, in accordance with the provisions of Section 7.10 of the Plan:

- First, full payment of all unpaid fees and expenses owing to special counsel retained by the Debtors or the Reorganized Debtor for services rendered after the Petition Date in the prosecution of the Whittle Litigation, and full payment of any attorneys' liens and other liens and security interests encumbering the Whittle Event Proceeds, to the extent enforceable and valid (other than liens held and subordinated by North Water and the Secured Noteholders).

- Second, remaining proceeds shall be paid as follows:

  o   50% shall be paid on a *Pro Rata* basis on account of Whittle Proceeds Claims; and

  o   50% shall be retained by the Reorganized Debtor (i) to pay, or fund a reasonable reserve for, administrative expenses incurred or to be incurred by the Reorganized Debtor or the Plan Committee in the implementation of the Plan, and (ii) to the extent of any balance remaining after such payments or reserves, to distribute on account of Allowed Claims within Classes E1 (general unsecured claims) and E2 (Qualcomm Claim) on a *Pro Rata* basis.

8.   **Distribution of Other Event Proceeds**.

All proceeds of any other litigation recoveries, whether arising out of the Committee Claims or otherwise, net of payment of, or reasonable reserves for, administrative expenses incurred or to be incurred by the Reorganized Debtor or the Plan Committee in the implementation of the Plan, shall be paid as follows:

- First, to pre-Effective Date Hourly Professionals that have agreed to defer compensation, to the extent of allowed hourly fees and cost reimbursements not already paid under other provisions of the Plan; and

- Second, to holders of Allowed Claims within Classes E1 (general unsecured claims) and E2 (Qualcomm Claim), on a *Pro Rata* basis.

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION
28452.DOC

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

9. **Treatment of Nonclassified Priority Claims**. All Nonclassified Priority Claims will be treated in one of the following manners:

- **Administrative Claims.** No Administrative Claim, including without limitation Professional Fees, incurred before the Effective Date, other than ordinary course expenses incurred by the Debtor, shall become an Allowed Claim unless a formal application, motion, request or proof therefor has been filed with the Bankruptcy Court and served upon the Reorganized Debtor and the United States Trustee. All such application, motion or other request must be filed and served within thirty (30) days following the Effective Date, or, in the case of professionals whose compensation is contingent on a litigation event, within thirty (30) days following that litigation event.

- **Payment.** All payments of Allowed administrative expenses and other Allowed nonclassified priority expenses, to the extent required by terms of the Plan, will be paid by the Reorganized Debtor on the latest of the following dates: (a) on, or as soon as practicable after, the Effective Date, or on such later date as to which the holder of the Claim has consented; (b) on the date when such Claim becomes due according to contractual, statutory or other terms applicable thereto. As set forth in Section V(A) above, payment of consenting Hourly Professionals' fees and costs will be deferred until a litigation outcome as described above, in exchange for which such professionals shall receive *Pro Rata* portions of 6.5% of any Qualcomm Event Proceeds, subject to the Professional Fee Cap.

- **Priority Tax Claims.** All payments required by the terms of the Plan on account of Priority Tax Claims shall be made by the Reorganized Debtor no later than the latest of the following: (a) in four (4) equal, annual payments on each anniversary of the Effective Date until paid in full, together with interest at the nonbankruptcy rate applicable; (b) as due according to contractual, statutory or other terms applicable; (c) as soon as practicable after entry of the order allowing such Claim.

10. **Treatment Of Unimpaired Classes.** All Unimpaired Claims will be treated in one of

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

DRAFT OF APRIL 24, 2013

26

the following manners:

- **Class A (Priority Claims Other Than Nonclassified Priority Claims).** Holders of Priority Claims within Class A shall receive full payment on the latest of (a) Effective Date; (b) when due; or (c) when allowed by Final Order. The Debtors do not believe that there are any material Allowable Priority Claims.

11. **Treatment of Impaired Classes.** All Impaired Classes will be treated in one of the following manners:

- **Class B1 (North Water):** North Water's Claim within Class B1 will be paid only from Qualcomm Event Proceeds, in accordance with the priority scheme set forth in Section V(C)(6) above. As set forth in Exhibit "B" attached hereto, based on the assumptions stated therein, which assumptions are not intended as predictions or representations as to likely outcomes, in the event of total Qualcomm Event Proceeds of $50,000,000, aggregate payments on account of Allowed Claims within Class B1 would be approximately $13,860,446.

- **Class B2 (Munck Carter):** Allowed Claims within Class B2 will be paid only from Qualcomm Event Proceeds, in accordance with the priority scheme set forth in Section V(C)(6) above. As set forth in Exhibit "B" attached hereto, based on the assumptions stated therein, which assumptions are not intended as predictions or representations as to likely outcomes, in the event of total Qualcomm Event Proceeds of $50,000,000, aggregate payments on account of Allowed Claims within Class B2 would be approximately $1,000,000.

- **Class B3 (Wang Hartman):** Allowed Claims within Class B3 will be paid only from Qualcomm Event Proceeds, in accordance with the priority scheme set forth in Section V(C)(6) above. As set forth in Exhibit "B" attached hereto, based on the assumptions stated therein, which assumptions are not intended as predictions or representations as to likely outcomes, in the event of total Qualcomm Event Proceeds of $50,000,000, aggregate payments on account of Allowed Claims within Class B3 would be approximately $250,000.

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

- **Class B4 (HHR):** Allowed Claims within Class B4 will be paid only from Qualcomm Event Proceeds, in accordance with the priority scheme set forth in Section V(C)(6) above. As set forth in Exhibit "B" attached hereto, based on the assumptions stated therein, which assumptions are not intended as predictions or representations as to likely outcomes, in the event of total Qualcomm Event Proceeds of $50,000,000, aggregate payments on account of Allowed Claims within Class B4 would be approximately $15,000,000, *provided* that in the event of reversal of the Qualcomm Judgment on appeal, and if HHR declines to continue its representation of the Reorganized Debtor in the resumed Qualcomm Litigation, HHR's Allowed Claim will will be reduced on a quantum meruit basis, as compared to the services of replacement counsel, not to exceed 5.0% of the Qualcomm Event Proceeds; and *provided further*, that if the foregoing assumed outcome of the Qualcomm Litigation occurred prior to resumed active discovery, as defined in the Plan, HHR's reduced 25.0% contingency fee would result in aggregate payments on account of Allowed Claims within Class B4 in the amount of $12,500,000.

- **Class C1 (Secured Noteholders):** Allowed Claims within Class C1 will be paid only from Qualcomm Event Proceeds, in accordance with the priority scheme set forth in Section V(C)(6) above. As set forth in Exhibit "B" attached hereto, based on the assumptions stated therein, which assumptions are not intended as predictions or representations as to likely outcomes, in the event of total Qualcomm Event Proceeds of $50,000,000, aggregate payments on account of Allowed Claims within Class C1, C2 and C3 would be approximately $6,050,000. Within those Classes, distributions will be made to Classes C1, C2 and C3 on a *Pro Rata* basis, based on the amount of Allowed Claims within each such Class, and therefore, the *Pro Rata* share paid to Allowed Claims within Class C1 under the foregoing assumptions would be approximately $4,600,000, or approximately 76% of the total amount.

- **Class C2 (Clark Guaranty Fee):** Allowed Claims within Class C2 will be paid only from Qualcomm Event Proceeds, in accordance with the priority scheme set forth in

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION
28452.DOC

Section V(C)(6) above. As set forth in Exhibit "B" attached hereto, based on the assumptions stated therein, which assumptions are not intended as predictions or representations as to likely outcomes, in the event of total Qualcomm Event Proceeds of $50,000,000, aggregate payments on account of Allowed Claims within Classes C1, C2 and C3 would be $6,050,000. Within those Classes, distributions will be made to Classes C1, C2 and C3 on a *Pro Rata* basis, based on the amount of Allowed Claims within each such Class, and therefore, the *Pro Rata* share paid to Allowed Claims within Class C2 under the foregoing assumptions would be approximately $1,250,000, or approximately 21% of the total amount.

- **Class C3 (Elliston Bond Fee)**: Allowed Claims within Class C3 will be paid only from Qualcomm Event Proceeds, in accordance with the priority scheme set forth in Section V(C)(6) above. As set forth in Exhibit "B" attached hereto, based on the assumptions stated therein, which assumptions are not intended as predictions or representations as to likely outcomes, in the event of total Qualcomm Event Proceeds of $50,000,000, aggregate payments on account of Allowed Claims within Classes C1, C2 and C3 would be $6,050,000. Within those Classes, distributions will be made to Classes C1, C2 and C3 on a *Pro Rata* basis, based on the amount of Allowed Claims within each such Class, and therefore, the *Pro Rata* share paid to Allowed Claims within Class C3 under the foregoing assumptions would be approximately $200,000, or approximately 3% of the total amount.

- **Class D (Whittle Noteholders)**: Allowed Claims within Class D will be paid only from Whittle Event Proceeds, in accordance with the priority scheme set forth in Section V(C)(7) above. As an example, and intended only as an illustration and not a prediction or representation as to a likely outcome, in the event of total Whittle Event Proceeds, after payment of any liens payable under the terms of Section 7.10 of the Plan, of $400,000, aggregate payments on account of Allowed Claims within Class D would be $200,000.

- **Class E1 (General Unsecured Creditors)**: Allowed Claims within Class E1 will be

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION
28452.DOC

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

paid from any litigation recovery, in varying portions and amounts. Assuming for purposes of discussion that recoveries payable on account of Allowed Claims within Class E1 are derived only from Qualcomm Event Proceeds, then as set forth in Exhibit "B" attached hereto, based on the assumptions stated therein, which assumptions are not intended as predictions or representations as to likely outcomes, in the event of total Qualcomm Event Proceeds of $50,000,000, aggregate payments on account of Allowed Claims within Class E1 would be approximately $8,880,554. Assuming that the aggregate, principal amount of all Allowed Claims within Class E1 is approximately $12,400,000, such a distribution would result in an approximate 71.6% recovery on account of the principal amount (not including any multiples owed to Claimants) of each Allowed Claim within the Class on average, but percentage distributions upon particular claims may vary significantly based upon existing inter-creditor agreements as to subordinations, sharing and relative priorities in distributions.

- **Class E2 (Qualcomm Claim):** The Allowed Claim, if any, within Class E2 will be paid from any recovery constituting either Whittle Event Proceeds or Other Event Proceeds, in varying portions and amounts in accordance with the distribution schemes described elsewhere herein. The Debtors cannot estimate the amount of such recovery, if any, given the speculative and uncertain nature of all such recoveries, and in light of the Debtors' intention to object to the Qualcomm Claim.

- **Class E (Shareholders):** Holders of Interests in Gabriel will retain their shares, in the Reorganized Debtor, but shall have no voting or distribution rights unless and until all Allowed Claims have been fully satisfied in accordance with the terms of the Plan. Thereafter, distributions may be made on account of Allowed Interests, at the discretion of the Reorganized Debtor, in a manner consistent with the terms of Sections 8.1(vii), (viii), (ix) and (xi) of the Note Purchase Agreement.

12. **Preservation of Causes of Action.** Under the Plan, each and every claim, right, cause of action, claim for relief and other entitlement held by either of the Debtors as of the Effective Date,

30
DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION
28452.DOC

Case: 13-30340    Doc# 82-2    Filed: 04/24/13    Entered: 04/24/13 18:31:52    Page 10
of 22

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

whether arising under Sections 502, 506, 510, 541, 542, 543, 544, 545, 550, 551, 552 or 553 of the Bankruptcy Code or arising otherwise (including without limitation claims arising prior to the Petition Date), other than those waived or released by the express terms of the Plan or the Confirmation Order, shall be deemed fully preserved. All such claims and causes of action shall be administered by the Reorganized Debtor, or, in the case of Committee Claims, by the Litigation Trust, as described elsewhere herein. Without limiting the foregoing, claims preserved under the Plan, as Committee Claims, include any and all claims against current or former officers and directors of the Debtors, and against any professionals retained by the Debtors for services rendered prior to the Petition Date, including claims, if any, against current or former officers and directors, HHR, Wang Hartman and Munck Carter for the handling of the Qualcomm Litigation and/or the raising of funds in connection therewith.

**D.**     **Recommendation as to Plan**

THE DEBTORS BELIEVE THAT THE PLAN PROVIDES THE GREATEST AND EARLIEST POSSIBLE RECOVERIES TO HOLDERS OF ALL CLAIMS AND INTERESTS, AND THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF ALL HOLDERS OF CLAIMS AND INTERESTS. THE DEBTORS THEREFORE RECOMMEND ACCEPTANCE OF THE PLAN BY ALL PARTIES IN INTEREST.

**VI.     CONFIRMATION AND CONSUMMATION PROCEDURE**

**A.**     **Solicitation of Votes**

In accordance with the provisions of Sections 1126 and 1129 of the Bankruptcy Code, the Claims and Interests in all Classes other than Class A are impaired, and the holders of Claims and Interests in such Classes are entitled to vote to accept or reject the Plan. The holders of Allowed Claims in Classes A are unimpaired, and are conclusively presumed to have accepted the Plan and therefore are not entitled to vote, under Section 1126(f) of the Bankruptcy Code.

As to those classes of Claims entitled to vote to accept or reject the Plan, the Bankruptcy Code defines acceptance of a plan by a class of creditors as acceptance by holders of at least two-thirds in dollar amount, and one-half in number, of the claims of that class that have timely voted to accept or reject a plan. A vote may be disregarded if the Bankruptcy Court determines, after notice

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION
28452.DOC

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

and a hearing, that such acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

Any creditor in an impaired Class (i) whose Claim has been listed by the Debtors in their schedules filed with the Bankruptcy Court (provided that such Claim has not been scheduled as disputed, contingent or unliquidated) or (ii) who filed a proof of claim within any applicable period of limitations, or with leave of the Bankruptcy Court, which Claim is not the subject of an objection, is entitled to vote to accept or reject the Plan.

**B.     The Confirmation Hearing**

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of the Plan.  The Confirmation Hearing with respect to the Plan will be conducted before the Honorable Dennis Montali, at the United States Bankruptcy Court, Northern District of California, San Francisco Division, 235 Pine Street, 22nd Floor, San Francisco, California, on a date and time set forth in documents accompanying this Disclosure Statement.  The Confirmation Hearing may be continued from time to time by the Bankruptcy Court without further notice except for an announcement of the continued date made at the Confirmation Hearing.

Section 1128(b) provides that any party in interest may object to confirmation of a plan.  Any objection to confirmation must be made in writing and filed with the Bankruptcy Court and served upon those parties identified for such service in other documents accompanying this Disclosure Statement.  Objections to confirmation of the Plan are governed by Bankruptcy Rules 3017 and 9014.  **UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

**C.     Nonconsensual Confirmation**

At the Confirmation Hearing, the Bankruptcy Court will confirm the Plan only if all of the requirements of Section 1129 of the Bankruptcy Code are met.  Among the requirements for confirmation of a plan are that the plan is (i) accepted by all impaired classes of claims or, if rejected by an impaired class, that the plan "does not discriminate unfairly" and is "fair and equitable" as to such class, (ii) feasible, and (iii) in the "best interests" of creditors which are impaired under the plan.

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION
28452.DOC

- **Acceptance:**

As stated, Claims and Interests within all Classes other than Class A of the Plan are impaired under the Plan and are entitled to vote to accept or reject the Plan. The Debtor reserves the right to seek nonconsensual confirmation of the Plan under Section 1129(b) of the Bankruptcy Code with respect to any Class of Claims that rejects or is deemed to reject the Plan.

- **Unfair Discrimination and Fair and Equitable Tests**

To obtain nonconsensual confirmation of the Plan, it must be demonstrated to the Bankruptcy Court that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to each impaired, non-accepting Class. The Bankruptcy Code provides a non-exclusive definition of the phrase "fair and equitable." The Bankruptcy Code establishes "cram down" tests for secured creditors and unsecured creditors as follows:

   a. **Secured Creditors.** Either (i) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred cash payments having a present value equal to the amount of its allowed secured claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim, or (iii) the property securing the claim is sold free and clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds is provided in clause (i) or (ii) of this subparagraph.

   b. **Unsecured Creditors.** Either (i) each impaired unsecured creditor receives or retains under the property of value equal to the amount of its allowed claim; or (ii) the holders of claims that are junior to the claims of the dissenting class will not receive or retain any property under the plan.

   c. **Shareholders.** Either (i) each holder of an interest receives or retains under the property of value equal to any fixed liquidation preference or redemption amount; or (ii) the holders of any interests that are junior to the interests of the dissenting class will not receive or retain any property under the plan.

The Debtors believe that the Plan and the treatment of all Classes of Claims and Interests under the Plan satisfy the foregoing requirements for nonconsensual confirmation of the Plan.

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

- **Feasibility**

The Bankruptcy Code requires that confirmation of a plan is not likely to be followed by liquidation or the need for further financial reorganization. Because the Plan provides for a Reorganization Loan and continued prosecution of pending litigation in a feasible manner, the Debtors submit that the Plan satisfies the requirement of feasibility.

- **Best Interests of Creditors**

With respect to each impaired Class of Claims, confirmation of the Plan requires that each holder of a Claim either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the amount such holder would receive or retain if the Debtor's assets were liquidated under chapter 7 of the Bankruptcy Code. To determine what holders of Claims of each impaired Class would receive if the Debtor's assets were liquidated under chapter 7, the Bankruptcy Court must determine the dollar amount that would be generated from that liquidation in the context of a chapter 7 liquidation case. The cash amount which would be available for satisfaction of unsecured claims would consist of the proceeds resulting from the disposition of the unencumbered assets of the estate, augmented by the unencumbered cash held by the chapter 7 trustee at the time of the commencement of the liquidation case. Such cash amount would be reduced by the amount of the costs and expenses of the liquidation and by such additional administrative and priority claims that may result from the use of chapter 7 for the purposes of liquidation.

The Debtors believe that the Plan is likely to produce a greater and prompter recovery for general unsecured creditors than a chapter 7 liquidation of the Estate. Under the Plan, the Reorganized Debtor will be funded by the Reorganization Loan and be able to prosecute pending litigation, particularly the pending appeals of the Qualcomm Judgment and the Fee Order. If those appeals are successful, the Reorganized Debtor will be able to resume prosecution of its claims against Qualcomm and other defendants, and the Debtors believe that such prosecution is the best prospect for recoveries by their creditors, while eliminating the substantial unsecured claim asserted by Qualcomm.

In contrast to this, in the event of a chapter 7 liquidation, it is unlikely that such funding and continued prosecution of the Qualcomm Litigation will be possible. It is the Debtors' expectation

34

that in the event of conversion to chapter 7, the chapter 7 trustee may not seek to pursue the appeal of the Qualcomm Judgment or the Fee Order, particularly without the funding of the Reorganization Loan. In such circumstances, there would be little or no likely recovery by general unsecured creditors.

For this reason, the Debtors believe that the Plan will produce a better and quicker recovery for creditors than chapter 7 liquidation, and that the "best interests" test described above is therefore satisfied by the terms of the Plan.

**D.** **Consummation**

The Plan will be consummated following the Effective Date, which will be a date shortly following entry of the Confirmation Order, absent a stay of implementation.

**E.** **Effect of Confirmation of the Plan**

Confirmation and effectuation of the Plan will bind the Debtors, all creditors and all other parties in interest to the provisions of the confirmed Plan, whether or not the claim of such creditor is impaired under the Plan and whether or not such creditor has accepted the Plan. Nothing contained in the Plan will limit the effect of Confirmation as described in Section 1141 of the Bankruptcy Code.

## VII. CERTAIN RISK FACTORS TO BE CONSIDERED

HOLDERS OF CLAIMS AGAINST THE DEBTORS SHOULD READ AND CONSIDER CAREFULLY THE FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT (AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH AND/OR INCORPORATED BY REFERENCE HEREIN), PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN. THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

**A.** **Certain Bankruptcy Law Considerations**

- **Risk of Non-Confirmation of the Plan**

Although the Debtors believe that the Plan will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will

35

Case: 13-30340    Doc# 82-2    Filed: 04/24/13    Entered: 04/24/13 18:31:52    Page 15 of 22

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

reach the same conclusion. Moreover, there can be no assurance that modifications to the Plan will not be required for confirmation, or that such modifications would not necessitate the resolicitation of votes.

- **Non-Consensual Confirmation**

In the event one or more impaired Classes of Claims or Interests does not accept the Plan, the Bankruptcy Court may nevertheless confirm the Plan at the Debtors' request, if all other conditions for confirmation have been met and at least one impaired Class has accepted the Plan (such acceptance being determined without including the vote of any "insider" in such Class) and, as to each impaired Class that has not accepted the Plan, if the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to the rejecting impaired classes. The Debtors believe that the Plan satisfies those requirements.

- **Tax Attributes of the Plan**

The Debtors will not seek a ruling from the Internal Revenue Service prior to the Effective Date with respect to any of the tax aspects of the Plan. EACH HOLDER OF A CLAIM IS STRONGLY URGED TO CONSULT WITH HIS TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN.

**B.** **Certain Practical Considerations**

- **Estimated Amounts**

The valuations used herein are based on the estimates of the Debtors and their advisors. Those estimates are a reflection of the Debtors' best subjective valuations, but actual values may differ significantly from those estimates. In addition, any estimated outcomes stated herein or in any exhibit or related document, including without limitation Exhibit "B" attached hereto, are not predictions or representations of likely outcomes, but are instead solely presented in order to illustrate the mechanics of Plan terms. It should be noted that the Debtors' primary assets are claims presented in pending or anticipated litigation, and by their nature, those claims are uncertain of value and outcome, and actual results of that litigation may differ significantly (or may produce no recoveries at all) from the outcomes presented in those illustrations.

- **Contested Claims**

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

36

The Reorganized Debtor, or the Litigation Trust with respect to claims related to the Committee Claim, is expected to object to the allowance of all Claims believed to be without merit, in whole or in part. Such objections, however, may not be upheld by the Bankruptcy Court, in which event Allowed Claims may be in excess of the amounts estimated, and the ultimate distributions creditors could be less than expected.

## VIII. CONCLUSION AND RECOMMENDATION

Based upon the foregoing, the Debtors believe that confirmation and implementation of the Plan is in the best interests of all creditors and shareholders, and should therefore be accepted by all classes of creditors and shareholders entitled to vote on the Plan.

DATED: _____ _____, 2013

GABRIEL TECHNOLOGIES CORPORATION        TRACE TECHNOLOGIES, LLC

By: _____         By: _____
    Mark Bandsuch, Chief Executive Officer        Mark Bandsuch, Chief Executive Officer

Approved and submitted by:
MEYERS LAW GROUP, P.C.


By: /s/ _____
    Merle C. Meyers, Esq.
    Attorneys for Debtors

DRAFT OF APRIL 24, 2013

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

EXHIBIT "A"

[Plan of Reorganization – to be added]

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

DRAFT OF APRIL 24, 2013

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION
28452.DOC

# EXHIBIT "B"

## Illustrations of Possible Distributions of Qualcomm Event Proceeds

The following are estimated distribution outcomes based on varying hypothetical settlements with Qualcomm, as directed by the terms of Section 7.9 of the Plan. As a cautionary note, these hypothetical assumptions and results are presented only by way of illustration, and are not predictions or projections of likely outcomes.

In particular, without limiting the generality of the foregoing caution, it is noted that all stated assumptions with respect to the amount of Qualcomm Event Proceeds are intended to be conservative and significantly below the Debtors' expectations. In the Qualcomm Litigation, the Debtors have alleged damages of $1,000,000,000, and intend to seek the full amount of damages in resumed litigation, in the event that the Qualcomm Judgment is overturned as the Debtors anticipate.

Basic Assumptions: The following are basic assumptions that pertain to all hypotheticals:

- DIP Loan, with accrued interest, is $154,000.

- Advances under the Reorganization Loan on and after the Effective Date are $500,000 in principal.

- The Qualcomm Event Proceeds are received by the Reorganized Debtor one year after the Effective Date, following reversal of the Qualcomm Judgment and after resumption of remanded litigation.

- Unpaid fees owing to Hourly Professionals for pre-Effective Date services, deferred pursuant to Section 3.5.2(d) of the Plan, are $600,000.

- Unpaid fees owing to Hourly Professionals for post-Effective Date services, at time of receipt of the Qualcomm Event Proceeds, are $200,000.

- There are no Whittle Event Proceeds or Other Event Proceeds at the time of receipt of the Qualcomm Event Proceeds.

- Reserves for ongoing administrative expenses are set at $200,000 at the time of receipt of the Qualcomm Event Proceeds.

- Classes C1, C2 and C3 claims and *Pro Rata* calculations are based on the following approximations: Class C1 – $4,600,000 (76%); Class C2 -- $1,250,000 (21%); and Class C3 -- $200,000 (3%).

- North Water's Allowed Claim, with all multiples and net recovery shares included, is $18,000,000.

**HYPOTHETICAL "A":** Qualcomm settlement results in payment of **$10,000,000** to the Reorganized Debtor:

| SECTION | CLAIM CATEGORY | DISTRIBUTION | CUMULATIVE TOTAL |
|---|---|---|---|

Case: 13-30340    Doc# 82-2    Filed: 04/24/13    Entered: 04/24/13 18:31:52    Page 19 of 22

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

| SECTION | CLAIM CATEGORY | DISTRIBUTION | CUMULATIVE TOTAL |
|---------|----------------|--------------|------------------|
| 7.9 | Reserve for administrative expenses | 200,000 | 200,000 |
| 7.9.1 | DIP Loan, with interest | 154,000 | 354,000 |
| 7.9.1 | Reorganization Loan, with interest | 575,000 | 929,000 |
| 7.9.2.1(a) | Class B2 (Munck Carter) | 200,000 | 1,129,000 |
| 7.9.2.1(b) | Class B3 (Wang Hartman) | 50,000 | 1,179,000 |
| 7.9.2.2 | Class B1 (North Water) | 230,000 | 1,409,000 |
| 7.9.3.1 | Class B1 (North Water) | 3,100,000 | 4,509,000 |
| 7.9.3.2 | Hourly Professionals (Pre-Confirmation) | 1,250,000 | 5,759,000 |
| 7.9.3.3 | Hourly Professionals (Post-Confirmation) | 850,000 | 6,609,000 |
| 7.9.4 | Lead Counsel (HHR) | 3,000,000 | 9,609,000 |
| 7.9.5.1 | Class B1 (North Water) | 136,850 | 9,745,850 |
| 7.9.5.2 | Classes C1 (Secured Noteholders) | 104,006 | 9,849,856 |
| 7.9.5.2 | Class C2 (Clark Guarantee Fee) | 28,739 | 9,878,595 |
| 7.9.5.2 | Class C3 (Elliston Bond Fee) | 4,105 | 9,882,700 |
| 7.9.5.3 | Class E (General Unsecureds) | 117,300 | 10,000,000 |

**HYPOTHETICAL "B":** Qualcomm settlement results in payment of **$50,000,000** to the Reorganized Debtor:

| SECTION | CLAIM CATEGORY | DISTRIBUTION | CUMULATIVE TOTAL |
|---------|----------------|--------------|------------------|
| 7.9 | Reserve for administrative expenses | 200,000 | 200,000 |
| 7.9.1 | DIP Loan, with interest | 154,000 | 354,000 |
| 7.9.1 | Reorganization Loan, with interest | 575,000 | 929,000 |
| 7.9.2.1(a) | Class B2 (Munck Carter) | 1,000,000 | 1,929,000 |
| 7.9.2.1(b) | Class B3 (Wang Hartman) | 250,000 | 2,179,000 |
| 7.9.2.2 | Class B1 (North Water) | 230,000 | 2,409,000 |
| 7.9.3.1 | Class B1 (North Water) | 3,100,000 | 5,509,000 |
| 7.9.3.2 | Hourly Professionals (Pre-Confirmation) | 3,000,000 | 8,509,000 |
| 7.9.3.3 | Hourly Professionals (Post-Confirmation) | 1,000,000 | 9,509,000 |
| 7.9.4 | Lead Counsel (HHR) | 15,000,000 | 24,509,000 |
| 7.9.5.1 | Class B1 (North Water) | 10,560,446 | 35,069,446 |
| 7.9.5.2 | Classes C1 (Secured Noteholders) | 4,600,000 | 39,669,446 |
| 7.9.5.2 | Class C2 (Clark Guarantee Fee) | 1,250,000 | 40,919,446 |
| 7.9.5.2 | Class C3 (Elliston Bond Fee) | 200,000 | 41,119,446 |
| 7.9.5.3 | Class E (General Unsecureds) | 8,880,554 | 50,000,000 |

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION
28452.DOC

**HYPOTHETICAL "C":** Qualcomm settlement results in payment of **$100,000,000** to the Reorganized Debtor:

| SECTION | CLAIM CATEGORY | DISTRIBUTION | CUMULATIVE TOTAL |
|---|---|---|---|
| 7.9 | Reserve for administrative expenses | 200,000 | 200,000 |
| 7.9.1 | DIP Loan, with interest | 154,000 | 354,000 |
| 7.9.1 | Reorganization Loan, with interest | 575,000 | 929,000 |
| 7.9.2.1(a) | Class B2 (Munck Carter) | 2,000,000 | 2,929,000 |
| 7.9.2.1(b) | Class B3 (Wang Hartman) | 500,000 | 3,429,000 |
| 7.9.2.2 | Class B1 (North Water) | 230,000 | 3,659,000 |
| 7.9.3.1 | Class B1 (North Water) | 3,100,000 | 6,759,000 |
| 7.9.3.2 | Hourly Professionals (Pre-Confirmation) | 3,000,000 | 9,759,000 |
| 7.9.3.3 | Hourly Professionals (Post-Confirmation) | 1,000,000 | 10,759,000 |
| 7.9.4 | Lead Counsel (HHR) | 30,000,000 | 40,759,000 |
| 7.9.5.1 | Class B1 (North Water) | 14,700,000 | 55,459,000 |
| 7.9.5.2 | Classes C1 (Secured Noteholders) | 4,600,000 | 60,459,000 |
| 7.9.5.2 | Class C2 (Clark Guarantee Fee) | 1,250,000 | 61,309,000 |
| 7.9.5.2 | Class C3 (Elliston Bond Fee) | 200,000 | 61,509,000 |
| 7.9.5.3 | Class E (General Unsecureds) | 38,491,000 | 100,000,000 |

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION
28452.DOC

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

1
2
3 **EXHIBIT "C"**
4 [Order Approving Disclosure Statement – to be added]
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

42
DISCLOSURE STATEMENT FOR DEBTORS' JOINT PLAN OF REORGANIZATION
28452.DOC