1  MEYERS LAW GROUP, P.C.
   MERLE C. MEYERS, ESQ. CA Bar #66849
2  MICHELE THOMPSON, ESQ. CA Bar #241676
   44 Montgomery Street, Suite 1010
3  San Francisco, CA  94104
   Telephone: (415) 362-7500
4  Facsimile:  (415) 362-7515

5  Counsel for Gabriel Technologies Corporation
   and Trace Technologies, LLC, Debtors

6

7              IN THE UNITED STATES BANKRUPTCY COURT

8              FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                      SAN FRANCISCO DIVISION

10  In re                          │
                                   │   Case No. 13-30340 - DM
11  GABRIEL TECHNOLOGIES CORP. et al.,│   (Case no. 13-30341)
                                   │
12                                 │   Chapter 11
              Debtors.             │
13                                 │   (Jointly Administered)
                                   │
14                                 │   Date:     May 17, 2013
                                   │   Time:     10:00 a.m.
15                                 │   Court:    Courtroom No. 22
                                   │             235 Pine Street, 22nd Floor
16                                 │             San Francisco, CA
       E.I.N.s 22-3062052;  20-1711149 │   Judge:    Honorable Dennis Montali
17                                 │

18

19

20

21      **DEBTORS' OPPOSITION TO QUALCOMM INCORPORATED'S**
        **MOTION FOR CONVERSION OR APPOINTMENT OF A CHAPTER 11 TRUSTEE**

22

23

24

25

26

27

28

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................1

II.    STATEMENT OF FACTS .................................................................3

III.   DISCUSSION ...................................................................................14

       A.     Section 1112(b), Generally .................................................16

       B.     The Many Presumptions Underlying the Qualcomm Motion Have No Basis at All..........17

            1.     The Chapter 11 Cases Are Being Prosecuted For Valid and Proper Purposes..........17

            2.     Restructuring of the Debtors' Obligations is Both Feasible and Proper...................21

            3.     Qualcomm's Distinction Between Rehabilitation and Reorganization is False. .......23

            4.     The Debtors' Appeal of the Qualcomm Judgments is Meritorious. .........................25

            5.     Any Purported Insider Claims Are Addressed More Favorably Under the Plan.......31

            6.     Qualcomm Has Misrepresented Gabriel's Corporate Status. ...................................32

       C.     There is No Cause Under Section 1112(b)(4)(A). ...........................................................33

            1.     There Are No Continuing Losses or Diminution of Values. .......................................33

            2.     There is a Reasonable Likelihood of Rehabilitation..................................................35

       D.     There is No Cause Under Section 1112(b)(4)(B). ...........................................................37

       E.     Conversion is Not In The Best Interests of Creditors. .....................................................38

       F.     There is No Cause Under Section 1104 For Appointment of Chapter 11 Trustee. ...........39

IV.   CONCLUSION...................................................................................43

LAW OFFICES

**MEYERS LAW GROUP, P. C.**

44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

i

LAW OFFICES
**MEYERS LAW GROUP, P. C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

# TABLE OF AUTHORITIES

**Federal Cases**

*C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1352-53 (Fed. Cir. 1998) ......................30

*Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1156 (9th Cir. 2001) .............................26

*Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc.*, No. S-06-053, 2007 WL 273949, at *2
(E.D.Cal. Jan. 29, 2007)..................................................................................................28

*Gemmy Ind. Corp. v. Chrisha Creations Ltd.*, 452 F.3d 1353, 1359 (Fed. Cir. 2006) .........27

*Hanna v. Plumer*, 380 U.S. 460, 473-74 (1965) ................................................................28

*High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630, 638 (9th Cir. 2004) ........................26

*In re 4C Solutions, Inc.*, 289 B.R. 354, 364 (Bankr. C.D.Ill. 2003). .................................22

*In re All American of Ashburn, Inc.*, 40 B.R. 104 (Bankr. N.D.Ga. 1984)....................16, 33

*In re American Telecom Corp.*, 304 B.R. 867 (Bankr. N.D.Ill. 2004) .................................19

*In re Bayou Group, LLC*, 564 F.3d 541, fn 3 (2nd Cir. 2009) .............................................42

*In re Briggs-Cockerham, L.L.C.*, 2010 WL 4866874 (Bankr. N.D. Tex. November 23, 2010)...........37

*In re Cardinal Indus., Inc.*, 109 B.R. 755, 765 (Bankr. S.D.Ohio 1990)............................40

*In re Clause Enterprises of Ft. Myers, Ltd.*, 150 B.R. 476 (Bankr. M.D.Fla. 1993) ............22

*In re Economy Cab & Tool Co.*, 44 B.R. 721 (Bankr. D.Minn. 1984) ..................................22

*In re First Assured Warranty Corp.*, 383 B.R. 502, 544 (Bankr. D.Colo. 2008) .................37

*In re First Lewis Road Apartments, Inc.*, 11 B.R. 575, 576 (Bankr.E.D.Va. 1981) .............34

*In re Fox*, 232 B.R. 229, 237 (Bankr. D.Kan. 1999) .........................................................22

*In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 561 (Bankr. M.D.Pa. 2007)............16

*In re G-I Holdings, Inc.* 295 B.R. 502 (D.N.J. 2003) ...................................................41, 43

*In re Great American Pyramid Joint Venture*, 144 B.R. 780,790 (Bankr. W.D. Tenn. 1992).............16

*In re Integrated Pet Foods, Inc.*, 2004 WL 2252119 (Bankr. E.D.Pa. September 17, 2004).........20, 21

*In re Intercat, Inc.*, 247 B.R. 911, 920 (Bankr. S.D. Ga. 2000) ........................................40

*In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 167 (Bankr. S.D.N.Y. 1990)...........................40

*In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 167 (Bankr.S.D.N.Y.1990).............................40

*In re Keeley & Grabanski Land P'ship*, 2011 WL 5505396 (Bankr. D.N.D. October 11, 2011).........37

*In re Landmark Atl. Hess Farm, LLC*, 448 B.R. 707. 715 (Bankr.D.Md. 2011)............24, 25

*In re MacGibbon,* 2006 WL 6810935 (9th Cir. B.A.P. 2006) ...........................................18

*In re Madison Management Group, Inc*, 137 B.R. 275, 280 (Bankr. N.D. Ill. 1992) ...........40

*In re Marshall*, 298 B.R. 670, 683-684 (Bankr. C.D.CA 2003) .........................................18

*In re Microwave Products if America, Inc.*, 102 B.R. 666, 670 (Bankr. W.D. Tenn.1989)...............40

*In re Original IFPC Shareholders*, 317 B.R. 738 (Bankr. N.D. Ill. 2004).........................36

Case: 13-30340    Doc# 90    Filed: 05/03/13    Entered: 05/03/13 16:40:32    Page 3 of 48

*In re Powell Bros. Ice Co.*, 37 B.R. 104 (Bankr.Kan. 1984) ................................................16, 33

*In re Premier General Holdings, Ltd.*, 427 B.R. 592, 601 (Bankr. W.D. Tex. 2010) ...................17, 40

*In re Sharon Steel Corp.*, 871 F.2d 1217, 1225 (3rd Cir. 1989) ..............................................40

*In re Smart World*, 423 F.3d 166, 176 (2nd Cir. 2005).................................................17, 40

*In re The 1031 Tax Group, LLC*, 374 B.R. 78, 86 (Bankr.S.D.N.Y. 2007).................................42

*In re W.R. Grace & Co.*, 285 B.R. 148, 158 (Bankr. Del. 2002).........................................41

*In the Matter of Imperial Heights Apartments, Ltd.*, 18 B.R. 858 (Bankr. S.D.Ohio 1982) ...............20

*Langman Fabrics v. Graff Californiawear, Inc.*, 160 F.3d 106, 112-113 (2nd Cir. 1998)...................27

*Loop Corp. v. United States Trustee*, 379 F.3d 511, 515-516 (8th Cir. 2004) ..............................24

*Nelson v. City of Davis*, 571 F.3d. 924, 927 (9th Cir. 2009) .............................................26

*Proven Methods Seminars, LLC v. Am. Grants & Affordable Hous. Inst.*, S-07-1588, 2008 WL
282374, at *3 (E.D.Cal. Jan. 31, 2008)................................................................28

*Qualcomm, Inc. v. Broadcom Corp.*, No. 05-CV-1958, 2008 WL 66932, at *17 (S.D.Cal. January 7,
2008) .................................................................................................30

*Shady Grove Orthopedic Assocs. V. Allstate Ins. Co.*, 559 U.S. 393, 130 S.Ct. 1431, 1437 (2010)....28

*Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998-99 (9th Cir. 2009).................................27

**State Cases**

*Advanced Modular Sputtering, Inc. v. Superior Court*, 33 Cal.Rptr.3d 901, 907 (Cal.Ct.App. 2005) 31

**Statutes**

11 U.S.C. § 1104................................................................................................39, 40

11 U.S.C. § 1104(a)(1)-(2)...........................................................................................40

11 U.S.C. § 1112(b)..........................................................16, 17, 18, 24, 37, 39, 40

11 U.S.C. § 1112(b)(4)(A)..........................................................................................35

11 U.S.C. § 1112(b)(2)................................................................................................17

11 U.S.C. § 1112(b)(4)...........................................................................................16, 17

11 U.S.C. § 1112(b)(4)(A)........................................................16, 25, 33, 34, 37, 38

11 U.S.C. § 1112(b)(4)(B)......................................................................16, 37, 38

11 U.S.C. § 1129.........................................................................................................23

8 Del. Laws § 502(a)...................................................................................................32

8 Del. Laws § 503.......................................................................................................33

8 Del. Laws § 503(c)...................................................................................................33

8 Del. Laws § 510........................................................................................................33

Cal. Civ. Proc. Code § 2019.210 ......................................................................28, 29

**Rules**

Fed. R. Civ. P. 56(c) ...................................................................................................26

LAW OFFICES

**MEYERS LAW GROUP, P.C.**

44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

**Treatises**

5 Collier on Bankruptcy ¶ 1112.03[i], at 1112–18 (15th ed. 1994)...............................................34

7 Collier on Bankruptcy § 1104.02 (Lawrence King, 15th Ed. 1998)............................................17, 40

7 Collier on Bankruptcy ¶ 1112.04[6] [b] (16th ed. Rev.)............................................................37

*Roger M. Milgrim, Milgrim on Trace Secrets* § 15.01[1][d][i] (Matthew Bender 2006)....................28

LAW OFFICES

**MEYERS LAW GROUP, P.C.**

44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

DEBTORS' OPPOSITION TO QUALCOMM INCORPORATED'S MOTION FOR CONVERSION OR APPOINTMENT OF CHAPTER 11 TRUSTEE
28425.DOC

GABRIEL TECHNOLOGIES CORPORATION ("Gabriel") and TRACE TECHNOLOGIES, LLC ("Trace"), the debtors-in-possession herein (collectively, the "Debtors"), by and through their undersigned counsel, file this memorandum in opposition to the *Qualcomm Incorporated's Motion For Conversion Of, Or In The Alternative Appointment Of A Chapter 11 Trustee, The Debtors' Chapter 11 Bankruptcy Cases* (the "Qualcomm Motion," docket no. 40), filed herein by Qualcomm Incorporated ("Qualcomm") on April 3, 2013. As set forth below, the Qualcomm Motion, an effort to derail the Debtors' reorganization, and thereby doom meritorious appeals adverse to Qualcomm, cannot be supported under applicable law.

## I.    <u>INTRODUCTION</u>

In litigation in the United States District Court in San Diego, California, in which the Debtors asserted substantial trade secret claims and patent co-inventorship claims against Qualcomm, Qualcomm launched a vicious, vituperative campaign to convince the District Court that the Debtors were scoundrels and fraudsters, and to distract the Court from the actual merits of the claims. Qualcomm invoked the misconduct of prior management of the Debtors, and sought to paint current management with the same ugly broad brush, even though the events cited, occurring years ago under prior boards of directors and officers, were completely irrelevant to the claims before the District Court.

Qualcomm's strategy worked well, and its barrage of *ad hominem* attacks led the District Court to rule hastily and improperly on multiple complicated technical aspects of the trade secret and patent claims. To make short shrift of the Debtors, the District Court barred legitimate discovery sought by the Debtors, based on inapplicable and misinterpreted procedural standards; rejected pivotal affidavits under inapplicable doctrines; rejected claims without recognition of critical and genuine issues of fact; judged the credibility of witnesses without a jury or trial; and generally ignored legal precedent and the opinions of highly regarded experts, all in the context of summary judgment motions. All of those rulings will be reviewed on appeal on a *de novo* basis by the Federal Circuit Court of Appeals, with the technical expertise lacking at the District Court. And, in the Debtors' view, all of those rulings and the judgments that resulted, will be overturned.

Qualcomm now seeks to employ the same strategy in the Bankruptcy Court. The bulk of

1

Case: 13-30340    Doc# 90    Filed: 05/03/13    Entered: 05/03/13 16:40:32    Page 6 of 48

LAW OFFICES
**MEYERS LAW GROUP, P. C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

Qualcomm's conversion motion is devoted to the same misconduct of former officers and directors of the Debtors, none of which has any bearing on the trade secret and patent claims in the District Court or the prospects for success of these chapter 11 cases. All of the events upon which Qualcomm dwells for most of its brief occurred years ago, prior to the tenure of any of the current management or directors of the Debtors. Yet, Qualcomm retells, and retells again, those stories, laced with hyperbole, as if current, trying to distract another Court from the real issues of the case.

The reality of the Debtors' chapter 11 cases is far removed from the stale stories told by Qualcomm. In fact, the Debtors have pursued their claims against Qualcomm in good faith and with reasonable business judgment, and the prospects for reversal of the District Court's rulings are substantial, in light of the numerous significant errors made by the District Court and the *de novo* review that will follow. The Debtors, supported by the creditors' committee appointed in these cases and by virtually all other substantial creditor groups other than Qualcomm, have acted responsibly to prosecute their appeals. At the same time, the Debtors have negotiated and filed a consensual (other than with Qualcomm) plan of reorganization under which all creditor groups will consent to impairments and the Debtors' primary lender will advance additional funds, to prosecute the appeals and to facilitate a favorable outcome for unsecured creditors.

The Debtors believe that ultimately, Qualcomm's asserted claim will be disallowed, upon reversal of the District Court's rulings, and that the Debtors' true creditors will recover through a substantial award against Qualcomm. To reach that point, the Debtors have quickly shepherded their cases in the short time since commencement to the point at which they are prepared to propose a restructuring of their complicated debts on a consensual basis, as reflected in the reorganization plan recently filed. There is simply no need for a trustee, much less conversion to chapter 7, in a case with this level of consensus and progress so early in its administration.

Ironically, Qualcomm bases much of its motion on the supposed need to have a trustee investigate and pursue claims against insiders, and yet, even though the Debtors do not believe that any such claims have any validity, they have addressed the prospect of such claims fully, by allowing for just such an investigation by the creditors' committee during the chapter 11 cases, and by an independent litigation trustee under the Debtors" proposed reorganization plan. In fact, as will be

2

LAW OFFICES
MEYERS LAW GROUP, P. C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

demonstrated below, if any such claims actually exist, they will have a far better prospect of conferring a benefit upon unsecured creditors under the reorganization plan than in a conversion or with a chapter 11 trustee.

Qualcomm seeks conversion or the appointment of a chapter 11 trustee, but it is obvious that its real objective is to terminate the Debtors' appeal and end its litigation risk. Qualcomm's aggressive tactics put the lie to its pronouncement that defeat of the Debtors' appeals is "virtually certain" – if so, why does Qualcomm fight so hard to short-circuit those appeals? Qualcomm argues from a purported concern about the best interests of creditors, but the creditors' committee, and virtually all other real creditors, believe that the Debtors should be allowed to proceed with their reorganization plan. The Qualcomm Motion should be denied accordingly.

## II.  STATEMENT OF FACTS

The following facts are established by the record of the Court and the declarations of Byron Nelson ("the Nelson Declaration"), Mark Bandsuch (the "Bandsuch Declaration"), Jon Piurko (the "Piurko Declaration") and Merle Meyers (the "Meyers Declaration") filed concurrently herewith:

### A.  Debtors and Their Bankruptcy Cases, Generally

1.  On February 14, 2013 (the "Petition Date"), the Debtors each commenced a chapter 11 case by filing a voluntary petition for relief under the provisions of chapter 11 of the Bankruptcy Code with the Clerk of this Court. Trace, a Nevada limited liability company, is the wholly owned subsidiary of Gabriel, a Delaware corporation.

2.  Each of the Debtors remains in possession of its property and estate, pursuant to the provisions of Sections 1107(a) and 1108 of the Bankruptcy Code, no trustee having been appointed. By order entered on February 25, 2013, this Court granted the Debtors' motions seeking joint administration of their chapter 11 cases.

3.  Immediately prior to the Petition Date, George Tingo, Jr., then the President and Chief Executive Officer of each of the Debtors, resigned, in order to permit a change in management and a fresh look at the direction of the companies. Byron Nelson was then appointed as the Interim Chief Executive Officer of both Debtors, pending the appointment of a permanent Chief Executive Officer. On March 6, 2013, the board of each of the Debtors appointed Mark Bandsuch as the permanent

LAW OFFICES
**MEYERS LAW GROUP, P. C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

DEBTORS' OPPOSITION TO QUALCOMM INCORPORATED'S MOTION FOR CONVERSION OR APPOINTMENT OF CHAPTER 11 TRUSTEE
28425.DOC

Case: 13-50340    Doc# 90    Filed: 05/03/13    Entered: 05/03/13 16:40:32    Page 8 of 48

MEYERS LAW GROUP, P. C.
LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

Chief Executive Officer, and Mr. Nelson became the President of each of the Debtors.

4.    Mr. Nelson, a practicing attorney and close associate of David Clark, one of the directors and creditors of the Debtors, provides day-to-day management to the Debtors without pay, as an accommodation to Mr. Clark and other directors.  In that capacity (both as Interim Chief Executive Officer and now as the President), Mr. Nelson has overseen the movement of company files, the storage of records, the accuracy and filing of schedules and statements of financial affairs, and, generally, the day-to-day administrative efforts that are necessary in the normal course of the chapter 11 cases.  Mr. Nelson has not been involved in longer term issues, such as strategic analysis of the chapter 11 cases or review of pending litigation, which matters have been the subject of numerous discussions among the Boards of the Debtors, their counsel and their permanent Chief Executive Officer, Mr. Bandsuch.

5.    Mr. Bandsuch, trained as a lawyer and teaching business law and business ethics at the university level but no longer practicing law, is an ordained Roman Catholic Priest of the Jesuit Order.  Mr. Bandsuch is an associate professor of business law at Loyola Marymount University in Los Angeles, California, and has written and taught extensively regarding business ethics.  His curriculum vita is attached to the Bandsuch Declaration as **Exhibit "A."**

6.    Mr. Bandsuch has served as a director of both Debtors October 2010, and over those years, he has been directly involved in most Board discussions and decisions regarding pending litigation, particularly the litigation brought by the Debtors against Qualcomm Incorporated ("Qualcomm").  Mr. Bandsuch was chosen by the Boards as the permanent Chief Executive Officer for several reasons, including his close familiarity with pending litigation from his years of active service as a director, his legal training and astute analysis that has assisted the Boards in conversations about that litigation, and his financial independence from the Debtors and the other directors.

7.    Mr. Bandsuch's financial independence is unqualified:  Mr. Bandsuch is not a creditor or investor in either of the Debtors or any of the pending litigation, and he has no financial relationship with any of the other directors.  Whereas Mr. Bandsuch has known Mr. Clark for many years, he has no contractual or financial relationship with Mr. Clark, and in fact cannot, given his

4

MEYERS LAW GROUP, P. C.

LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

religious vow of poverty. Mr. Bandsuch does not receive any remuneration for his work as a director or as the Chief Executive Officer, other than a modest stipend received in the past by all directors attending board meetings.

8.    Gabriel's board of directors and Trace's board of managers (collectively, the "Boards") currently consist of the same four members: Dave Clark, Tom Alesio, Jack Manning and Mr. Bandsuch. All four have been directors since October 2010. None of them became a director earlier than April 2009. The Boards meet frequently by telephone in order to conduct business, primarily related to the administration of the Debtors' chapter 11 cases and the pending appeal of the Qualcomm Judgments (as defined below).

9.    The Debtors timely filed their schedules of assets and liabilities and their statements of financial affairs, and have filed their monthly operating reports for the months of February and March, 2013 (docket nos. 75 and 76). The Debtors have also timely paid the quarterly fees due to the United States Trustee for the first quarter of 2013, in the amount of $650. The Debtors' Section 341(a) meeting of creditors has been concluded by the United States Trustee, and the Debtors have supplied the United States Trustee with all requested documentation and information to date.

10.    As demonstrated by the two monthly operating reports filed by the Debtors to date, cash flow, whether positive or negative, is minimal, and there are no other material losses continuing. Cumulatively, through March 31, 2013, the Debtors' cash flow has actually been minimally positive, by $54. Nor have the Debtors suffered material losses on a profit/loss basis, other than the accrual of postpetition attorneys' fees – excluding professional fees, the Debtors' only postpetition losses to date have involved disputed storage charges for its file servers, at the rate of $2,422 per month.

**B.    Claims Against the Debtors**

11.    The aggregate principal amount of claims against the Debtors, excluding the disputed claim of Qualcomm, is in excess of $13,000,000. With the inclusion of non-principal charges owing under contractual terms to claimants, including agreed multiple returns of principal, those claims exceed $40,000,000.

12.    Of those amounts, the primary secured lender to the Debtors prior to the Petition Date was Intellectual Property Fund L.P. 3A ("Northwater"), an equity fund based in Toronto, Canada.

5

MEYERS LAW GROUP, P.C.

LAW OFFICES

44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

Northwater is owed in excess of $15,000,000, including non-principal charges, and asserts an all-encompassing security interest in all of the Debtors' assets, including general intangibles such as claims against Qualcomm and other defendants.

13.     Most other undisputed claims owed by the Debtors arise from more than 70 promissory notes issued from time to time by the Debtors in exchange for advances of funds.  Those notes include both secured notes and unsecured notes.  The secured notes (junior to Northwater's secured claims) are in the aggregate principal balance of $920,000, and the unsecured notes are in an aggregate principal balance in excess of $12,000,000.  Those notes carry various formulae for multiple returns of principal, as well as shares of any recoveries in the pending litigation with Qualcomm.  In addition, many of the unsecured notes are subject to subordination and sharing agreements among each other, creating different priorities of repayment among unsecured debts.

14.     In September 2011, in an effort to coordinate and restructure their varied note obligations, some of which had overlapping or contradictory distribution and priority rights, the Debtors entered into a note purchase agreement (the "2011 Agreement") with Northwater, the noteholders and others.  Under the terms of the 2011 Agreement, the parties restated the Debtors' obligations, granted security interests to identified creditors (as described above), and agreed upon a distribution formula, or "waterfall," for repayment of debts in the event of a recovery of funds in the Qualcomm litigation.  A copy of the 2011 Agreement is attached to the Nelson Declaration as **Exhibit "A."**

15.     As of the Petition Date, the waterfall priorities of the 2011 Agreement were the basis of the relative priorities, amounts and terms of the Debtors' undisputed obligations.

16.     There are also roughly 4,000 beneficial holders of publicly traded shares of Gabriel's stock.  The Debtors believe that those shares will have value, once the present litigation with Qualcomm is concluded.

**C.     Claims Stipulation**

17.     On March 18, 2013, the United States Trustee appointed an official committee of unsecured creditors (the "Committee") pursuant to the provisions of Section 1102 of the Bankruptcy Code.  The Committee retained the law firm of Pachulski Stang Ziehl & Jones LLP as its counsel,

6

LAW OFFICES
MEYERS LAW GROUP, P. C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

1 and Maxim B. Litvak has acted as lead counsel in that representation.  The Committee consists of

2 three members, all of whom hold unsecured promissory notes of which the obligors are one or both

3 of the Debtors.

4      18.    On April 12, 2013, the Debtors and the Committee entered into a *Stipulation*

5 *Appointing Official Committee Of Unsecured Creditors As Estate Representative To (1) Investigate*

6 *And, If Appropriate, Pursue Actions Against Insiders And (2) Bring And Resolve Objections To*

7 *Insider Claims* (the "Claims Stipulation"), pursuant to which any claims against former or current

8 insiders of the Debtors, including officers and directors, were assigned by the Debtors to the

9 Committee for review and, if appropriate, prosecution.  Under the terms of the Claims Stipulation,

10 such assignment will be terminated in the event of the appointment of a trustee or confirmation of a

11 plan.  A copy of the Claims Stipulation is attached to the Meyers Declaration as **Exhibit "A."**

12      19.    In the Qualcomm Motion, Qualcomm argues that substantial claims exist against

13 current or former officers and directors of the Debtors, in connection with their prosecution of

14 litigation against Qualcomm, and that the best interests of the Debtors' estates were not well served

15 by allowing the Debtors' current directors to control the investigation and prosecution of those

16 alleged claims against themselves.  The Claims Stipulation was negotiated with the Committee in part

17 to respond to those allegations.  The Debtors do not believe that any such claims exist, and that, in

18 particular, the prosecution of the Qualcomm litigation was, and continues to be, a reasonable exercise

19 of business judgment by the Debtors' management and boards.  Nonetheless, the Debtors concluded

20 that given the allegations made by Qualcomm against the Debtors' boards, the estates' best interests

21 would be benefited from allowing the Committee, as an independent group of creditors with fiduciary

22 duties to the estates, to determine for themselves the efficacy of Qualcomm's allegations.

23      20.    On May 1, 2013, the Bankruptcy Court entered an order (docket no. 88) approving the

24 Claims Stipulation on a limited interim basis, upon the Committee's motion.  In doing so, the

25 Bankruptcy Court authorized the Committee to act as the Debtors' estates' representative for

26 purposes of asserting a claim against the Debtors' directors'-and-officers'-liability insurers, pending

27 further consideration of the Claims Stipulation following resolution of the Qualcomm Motion.

28

DEBTORS' OPPOSITION TO QUALCOMM INCORPORATED'S MOTION FOR CONVERSION OR APPOINTMENT OF CHAPTER 11 TRUSTEE
28425.DOC

## D. Qualcomm Litigation And Appeals

21.  The Debtors are corporate successors of Locate Networks LLC ("Locate"), a Seattle-area technology startup formed in 1999 to develop a portable, low-power GPS tracking device that would operate over a paging network. In 1999, Locate entered into a license agreement with an entity named SnapTrack, Inc. ("SnapTrack"), which was later acquired by Qualcomm.

22.  The Debtors believe that in the years following entry into the license agreement, SnapTrack and Qualcomm took trade secret information that had been communicated to them by the Debtors in confidence, incorporated that information into products as well as industry standards that Qualcomm was developing, and used the information to apply for patents in the names of SnapTrack's and Qualcomm's own personnel.

23.  Accordingly, on October 24, 2008, the Debtors filed a complaint (as later amended, the "Complaint") against Qualcomm, initiating a civil action entitled *Gabriel Technologies Corporation, et.al. v. Qualcomm Incorporated, et. al.*, case no. 08CV1992 (the "Qualcomm Litigation") in the United States District Court for the Southern District of California (the "District Court"). The Complaint charged Qualcomm, SnapTrack and Norman Krasner, a founding member of SnapTrack (collectively, the "Defendants"), with misappropriating trades secrets, breach of contract, fraud and other claims.

24.  Litigation ensued and in March 2010, the Debtors replaced their original counsel with the law firm of Hughes Hubbard & Reed LLP ("HHR"), which, after its own due diligence and research, agreed to represent the Debtors in the litigation on a contingency basis. HHR is a venerable firm established more than a century ago, with a illustrious history of successful litigation on behalf of a diverse rostrum of clients, as reflected in the firm history found on its website, attached to the Meyers Declaration as **Exhibit "B."** Thus, the firm's willingness to accept a contingent fee arrangement in its prosecution of the Qualcomm Litigation on the Debtors' behalf, was very significant.

25.  The toll of the Qualcomm Litigation upon the Debtors was heavy, as Qualcomm barraged the Debtors with litigation tactics designed to strip the Debtors of their resources and to convince the District Court, through *ad hominem* attacks similar to those employed in the present

Case: 13-30340    Doc# 90    Filed: 05/03/13    Entered: 05/03/13 16:40:32    Page 13 of 48

LAW OFFICES
**MEYERS LAW GROUP, P. C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

LAW OFFICES

MEYERS LAW GROUP, P. C.

44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

1  Qualcomm Motion, that the Debtors were unworthy of any recognition or legitimacy, regardless of

2  the merits of their claims.  By Qualcomm's own account, it spent more than $13,000,000 in

3  defending against the Complaint, even though formal discovery was limited and cut short by the

4  District Court (as discussed below) and the case never progressed to pretrial preparations.

5       26.    Among other tactics, Qualcomm fiercely resisted all efforts by the Debtors to conduct

6  discovery with respect to the trade secrets alleged in the Complaint – discovery designed to uncover

7  Qualcomm's use of the secrets that were at the core of the Complaint.

8       27.    As set forth in the Appellants' Brief (as defined below), Qualcomm's litigation

9  strategies proved successful, bringing the Complaint to an unsuccessful end.  The Appellants' Brief

10  states the following, in summary form:

11       (a)    In a series of orders culminating in an order dated December 12, 2011, the

12  District Court upheld Qualcomm's resistance and denied the Debtors any discovery with

13  regard to trade secrets, on the basis that the Debtors had not identified their claimed trade

14  secrets with sufficient particularity under Section 2019.210 of the California Code of Civil

15  Procedure.  The discovery ruling, a critical blow to the Debtors, was erroneous for several

16  reasons:

17       (i)    First, the District Court improperly applied the California procedural

18       statute, and ignored more liberal Federal procedures that should have governed the

19       decision.

20       (ii)   Second, even if Section 2019.210 had applied, the District Court

21       misinterpreted that statute by ruling that a design for software architecture was

22       inherently too "vague" to be eligible for trade secret protection, despite statutory and

23       caselaw definitions of trade secret subject matter that admit of no such exception.

24       (iii)  Third, the District Court' conclusion that the trade secret claims lacked

25       sufficient particularity disregarded, without basis, the conclusions of four highly-

26       credentialed experts, professors from U.C. Berkeley, Carnegie Mellon, University of

27       Southern California and Washington University at St. Louis, who attested that each of

28       the Debtors' ten claimed trade secrets was technologically well-defined and

9

LAW OFFICES
**MEYERS LAW GROUP, P. C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

1    sufficiently identified to be compared to information known in the field.

2    (b)    On March 13, 2012, the District Court, having denied the Debtors the

3    opportunity to conduct core discovery based on the erroneous rulings above, granted partial

4    summary judgment against all of the Debtors' trade secret claims based on a statute of

5    limitations defense.  The ruling was based on inferences that the Court drew from two lines of

6    an email and a fundamental misunderstanding of a technical presentation made by Qualcomm

7    to which the email referred.  The Court improperly struck all of the Debtors' opposing

8    affidavits, which had sought to explain that the presentation did not actually concern the

9    Debtors' trade secrets, and ruled summarily despite relying on the Court's own inferences

10   from testimony and the Court's judgment as to the credibility of affiants, without the benefit

11   of a trial or jury.

12   (c)    On September 28, 2012, the District Court granted final summary judgment

13   against all of the Debtors' remaining claims, by applying an improper summary judgment

14   standard, under which the Debtors were required to prove their case to the Court by clear and

15   convincing evidence in order to avoid summary judgment.    Without explanation or

16   discussion, the District Court improperly adopted the Defendants' interpretations of the patent

17   claims, which incorporated limitations from the specification fashioned to exclude the

18   Debtors' inventive contributions.  In reaching its judgment, the Court improperly weighed

19   evidence, relied on facts having no relevance to inventorship, and disregarded material issues

20   of fact, all in the context of summary judgment.

21   28.    Additionally, on October 12, 2012, the Defendants filed a motion in the District Court

22   seeking reimbursement of attorneys' fees and costs, based on an argument that the Complaint was

23   baseless and had been prosecuted in bad faith.  On February 1, 2013, the District Court entered an

24   order (the "Fee Order") granting the Defendants' motion, and awarding to the Defendants the amount

25   of $12,401,014.51 as against the Debtors, and the amount of $64,316.50 as against local counsel.  In

26   the Fee Order, the District Court found that the Complaint had been prosecuted in bad faith and

27   without merit.

28   29.    The Debtors have filed notices of appeal of the District Court's discovery and

DEBTORS' OPPOSITION TO QUALCOMM INCORPORATED'S MOTION FOR CONVERSION OR APPOINTMENT OF CHAPTER 11 TRUSTEE
28425.DOC

Case: 13-30340    Doc# 90    Filed: 05/03/13    Entered: 05/03/13 16:40:32    Page 15 of
48

summary judgment rulings (collectively, the "Qualcomm Judgments") and the Fee Order. Both appeals are pending in the United States Court of Appeals for the Federal Circuit (the "Federal Circuit Court"), due to the intellectual property issues upon which the Complaint is based.

30. On May 1, 2013, the Debtors filed their opening brief (the "Appellants' Brief") in support of their appeal from the Qualcomm Judgments. A copy of the Appellants' Brief is attached to the Meyers Declaration as **Exhibit "C."** As set forth in the Appellants' Brief and below, the Debtors believe that the Qualcomm Judgments (and the Fee Order) are manifestly unjust and legally improper, and that all should be overturned on appeal, following the Federal Circuit Court's *de novo* review of the District Court's rulings.

31. As set forth in the Bandsuch Declaration, at paragraph 6, Mr. Bandsuch has made a thorough review of the Qualcomm Litigation, as it pertains to the pending appeals, and based thereon has come to the firm conviction that prosecution of the appeals is in the best interests of the Debtors' creditors. Further, because conversion to chapter 7 or the appointment of a chapter 11 trustee might frustrate the Debtors' appeal efforts, Mr. Bandsuch does not believe that the relief sought in the Qualcomm Motion would be beneficial to the Debtors' creditors or estate.

**E.** **Joint Plan of Reorganization**

32. One of the fundamental purposes of the Debtors' filing of their voluntary petitions, aside from the need to prevent a dismemberment of the their estates through enforcement of the Fee Order, was to facilitate a restructuring of the Debtors' obligations and to create a means to obtain additional funding necessary to prosecute the Debtors' appeals of the Qualcomm Judgments and the Fee Order. Underlying this objective are these critical considerations:

(a) Qualcomm's litigation tactics have successfully stripped the Debtors of the resources necessary to continue the prosecution of the case, and new funding is necessary in order to continue that prosecution, particularly once the pending appeals are determined (presumably in the Debtors' favor);

(b) In order to obtain such new funding, the Debtors must be able to offer to a prospective lender a senior secured position with respect to the Debtors' assets, particularly the claims asserted against Qualcomm;

LAW OFFICES

**MEYERS LAW GROUP, P. C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

11

(c)     Under the 2011 Agreement, both the senior secured position and several tranches of security interests junior thereto have been committed, so that if a new senior security interest is to be granted, existing secured obligations must be restructured; and

(d)     It is important to restructure the Debtors' secured obligations as well to facilitate a more favorable outcome for general unsecured creditors.

33.     With that objective in mind, the Debtors and their counsel spent considerable effort in the two months following the Petition Date in formulating and negotiating a joint plan of reorganization that would be acceptable to all significant creditor constituencies (other than Qualcomm, which seeks conversion rather than reorganization).

34.     Those efforts were successful, resulting in the filing of the *Debtors' Joint Plan of Reorganization* (the "Plan," docket no. 81) on April 24, 2013.  As set forth in the Plan and in the accompanying draft disclosure statement submitted with a notice of submission (docket no. 82), the Plan provides for new funding by Northwater, a restructuring of all of the Debtors' obligations, and a sharing of distribution priorities by secured creditors for the benefit of unsecured creditors.  The Plan is supported by the Committee, Northwater, secured noteholders and HHR, the principal creditor constituencies in the Debtors' cases.

35.     The Plan, through the consensual efforts of each of those constituencies, provides for shared sacrifice among every class of creditors (other than unsecured creditors, including Qualcomm).  In particular, among the significant concessions made by creditor groups in order to facilitate confirmation of the Plan (capitalized terms are as defined in the Plan):

(a)     Northwater has agreed to lend up to $500,000, and at its discretion more, to fund the Debtors' reorganization, through a Reorganization Loan.  The Reorganization Loan will be repaid, if at all, *only through recoveries by the Reorganized Debtor in the Qualcomm Litigation* (Plan, Secs. 7.3, 7.3.5).

(b)     Northwater has agreed to share its priority position under the 2011 Agreement with other creditors, and particularly with general unsecured creditors, in order to enhance any recovery by unsecured creditors in the event of recovery in the Qualcomm Litigation, *and has agreed to forego its lien, and any claim whatsoever, against all assets of the Debtors other*

Case: 13-30340   Doc# 90   Filed: 05/03/13   Entered: 05/03/13 16:40:32   Page 17 of 48

LAW OFFICES
MEYERS LAW GROUP, P. C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

*than any recovery from Qualcomm* (Plan, Secs. 5.1, 7.9.5 and 7.11).

(c) The Debtors' counsel has agreed to defer payment of a portion of its fees in exchange for a success bonus earned only upon a recovery in the Qualcomm Litigation, in order to reduce required funding upon Plan confirmation (Plan, Secs. 3.5.2(d), 7.9.3.2).

(d) HHR, which holds a lien to secure payment of its contingency fee, has agreed to subordinate its lien to liens needed to secure deferred administrative costs, the Reorganization Loan and any postpetition, pre-confirmation loans (Plan, Sec. 7.9.4).

(e) HHR has also agreed to certain reductions of its contingency fee in identified circumstances (Plan, Sec. 5.4).

(f) Secured noteholders have agreed to share their priority position under the 2011 Agreement, like Northwater, with general unsecured creditors (Plan, Sec. 7.9.5).

(g) Northwater and secured noteholders have waived their security interests in all assets of the Reorganized Debtor other than the claims asserted against Qualcomm, in order to enhance any recoveries by general unsecured creditors (Plan, Secs. 5.1, 5.5-5.7, 7.11).

(h) Any claims held by the Debtors against current or former insiders or professionals retained prior to the Petition Date will be assigned to an independent Litigation Trustee, for review and, if appropriate, prosecution, for the benefit of unsecured creditors (Plan, Sec. 7.4).

(i) The Plan preserves all of Qualcomm's rights, and in the event Qualcomm's disputed claim is allowed, the Plan provides for distributions on account of that claim in the same manner as all other general unsecured claims (Plan, Secs. 5.10, 7.10, 7.11).

36. In short, with a general consensus of virtually all creditor constituencies other than Qualcomm, the Plan provides for the restructuring of obligations and new funding needed by the Debtors to complete the appeal of the Qualcomm Judgments and, assuming success in the appeal, to continue prosecution of the underlying litigation against Qualcomm. At the same time, the Plan provides for enhanced recoveries by unsecured creditors (including Qualcomm, if its disputed claim is allowed), through reduced priorities for secured creditors of any Qualcomm recovery, and waiver of secured claims entirely as against all other assets.

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

37.     As set forth in the Piurko Declaration, at paragraphs 5 and 6, Northwater fully supports confirmation of the Plan and has agreed to provide the Reorganization Loan required therein, and Northwater does not believe that either conversion to chapter 7 or the appointment of a chapter 11 trustee would be in the best interests of the Debtors' creditors.  The Committee likewise supports confirmation of the Plan and opposes the Qualcomm Motion, as evidenced by the Committee's statement of position filed concurrently herewith.

38.     The Debtors expect to move promptly toward confirmation of the Plan, once the Qualcomm Motion has been resolved.

**F.     The Qualcomm Motion**

39.     The Qualcomm Motion continues the approach used so successfully by Qualcomm in the District Court – paint a picture of the Debtors as unscrupulous, even criminal, litigation hounds that do not deserve the benefit of due process or legal precedents, and hope that the picture distracts the Court from adjudicating issues fairly.  The strategy will not prevail here.

40.     Whereas much of the Qualcomm Motion is devoted to a mischaracterization of events and allegations concerning the early history of the Debtors, half a decade or more ago, none of that supposed history is at all relevant here.  Not one of the officers or directors named in Qualcomm's parade of alleged villains is associated with the Debtors today, and none of the events described in the early history of the Debtors bears any relevance to the merits of the Debtors' present chapter 11 cases.

41.     More to the point, Qualcomm's repeated allegation that the Debtors have no ability to reorganize is false, as reflected in the Plan that is supported by virtually all parties other than Qualcomm, and Qualcomm's presumption that the Debtors' appeal is meritless on its face is equally false, as demonstrated by the Appellants' Brief that has now been filed.

42.     As confirmed by the Committee's, Northwater's, secured noteholders' and HHR's support of the terms of the Plan, and for the reasons set forth below, the Debtors' reorganization is in the best interests of creditors, and conversion or the appointment of a chapter 11 trustee is not.

## III.  DISCUSSION

To make its case, Qualcomm resorts to four tactics that cannot bear scrutiny:  First,

14

LAW OFFICES
**MEYERS LAW GROUP, P. C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

1   Qualcomm focuses on alleged events and personalities of the early history of the Debtors that, even if

2   true, have no bearing on the present circumstances and management of the Debtors. While it may

3   make for salacious copy, and is apparently intended to induce unfair inferences about the current

4   chapter 11 cases, the foibles and misconduct of prior management of the Debtors are completely

5   irrelevant in assessing the benefits and bona fides of current management of the Debtors, or their

6   ability to conduct these chapter 11 cases for the benefit of creditors.

7       Second, Qualcomm engages in bold but unsupportable assumptions regarding the current

8   status of the Debtors' affairs and finances, as well as the merits of the pending appeals in the

9   Qualcomm Litigation. Qualcomm's representations regarding allegedly continuing losses and the

10  Debtors' alleged inability to reorganize are simply false, as demonstrated below. Further,

11  Qualcomm's facile description of the Qualcomm Judgments and the appeal therefrom, would falsely

12  lead the Court to believe that there are no real issues regarding the District Court's summary rulings,

13  and that even the act of filing an appeal from those rulings is in bad faith. As is apparent from a

14  review of the Appellants' Brief and the discussion below, that is far from the case.

15      Third, Qualcomm has grossly overstated, or misstated, the holdings of the decisional

16  authorities upon which it relies. Rather than support Qualcomm's position, most of the cases present

17  far different circumstances that warranted conversion or dismissal, and by way of contrast, they

18  illustrate the merit of the Debtors' chapter 11 cases and the absence of real cause for either

19  conversion or the appointment of a trustee in these cases.

20      Lastly, Qualcomm purports to speak as an unsecured creditor concerned about the best

21  interests of the Debtors' estates, but the contrary is obvious: The proposed treatment of unsecured

22  claims under the Plan is far more favorable than could be achieved under a Court-appointed trustee,

23  even with respect to the supposed insider claims on which Qualcomm appears so focused.

24  Qualcomm's best-interests smoke screen is belied by Qualcomm's insistence on a trustee process that

25  will not achieve as much as the Plan offers to unsecured creditors, as discussed below.

26      Qualcomm's only real concern is to preserve dubious summary rulings by the District Court,

27  by quashing the Debtors' appeal. Qualcomm presumes, perhaps correctly, that an appointed trustee,

28  without the resources and ability to restructure provided by the Debtors' plan of reorganization,

would have no alternative but to withdraw the appeal and allow the Qualcomm Judgments to stand, unchallenged. Far more credible is the position of the Committee, whose members have a statutorily mandated fiduciary duty to general unsecured creditors of these estates. Unlike Qualcomm, the Committee supports confirmation of the Plan, and opposes Qualcomm's motion, based on its far more objective view of the best interests of the estates herein.

Once these tactics are addressed and refuted, it is apparent that the Qualcomm Motion is without merit and should be denied.

**A.    Section 1112(b), Generally**

Under the provisions of Section 1112(b) of the Bankruptcy Code, a movant has the initial burden of establishing cause for conversion. *In re Gateway Access Solutions, Inc.*, 374 B.R. 556, 561 (Bankr. M.D.Pa. 2007). Whether "cause" exists "for a conversion or dismissal of a chapter 11 case under section 1112(b) is subject to judicial discretion under the particular circumstances of each case." *In re Great American Pyramid Joint Venture,* 144 B.R. 780,790 (Bankr. W.D. Tenn. 1992).

In order to carry its burden, Qualcomm must demonstrate that cause exists for conversion or the appointment of a trustee. Section 1112(b)(4) provides a list of non-exclusive factors that constitute "cause," and Qualcomm has based its motion on two such factors: alleged substantial and continuing losses to the estate in conjunction with the absence of a reasonable likelihood for rehabilitation, pursuant to 11 U.S.C. § 1112(b)(4)(A); and alleged gross mismanagement of the estate, pursuant to 11 U.S.C. § 1112(b)(4)(B). As set forth below, neither alleged cause exists here.

It is important to note that conversion or the appointment of a chapter 11 trustee under Section 1112(b)(4)(A), as alleged by Qualcomm, depends on a dual showing, of _both_ continuing loss to or diminution of the estate _and_ absence of a reasonable likelihood of rehabilitation. The requirement is in the conjunctive, and it is the burden of the movant to prove both of these elements. See, e.g., *In re All American of Ashburn, Inc.*, 40 B.R. 104 (Bankr. N.D.Ga. 1984); *In re Powell Bros. Ice Co.*, 37 B.R. 104 (Bankr.Kan. 1984). Qualcomm cannot support either required finding here, much less both.

It is also important to note that, pursuant to Section 1112(b)(2), even if cause is shown under Section 1112(b)(4), the Debtors' cases still cannot be converted to chapter 7 if the Court finds

16

LAW OFFICES
**MEYERS LAW GROUP, P. C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

specific circumstances that establish that conversion would not be in the best interests of creditors, and if the Debtors can establish that there is a reasonable likelihood of timely confirmation of a reorganization plan and that, if the grounds for conversion include an act or omission of the Debtors, that act or omission is justifiable or will be cured. Here, for the reasons set forth below, conversion would not be in the best interests of creditors, and there are no material acts or omissions of the Debtors that need to be justified or cured.

Finally, it is also important to note that Qualcomm has lumped its argument for the appointment of a chapter 11 trustee into its argument under Section 1112(b), presuming that if cause exists for conversion, cause exists equally for the appointment of a chapter 11 trustee (see Qualcomm Motion, page 31, footnote 19; in fact, the Qualcomm Motion makes virtually no reference at all to Section 1104, which governs the appointment of a chapter 11 trustee). If so, the converse is also true: Absent cause under Section 1112(b) for conversion, no cause for the appointment of a trustee in chapter 11 has been argued or proven.

In fact, absent Section 1112(b) cause, there is normally a strong presumption against cause for the extraordinary remedy of appointment of a chapter 11 trustee, as Qualcomm acknowledges (*Id.**, In re Premier General Holdings, Ltd.*, 427 B.R. 592, 601 (Bankr. W.D. Tex. 2010); *In re Smart World*, 423 F.3d 166, 176 (2nd Cir. 2005); see also 7 Collier on Bankruptcy § 1104.02 (Lawrence King, 15th Ed. 1998). Here, that presumption cannot be overcome.

**B.** **The Many Presumptions Underlying the Qualcomm Motion Have No Basis at All.**

The Qualcomm Motion relies upon a number of presumptions and rationales that cannot be supported. Before the requirements of Sections 1104 and 1112(b) can be assessed, therefore, it is necessary to address and refute those presumptions.

**1.** **The Chapter 11 Cases Are Being Prosecuted For Valid and Proper Purposes.**

As a preliminary matter, it is clear, contrary to Qualcomm's arguments, that the Debtors' chapter 11 cases were properly filed and prosecuted. The Debtors' cases were filed for two fundamental purposes: One, to prevent dismemberment by Qualcomm's enforcement of the Fee Order, prior to the Debtors' ability to obtain review on appeal; and two, to restructure the Debtors' obligations in a manner that permits the Debtors to obtain new financing and to continue prosecution

17

ecution

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

17
DEBTORS' OPPOSITION TO QUALCOMM INCORPORATED'S MOTION FOR CONVERSION OR APPOINTMENT OF CHAPTER 11 TRUSTEE
28425.DOC
Case: 13-30340   Doc# 90   Filed: 05/03/13   Entered: 05/03/13 16:40:32   Page 22 of 48

of the appeal and the underlying Qualcomm Litigation. The second of those purposes, manifested by the Plan that has been filed with widespread creditor support, is discussed below. The first purpose, preventing execution of the Fee Order against the Debtors' assets, is discussed here.

It is well established that a debtor acts properly when it files a chapter 11 petition as a substitute for posting an appeal bond to stay enforcement of a judgment, if obtaining and posting such a bond is financially unfeasible and the debtor's ultimate goal is reorganization. *See, e.g., In re Marshall,* 298 B.R. 670, 683-684 (Bankr. C.D.CA 2003) ("*Marshall*") *see also In re MacGibbon,* 2006 WL 6810935 (9th Cir. B.A.P. 2006). As stated by Judge Bufford in the *Marshall*:

> Although case law enumerates specific "causes" for which a case may be dismissed under § 1112(b), the good faith inquiry is essentially directed to two questions: (1) whether the debtor is trying to abuse the bankruptcy process and invoke the automatic stay for improper purposes; and (2) whether the debtor is really in need of reorganization. . . .
>
> Filing a bankruptcy petition with the intent to frustrate creditors does not by itself establish an absence of intent to seek rehabilitation. Indeed, because a major purpose behind our bankruptcy laws is to afford a debtor some breathing room from creditors, it is almost inevitable that creditors will, in some sense, be "frustrated" when their debtor files a bankruptcy petition. In reality, there is a considerable gap between delaying creditors, on the eve of foreclosure, and the concept of abuse of judicial purpose.

*Marshall, supra* at 681.

So it is here: Whereas the filing of the Debtors' chapter 11 petitions did stop any efforts by Qualcomm to execute upon the Fee Order and thereby disrupt the Debtors' ability to prosecute its appeal of the Qualcomm Judgments, that purpose of filing is not a basis for finding bad faith, when it is accompanied by a desire and ability to reorganize under the chapter 11 laws. In particular, a "debtor's showing that a plan of reorganization is ready for confirmation essentially refutes a contention that the case is filed or prosecuted in bad faith." *Marshall, supra* at 681.

In its motion, Qualcomm argues vociferously that the Debtors' case is improper because it concerns, in part, the prosecution of the Qualcomm Litigation. Qualcomm states, without qualification, that "numerous courts" have found that cases such as the Debtors' should not be permitted to use the chapter 11 process (Qualcomm Motion, 2:20-21). Like so many other hyperbolic pronouncements in the Qualcomm Motion, the statement is unsupportable, both in terms of

LAW OFFICES
**MEYERS LAW GROUP, P. C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

DEBTORS' OPPOSITION TO QUALCOMM INCORPORATED'S MOTION FOR CONVERSION OR APPOINTMENT OF CHAPTER 11 TRUSTEE

28425.DOC

MEYERS LAW GROUP, P.C.
LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

1  mischaracterizing the nature of the Debtors' cases and in misrepresenting the holdings of reported

2  decisions.

3       For example, Qualcomm relies heavily on the decision in *In re American Telecom Corp.*, 304

4  B.R. 867 (Bankr. N.D.Ill. 2004) ("*American Telecom*"), suggesting that that decision holds that the

5  filing of the Debtors' chapter 11 cases in order to preserve litigation claims is improper.  But that is

6  not at all the lesson of *American Telecom*.  In that case, the two sole shareholders of the debtor, both

7  of whom were potential co-judgment debtors, filed a chapter 7 petition on behalf of the debtor in

8  order to forestall an alter-ego investigation of themselves.  Inasmuch as the case was under chapter 7,

9  not chapter 11, it was clear to the court that no restructuring or rehabilitation was anticipated, and no

10  fresh-start analysis was needed (*American Telecom, supra* at 869-870).  Most importantly, the court

11  concluded that the "unique circumstances" of the case (*Id.*, at 870) did not even implicate the purpose

12  of a chapter 7 case, to wit, the orderly liquidation and distribution of corporate assets.

13       In particular, the court determined that whether the pending litigation was won or lost would

14  make no difference in the case, because the estate had either no value beyond the judgment lien (if

15  the debtor lost the litigation) or no outside debt (if the debtor won the litigation) – in either event,

16  there was nothing to be adjudicated or distributed in the chapter 7 case.  In such circumstances, where

17  the chapter 7 petition appeared to have been filed primarily to ward off an alter ego action against the

18  principals, the court found there to be no legitimate purpose for chapter 7.

19       Obviously, the Debtors' cases are radically different than the *American Telecom* case, and do

20  not give rise to the same concerns.  These are not chapter 7 liquidations, and reorganization is both

21  feasible and beneficial, as set forth below.  Unlike in *American Telecom*, a fresh-start analysis is in

22  fact implicated in these cases, and the outcome of the Qualcomm Litigation will necessitate the

23  normal workings of the chapter 11 process:  If the Debtors are successful in their appeal and in the

24  underlying civil action, there will be a substantial award recovered against Qualcomm, which will

25  need to be distributed to the Debtors' creditors and shareholders through the Bankruptcy Court's

26  adjudicative process, or through the mechanisms established by the Plan – precisely the process the

27  court found to be unneeded in the *American Telecom* case.  Indeed, by Qualcomm's estimations, even

28  if the Debtors are unsuccessful in their appeal, the Bankruptcy Court process will be needed, to

19

prosecute supposed claims against insiders, according to Qualcomm. Clearly, the *American Telecom* decision is either inapposite to the instant chapter 11 cases, or proves the Debtors' point by way of contrast.

Similarly, Qualcomm relies on the decision in *In the Matter of Imperial Heights Apartments, Ltd.*, 18 B.R. 858 (Bankr. S.D.Ohio 1982) ("*Imperial Heights*"), for the proposition that "a debtor whose substantial asset is contingent litigation cannot be rehabilitated and thus has no proper place as a debtor-in-possession" (Qualcomm Motion, 28:17-20). But that is not at all the holding of the *Imperial Heights* decision. In *Imperial Heights*, the court dismissal was appropriate without determining the merits of complicated, pending litigation because "there is not even an insinuation that capital is available to fund an viable plan of reorganization, nor even to bear typical administrative expenses. Such absence of an economic entity reflects both upon 'the reasonable likelihood of rehabilitation' and the 'inability to effectuate a plan.'" *Imperial Heights, supra* at 864.

Thus, contrary to Qualcomm's representation, the *Imperial Heights* decision did not center on the existence of "contingent litigation" but rather on the debtor's lack of funding, capital and ability to pay administrative expenses. In that central respect, the case differed radically from the Debtors' present chapter 11 cases: The Debtors have in fact presented the Plan, which proposes a restructuring of its complicated and varied debts, with the support of all creditor groups other than Qualcomm, and the Debtors have presented a lending commitment from Northwater to fund the Plan. The very reasons for dismissal in *Imperial Heights* require denial of the Qualcomm Motion here.

Qualcomm tries it again, with the decision in *In re Integrated Pet Foods, Inc.*, 2004 WL 2252119 (Bankr. E.D.Pa. September 17, 2004) ("*Integrated Pet*"), which, according to Qualcomm, holds that "litigation against a major creditor by a debtor in possession should never be the *raison d'etre* for a chapter 11 case" (Qualcomm Motion, 27:6-7). Qualcomm has entirely misstated this holding as well. In *Integrated Pet*, the debtor had attempted <u>*five times*</u> to obtain approval of a disclosure statement, and finally, the court said "enough is enough" (*Integrated Pet, supra* at 9) and refused to allow another chance. The court ordered conversion not because of the pendency of litigation, but because the debtor was incapable of making the necessary disclosures to confirm a plan despite many opportunities. After "one year of [the debtor's] obfuscation" (*Integrated Pet, supra* at

20

LAW OFFICES
**MEYERS LAW GROUP, P. C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

11), it was time to convert:

> Debtor made a strategic decision. Rather than litigate in a non-bankruptcy forum with COSI, it brought its litigation to the bankruptcy court and sought to invoke bankruptcy's prophylactic provisions to limit its exposure in the event of an adverse outcome. However, because it did not play it straight with the court and because its marginally profitable business does not appear to be able to support the litigation and the new reorganization costs that are associated with a bankruptcy case, it has bet the rand and lost.

*Integrated Pet*, *supra* at 12. In short, the *Integrated Pet* case was converted because the debtor had failed to meet the basic requirements for a disclosure statement in five attempts, had misrepresented itself to the court and had exhibited a tenuous ability to finance any reorganization. The pendency of litigation was not the issue: "Had the Debtor as debtor-in-possession been forthright with this Court, the UST and COSI, presumably the end run would have been successful" (*Integrated Pet*, *supra* at 11).

The contrast could not be clearer, when matched up with the Debtors' cases here. The Debtors have not yet had an opportunity to seek confirmation of the Plan, the Plan will be fully funded, and the Debtors have been entirely forthright with the Court. *Integrated Pet* does not stand for the proposition that debtors cannot maintain chapter 11 cases while litigating with a contested creditor; the case does stand for the proposition that debtors must be earnest and honest in their quest for reorganization, and that is most certainly true of the Debtors.

It should be noted that Qualcomm does not suggest that a bankruptcy process is not needed – Qualcomm has not requested dismissal of the chapter 11 cases, but rather conversion. Therefore, the only real question is whether a trustee, under either chapter, is helpful or harmful to this process. Other than false arguments regarding supposed losses and insider claims, both of which are debunked below, Qualcomm has not presented any cogent basis for imposing a trustee in these cases, and in any event, in light of Qualcomm's choice to argue for conversion, it cannot credibly argue that the commencement of the Debtors' bankruptcy cases was improper. Clearly they were not.

## 2.  Restructuring of the Debtors' Obligations is Both Feasible and Proper.

Qualcomm argues that no rehabilitation is possible here, and that conversion is therefore appropriate. There is no basis for that conclusion, however, and in fact it is false. The Debtors intend

Case: 13-30340   Doc# 90   Filed: 05/03/13   Entered: 05/03/13 16:40:32   Page 26 of 48

LAW OFFICES
MEYERS LAW GROUP, P. C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

MEYERS LAW GROUP, P.C.
LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

1  to reorganize, and with the overwhelming support of all creditor groups other than Qualcomm, are

2  well on their way to doing so.

3       First, it should be noted that because the Qualcomm Motion has been filed very early in the

4  Debtors' cases, not even two months after the Petition Date, the burden on Qualcomm to demonstrate

5  a lack of prospect for reorganization is particularly heavy. "The earlier in the Chapter 11 case, the

6  more reluctant the courts are, absent some compelling justification, to abort the statutory

7  confirmation process by ordering conversion or dismissal." *In re 4C Solutions, Inc.*, 289 B.R. 354,

8  364 (Bankr. C.D.Ill. 2003). "[D]enial of access to bankruptcy relief at the initial stages of the

9  proceeding is inherently drastic and should not be employed as an easy alternative to other post-

10  petition creditor remedies." *In re Fox*, 232 B.R. 229, 237 (Bankr. D.Kan. 1999). Here, if there are

11  any doubts regarding the Debtors' ability to reorganize, a heavy burden must be imposed on

12  Qualcomm to prove that they cannot, or else the Debtors should be given adequate time in which to

13  prove that they can.

14       The provisions of chapter 11 are remedial and designed to assist a financially troubled

15  economic entity to achieve rehabilitation. As noted by many courts, very few chapter 11 debtors

16  arrive in the bankruptcy court with "their coffers stuffed with hard currency and with a history of

17  successful and profitable operations." As such, courts have been reluctant in the past either to

18  dismiss or convert a chapter 11 case in its early or embryonic stage. See, e.g., *In re Clause*

19  *Enterprises of Ft. Myers, Ltd.*, 150 B.R. 476 (Bankr. M.D.Fla. 1993); *In re Rentclub, Inc*., 141 B.R.

20  235 (Bankr. M.D.Fla. 1992).

21       "In order to prevail under § 1112(b) in the early stages of a case, the moving party has the

22  burden to prove that the whole scheme is no more than a pipe dream—an utterly hopeless and

23  unrealistic prospect totally devoid of any factual basis to support the debtor's rehabilitation." *In re*

24  *Lykes Bros. S.S. Co., Inc.,* 196 B.R. 586, 595 (Bankr. M.D.Fla. 1996) citing *In re Economy Cab &*

25  *Tool Co.*, 44 B.R. 721 (Bankr. D.Minn. 1984).

26       Second, the Plan that has been filed by the Debtors refutes Qualcomm's argument that no

27  reorganization is possible. The Plan is the product of early and intense negotiations among all

28  creditor groups other than Qualcomm, and has all such groups' support. Yet, it treats Qualcomm

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

1    fairly and equitably – as to all proceeds of any claims of the Debtors other than those asserted against

2    Qualcomm itself, Qualcomm will share equally, on a *pro rata* basis, with all other unsecured

3    creditors, and no junior class (shareholders, in this case) will receive any distribution until any

4    allowed claim held by Qualcomm has been paid in full.

5        Meanwhile, the Plan facilitates the Debtors' continued prosecution of the Qualcomm

6    Litigation. Northwater has agreed to provide additional funding for the prosecution of the appeal of

7    the Qualcomm Judgments, and beyond, and all other significant secured creditors have agreed to

8    "move over" in the distribution scheme to allow for that additional funding. At the same time, all

9    secured and senior unsecured creditors, including Northwater, have agreed to share their distribution

10   priorities with general unsecured creditors in order to allow for a more favorable return on unsecured

11   claims. But for the inevitable cram-down dispute with Qualcomm, which would rather have the

12   Debtors fold their tent and withdraw their appeal than reorganize, the Plan is a consensual solution to

13   the Debtors' current dilemma of a need to vindicate their claims against Qualcomm, without adequate

14   funding to do so. Under the Plan, the initially needed funding will be available.

15       Undoubtedly, Qualcomm will raise a host of issues as to the confirmability of the Plan. The

16   Debtors believe that the Plan is confirmable, and that virtually all classes of impaired creditors other

17   than Qualcomm will accept the Plan. The Plan is feasible, satisfies the best interests test, is

18   compliant with applicable law, and satisfies the requirements of Section 1129(a) of the Bankruptcy

19   Code in all other respects. Even presuming that Qualcomm, in its own Class E2, rejects the Plan, the

20   Debtors believe that the treatment of Qualcomm's disputed claim will be found to be fair and

21   equitable, as required by the "cram-down" provisions of Section 1129(b) of the Bankruptcy Code.

22       Those issues are not likely to be resolved, however, in the context of the pending Qualcomm

23   Motion. Given the heavy burden imposed upon an early movant such as Qualcomm, as discussed

24   above, if there is any question as to the confirmability of the Plan, it should be put to the test: The

25   Debtors should be given the time necessary to prosecute their Plan and prove its confirmability,

26   before Qualcomm's motion is considered.

27      **3.**    <u>**Qualcomm's Distinction Between Rehabilitation and Reorganization is False.**</u>

28       Qualcomm argues that no plan in these cases can defeat the Qualcomm Motion, because they

can only "reorganize" the Debtors, not "rehabilitate" them, on the theory that Section 1112(b) provides for conversion or dismissal if there is no "reasonable likelihood of rehabilitation," and only an operating business can be "rehabilitated." (Qualcomm Motion, 25:21-26:1). For this unusual argument, Qualcomm relies upon the decisions in *Loop Corp. v. United States Trustee*, 379 F.3d 511, 515-516 (8th Cir. 2004) ("*Loop*"), and *In re Landmark Atl. Hess Farm, LLC*, 448 B.R. 707. 715 (Bankr.D.Md. 2011) ("*Landmark*"). This is mistaken at best. The argument is not supported by the cited cases in the least.

In *Loop*, for example, the Third Circuit Court of Appeals did not convert the case because it involved a liquidation rather than a resumption of business operations, as misstated by Qualcomm. The Court of Appeals converted the case because (a) the debtor was unable to produce a confirmable plan, *even after the court continued the conversion hearing to give the debtor one last chance to negotiate a confirmable plan*; (b) the creditors' committee had lost faith in the debtor's ability to confirm a plan and had filed its own conversion motion; and (c) the debtor's estate's cash holdings, resulting from an earlier liquidation of assets, was quickly dissipating due to heavy administrative expenses, while a prompt distribution to unsecured creditors was being delayed.

The case could not be further removed from the facts of the Debtors' cases. Here, first, the Debtors have in fact filed the Plan, which has the support of all significant creditor groups other than Qualcomm, and the Debtor has not yet had the opportunity to prove its confirmability. Second, the Committee supports the Plan and opposes conversion, because the Committee views the Plan as more likely to produce a favorable outcome for unsecured creditors. Third, there is no pot of money ready for distribution to creditors. In fact, if the case is converted, there will be no distribution to creditors, much less a prompt one, and by the same token, there is no cache of estate funds being dissipated by administrative expenses. The only prospect for funding is in fact the Plan itself, pursuant to which Northwater has agreed to provide advances to satisfy administrative and implementing expenses.

Similarly in *Landmark*, the court specifically declined to reach the conclusion about "rehabilitation" now espoused by Qualcomm, and instead concluded only that rehabilitation was not in prospect because any funds recovered by the debtor would necessarily be paid over to the secured creditor only: "*[W]hile the court is not prepared to state a per se rule that a liquidating corporation*

24

*can never defeat a showing of cause under Section 1112(b)(4)(A)*, here the UST and Cohen have satisfied the court that Landmark has no likelihood of rehabilitation. Rehabilitation means to reestablish a business and Landmark has no business. Even if landmark is successful in its Preference Litigation and ultimately receives the proceeds from the sale of the Property, all of the proceeds allegedly are owed to Virginia Heritage Bank." *Landmark, supra* at 715 (emphasis added).

Ultimately, the *Landmark* court dismissed the case based on a totality of circumstances (*Landmark, supra* at 718), including the debtor's lack of equity in its only asset, even if it prevailed in pending preference litigation (*Landmark, supra* at 715); the debtor's insider's manipulation of the case for his sole benefit (*Landmark, supra* at 716); the debtor's unexcused failure to file operating reports and its "shirking of its duties" (*Landmark, supra* at 716); its failure to act as a fiduciary to creditors (*Landmark, supra* at 716); and its continuing losses and lack of any plan that would inure to the benefit of anyone other than the debtor's insider (*Landmark, supra* at 718).

As with *Loop*, *Landmark* does not resemble the Debtor's cases, and provides no relevant ruling. Here, if the Debtors are successful in their claims against Qualcomm, those claims will have substantial equity, particularly in light of Northwater's and other secured creditors' willingness to share their priority rights with general unsecured creditors. Further, the Debtors' cases are not being managed for the benefit of insiders, but rather for the benefit of dozens of substantial secured and unsecured creditors, and perhaps thousands of shareholders. The continued prosecution of the cases in chapter 11 is supported by the Committee, unlike either the *Loop* case or the *Landmark* case. Further yet, the Debtors have not failed to file operating reports and have not otherwise shirked any duties as debtors-in-possession.

In sum, the rule cited by Qualcomm in its attempt to preclude any showing of prospect of reorganization or rehabilitation, is false, and the caselaw cited by Qualcomm fails to support that false rule.

**4.      The Debtors' Appeal of the Qualcomm Judgments is Meritorious.**

Emblematic of the hyperbole infused in the Qualcomm Motion, Qualcomm announces that it is "virtually certain" that the Debtors' appeal of the Qualcomm Judgments will fail (Qualcomm Motion, 24:20-21), and that the Debtors' chances of success in the litigation are "non-existent"

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

25

(Qualcomm Motion, 3:13-14). Qualcomm then confuses a "clear and convincing" test of evidence allegedly needed at the ultimate trial of the Qualcomm Litigation with the much lower standard by which the Debtors' appeal will be measured at the Federal Circuit Court (Qualcomm Motion, 24:10-19), as if to say that the Debtors must prove their ultimate case, beyond any factual disputes, on appeal. In its rush to judgment, Qualcomm has grossly misstated the standard of review on appeal and the prospects for reversal.

(a) <u>**Standard For Review**</u>

The Qualcomm Judgments were rendered as a matter of law, without a trial, indeed without even an opportunity for discovery regarding trade secrets. The standard for reversal on appeal is therefore simple error, in a *de novo* review – the appellate court reviews the same record as was before the District Court, and may rule on legal issues without deference to the decision below. *High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630, 638 (9th Cir. 2004) ("De novo review of a district court judgment concerning the decision of an administrative agency means the court views the case from the same position as the district court."); see also, *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1156 (9th Cir. 2001) ("The district court's grant of summary judgment is reviewed de novo…Our review is governed by the same standard used by the district court under Fed. R. Civ. P. 56(c)"). Also, the appellate court reviews decisions excluding evidence on summary judgment, as occurred here, under the same *de novo* review standard. See, e.g., *Nelson v. City of Davis*, 571 F.3d 924, 927 (9th Cir. 2009).

In the Qualcomm Judgments, the District Court reached several pivotal legal conclusions that are highly questionable, and, in the Debtors' view, overstepped its authority and misinterpreted applicable law. Upon *de novo* review, the Debtors believe that it is very unlikely that the Federal Circuit Court will reach similar conclusions. Disagreement with any one of those conclusions will require reversal, in part or in whole. Reversal of the judgments is therefore likely.

A few examples, far from exclusive, will illustrate the vulnerability of the Qualcomm Judgments on appeal:[1]

---

[1] Citations to the record on appeal with respect to the points raised herein are found in detail in the Appellants' Brief, referenced above. The purpose of this discussion is only to summarize, not prove, those points, to demonstrate the fact that upon appeal, substantial issues that may result in reversal are present.

26

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

### (b) Statute of Limitations Issue

The District Court granted summary judgment to Qualcomm on all of the Debtors' trade secret claims, based on applicable statutes of limitations. The underlying issue was the date when the Debtors first discovered that Qualcomm may have illegally misappropriated those trade secrets. The District Court decided that that discovery occurred no later than January 23, 2003, when William Clise, one of the Debtors' founders, sent an email reacting to a SnapTrack slide presentation and describing one part of it (the "Broadcast Mode for GSM") as a "direct rip-off." But as explained in the Appellants' Brief (pages 39-41), the particular feature, the broadcast mode, _was not actually the trade secret that Qualcomm and SnapTrack misappropriated_, and Mr. Clise did not mean "stolen" when he used the term "rip-off" – he meant imitated, or exploited, a common meaning of the term.[2]

When Mr. Clise attempted to explain his words, the District Court would hear nothing of it: Mr. Clise's clarifying testimony in deposition was ignored by the District Court, and his declaration submitted to the Court was struck as a "sham affidavit," on the theory that it directly contradicted his prior testimony. But that is not the law: A declaration that simply clarifies or explains earlier deposition testimony, or corrects an honest mistake, is not a sham affidavit and should not be excluded. _Van Asdale v. Int'l Game Tech._, 577 F.3d 989, 998-99 (9th Cir. 2009); _Gemmy Ind. Corp. v. Chrisha Creations Ltd._, 452 F.3d 1353, 1359 (Fed. Cir. 2006) (citing _Langman Fabrics v. Graff Californiawear, Inc._, 160 F.3d 106, 112-113 (2nd Cir. 1998) ("If there is a plausible explanation for discrepancies in a party's testimony, the court considering a summary judgment motion should not disregard the later testimony because of an earlier account that was ambiguous, confusing, or simply incomplete.").

At the same time, the District Court rejected other witnesses' declarations, such as Professor Anant Sahai and engineers Phil DeCarlo and Alan Angus, as "sham affidavits," on the theory that those declarations contradicted Mr. Clise's testimony, _not their own testimony_, far beyond the recognized scope of the sham affidavit rule.

Essentially, the District Court chose to ignore genuine issues of fact in the meaning and intent

---

[2] As set forth in the Appellants' Brief, at page 38-39, the Urban Dictionary defines "rip-off" as "Cleverly concealed plagiarism, with just enough changes to get past others' legal rights."

DEBTORS' OPPOSITION TO QUALCOMM INCORPORATED'S MOTION FOR CONVERSION OR APPOINTMENT OF CHAPTER 11 TRUSTEE
28425.DOC

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

of Mr. Clise's statement, chose to decide that meaning and the credibility of witnesses, and struck all evidence that might conflict with its chosen meaning, in the context of summary judgment. These are issues that should have been presented to a jury to determine, and the District Court's usurpation of the jury's role, without a trial and without even an adequate opportunity for discovery, is imminently reversible on appeal.

### (c)    Discovery Preclusion Issue

The District Court barred the Debtors from conducting any trade secret discovery, based on its reading of Section 2019.210 of California Code of Civil Procedure and its conclusion that the Debtors' identifications of their trade secrets were not sufficiently specific as to exact programming steps or system components. This was error for at least two fundamental reasons.

First, California procedural law should not have been applied. Section 2019.210 is procedural, determining the timing and availability of discovery in state court, and under well-established law, Federal procedures take priority over state procedures, in Federal court. *Shady Grove Orthopedic Assocs. V. Allstate Ins. Co.*, 559 U.S. 393, 130 S.Ct. 1431, 1437 (2010); *Hanna v. Plumer*, 380 U.S. 460, 473-74 (1965). In particular, whereas there is a split of authority, the better reasoned cases establish that Section 2019.210 does not apply in Federal court. See, for example, *Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc.*, No. S-06-053, 2007 WL 273949, at *2 (E.D.Cal. Jan. 29, 2007); *Proven Methods Seminars, LLC v. Am. Grants & Affordable Hous. Inst.*, S-07-1588, 2008 WL 282374, at *3 (E.D.Cal. Jan. 31, 2008).

Instead, the District Court should have applied Rules 26 *et seq.* of the Federal Rules of Civil Procedure, which generally require a trade secret plaintiff to identify its trade secret prior to trial, for example in responses to interrogatories. See *Roger M. Milgrim, Milgrim on Trace Secrets* § 15.01[1][d][i] (Matthew Bender 2006). Under the Federal Rules, there is no requirement that the plaintiff identify the misappropriated trade secrets with particularity even before commencing discovery. Thus, the District Court improperly barred the Debtors from conducting discovery, setting up eventual summary judgment on substantive issues when the Debtors could not examine Qualcomm's records to support their case.

Second, even under California law, the Debtors' identifications of their trade secrets were

LAW OFFICES
MEYERS LAW GROUP, P. C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

adequate and the District Court erred in finding otherwise. "Reasonable particularity," as used in Section 2019.210, does not require description of a trade secret in minute detail, but is much like the standards for pleading, to be liberally construed. *Advanced Modular Sputtering, Inc. v. Superior Court*, 33 Cal.Rptr.3d 901, 907 (Cal.Ct.App. 2005). To prove the sufficiency of their trade secret identifications, the Debtors presented the declarations of four highly credentialed experts, all of whom examined the claimed trade secrets in detail and testified that they understood the identifications and that they were sufficiently particular to allow a comparison with what was generally known to those skilled in the field. This should have sufficed: As a general rule, the submission of credible expert opinions should end the inquiry under Section 2019.210.

Worse yet, having reviewed and analyzed only one of the trade secret descriptions with any substance, the District Court then rejected the descriptions of eight other trade secret descriptions with only a cursory two lines of comment. As the Debtors' experts testified in their declarations, those trade secrets too were sufficiently described to allow those in the field to understand and distinguish them adequately to fashion discovery and defenses.

Thus, the District Court's discovery rulings, which barred the Debtors from investigating Qualcomm's records in order to respond to summary judgment motions, are highly suspect and likely to be reversed upon the Federal Circuit Court's *de novo* review.

(d)     **Inventorship Ruling**

Among the Debtors' claims was a claim of co-inventorship of certain inventions for which Qualcomm ultimately applied for patents. The District Court ruled, on a summary basis, that as to each one, the Debtors had "failed to demonstrate by clear and convincing evidence" that the Debtors' predecessors co-invented the inventions. In doing so, the District Court applied the wrong legal standard, ignored factual disputes, and accepted wholesale Qualcomm's erroneous claim constructions.

The correct standard on summary judgment is not "clear and convincing," but "whether a reasonable mind could have found the evidence . . . clear and convincing." See *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1352-53 (Fed. Cir. 1998). Here, as expert testimony in declarations established, reasonable minds could in fact have reached the conclusion that the evidence was clear

29

Case: 13-30340    Doc# 90    Filed: 05/03/13    Entered: 05/03/13 16:40:32    Page 34 of 48

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

1    and convincing in the Debtors' favor.

2           Even while using the improper standard and concluding that co-inventorship had not been

3    proven by "clear and convincing" proof, the District Court overstepped its province again.  The court

4    merely accepted Qualcomm's attack on the credibility of Mr. Clise, as a co-author, finding that he

5    lacked the technical knowledge necessary to have contributed to the inventions as testified.  In short,

6    the District Court again usurped the role of a jury, ignoring factual disputes and reaching summary

7    judgment prematurely.

8           The District Court also ignored genuine factual issues as to each of the patents, and failed to

9    make patent claim constructions for each claimed co-inventorship, as explained in the Appellants'

10   Brief at pages 63-75.

11          Any one of those errors, once overturned, will mandate reversal.

12          **(e)     Incendiary Language**

13          Whereas Qualcomm delights in repeating, over and over, the disdainful words of the District

14   Court in its rejection of the Debtors' positions, those descriptions add nothing to the discussion, other

15   than to illustrate how injudicious and one-sided the District Court became after a constant barrage of

16   invective and *ad hominem* attacks by Qualcomm, much as it attempts again in the Qualcomm

17   Motion.[3]

18          If, as demonstrated above and in the Appellants' Brief, the District Court erred in its

19   reasoning in the summary judgment rulings, concluding that a case had not been presented when in

20   fact it had, then it is not at all surprising that the same Court would erroneously find the Debtors'

21   reasoning flawed, even "specious."  Notwithstanding the District Court's prejudiced criticisms, the

22   fact remains that the efficacy of the Qualcomm Judgments depends on a few core legal conclusions

23   reached by the District Court and those conclusions were wrong as a matter of law.  It only requires

24   two of three appellate judges to disagree with any of those legal conclusions to lead to partial or

25

26   [3] See page 33, footnote 7, of the Appellants' Brief for a few examples of Qualcomm's repeated diatribes and
     sanctimonious proclamations in the Qualcomm Litigation, using terms such as "shakedown," "greedy bad guys" and
27   "convicted felons and frauds."  As stated therein, this was at the very time at which Qualcomm itself was found to have
     committed "monumental and intentional discovery violation . . . amounting to a fraud on the court" in *Qualcomm, Inc. v.*
28   *Broadcom Corp.*, No. 05-CV-1958, 2008 WL 66932, at *17 (S.D.Cal. January 7, 2008), *vacated in part*, 05CV1958-
     RMB, 2008 WL 638108 (S.D.Cal. March 5, 2008).

                                                           30

Case: 13-30340    Doc# 90    Filed: 05/03/13    Entered: 05/03/13 16:40:32    Page 35 of
                                              48

entire reversal. Qualcomm's pronouncement of a "virtual certainty" of the appeal's failure is premature at best, and suggests that Qualcomm has been deluded by its own irrelevant attacks.

### 5. Any Purported Insider Claims Are Addressed More Favorably Under the Plan.

Much of Qualcomm's argument for the appointment of a trustee, or conversion, is the pursuit of supposed claims against the Debtors' directors for having prosecuted the Qualcomm Litigation. The Debtors believe that no such claims exist, particularly in light of the consistent advice received by the directors from competent counsel that they should proceed. Moreover, the directors believe that the Debtors have a reasonable prospect of success on appeal, which will render any such claims moot. That being said, it is clear that if any such insider claims exist, general unsecured creditors, including Qualcomm, have a far better chance of recovering benefit from those claims under the Plan than under the aegis of a chapter 11 or chapter 7 trustee.

At present, any such claims may be encumbered by the liens granted to Northwater and secured noteholders, who collectively assert security interests in all assets of the Debtors. Northwater alone asserts a secured claim in excess of $15,000,000, and the secured noteholders are owed millions in addition. That would not change under the aegis of a trustee, whether in chapter 7 or chapter 11. As a result, assuming the enforceability of the secured claims, a trustee would have to recover more than $20,000,000 in net proceeds, after costs of litigation, before any benefit at all was conferred on unsecured creditors. In fact, faced with such a burden, it is unlikely that a trustee would pursue the claims at all.

On the other hand, under the Plan's terms, if those claims are valid, general unsecured creditors will benefit from the first dollar of net proceeds: The claims (called "Committee Claims" under the Plan) will be assigned to a Litigation Trust (Plan, Sec. 7.4); and the Litigation Trust will be managed by an independent fiduciary, the Litigation Trustee, who will be proposed by the Plan Committee and approved by the Bankruptcy Court (Plan, Sec. 7.4.2). The Litigation Trustee will have authority to investigate, prosecute and settle those claims (Plan, Sec. 7.4.4), without any interference from the Reorganized Debtor. Any proceeds of such claims will be distributed to general unsecured creditors under Section 7.11 (Plan, Sec. 7.4.5), pursuant to which all general unsecured creditors, including both Qualcomm (Class E2) and all other unsecured creditors (Class

Case: 13-30340   Doc# 90   Filed: 05/03/13   Entered: 05/03/13 16:40:32   Page 36 of 48

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

E1), will receive payments on a *pro rata* basis (Plan, Sec. 7.11). The secured creditors will effectively waive any liens against those claims.

Thus, under the Plan, claims against insiders will be pursued by an independent person with fiduciary duties to unsecured creditors, and any net proceeds arising from the prosecution of those claims will be paid to unsecured creditors, including Qualcomm if its claim is allowed, without the prior burden of $20,000,000 of secured debt. Unlike with a chapter 7 or 11 trustee, all net proceeds will be paid to creditors, rather than to Northwater and secured noteholders. This is obviously a better potential outcome for unsecured creditors than through a trustee outside of the Plan.

In short, one of Qualcomm's primary arguments for conversion or the appointment of a chapter 11 trustee, that it is needed in order to pursue claims against insiders, is simply false – if any such claims actually exist, they will far more directly benefit unsecured creditors under the Plan than otherwise.

### 6. **Qualcomm Has Misrepresented Gabriel's Corporate Status.**

At pages 19 and 26 of the Qualcomm Motion, Qualcomm states that Gabriel owes approximately $360,000 in Delaware franchise taxes, and that its corporate charter is void. This is utterly false. As reflected in the corporate status report dated March 2, 2013[4] and referenced by Qualcomm as "RJN Ex. 32," the taxes owed as of that date, per the State of Delaware's assessment, were $179,006.80, not double that figure. Moreover, the same report confirms that Gabriel filed its 2011 annual report (due in March 2012), so the only report and taxes that are nominally delinquent are those for 2012, due on March 1, 2013 (see, 8 Del. Laws § 502(a)).

Thus, Gabriel is delinquent, in the State of Delaware's records, only for the report and taxes that came due after the Petition Date, on March 1, 2013. Even if the Debtors presently had the funding to make that payment, they would obviously be prohibited from doing so as debtors-in-possession, until after plan confirmation. Further, the assessed tax amount is not likely to be the ultimate amount owing by Gabriel in any event: Alternative methods of calculation based on issued shares or gross assets are likely to reduce the obligation dramatically – see 8 Del. Laws § 503. The

LAW OFFICES
**MEYERS LAW GROUP, P. C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

---

[4] This date is not random: It is the day after 2012 reports and taxes were nominally due, selected by Qualcomm to ensure a "delinquent" status.

DEBTORS' OPPOSITION TO QUALCOMM INCORPORATED'S MOTION FOR CONVERSION OR APPOINTMENT OF CHAPTER 11 TRUSTEE
28425.DOC

Case: 13-30340   Doc# 90   Filed: 05/03/13   Entered: 05/03/13 16:40:32   Page 37 of 48

LAW OFFICES
**MEYERS LAW GROUP, P. C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

$180,000 amount reflected in the report is simply the maximum annual franchise tax that can be owed by a Delaware corporation, absent a lower, alternative calculation (8 Del. Laws § 503(c)).

Most importantly, Qualcomm's bald, unsupported statement that Gabriel's charter is void is willfully false. The corporate status report, RJN Ex. 32, does _not_ report Gabriel's status as "void" but rather as "AR delinquent, tax due." As reflected in the field descriptions found in the embedded link in that report, that status is explained as follows: "This represents a corporation that has not filed the required annual report and there are delinquent taxes due." This is entirely different than a status of "void," which means "A corporation that failed to pay it's [*sic*] annual franchise tax for a period of 1 year or a Foreign Corporation that has not filed their annual reports within a 2 year period." Gabriel is not reported as "void," and thus that description does not pertain. In fact, a corporation's charter is not rendered void until a year later (March 2014 in this case) following notice from the Delaware Secretary of State, pursuant to 8 Del. Laws § 510.

In sum, despite Qualcomm's unsubstantiated allegation to the contrary, Gabriel's charter is not void, and the franchise taxes owed to the State of Delaware are at most $179,006.80, and likely far less.

**C.    There is No Cause Under Section 1112(b)(4)(A).**

With Qualcomm's many false assumptions debunked, it is clear that none of the statutory prerequisites for conversion or the appointment of a chapter 11 trustee can be satisfied. First, it is evident that the dual requirements of Section 1112(b)(4)(A) are not met.

As stated above, in order to establish cause under Section 1112(b)(4)(A), Qualcomm must establish both continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation -- the requirement is in the conjunctive, and it is the burden of the movant to prove both of these elements. See, e.g., *In re All American of Ashburn, Inc.*, 40 B.R. 104 (Bankr. N.D.Ga. 1984); *In re Powell Bros. Ice Co.*, 37 B.R. 104 (Bankr.Kan. 1984). Neither, however, is present here.

**1.    There Are No Continuing Losses or Diminution of Values.**

The first aspect of Section 1112(b)(4)(A) requires a showing of a "continuing loss to or diminution of the estate," typically in the form of continuing negative cash flow after the entry of the order for relief. *In re First Lewis Road Apartments, Inc.*, 11 B.R. 575, 576 (Bankr.E.D.Va. 1981); 5

Collier on Bankruptcy ¶ 1112.03[i], at 1112–18 (15th ed. 1994). Here, there are no material losses or negative cash flow. As demonstrated by the two monthly operating reports filed by the Debtors to date, cash flow, whether positive or negative, is minimal, and there are no other material losses continuing. Cumulatively, through March 31, 2013, the Debtors' cash flow has actually been minimally positive, by $54. Nor have the Debtors suffered material losses on a profit/loss basis, other than the accrual of postpetition attorneys' fees – excluding professional fees, the Debtors' only postpetition losses to date have involved disputed storage charges for its file servers, at the rate of $2,422 per month.

Nor has there been any diminution of value in the Debtors' assets. Their primary assets are comprised of their litigation claims against Qualcomm, which are being enhanced, not reduced, by appellate counsel's preparation and filing of the Appellants' Brief. Notably, those services of HHR will be compensated, if at all, on a contingent basis depending on the outcome of the Qualcomm Litigation, and thus, not even attorneys' fees are being accrued as an expense with respect to those appellate services.

Nonetheless, Qualcomm argues that the Debtors "are experiencing substantial and continuing negative cash flow" (Qualcomm Motion, 3:1-2). What is Qualcomm's evidence of such a claim? It boils down to this statement at page 22 of the Qualcomm Motion:

> As such, the continued accrual of fees and expenses in the Qualcomm Lawsuit necessarily continues to produce substantial loss and diminution of value – to an equity in the enterprise by the Debtors that is *non-existent* in the first place.

(Qualcomm Motion, 22:6-9) (emphasis in original). In other words, without any actual evidence, Qualcomm argues that the mere act of appealing the Qualcomm Judgments and the Fee Order create a continuing loss, because they cause the Debtors' estates to incur legal fees for appeals that are "virtually certain" to fail. This is obviously false.

First, any fees being incurred by the Debtors in the appeals are contingent on a recovery against Qualcomm – HHR, handling the appeal of the Qualcomm Judgments, has agreed to be compensated, and even reimbursed its costs, only in the event of success of the Debtors' claims against Qualcomm (an outcome said by Qualcomm to be impossible). Chapin Fitzgerald LLP, which has been retained by the Debtors to prosecute the appeal of the Fee Order, has been paid by

34

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

LAW OFFICES
MEYERS LAW GROUP, P. C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

1  Northwater on a prepetition basis, not by the Debtors. Northwater has agreed as well, under the Plan,

2  that it will be repaid its advances only in the event of success of the Debtors' claims against

3  Qualcomm. Thus, neither HHR's fees nor Chapin Fitzgerald's fees are in fact accruing, unless they

4  are benefiting the estates through a successful prosecution of the claims against Qualcomm.

5      Second, Qualcomm's argument presupposes, as it has pronounced, that it is a "virtual

6  certainty" that the Debtors' appeals will fail, making the expenditure of any fees wasteful. But as

7  demonstrated above, that is far from clear – there were serious errors made by the District Court in its

8  rulings, and the prospect of reversal upon the Federal Circuit Court's *de novo* review are substantial.

9  Surely, the Debtors have every right, and in fact a fiduciary duty, to pursue the appeals in those

10  circumstances, despite the cost of incurring contingent fees and costs in the process.

11      In short, whereas Qualcomm argues vigorously that continued maintenance of the chapter 11

12  cases will inflict debilitating losses upon the Debtors' estates, there is no evidence of that, and in fact,

13  the contrary is true – any fees incurred in the appeals of the Qualcomm Judgments and the Fee Order

14  are contingent on success in reversing those rulings, and inasmuch as Qualcomm contends that such a

15  contingent event will not occur, then presumably no fees at all will be generated to the detriment of

16  the estates.

17      **2.      There is a Reasonable Likelihood of Rehabilitation.**

18      Nor is the second prong of Section 1112(b)(4)(A) present here – Qualcomm cannot

19  demonstrate that there is not a reasonable likelihood of rehabilitation. As set forth above, the Debtors

20  have filed the Plan with the backing of all major creditor groups, secured and unsecured alike, other

21  than Qualcomm. The Debtors believe that the Plan is feasible and confirmable, and given the early

22  stages of these chapter 11 cases, the Debtors are entitled to prosecute their Plan through the normal

23  confirmation process. Unlike every case cited by Qualcomm to support its argument, the Debtors

24  have not yet had an opportunity to seek confirmation of their Plan, and there is no basis for

25  concluding that they cannot confirm the Plan at this early point in the cases.

26      Qualcomm argues that a plan that is based upon pursuing pending litigation claims is not a

27  valid rehabilitation for this purpose, citing the decision in *In re Original IFPC Shareholders*, 317

28  B.R. 738 (Bankr. N.D. Ill. 2004) ("*IFPC Shareholders*"). But the *IFPC Shareholders* decision is

35

clearly distinguishable. In *IFPC Shareholders*, the debtor had lost twice at trial, once in a bench trial and the second time in a jury trial, and was attempting to resuscitate its case through third appeal and a plan of reorganization designed to fund the appeal. However, the plan had no apparent financial backers and was therefore "dead on arrival," and entailed using the estates' only existing funds, a $17,000 bank account, for initial funding of the appeal. The court found that the plan was not confirmable because it was not feasible (for lack of funding), discriminated unfairly against dissenting creditors, and could not satisfy the best-interests test.

In deciding against the debtor, the *IFPC Shareholders* court stated that valuing the debtor's claims "would be a difficult task were the cause of action at the discovery stage, having never been tried once," the fact that "two neutral triers of fact, a judge and a jury," had already ruled against the debtor after full trials, "must be given substantial weight" (*IFPC Shareholders, supra* at 743). Further, because the debtor had not presented any evidence of any investors having committed to the funding required under the plan, the plan's feasibility was doubtful (*IFPC Shareholders, supra* at 744).

Qualcomm claims that the *IFPC Shareholders* decision is "largely on all-fours" with the facts of the Debtors' cases (Qualcomm Motion, 27:16), but that is obviously not true. First, the Qualcomm Litigation has never been tried, much less tried twice. In fact, the litigation never even passed through the discovery stage, since the District Court barred discovery and ruled summarily without a jury or trial. Given the technical and legal nature of the District Court's rulings, and the *de novo* review that will follow, there is a much higher prospect of success on appeal than could have been estimated in the *IFPC Shareholders* case. Second, unlike the *IFPC Shareholders* facts, the Debtors have in fact produced a commitment to fund the Plan – Northwater has confirmed its willingness to provide the Reorganization Loan of at least $500,000, which will fund all costs through the appeal process (see Piurko Declaration). Third, the Plan in these cases does not suffer from discrimination issues as in *IFPC Shareholders*. Qualcomm's disputed claim will be treated identically and proportionately with all other general unsecured claims, and in fact, contrary to discrimination, the Plan favors unsecured creditors, including Qualcomm, by consensually sharing secured creditors' priority rights with unsecured creditors.

LAW OFFICES
**MEYERS LAW GROUP, P. C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

36

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

1   Thus, the *IFPC Shareholders* decision does not support Qualcomm's position.  Rather, by

2   way of contrast, the decision demonstrates that provided that a reasonably confirmable plan is

3   presented, with requisite funding demonstrated, conversion under Section 1112(b)(4)(A) is not

4   appropriate.

5   **D.      There is No Cause Under Section 1112(b)(4)(B).**

6   The requirement of Section 1112(b)(4)(B), gross mismanagement of the estate, is equally

7   absent here.  Whereas Qualcomm alleges misconduct by management of the Debtors in the years

8   prior to the Petition Date, Qualcomm also acknowledges that that is not generally a sufficient basis

9   for conversion (Qualcomm Motion, 29:7-9).   Qualcomm has not actually alleged <u>*any*</u>

10  mismanagement, much less gross mismanagement, in the two months since the commencement of the

11  chapter 11 cases.   But Section 1112(b)(4)(B) is explicit in this regard – it requires "gross

12  mismanagement of the <u>*estate*</u>" (emphasis added).  Supposed misconduct prior to the commencement

13  of the bankruptcy case, and prior to the creation of an estate, is irrelevant.  *In re Keeley & Grabanski*

14  *Land P'ship*, 2011 WL 5505396 (Bankr. D.N.D. October 11, 2011); see, e.g., *In re Briggs-*

15  *Cockerham, L.L.C.*, 2010 WL 4866874 (Bankr. N.D. Tex. November 23, 2010) (noting that "[a]s

16  stated by a leading bankruptcy treatise, § 1112(b)(4)(B) focuses 'on the management of the estate and

17  not on the debtor [;]' " therefore, "[t]he inquiry cannot include mismanagement of the debtor prior to

18  the bankruptcy filing."); citing 7 Collier on Bankruptcy ¶ 1112.04[6] [b] (16th ed. Rev.); *In re First*

19  *Assured Warranty Corp.*, 383 B.R. 502, 544 (Bankr. D.Colo. 2008) ("[T]hese allegations, if true,

20  relate to prepetition conduct and do not relate to the Debtor's postpetition mismanagement of the

21  estate as is required under the clear language of § 1112(b).").

22  Moreover, the only alleged mismanagement cited by Qualcomm even for periods prior to the

23  Petition Date are the Debtors failure to file tax returns and SEC reports, but as Qualcomm concedes,

24  this failure resulted from a lack of funding with which to prepare the returns and reports.  That is

25  hardly a sign of gross mismanagement – if every chapter 11 debtor that had missed returns or reports

26  due to a lack of funding were converted or dismissed, there would be precious few chapter 11 cases

27  left.

28  Qualcomm also argues without support that the Debtors filed their chapter 11 petitions in

37

LAW OFFICES
**MEYERS LAW GROUP, P. C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

1  order to protect guarantors from collections actions by the surety that issued the $800,000 costs bond

2  (see, for example, Qualcomm Motion, 16:21-22), but there is no basis for the allegation whatsoever.

3  It is obvious that the commencement of the Debtors' chapter 11 cases does not prevent action by the

4  surety against the guarantors, who are not protected by the automatic stay provisions of Section

5  362(a), and neither the Debtors nor the guarantors have ever claimed otherwise. The Debtors'

6  chapter 11 petitions were filed to protect and restructure the assets of the Debtors, not those of

7  guarantors, and nothing in Qualcomm's unsupportable allegations warrant a charge of gross

8  mismanagement.

9        In short, there is no showing, even a prima facie one, of gross mismanagement by either of the

10  Debtors, and thus, no cause has been shown under Section 1112(b)(4)(B) either.

11  **E.**    **Conversion is Not In The Best Interests of Creditors.**

12        For all of the same reasons, and even if cause otherwise exists for conversion under Section

13  1112(b)(4)(A) or (B), the Court should find that under the specific circumstances of these cases,

14  conversion is not warranted.

15        First, even in the relatively short time in which these cases have been pending, the Debtors

16  have already produced a consensual Plan that is supported by all major creditor groups other than

17  Qualcomm, with committed funding from Northwater. The Plan will resolve complicated debt

18  structure issues within the Debtors and will allow the Debtors to proceed with their appeal of the

19  Qualcomm Judgments, without using any existing estate assets in order to do so.

20        Second, the Plan is clearly more favorable for unsecured creditors than conversion, or

21  appointment of a chapter 11 trustee. Under the Plan, the appeals will be pursued with funding from

22  Northwater and without resort to any other estate assets, Northwater and other secured creditors will

23  waive their security interests in any assets other than the Qualcomm Litigation, and even as to the

24  Qualcomm Litigation, Northwater and the other secured creditors will share their priority rights with

25  general unsecured creditors in a material manner. None of these features are available in the event of

26  conversion or the appointment of a chapter 11 trustee.

27        Third, even the alleged claims against insiders, to which Qualcomm devotes so much interest,

28  are fully protected, and better positioned to benefit unsecured creditors under the Plan – there too,

**MEYERS LAW GROUP, P. C.**
LAW OFFICES
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

1    Northwater and the other secured creditors will waive their security interests, so that if there is any

2    recovery at all, any net proceeds will be paid to general unsecured creditors, not to pay more than

3    $20,000,000 in secured debt.  Meanwhile, the Plan provides that the claims will be pursued by an

4    independent fiduciary, without any interference or control by the Debtor.  This, again, is more than a

5    chapter 11 or chapter 7 trustee could offer unsecured creditors, without the Plan's waiver of security

6    interests.

7         Finally, the Court should who speaks more objectively on behalf of the interests of unsecured

8    creditors, and be guided by its conclusion.  Qualcomm professes that as its objective, but it is

9    obviously motivated by a desire to preserve and confirm its dubious judgments, and to avoid the risks

10   of the Debtors' pending appeals.  The Committee, on the other hand, has no objective but to

11   maximize recoveries by unsecured creditors, to whom it owes a statutorily imposed fiduciary duty.

12   The Committee has negotiated with the Debtor and others to reach agreement on the Plan, and

13   opposes the Qualcomm Motion.  The Court should give great weight to the Committee's considered

14   opinion that conversion or the appointment of a chapter 11 trustee would not be in the best interests

15   of the estate, and based thereon and on the other factors described above, conclude that the best

16   interests of creditors would not be served by conversion or appointment of a chapter 11 trustee.

17   **F.     There is No Cause Under Section 1104 For Appointment of Chapter 11 Trustee.**

18        Notably, even though the Qualcomm Motion seeks the appointment of a chapter 11 trustee,

19   the motion barely mentions, much less analyzes, the requirements of Section 1104 of the Bankruptcy

20   Code, the statute that authorizes such appointment in limited circumstances.  Instead, Qualcomm only

21   argues that because there is, allegedly, cause for conversion under Section 1112(b), cause for the

22   appointment of a chapter 11 trustee follows (see Qualcomm Motion, 31; ftn. 19).  Implicitly,

23   Qualcomm concedes the converse – that absent cause for conversion, there is no cause in these cases

24   for the appointment of a chapter 11 trustee either.  Coupled with the discussion above, which refutes

25   the presence of any cause for conversion under Section 1112(b), it follows, therefore, that there is no

26   basis for the appointment of a chapter 11 trustee.

27        That conclusion is also inescapable from a review of Section 1104, which permits the

28   appointment of a trustee in a chapter 11 case only for cause, such as fraud, dishonesty, incompetency

39

LAW OFFICES
**MEYERS LAW GROUP, P. C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

1   or gross mismanagement, or if the appointment is in the best interests of all creditors and

2   shareholders.  There is a strong presumption against the appointment of a trustee under Section 1104,

3   *In re Premier General Holdings, Ltd*., 427 B.R. 592, 601 (Bankr. W.D. Tex. 2010), and the standard

4   for a Section 1104 appointment is very high.  *In re Smart World*, 423 F.3d 166, 176 (2nd Cir. 2005);

5   see also 7 Collier on Bankruptcy § 1104.02 (Lawrence King, 15th Ed. 1998) (noting that appointment

6   of a trustee in a chapter 11 case is an "extraordinary" remedy).

7        It is presumed that a chapter 11 debtor will remain in possession and control of its assets

8   during the pendency of a bankruptcy proceeding.  *In re Ionosphere Clubs, Inc*., 113 B.R. 164, 167

9   (Bankr.S.D.N.Y.1990).  Because of this strong presumption, courts will grant relief under Section

10  1104(a) only in extraordinary cases.  *In re Intercat, Inc*., 247 B.R. 911, 920 (Bankr. S.D. Ga. 2000)

11  citing 7 Collier on Bankruptcy § 1104.02 (Lawrence King, 15th Ed. 1998) ("There is a strong

12  presumption in chapter 11 cases that the debtor-in-possession should be permitted to remain in

13  control of the corporation absent a showing of need for the appointment of a trustee.").

14       A trustee may only be appointed pursuant to a Section 1104 motion "for cause, including

15  fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor *by current*

16  *management*," or "if such appointment is in the interests of creditors, any equity security holders, and

17  other interests of the estate."  11 U.S.C. § 1104(a)(1)-(2) (emphasis added).  Regardless of the

18  subsection under which the Qualcomm Motion is considered, the appointment of a trustee is an

19  extraordinary remedy that requires proof by clear and convincing evidence.  See *In re Madison*

20  *Management Group, Inc*, 137 B.R. 275, 280 (Bankr. N.D. Ill. 1992), citing *In re Microwave Products*

21  *if America, Inc*., 102 B.R. 666, 670 (Bankr. W.D. Tenn.1989); see also *In re Cardinal Indus., Inc.*,

22  109 B.R. 755, 765 (Bankr. S.D.Ohio 1990); *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 167 (Bankr.

23  S.D.N.Y. 1990).  Consequently, the appointment of a trustee should be considered the exception

24  rather than the rule.  *In re Sharon Steel Corp*., 871 F.2d 1217, 1225 (3rd Cir. 1989).

25       Qualcomm has presented no evidence of requisite fraud, incompetence or gross

26  mismanagement by the current officers or directors of the Debtors, or any other recognized cause for

27  the appointment of a trustee.  Particularly considering the strong presumption against the

28  appointment, Qualcomm's presentation falls far short of the requisite standard for the extraordinary

DEBTORS' OPPOSITION TO QUALCOMM INCORPORATED'S MOTION FOR CONVERSION OR APPOINTMENT OF CHAPTER 11 TRUSTEE

28425.DOC
Case: 13-30340   Doc# 90   Filed: 05/03/13   Entered: 05/03/13 16:40:32   Page 45 of
48

remedy of the appointment of a trustee. See *In re G-I Holdings, Inc.* 295 B.R. 502 (D.N.J. 2003) ("*G-I Holdings*") (affirming the opinion of the lower court that "[a]ppointing a trustee must be considered a last resort."); *In re W.R. Grace & Co.*, 285 B.R. 148, 158 (Bankr. Del. 2002) (finding the case had "not yet arrived at the point where [this] last resort must be taken," where a creditors committee could prosecute a fraudulent conveyance action on behalf of the estate).

Moreover, the *G-1 Holdings* decision is instructive here, in that it concluded that the strong presumption against the appointment of a chapter 11 trustee, and in favor of debtor's current management, was applicable even where the chapter 11 debtor is a holding company with no business operations. *G-1 Holdings, supra* at 509-510. The familiarity of the debtor's management with the litigation and debt structure of the debtor suffices to maintain that presumption. Notably, in *G-1 Holdings*, the court overruled the creditors' committee that sought the trustee appointment. The committee argued that a trustee was needed because of the "bitter acrimony" between the debtor and the committee, and the alleged conflicts of interest that prevented the debtor's management from pursuing avoidance claims against the sole shareholder. Here, the opposite circumstances pertain: There is no acrimony between the Debtors and the Committee, which in fact opposes the Qualcomm Motion, and any claims that may be asserted against insiders have been safeguarded on a consensual basis by assignment to the Committee, pursuant to the Claims Stipulation. Thus, the Debtors' cases are even less candidates for the appointment of a trustee than in the *G-1 Holdings* case, where the appointment was rejected.

Qualcomm's only allegations of gross mismanagement in fact have nothing at all to do with the Debtors' current management. All such allegations cite to events and actions taken years ago, up to approximately 2007. None of the current officers or directors took their current positions with the Debtors until at least 2009, and Mr. Bandsuch, the chief executive officer, did not join the Debtors' boards until 2010. Section 1104 refers specifically to gross mismanagement "by current management," so the allegations made by Qualcomm, even if true, are completely irrelevant. "When considering whether to appoint a trustee for cause, a court's focus is on the debtor's current management, not the misdeeds of past management." *In re Bayou Group, LLC*, 564 F.3d 541, fn 3 (2nd Cir. 2009) citing *In re The 1031 Tax Group, LLC*, 374 B.R. 78, 86 (Bankr.S.D.N.Y. 2007).

41

LAW OFFICES
**MEYERS LAW GROUP, P. C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

LAW OFFICES
**MEYERS LAW GROUP, P. C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

1    Further, Qualcomm seems to suggest that the Debtors' current management's alleged

2  incompetence is manifested by its willingness to pursue the Qualcomm Litigation, despite the adverse

3  rulings in the District Court.  The argument cannot withstand scrutiny, however, for several reasons:

4  First, the Debtors' appeals to the Federal Circuit Court are a matter of right, and it would be

5  anomalous at best to conclude that a company's directors are abusing their discretion in pursuing a

6  remedy afforded by law.  Second, as demonstrated above, there are substantial issues of reversible

7  error by the District Court that make the appeals substantial and not at all frivolous, and the fact that

8  the Debtors' directors have used reasonable business judgment, supported by consistent advice of

9  competent counsel, in deciding to pursue the appeals can hardly be said to be evidence of

10  incompetence.  Third, the appeals are being pursued at virtually no cost to the Debtors' estate – one

11  appeal is being prosecuted on a contingent basis and the other has been funded by the Debtors'

12  prepetition secured lender.  Under those circumstances, it would in fact be a dereliction of the

13  directors' duties _not_ to pursue the appeals.  Finally, the fact that the Committee, Northwater and

14  secured noteholders also support prosecution of the appeals, as evidenced by their support of the

15  Plan, refutes any suggestion that the directors are acting as rogue agents bent on litigation without

16  regard to creditors' interests – all creditors that are not conflicted as Qualcomm is, support

17  prosecution of the appeals.

18    Nor has Qualcomm demonstrated that the appointment of a chapter 11 trustee would serve the

19  best interests of creditors and shareholders.  In fact, for the same reasons why conversion would be

20  detrimental to those interests (see Section E above), the appointment of a chapter 11 trustee would be

21  equally adverse – such an appointment would add a new layer of administrative expense to the cases,

22  would disrupt the Debtors' reorganization efforts and funding, and might cause a termination of the

23  pending appeals (Qualcomm's ultimate objective).  As discussed in Section E above, any claims

24  against insiders are protected and preserved, by assignment to the Committee pursuant to the Claims

25  Stipulation (see _G-I Holdings, supra_ at 511-12), and the misdeeds of earlier management years ago

26  are not a legitimate basis to impugn the motives or actions of the Debtors' current management.

27    The Debtors have demonstrated that they are faithfully fulfilling their obligations under the

28  Bankruptcy Code and as fiduciaries to their creditors, while moving effectively through the

Case: 13-30340    Doc# 90    Filed: 05/03/13    Entered: 05/03/13 16:40:32    Page 47 of
48

reorganization process, ultimately toward confirmation of the Plan and successful prosecution of the

appeals of the Qualcomm Judgments and Fee Order. The Debtors have filed their required financial

information, their monthly operating reports, and paid the United States Trustee fees for the first

quarter of 2013. The Debtors have filed their plan of reorganization, after having reached a general

consensus of virtually all creditor groups other than Qualcomm, in a mere two months. Clearly, the

best interests of creditors and shareholders are best served by allowing the Debtors to continue their

efforts as debtors-in-possession, and there are no circumstances justifying the appointment of a

trustee.

## IV.  CONCLUSION

The Qualcomm Motion fails to satisfy any of the requisite prerequisites for the relief that it

seeks, and is nothing more than a bald attempt by Qualcomm to derail the appeals of its dubious

judgments and eliminate Qualcomm's considerable litigation risks. Qualcomm has not carried its

burden of demonstrating any continuing losses to the estates, or of any diminution of value in estate

assets, has not demonstrated that there is not a reasonable prospect of rehabilitation, and has not

shown gross mismanagement of the estates or any other cause for conversion. By the same token, it

is evident that continued administration of the chapter 11 cases by the Debtors is warranted and

supported by the Committee and other creditor groups, and that the appointment of a chapter 11

trustee is not justified and would not serve the best interests of creditors.

For each of these reasons, the Debtors respectfully submit that the Qualcomm Motion should

be denied.

DATED: May 3, 2013

MEYERS LAW GROUP, P.C.

By      /s/  Merle C. Meyers
        Merle C. Meyers, Esq.
        Attorneys for Debtors-in-Possession

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

43