MEYERS LAW GROUP, P.C.
MERLE C. MEYERS, ESQ. CA Bar #66849
MICHELE THOMPSON, ESQ. CA Bar #241676
44 Montgomery Street, Suite 1010
San Francisco, CA 94104
Telephone: (415) 362-7500
Facsimile: (415) 362-7515

Counsel for Gabriel Technologies Corporation
and Trace Technologies, LLC, Debtors

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 13-30340 - DM |
| GABRIEL TECHNOLOGIES CORP. et al., | (Case no. 13-30341) |
| Debtors. | Chapter 11 |
| | (Jointly Administered) |
| | Date: July 30, 2013 |
| | Time: 1:30 p.m. |
| | Court: Courtroom No. 22 |
| | 235 Pine Street, 22nd Floor |
| | San Francisco, CA |
| E.I.N.s 22-3062052; 20-1711149 | Judge: Honorable Dennis Montali |

**DEBTORS' OPPOSITION TO QUALCOMM INCORPORATED'S MOTION FOR
DETERMINATION OF THRESHOLD ISSUES RELATING TO PLAN CONFIRMATION**

# TABLE OF CONTENTS

I.   INTRODUCTION .................................................................................................1

II.   STATEMENT OF FACTS ...................................................................................2

    A.   Debtors and Their Bankruptcy Cases, Generally....................................3

    B.   Qualcomm Litigation ...............................................................................4

    C.   Claims Against the Debtors ......................................................................5

        1.   Northwater Claim...........................................................................5

        2.   Note Claims....................................................................................6

        3.   Other Claims ..................................................................................9

    D.   Joint Plan of Reorganization ...................................................................9

    E.   The Qualcomm Motion ..........................................................................13

III.   DISCUSSION ...................................................................................................14

    A.   Recharacterization of Debt as Equity Is Highly Fact-Specific. ...........14

    B.   Here, Recharacterization Factors Are Inconclusive At Best. ...............17

        1.   Names Given to Instruments.........................................................17

        2.   Presence of Maturity Date ............................................................18

        3.   Presence of Fixed Rates of Interest and Interest Payments .........19

        4.   Source of Repayments of Notes....................................................19

        5.   Adequacy of Capitalization...........................................................19

        6.   Identity of Interest Between Creditor and Stockholder ................20

        7.   Security for the Advances .............................................................21

        8.   Corporation's Ability to Obtain Outside Financing......................21

        9.   Subordination to Claims of Outside Creditors.............................21

        10.   Use of Advances to Acquire Capital Assets ...............................23

        11.   Presence of Sinking Fund for Repayments.................................23

    C.   Until Proven Otherwise, Claims Must Be Treated By Plan As Claims.................23

    D.   No Recharacterized Equity Interest Will Share in Creditor Distributions Under Plan. ...................................................................................26

    E.   There Is No Violation Of Absolute Priority Rule. ................................27

    F.   Usury and Champerty Arguments Are Irrelevant. ................................28

IV.   CONCLUSION .................................................................................................29

LAW OFFICES

**MEYERS LAW GROUP, P.C.**

44 MONTGOMERY STREET, SUITE 1010

SAN FRANCISCO, CALIFORNIA 94104

i

Case 13-30340    Doc# 161    Filed: 07/17/13    Entered: 07/17/13 17:04:31    Page 2 of 33

# TABLE OF AUTHORITIES

**Federal Cases**

*A.R. Lantz Co., Inc. v. United States*, 424 F.2d 1330 (9th Cir. 1970)........................................16, 17, 22

*Gladstone Business Loan, LLC v. Randa Corp.* 2010 WL 4983263 (S.D.N.Y. 2010).......................16

*In re AutoStyle*, 269 F.3d 726 (6th Cir. 2001) ........................................15, 19, 20, 22, 23, 24

*In re Be-Mac Transport Co., Inc.* 83 F.3d 1020, fn. 3 (8th Cir. 1996) ........................................25

*In re Commercial Western Finance Corporation*, 761 F.2d 1329 (9th Cir. 1985).......................26, 27

*In re Fitness Holdings International*, Inc., 2013 WL 1800000 (9th Cir. 2013) ........................................14

*In re Gluth Bros. Const.*, Inc., 424 B.R. 379, 395 (Bankr. N.D.Ill.2009) ........................................16

*In re Golden Plan of California, Inc.*, 829 F.2d 705 (9th Cir. 1987)........................................27

*In re Hyperion Enter Inc.*, 58 B.R. 555 (D.R.I. 1993) ........................................16

*In re Lothian Oil, Inc.*, 650 F.3d 539, 543-44 (5th Cir. 2011) ........................................15

*In re Micro-Precision Technologies, Inc.*, 303 B.R. 238, 247-248 (Bankr. D.N.H. 2003) .................16

*In re Motors Liquidation Co.*, 430 B.R. 65, 75 (Bankr. S.D.N.Y.2010) ........................................16

*In re SCC Kyle Partners, Ltd.*, 2013 WL 2903453 *32 (Bankr. W.D.Tex. 2013) ........................................25

*In re Sentry Operating Company of Texas, Inc.*, 264 B.R. 850, 858-859 (Bankr. S.D.Tex. 2001),.....27

*In re Submicron Systems Corporation*, 432 F.3d 448, 456 (3rd Cir. 2006)........................................16, 17

*Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443 (2007) ........................................15

*Wilbur Security Company v. Commissioner of Internal Revenue*, 279 F.2d 657 (9th Cir. 1960) .........17

**State Cases**

*Educational Employees Credit Union v. Franchise Tax Board*, 2006 WL 52690 (Cal.App. 3rd Dist. 2006) ........................................17

*Harbinger Capital Partners Master Fund 1, Ltd. v. Granite Broadcasting Corporation*, 906 A.2d 218 (Dela. Chancery Ct. 2006) ........................................17

**Statutes**

11 U.S.C. § 1126(a) ........................................24

11 U.S.C. § 1129(b)(2)(B) ........................................27, 28

11 U.S.C. § 502 ........................................14

ii

DEBTORS' OPPOSITION TO QUALCOMM INCORPORATED'S MOTION FOR DETERMINATION OF THRESHOLD ISSUES RELATING TO PLAN CONFIRMATION
28627.DOC

Case 13-30340   Doc# 161   Filed: 07/17/13   Entered: 07/17/13 17:04:31   Page 3 of 33

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

11 U.S.C. § 502(a) ................................................................................................24

11 U.S.C. § 502(b) ................................................................................................15

11 U.S.C. § 544(a)(1) ...........................................................................................24

**Rules**

Fed. R. Bankr. P. 3018(a) ....................................................................................25

Fed.R.Bankr.P. 3007(a) .......................................................................................27

Fed.R.Bankr.P. 3007(b) .......................................................................................27

Fed.R.Bankr.P. 301 .............................................................................................26

Fed.R.Bankr.P. 9014 ...........................................................................................27

**Other Authorities**

*Collier on Bankruptcy* ¶ 502.01 at 502-17 (15th ed. 1984) ..............................26

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

iii

DEBTORS' OPPOSITION TO QUALCOMM INCORPORATED'S MOTION
FOR DETERMINATION OF THRESHOLD ISSUES RELATING TO PLAN CONFIRMATION
28627.DOC

Case: 13-30340    Doc# 161    Filed: 07/17/13    Entered: 07/17/13 17:04:31    Page 4 of
33

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

GABRIEL TECHNOLOGIES CORPORATION ("Gabriel") and TRACE TECHNOLOGIES, LLC ("Trace"), the debtors-in-possession herein (collectively, the "Debtors"), by and through their undersigned counsel, file this memorandum in opposition to the *Motion By Qualcomm Incorporated Motion For Determination Of Threshold Issues Relating To Plan Confirmation, Pursuant To Order On Stipulation (Doc. No. 130), As Amended* (the "Qualcomm Motion," docket no. 145), filed herein by Qualcomm Incorporated ("Qualcomm") on July 1, 2013. As set forth below, the Qualcomm Motion, its second massive effort to derail the Debtors' reorganization before the Court can hear the merits of the Debtors' joint plan, and thereby doom meritorious appeals adverse to Qualcomm, cannot be supported under applicable law.

## I.  **INTRODUCTION**

Qualcomm first attempted to short-circuit the Debtors' reorganization before a plan could be submitted and considered, by a voluminous motion seeking immediate conversion to chapter 7. The conversion motion focused almost exclusively on the misconduct of prior management of the Debtors, based on events occurring years earlier, in order to paint current management with the same broad brush, even though those events, occurring under prior boards of directors and officers, were completely irrelevant to the issues at hand. The Bankruptcy Court ultimately denied Qualcomm's conversion motion and noted that while the motion was "long on rhetoric," it had provided no proof of mismanagement by the Debtors' of their chapter 11 estates (*Memorandum Decision On Motion For Conversion to Chapter 7 Or Appointment Of A Chapter 11 Trustee*, doc. No. 117, 6:22-7:2).

Qualcomm is once again long on rhetoric, with its 50-page Qualcomm Motion[1] that again belabors events from years ago, but presents no more merit than its first effort. First, the motion argues that as a matter of law, millions of dollars of claims fully documented as promissory notes must be recharacterized as equity, even though an overwhelming body of law makes it clear that any

---

[1] Notably, although the Court's order (docket entry no. 157, entered on July 14, 2013), to which Qualcomm stipulated, permitted Qualcomm to file an oversized brief only up to 40 pages, by July 1, 2013, Qualcomm brazenly ignored those restrictions and violated applicable rules. On July 1, 2013, Qualcomm filed its Qualcomm motion that contained exactly 40 pages of text. Then, on July 3, 2013, Qualcomm supplemented its motion by filing an "Exhibit A" to the motion, containing four pages of micro-font, single-spaced text intended to be incorporated into the motion and purporting to be a summary of dozens of promissory notes' terms. In this transparent attempt to evade page limits, Qualcomm effectively filed a brief of at least 50 pages in normal font and spacing. The Court should not consider "Exhibit A" to the Qualcomm Motion.

-1-

such attempt at recharacterization raises intensely factual issues that cannot be resolved simply on a motion as a matter of law. Second, the motion ignores each claimant's right to be treated as a creditor under the plan until proven to be otherwise. And third, and most importantly, the motion completely ignores the provisions of the Debtors' plan itself, which fully addresses the issue and eliminates Qualcomm's absolute priority rule argument entirely: The Plan's express treatment of claims objections and reserved distributions on account of disputed claims, fully ensures that any legitimate challenges to the characterization of claims will be reviewed and prosecuted, and that no payment will be made on any claim that is properly challenged as equity (or challenged on any other ground), until that challenge is resolved.

The context of the Qualcomm Motion is notable as well. Even though Qualcomm's "threshold" issue is nothing more than another confirmation issue that should be addressed, if at all, at a confirmation hearing, Qualcomm's counsel insisted to the Court that its challenge to the Debtors' plan was so compelling as a matter of law that it should be addressed out of turn, at the time of the disclosure statement hearing, so that the confirmation train could be stopped in its tracks at that early stage. Now that the Qualcomm Motion has been filed, it is evident that it is nothing of the sort. The motion ignores the factual nature of any recharacterization dispute and ultimately makes an absolute priority argument that simply has no relevance to the Debtors' plan, all in an effort once again to stop midstream the Debtors' appeal and thereby to preserve an unjust and temporary victory that Qualcomm has enjoyed in the District Court. Like its conversion motion, however, the Qualcomm Motion has not presented a case for denying the Debtors their day in Court, and the motion should therefore be denied.

## II.   STATEMENT OF FACTS

The following facts are established by the record of the Court and the declarations of Byron Nelson (the "Nelson Declaration") and Jonathan Piurko (the "Piurko Declaration") filed concurrently herewith:[2]

---

[2] For the sake of brevity, the Debtors will not repeat the facts established earlier in their opposition to Qualcomm's conversion motion, other than to summarize background facts to the extent relevant here and to incorporate that opposition and supporting declarations, docket nos. 90 through 94, for the record.

-2-

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

## A.    Debtors and Their Bankruptcy Cases, Generally

1.     On February 14, 2013 (the "Petition Date"), each of the Debtors commenced a chapter 11 case by filing a voluntary petition for relief under the provisions of chapter 11 of the Bankruptcy Code. Trace, a Nevada limited liability company, is the wholly owned subsidiary of Gabriel, a Delaware corporation.

2.     Each of the Debtors remains in possession of its property and estate, no trustee having been appointed, and by order entered on February 25, 2013, this Court granted the Debtors' motions seeking joint administration of their chapter 11 cases.

3.     Whereas the Debtors' origins stem from events more than a decade ago, their more recent history is all that is relevant. In particular, although the Debtors once operated businesses involved in location technology, losses in those businesses compelled their discontinuance, and by 2009, the Debtors' primary activity became the prosecution of claims against Qualcomm, as described below, and against other parties, including former management.

4.     In 2009, George Tingo, Jr. became President and Chief Executive Officer of each of the Debtors. Mr. Tingo had no prior involvement with the Debtors. In 2009 and 2010, the board of directors of Gabriel (and the board of managers of Trace) was reconstituted and the directors now serving on Gabriel's board were elected: Dave Clark, Tom Alesio, Jack Manning and Mark Bandsuch. All four have been directors since October 2010, and none of them became a director earlier than April 2009.

5.     Immediately before the Petition Date, Mr. Tingo resigned in order to permit a change in management and a fresh look at the direction of the companies. Byron Nelson was then appointed as the Interim Chief Executive Officer of both Debtors, pending the appointment of a permanent Chief Executive Officer. On March 6, 2013, the board of each of the Debtors appointed Mr. Bandsuch as the permanent Chief Executive Officer, and Mr. Nelson became the President of each of the Debtors.

6.     At all times prior to the Petition Date, Gabriel was a publicly traded corporation, with its shares held by more than 3,000 shareholders throughout the country. More than 40,000,000 shares of stock were issued by Gabriel, as evidenced by its S.E.C. filings.

-3-

DEBTORS' OPPOSITION TO QUALCOMM INCORPORATED'S MOTION
FOR DETERMINATION OF THRESHOLD ISSUES RELATING TO PLAN CONFIRMATION
28627.DOC

Case: 13-50340    Doc# 161    Filed: 07/17/13    Entered: 07/17/13 17:04:31    Page 7 of 33

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

## B.    Qualcomm Litigation

7.     The Debtors are corporate successors of Locate Networks LLC ("Locate"), a Seattle-area technology startup formed in 1999 to develop a portable, low-power GPS tracking device that would operate over a paging network.  In 1999, Locate entered into a license agreement with an entity named SnapTrack, Inc. ("SnapTrack"), which was later acquired by Qualcomm.

8.     The Debtors believe that in the years following entry into the license agreement, SnapTrack and Qualcomm took trade secret information that had been communicated to them by the Debtors in confidence, incorporated that information into products as well as industry standards that Qualcomm was developing, and used the information to apply for patents in the names of SnapTrack's and Qualcomm's own personnel.

9.     Accordingly, on October 24, 2008, the Debtors filed a complaint (as later amended, the "Complaint") against Qualcomm, initiating a civil action entitled *Gabriel Technologies Corporation, et.al. v. Qualcomm Incorporated, et. al*., case no. 08CV1992 (the "Qualcomm Litigation") in the United States District Court for the Southern District of California (the "District Court").  The Complaint charged Qualcomm, SnapTrack and Norman Krasner, a founding member of SnapTrack (collectively, the "Defendants"), with misappropriating trades secrets, breach of contract, fraud and other claims.

10.     Litigation ensued and in March 2010, the Debtors replaced their original counsel with the law firm of Hughes Hubbard & Reed LLP ("HHR"), which, after its own due diligence and research, agreed to represent the Debtors in the litigation on a contingency basis.  HHR is a venerable firm established more than a century ago, with a illustrious history of successful litigation on behalf of a diverse rostrum of clients.

11.     Unfortunately, the Qualcomm Litigation was hugely expensive for the Debtors, due in large part to aggressive litigation tactics employed by the Defendants, and by 2011 had taken an unfortunate turn.  In a series of orders culminating in an order dated December 12, 2011, the District Court denied the Debtors any discovery with regard to trade secrets, and on March 13, 2012, the District Court, having denied the Debtors the opportunity to conduct core discovery based on rulings the Debtors believe were erroneous, granted partial summary judgment against all of the Debtors'

-4-

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

trade secret claims based on a statute of limitations defense.

12.     Then, on September 28, 2012, the District Court granted final summary judgment against all of the Debtors' remaining claims, by applying a summary judgment standard under which the Debtors were required to prove their case to the Court by clear and convincing evidence in order to avoid summary judgment.  Additionally, on February 1, 2013, the District Court entered an order (the "Fee Order") granting the Defendants' motion, and awarding to the Defendants the amount of $12,401,014.51 as against the Debtors, and the amount of $64,316.50 as against local counsel.

13.     The Debtors have filed notices of appeal of the District Court's discovery and summary judgment rulings (collectively, the "Qualcomm Judgments") and the Fee Order.  Both appeals are pending in the United States Court of Appeals for the Federal Circuit (the "Federal Circuit Court").  On May 1, 2013, the Debtors filed their opening brief in support of their appeal from the Qualcomm Judgments.  As set forth in that brief, the Debtors believe that the Qualcomm Judgments (and the Fee Order that followed) are manifestly unjust and legally improper, and that all should be overturned on appeal, following the Federal Circuit Court's *de novo* review of the District Court's rulings.

**C.      Claims Against the Debtors**

14.     The aggregate principal amount of claims against the Debtors, excluding the disputed claim of Qualcomm, is in excess of $13,000,000.  With the inclusion of non-principal charges owing under contractual terms to claimants, including agreed multiple returns of principal, those claims exceed $40,000,000.

15.     Claims against the Debtors have been filed and scheduled, as reflected in the Court's records, in an aggregate amount in excess of $25,373,440.  Those claims, both secured and unsecured, fit into a number of categories, including the following:

**1.      Northwater Claim**

16.     The primary secured lender to the Debtors prior to the Petition Date was Intellectual Property Fund L.P. 3A ("Northwater"), an equity fund based in Toronto, Canada.  Northwater is owed in excess of $15,000,000, including non-principal charges, and asserts an all-encompassing security interest in all of Trace's assets, including general intangibles such as claims against

-5-

DEBTORS' OPPOSITION TO QUALCOMM INCORPORATED'S MOTION
FOR DETERMINATION OF THRESHOLD ISSUES RELATING TO PLAN CONFIRMATION
28627.DOC

Case: 13-30340    Doc# 161    Filed: 07/17/13    Entered: 07/17/13 17:04:31    Page 9 of 33

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

Qualcomm and other defendants.

17. The Northwater claim is based on cash advances made by Northwater to or on behalf of the Debtors in the approximate amount of $3,100,000, beginning in 2011. Attached as **Exhibit "A"** to the Piurko Declaration is a spreadsheet reflecting cash transfers made by Northwater as loans to the Debtors. Attached as **Exhibits "B,"** respectively, to the Piurko Declaration are the note and UCC-1 financing statement that document Northwater's secured claim and perfection of its security interest. Northwater's lien encumbering Trace's assets was granted by Trace in Section 7.1 of a Note Purchase Agreement dated as of September 2, 2011 (the "2011 Note Purchase Agreement"), which is attached as **Exhibit "C"** to the Piurko Declaration.

18. As reflected in the Piurko Declaration, Northwater agreed to make its secured loan to the Debtors only after thorough due diligence, including a review of the legal theories and facts underlying the Qualcomm Litigation, full documentation of the loan and security interests, and customary opinion letters from the Debtors' counsel regarding the efficacy of the loan. Prior to making its loan to the Debtors, Northwater had no connection whatsoever to either of the Debtors or their officer or directors.

**2. Note Claims**

19. Other substantial claims owed by the Debtors arise from more than 70 promissory notes issued from time to time by the Debtors in exchange for advances of funds. Since 2007, the Debtors have issued promissory notes in different amounts, pursuant to different repayment terms, in order to fund administrative costs and the prosecution of the Qualcomm Litigation. Examples of those notes include the following:

(a) A promissory note in the amount of $100,000 dated May 17, 2007, payable to Barry and Constance Nelson, a copy of which is attached as **Exhibit "A"** to the Nelson Declaration. The note accrued interest at the rate of 8.0% per annum and was due and payable on July 1, 2008. The Nelsons' loan also entitled them to a warrant to purchase 100,000 shares of Gabriel's stock, evidenced in a warrant certificate attached as **Exhibit "B"** to the Nelson Declaration, and an additional payment in the event of success in the Qualcomm Litigation.

-6-

DEBTORS' OPPOSITION TO QUALCOMM INCORPORATED'S MOTION
FOR DETERMINATION OF THRESHOLD ISSUES RELATING TO PLAN CONFIRMATION
28627.DOC

Case 13-30340 Doc# 161 Filed: 07/17/13 Entered: 07/17/13 17:04:31 Page 10 of 33

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

(b)     A promissory note in the amount of $12,000 dated March 31, 2009, payable to Blackman & Associates, P.C., a copy of which is attached as **Exhibit "C"** to the Nelson Declaration.  The note accrued interest at the rate of 4.0% per annum and was due and payable upon demand by the noteholder.  The note also entitled the holder to an additional cash payment or shares of stock of Gabriel, at the holder's option.

(c)     Various promissory notes issued in 2010, a form of which is attached as Exhibit "11" to the Janet Gertz declaration filed by Qualcomm with the Qualcomm Motion.  The notes accrued interest at the rate of 6.0% per annum and were due and payable on December 31, 2010.  The notes also entitled the holders to additional payment in the event of success in the Qualcomm Litigation, and were to be secured by any recovery in the Qualcomm Litigation or other litigation prosecuted against a former insider of the company (the "Whittle Litigation").

20.     As of September 2, 2011, the Debtors and their noteholders entered into the 2011 Note Purchase Agreement, by which the dozens of promissory notes issued over the prior four years were restructured and reissued in the forms of replacement promissory notes.  Among other replacement notes were the following examples:

(a)     Senior Secured Promissory Notes, the form of which is attached to the 2011 Note Purchase Agreement as Exhibit A-1.  These notes were due and payable on the earlier of October 11, 2020 or a successful conclusion of the Qualcomm Litigation, in an amount equal to five times the principal amount of the note, and were secured by all assets of Trace, pursuant to Section 7.1 of the 2011 Note Purchase Agreement.

(b)     The Replacement April 2009 Notes, the form of which is attached to the 2011 Note Purchase Agreement as Exhibit B-1.  These notes were due and payable on the earlier of October 11, 2020 or a successful conclusion of the Qualcomm Litigation, in an amount equal to two times the principal amount of the note, plus a share of any net recovery in the Qualcomm Litigation.

(c)     The Replacement August 2009 Notes, the form of which is attached to the 2011 Note Purchase Agreement as Exhibit B-2.  These notes were due and payable on the

-7-

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

earlier of October 11, 2020 or a successful conclusion of the Qualcomm Litigation, in an amount equal to two times the principal amount of the note, plus a share (different than the Replacement April 2009 Notes) of any net recovery in the Qualcomm Litigation.

(d)     The Replacement January 2010 Notes, the form of which is attached to the 2011 Note Purchase Agreement as Exhibit B-3. These notes accrued interest of 6.0% per annum and were due and payable on the earliest of October 11, 2020, a successful conclusion of the Qualcomm Litigation, or a successful conclusion of the Whittle Litigation. The noteholders were also entitled to a share of any recovery in the Qualcomm Litigation.

(e)     The Replacement February 2010 Notes, the form of which is attached to the 2011 Note Purchase Agreement as Exhibit B-4. These notes accrued interest of 6.0% per annum and were due and payable on the earlier of October 11, 2020, and a successful conclusion of the Qualcomm Litigation. The noteholders were also entitled to a share of any recovery in the Qualcomm Litigation.

(f)     The Replacement 2007/2008 Notes, the form of which is attached to the 2011 Note Purchase Agreement as Exhibit C-1. These notes were due and payable on the earlier of October 11, 2020 or a successful conclusion of the Qualcomm Litigation, in an amount equal to three times the principal amount of the note, or two times the principal amount if the holder chose to receive certain replacement warrants for stock.

(g)     A Replacement Bardsley Note, the form of which is attached to the 2011 Note Purchase Agreement as Exhibit C-2. This note, issued to Craig Bardsley and Dawn Berkvam, was due on the earlier of October 11, 2020 or a successful conclusion of the Qualcomm Litigation, in an amount equal to the principal sum ($2,961,667.20) plus the amount of $518,291.76.

21.     Under the terms of the 2011 Note Purchase Agreement, the parties' restated claims are subject to a distribution formula, or "waterfall," for repayment of debts in the event of a recovery of funds in the Qualcomm Litigation, with some note claims having priority and subordination rights over others.

22.     In short, there are numerous variations and permutations of terms of promissory notes

-8-

DEBTORS' OPPOSITION TO QUALCOMM INCORPORATED'S MOTION
FOR DETERMINATION OF THRESHOLD ISSUES RELATING TO PLAN CONFIRMATION
28627.DOC

Case 13-30340   Doc# 161   Filed: 07/17/13   Entered: 07/17/13 17:04:31   Page 12 of 33

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

issued by the Debtors, both over the course of several years and even within the restructured replacement notes issued in 2010, with different maturity dates, collateral rights, interest rates and distribution priorities.

23.    Indicative of the numerous differing sets of terms that underlie the promissory notes, Qualcomm has attempted to summarize the terms of just the notes issued in 2007 and 2008, in its "Exhibit A," and has needed four pages of micro-font, single spaced paragraphs to do so. The variations in note terms have compelled Qualcomm to use 38 separate paragraphs to describe just the notes of those two years, without inclusion of subsequent years' notes.

**3.    Other Claims**

24.    In addition, other claims are asserted against the Debtors, independent of any loans and notes. For example:

(a)    IronHorse LLC has filed a claim, no. 3, in the amount of $23,000.00, for services rendered and owed under a signed settlement agreement.

(b)    Marc T. Bowman has filed a claim, no. 55, in the amount of $4,445.00 for accounting services.

(c)    The law firm of Munck Carter, LLP asserts a secured claim against the Debtors pursuant to an August 30, 2010 settlement agreement, in an amount equal to a specified share of any recovery in the Qualcomm Litigation.

(d)    The law firm of Wang, Hartmann, Gibbs & Cauley, P.L.C. asserts a secured claim against the Debtors pursuant to a settlement agreement, in an amount equal to a specified share of any recovery in the Qualcomm Litigation.

(e)    The law firm of Hughes Hubbard Reed LLC asserts a secured claim against the Debtors pursuant to an engagement agreement, in an amount equal to a specified share of any recovery in the Qualcomm Litigation.

**D.    Joint Plan of Reorganization**

25.    One of the fundamental purposes of the Debtors' filing of their voluntary petitions, aside from the need to prevent a dismemberment of the their estates through enforcement of the Fee Order, was to facilitate a restructuring of the Debtors' obligations and to create a means to obtain

-9-

DEBTORS' OPPOSITION TO QUALCOMM INCORPORATED'S MOTION
FOR DETERMINATION OF THRESHOLD ISSUES RELATING TO PLAN CONFIRMATION
28627.DOC

Case 13-30340    Doc# 161    Filed: 07/17/13    Entered: 07/17/13 17:04:31    Page 13 of 33

additional funding necessary to prosecute the Debtors' appeals of the Qualcomm Judgments and the Fee Order. Underlying this objective are these critical considerations:

(a) Qualcomm's litigation tactics have successfully stripped the Debtors of the resources necessary to continue the prosecution of the case, and new funding is necessary in order to continue that prosecution, particularly once the pending appeals are determined (presumably in the Debtors' favor);

(b) In order to obtain such new funding, the Debtors must be able to offer to a prospective lender a senior secured position with respect to the Debtors' assets, particularly the claims asserted against Qualcomm;

(c) Under the 2011 Note Purchase Agreement, both the senior secured position and several tranches of security interests junior thereto have been committed, so that if a new senior security interest is to be granted, existing secured obligations must be restructured; and

(d) It is important to restructure the Debtors' secured obligations as well to facilitate a more favorable outcome for general unsecured creditors.

26. With those objectives in mind, the Debtors and their counsel spent considerable effort in the three months following the Petition Date in formulating and negotiating a joint plan of reorganization that would be acceptable to all significant creditor constituencies (other than Qualcomm, which resists all of the Debtors' efforts to reorganize).

27. Those efforts were successful, resulting in the filing of the *Debtors' Joint Plan of Reorganization* (docket no. 81) on April 24, 2013, and the *Debtors' First Amended Joint Plan of Reorganization* (the "Plan," docket no. 119) on June 7, 2013. The Plan is supported by the Official Committee of Unsecured Creditors appointed herein (the "Committee"), Northwater, various secured noteholders and HHR, all of the principal creditor constituencies in the Debtors' cases (other than Qualcomm).

28. The Plan, through the consensual efforts of each of those constituencies, provides for new funding and for shared sacrifice among every class of creditors (other than unsecured creditors, including Qualcomm). In particular, among the significant concessions made by creditor groups in order to facilitate confirmation of the Plan are the following (capitalized terms are as defined in the

-10-

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

Plan):

(a) Northwater has agreed to lend up to $500,000 for plan implementation costs, and up to an additional $1,000,000 for the costs of resumed prosecution of the Qualcomm Litigation following reversal and remand to the District Court, through a Reorganization Loan. The Reorganization Loan will be repaid, if at all, _only through recoveries by the Reorganized Debtor in the Qualcomm Litigation_ (Plan, Sec. 7.3).

(b) Northwater has also agreed to share the lien and priority of its Reorganization Loan with any third party willing to provide additional funding for the resumed prosecution of the Qualcomm Litigation following reversal and remand to the District Court, upon the same repayment terms as the Reorganization Loan (Plan, Sec. 7.3).

(c) Northwater has agreed to share its priority position under the 2011 Note Purchase Agreement with other creditors, and particularly with general unsecured creditors, in order to enhance any recovery by unsecured creditors in the event of recovery in the Qualcomm Litigation, _and has agreed to forego its lien, and any claim whatsoever, against all assets of the Debtors other than any recovery from Qualcomm_ (Plan, Secs. 5.1, 7.9.5 and 7.11).

(d) The Debtors' bankruptcy counsel has agreed to defer payment of a portion of its fees in exchange for a success bonus earned only upon a recovery in the Qualcomm Litigation, in order to reduce required funding upon Plan confirmation (Plan, Secs. 3.5.2(d), 7.9.3.2).

(e) HHR, which holds a lien to secure payment of its contingency fee, has agreed to subordinate its lien to liens needed to secure deferred administrative costs, the Reorganization Loan and any postpetition, pre-confirmation loans (Plan, Sec. 7.9.4).

(f) HHR has also agreed to certain reductions of its contingency fee in identified circumstances (Plan, Sec. 5.4).

(g) Secured noteholders have agreed to share their priority position under the 2011 Note Purchase Agreement, like Northwater, with general unsecured creditors (Plan, Sec. 7.9.5) and have also agreed, like Northwater, to waive their security interests in all assets of

-11-

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

DEBTORS' OPPOSITION TO QUALCOMM INCORPORATED'S MOTION
FOR DETERMINATION OF THRESHOLD ISSUES RELATING TO PLAN CONFIRMATION
28627.DOC

Case 13-20340   Doc# 161   Filed: 07/17/13   Entered: 07/17/13 17:04:31   Page 15 of 33

LAW OFFICES
**MEYERS LAW GROUP, P. C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

the Reorganized Debtor other than the claims asserted against Qualcomm, in order to enhance any recoveries by general unsecured creditors (Plan, Secs. 5.5-5.7, 7.11).

(h)    The Plan preserves all of Qualcomm's rights, and in the event Qualcomm's disputed claim is allowed, the Plan provides for distributions on account of that claim in the same manner as all other allowed general unsecured claims (Plan, Secs. 5.10, 7.10, 7.11).

29.    In short, with a general consensus of virtually all creditor constituencies other than Qualcomm, the Plan provides for the restructuring of obligations and new funding needed by the Debtors to complete the appeal of the Qualcomm Judgments and, assuming success in the appeal, to continue prosecution of the underlying litigation against Qualcomm.  At the same time, the Plan provides for enhanced recoveries by unsecured creditors (including Qualcomm, if its disputed claim is allowed), through reduced priorities for secured creditors of any Qualcomm recovery, and waiver of secured claims entirely as against all other assets.

30.    Importantly with regard to the pending Qualcomm Motion, the Plan provides that certain claims, called the "Committee Claims," held by the Debtors will be assigned to an independent Litigation Trustee, for review and, if appropriate, prosecution, for the benefit of unsecured creditors (Plan, Sec. 7.4).  Those Committee Claims, defined in paragraph no. 20 of Exhibit "A" to the Plan, are composed of two categories of claims:

(a)    Claims held by the Debtors against current or former insiders or professionals retained prior to the Petition Date; and

(b)    All objections or challenges to the allowance of any Claim based upon any of the following grounds:  (i) mandatory subordination under Section 510(b) of the Bankruptcy Code; (b) equitable subordination under Section 510(c) of the Bankruptcy Code; (c) _recharacterization of debt as equity_; or (d) avoidance of liens or security interests securing such Claim.

31.    Pursuant to Sections 7.4.3 and 7.4.4 of the Plan, the Litigation Trustee will have absolute discretion to prosecute, settle or abandon each Committee Claim, including any right to object to a claim on the basis of recharacterization as equity.  The Litigation Trustee will be approved by the Bankruptcy Court and shall act as a fiduciary to all unsecured creditors, including Qualcomm

-12-

DEBTORS' OPPOSITION TO QUALCOMM INCORPORATED'S MOTION
FOR DETERMINATION OF THRESHOLD ISSUES RELATING TO PLAN CONFIRMATION
28627.DOC

Case 13-20340    Doc# 161    Filed: 07/17/13    Entered: 07/17/13 17:04:31    Page 16 of 33

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

to the extent that it holds an allowed claim (Sections 7.4, 7.4.2 and 7.4.3). The Litigation Trustee will be compensated by a combination of estate funds, contingency fees and third party loans, if available (Section 7.4.7 of the Plan).

32. Thus, under Section 7.4 of the Plan, to the extent that any Claims asserted against the estate are subject to valid challenges based on recharacterization as equity, among other grounds, the Litigation Trustee will be authorized to challenge those claims and seek their disallowance. Once disallowed (or recharacterized as equity interests within Class F), the Claims will not receive any distribution other than through a surplus after all creditors have been paid in full (Sections 5.11 and 7.6.7.2 of the Plan). In short, any claim asserted against the estate that is recharacterized as equity, through the efforts of the independent Litigation Trustee, will not be paid as an Allowed Claim but will instead be treated as an equity interest within Class F of the Plan.

33. The Plan does not deem any claims automatically allowed. Each claim is entitled to the treatment provided by the Plan only to the extent that it is allowed, and the Reorganized Debtor and, in the case of Committee Claims, the Litigation Trustee, reserve full rights to challenge and seek the disallowance of any claim. Thus, to the extent that any claim may be recharacterized as equity, as Qualcomm argues, the Plan does not in any way prejudice the Litigation Trustee's ability to seek such recharacterization.

**E.     The Qualcomm Motion**

34. The Qualcomm Motion asks the Court to determine, as a matter of law, that the Plan cannot be confirmed. The motion was brought out of sequence, before confirmation objections are briefed and considered generally, because Qualcomm's counsel has insisted that its argument against Plan confirmation, based on recharacterization of claims, is compelling and conclusive, based on indisputable facts. As discussed below, this is not so.

35. The Qualcomm Motion is based on the following argument:

(a)     That all claims based on notes issued by the Debtors are subject to recharacterization as equity, as a matter of law;

(b)     That the Plan permits distributions upon those claims *pari passu* with "true" creditors' claims, notwithstanding the fact that they are equity rather than debt; and

-13-

DEBTORS' OPPOSITION TO QUALCOMM INCORPORATED'S MOTION
FOR DETERMINATION OF THRESHOLD ISSUES RELATING TO PLAN CONFIRMATION
28627.DOC

Case 13-30340   Doc# 161   Filed: 07/17/13   Entered: 07/17/13 17:04:31   Page 17 of 33

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

(c)     Therefore, permitting such claims to share on a *pro rata* basis with "true" claims, even though they are actually equity interests, violates the absolute priority rule of Section 1129(b)(2)(B) of the Bankruptcy Code.

36.     That argument, however, cannot be sustained.   As discussed below, each of its premises is inaccurate, and most importantly, the Plan does not allow any equity interests, whether asserted as such or asserted as debt and recharacterized as equity, to share in any distributions unless and until allowed claims have been paid in full.   There is therefore no violation of the absolute priority rule, the sole basis of Qualcomm's motion, and the motion must therefore fail.

### III.  DISCUSSION

The two fundamental premises of the Qualcomm Motion are false, and therefore, the motion's conclusion, *to wit*, that the Plan violates the absolute priority rule, is equally false.  First, Qualcomm has not shown, and cannot show, that any of the note claims must be recharacterized as equity as a matter of law, given the numerous factual issues that such an argument raises, much less can Qualcomm show that the Plan's classifications are improper because it characterizes such claims as claims until proven otherwise.  Second, it is simply not true that the Plan allows any claims that can be recharacterized as equity to share in distributions to creditors.  In fact, the Plan expressly permits the Litigation Trustee to challenge any such claims, and if that challenge is successful, those claims will be paid only if there is a surplus after full payment of all allowed claims.

Accordingly, Qualcomm argument that the absolute priority rule is violated by the Plan is not sound, and must be rejected.

**A.     Recharacterization of Debt as Equity Is Highly Fact-Specific.**

In *In re Fitness Holdings International*, Inc., 2013 WL 1800000 (9th Cir. 2013), the Ninth Circuit Court of Appeals recently held that a bankruptcy court has the authority to recharacterize debt as equity if it does not have the characteristics of a "right to payment" under state law.  11 U.S.C. § 502; *In re Fitness Holdings International*, Inc., 2013 WL 1800000 *1 (9th Cir. 2013).  As earlier recognized by the Fifth Circuit Court of Appeals in *In re Lothian Oil, Inc.,* 650 F.3d 539, 543-44 (5th Cir. 2011), and adopted by the Ninth Circuit in *Fitness Holdings*, to the extent that a bankruptcy court determines that a claim is not a right to payment under state law, and therefore not

-14-

DEBTORS' OPPOSITION TO QUALCOMM INCORPORATED'S MOTION
FOR DETERMINATION OF THRESHOLD ISSUES RELATING TO PLAN CONFIRMATION
28627.DOC

Case 13-30340   Doc# 161   Filed: 07/17/13   Entered: 07/17/13 17:04:31   Page 18 of 33

a debt under the Bankruptcy Code, the court has authority to disallow the claim under Section 502(b) of the Bankruptcy Code, not under the equitable authority of Section 105 of the Bankruptcy Code.

Specifically, the Ninth Circuit Court of Appeals held that Supreme Court authority, including *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443 (2007), requires state law to govern the substance of claims and, as a result, also the characterization of a claim as debt or equity. Consequently, the Ninth Circuit and the Fifth Circuit have adopted an approach that permits a court to recharacterize debt as equity if state law would do the same. Most bankruptcy and appellate courts have applied the eleven factors articulated by the Sixth Circuit Court of Appeals in its decision in *In re AutoStyle*, 269 F.3d 726 (6th Cir. 2001) ("*AutoStyle*"), which considers the following: (1) the names given to the certificates evidencing the indebtedness, (2) the presence or absence of a fixed maturity date and schedule of payments, (3) the presence or absence of a fixed rate of interest and interest payments, (4) the source of repayments, (5) the adequacy or inadequacy of capitalization, (6) identity of interest between creditor and stockholder, (7) the security, if any, for the advances, (8) the corporation's ability to obtain financing from outside lending institutions, (9) the extent to which the advances were subordinated to the claims of outside creditors, (10) the extent to which the advance was used to acquire capital assets, and (11) the presence or absence of a sinking fund to provide repayments. *In re AutoStyle*, 269 F.3d 726, 748 (6th Cir. 2001).[3]

All courts agree that any recharacterization analysis must be made on a case-by-case basis, and that no one factor is controlling or decisive. *In re Micro-Precision Technologies, Inc.*, 303 B.R. 238, 247-248 (Bankr. D.N.H. 2003); citing *Auto Style Plastics*, 269 F.3d *supra* at 750; see also *In re Hyperion Enter Inc.*, 58 B.R. 555 (D.R.I. 1993) (finding that the factors in the recharacterization analysis must be considered in the aggregate and that no one factor is determinative).

---

[3] In the Qualcomm Motion, Qualcomm has relied instead on the slightly different factors stated in *A.R. Lantz Co., Inc. v. United States*, 424 F.2d 1330 (9th Cir. 1970), presumably because Qualcomm preferred that decision's formulation. But that case is distinguishable because it concerns federal tax law, and decided a tax issue, unlike *AutoStyle*, which determined whether to recharacterize a claim in a bankruptcy case as an equity interest. See also, *In re Submicron Systems Corporation*, 432 F.3d 448, 456 (3rd Cir. 2006), in which the 11 factors described in the *Autostyle* decision are adopted.

-15-

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

As demonstrated even by the cases cited by Qualcomm in its motion, the inquiry as to whether a claim is debt or equity is extremely fact-intensive. *Gladstone Business Loan, LLC v. Randa Corp.* 2010 WL 4983263 (S.D.N.Y. 2010), fn 3; see also, *In re Motors Liquidation Co.*, 430 B.R. 65, 75 (Bankr. S.D.N.Y.2010) (holding that the secured debt at issue should not be recharacterized as equity based on several factors including that the loan was documented as a loan and had interest terms); *In re Gluth Bros. Const.*, Inc., 424 B.R. 379, 395 (Bankr. N.D.Ill.2009) (explaining that courts weigh multiple factors in determining whether a debt should be re-characterized as equity capital and that this is "a largely factual determination, and no single factor is controlling or decisive.").

The issue as to whether a claim is debt or equity is ultimately a test of the parties' intent in creating the transaction. *In re Submicron Systems Corporation*, 432 F.3d 448, 456 (3rd Cir. 2006); *A.R. Lantz Co., Inc.*, 424 F.2d *supra*, at 1333. That intent is inherently dependent on the facts and circumstances of each challenged claim, and cannot be determined summarily as a matter of law.

In fact, Qualcomm's own reliance on case law demonstrates that recharacterization is not a matter of summary adjudication: In not one decision cited by Qualcomm did the court determine that obligations asserted as debt were in fact equity without a trial or evidentiary hearing to assess facts as applied to the eleven factors. See, for example, *A.R. Lantz Co., Inc*, *supra*, upon which Qualcomm relies heavily, in which the appellate court reviewed a judgment following trial, and determined that the trial court's decision was not clearly erroneous. See also, *Educational Employees Credit Union v. Franchise Tax Board*, 2006 WL 52690 (Cal.App. 3rd Dist. 2006), also relied upon by Qualcomm, in which the appellate court reviewed the trial court's determinations following oral testimony (*Id*. at *3). Further, see *Wilbur Security Company v. Commissioner of Internal Revenue*, 279 F.2d 657 (9th Cir. 1960), relied upon by Qualcomm, in which the appellate court reviewed the decision of the Tax Court following trial, and commented upon the trial court's opportunity to weigh the credibility of witnesses (*Id*. at 659). Finally, see *In re Submicron Systems Corporation*, *supra*, also relied upon by Qualcomm, in which the appellate court reviewed the district court's decision following trial (*Id*. at 453).

Only in *Harbinger Capital Partners Master Fund 1, Ltd. v. Granite Broadcasting*

-16-

DEBTORS' OPPOSITION TO QUALCOMM INCORPORATED'S MOTION
FOR DETERMINATION OF THRESHOLD ISSUES RELATING TO PLAN CONFIRMATION
28627.DOC

Case 13-30340   Doc# 161   Filed: 07/17/13   Entered: 07/17/13 17:04:31   Page 20 of 33

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

1    *Corporation*, 906 A.2d 218 (Dela. Chancery Ct. 2006), also relied upon by Qualcomm, did the court

2    determine that an interest was equity without a trial, but there, there was no factual dispute:  The

3    instrument in question was mandatorily redeemable preferred stock (*Id*. at 224).  The central issue in

4    that decision was not whether the preferred stock was equity, but rather whether the stockholders had

5    standing to sue as equity interest holders.

6          In this case, Qualcomm argues for recharacterization of scores of claims, asserted by dozens

7    of different claimants based on numerous promissory notes issued over a period of five years on

8    different terms and under varying circumstances.  The multitude of permutations and variations in

9    note terms and circumstances is illustrated by Qualcomm's "Exhibit A," which attempts to summarize

10   the terms of notes issued in just two years of the Debtors' funding -- that summary requires dozens of

11   paragraphs and four pages of micro-font, single-spaced text just to set out the many notes' principal

12   terms in summary form.  Qualcomm's implicit presumption that a singular intent of all noteholders,

13   over all five years and in all circumstances, can be divined is false, and the fact-intensive nature of a

14   recharacterization analysis precludes the wholesale claim rejection urged by Qualcomm in its motion.

15         As a result, and as a brief analysis of each of the eleven factors below will demonstrate,

16   Qualcomm's argument that all note claims can be recharacterized as equity as a matter of law, must

17   be rejected.

18   **B.      Here, Recharacterization Factors Are Inconclusive At Best.**

19         Applying the eleven *AutoStyle* factors to this case, it is obvious that no conclusion can be

20   reached on a summary basis, as each factor must be weighed, and most of the factors indicate debt

21   rather than equity in any event.  Each note claim must be assessed with the participation of the

22   claimant, to determine the parties' original intent and to assess how the many factors are applied.  It

23   cannot be credibly argued, as Qualcomm attempts, that the factors so clearly weigh in favor of equity

24   that the note claims must be recharacterized as equity as a matter of law.

25         In particular:

26   **1.      Names Given to Instruments**

27         The absence of notes or other instruments of indebtedness would be a strong indication that

28   the advances were capital contributions, not loans.  *In re AutoStyle Plastics, Inc.*, 269 F.3d *supra* at

-17-

750. However, here, there are clearly notes and other debt instruments, providing strong evidence of loans, not capital contributions: Each of the claims in question arises from a signed and issued promissory note, with stated terms of indebtedness. For example, see the notes described in paragraphs 17, 19 and 20 above – each of them are titled "Promissory Note" and contain terms of indebtedness and repayment. Each of the claims was also shown in the Debtors' filings and financial reports as debt, not equity.

Notably, this documentation was distinguished from true equity issued by the Debtors, which was evidenced by warrants and stock certificates – see, for example, the warrant certificate issued to Barry and Constance Nelson, described in paragraph 19(a) above. In fact, Gabriel issued more than 40,000,000 shares of stock which were publicly traded and held by more than 3,000 shareholders. Clearly, when the Debtors meant to issue equity, they documented it as equity, and when they meant to issue debt, they documented it as debt.

Qualcomm argues that the notes are not really notes, because they do not "provide an unconditional promise to pay" and "are expressly made contingent on the occurrence of an IP Event" (Qualcomm Motion, 25:10-12). This is simply untrue. Most or all of the notes have a date certain (whether 2010 or 2020) by which payment must be made, and whereas a portion of the amount due is measured by the outcome of the Qualcomm Litigation, in virtually all notes, a base amount is due regardless of that outcome. The fact that a portion of the payable amount in a note is contingent upon the outcome of an event, including litigation, does not convert the note to an equity interest.

Clearly, this factor weighs in favor of debt, not equity.

### 2. <u>Presence of Maturity Date</u>

The presence of a maturity date in a note is an indication of debt, not equity. *In re AutoStyle Plastics, Inc.*, 269 F.3d *supra* at 750. Here, maturity dates are contained in every note. For example, the note issued to the Nelsons was due on July 1, 2008 (paragraph 19(a) above), and the note issued to Blackman & Associates, P.C. was due on demand and carried a fixed interest rate (paragraph 19(b) above). The use of demand notes along with a fixed rate of interest is more indicative of debt than equity. *Id.* The numerous notes issued in 2010 and described in paragraph 19(c) above were due on December 31, 2010. The replacement notes issued in 2011 under the 2011 Note Purchase Agreement

-18-

DEBTORS' OPPOSITION TO QUALCOMM INCORPORATED'S MOTION

FOR DETERMINATION OF THRESHOLD ISSUES RELATING TO PLAN CONFIRMATION

28627.DOC

Case 3:13-bk-00340    Doc# 161    Filed: 07/17/13    Entered: 07/17/13 17:04:31    Page 22 of 33

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

were due and payable no later than October 11, 2020 (see paragraph 20 above).

Qualcomm argues that the maturity dates are "illusory," but provides no basis for that contention. In fact, those dates are real: If the note obligations were not paid by the maturity dates, the noteholder had a right to enforce its claim and seize assets of the Debtors in compensation. If the Qualcomm Litigation had not yet been concluded, those noteholders might in fact seize the litigation claims themselves for repayment.

While Qualcomm can argue about whether this factor should outweigh others, it is nonetheless evident that this factor too favors a conclusion that the claims represent debt, not equity.

### 3. <u>Presence of Fixed Rates of Interest and Interest Payments</u>

In this case, fixed rates of interest, some imputed and some stated, were contained in the notes. Some notes accrued interest at a stated rate, and others accrued charges that were not denominated as interest but functioned as the same – repayments that were multiples of the original principal balance. In every case, regardless of the outcome of the Qualcomm Litigation, fixed amounts were owed to the noteholders, in excess of the original principal amount of advances. These terms are indicators of debt, and this factor therefore must be viewed as favoring debt, or at most, inconclusive on the issue of debt versus equity.

### 4. <u>Source of Repayments of Notes</u>

Whereas an expectation of payment of the note through the success of the borrower may weigh "slightly in favor of equity," it is mitigated by the creation of a lien on the borrower's assets, which suggests debt. *In re AutoStyle Plastics, Inc.*, 269 F.3d *supra* at 751. Here, many of the notes were secured by all of the Debtors' assets, with UCC-1 financing statements and collateral descriptions, and all were subject to the "waterfall" formula for distribution of proceeds of litigation recoveries. As such, the claims were not dependent on the success of any business of the Debtors' business, but benefited from specific assets of the Debtors, including any recoveries in the Qualcomm Litigation. At most, this factor is neutral in the analysis.

### 5. <u>Adequacy of Capitalization</u>

Qualcomm argues that the Debtors' allegedly thin capitalization indicates equity rather than debt, but presents no actual evidence of thin capitalization, other than to point out that the Debtors did

-19-

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

LAW OFFICES
MEYERS LAW GROUP, P. C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

1   not commission audited financial statements for several years.  Clearly, this is not sufficient to reach

2   a conclusion as to this factor, and all other evidence suggests the adequacy of capital.

3          In particular, there is no evidence that prior to the entry of the Fee Order in the Qualcomm

4   Litigation, the Debtors were delinquent as to any of their ongoing expenses or obligations.  The loans

5   obtained from Northwater and other noteholders were in fact structured to provide funding for

6   ongoing litigation, and other than such litigation and limited salaries and administrative expenses, the

7   Debtors did not accrue significant liabilities for which additional capital was needed.  This factor is at

8   most inconclusive, therefore, absent the presentation of additional evidence through an appropriate

9   adversary proceeding and discovery process.

10         **6.**      **Identity of Interest Between Creditor and Stockholder**

11         If stockholders make advances in proportion to their respective stock ownership, an equity

12  contribution is indicated, but a disproportionate ratio between a stockholder's percentage interest in

13  stock and debt is indicative of bona fide debt.  *Id.*

14         This factor weighs heavily in favor of debt rather than equity, as there is no correlation at all

15  between the notes and shareholder interest.  As stated, Gabriel's shares are held by over 3,000

16  shareholders, many of whom are not even known to the Debtors.  The notes, on the other hand, are

17  held by a few dozen lenders, some of whom may be shareholders and others of whom are not.  There

18  is no evidence at all that noteholders who are also shareholders have similar percentage interests in

19  the notes and shares, nor could they, given the thousands of holders of the shares that do not hold

20  notes at all.

21         Qualcomm argues that the mere fact that some (or even all) noteholders are shareholders is

22  enough to indicate equity, but that is simply wrong.  It is not the fact that noteholders are

23  shareholders that is indicative of equity, but the correlation of percentage ownerships of notes and

24  shares that weighs in favor of equity.  For example, in *A.R. Lantz Co., Inc. v. United States*, 424 F.2d

25  1330 (9th Cir. 1970), upon which Qualcomm relies heavily, the noteholders' percentages of total note

26  debt matched almost exactly the percentage interests of shares held by those noteholders, and all of

27  the noteholders were officers of the corporation.  *Id*.  On the other hand, in *In re AutoStyle Plastics,*

28  *Inc.*, 269 F.3d *supra* at 751, although shareholders made the loans in question to the corporation, their

-20-

loan amounts were not correlated to their stock interests, and the factor therefore weighed in favor of debt.

Therefore, in this case, because there is no evident correlation between the percentages of note amounts and shareholder interests, this factor weighs in favor of debt, not equity.

**7.   Security for the Advances**

The absence of security for advances indicates equity rather than debt, *In re AutoStyle Plastics, Inc.*, 269 F.3d *supra* at 752, but here, many of the notes in question benefited from security. The largest of the notes, issued to Northwater, was secured by a lien on all of Trace's assets, as were several other notes, pursuant to Section 7.1 of the 2011 Note Purchase Agreement. Therefore, this factor does not weigh in favor of equity, contrary to Qualcomm's argument.

**8.   Corporation's Ability to Obtain Outside Financing**

When there is also outside financing, in addition to financing by insiders, that is an indicator of debt rather than equity. *In re AutoStyle Plastics, Inc.*, 269 F.3d *supra* at 752. Here, this factor weighs heavily in favor of debt: It is indisputable that Northwater is not an insider of the Debtors, and had no connection with the Debtors before lending funds to them. Northwater is an independent, outside lender in every respect, and after thorough due diligence and documentation, Northwater was willing to, and did, make loans to the Debtors. This is strong evidence of debt, not equity.

Qualcomm ignores these facts, and instead falls back on name-calling and smear: It describes the Debtors as "scofflaws" and "shells," but never mentions that Northwater examined all of the Debtors' bona fides before choosing to lend to the Debtors, and then, upon appropriate and customary documentation and opinion letters, did lend funds to the Debtors. Thus, regardless of Qualcomm's habitual slander, the Debtors were in fact able to obtain outside funding, thereby demonstrating that their issuances of debt were just that, debt.

**9.   Subordination to Claims of Outside Creditors**

Subordination of advances to claims of all other creditors indicates equity rather than debt, *In re AutoStyle Plastics, Inc.*, 269 F.3d *supra* at 752, and Qualcomm argues that some (not even all) of the notes were expressly subordinated to outside creditors. However, the argument is false and relies upon a distortion of the terms of the notes that is not supported by their language.

-21-

DEBTORS' OPPOSITION TO QUALCOMM INCORPORATED'S MOTION FOR DETERMINATION OF THRESHOLD ISSUES RELATING TO PLAN CONFIRMATION
28627.DOC

First, Qualcomm argues that certain of the notes issued in 2007, 2008 and 2009 required a threshold amount of recoveries from the Qualcomm Litigation before any amount was payable (Qualcomm Motion, 31:2-5). This is false. As set forth in paragraphs 20 above, those notes were payable on October 11, 2020 at the latest, or in some cases on demand by the lender, whether or not the Qualcomm Litigation was concluded, and required payment of fixed amounts of money (measured by multiples of original principal advances). In some cases, the amount payable also included a percentage of net proceeds from the Qualcomm Litigation, if any, but such additional amounts did not negate the basic amounts due. Nor was there any indication of subordination to other creditors, should there be funds or other assets in addition to recoveries in the Qualcomm Litigation.

Second, Qualcomm quotes the 2011 Note Purchase Agreement out of context to suggest that noteholders agreed to limit their recoveries to just litigation proceeds, but this too is false. The quoted language, in Section 8.1 of the agreement, does not limit payments on notes to those litigation proceeds, but instead limits the use of such proceeds to payment of the notes as set forth in the waterfall subsections that follow. Again, nothing in that language, contrary to Qualcomm's misrepresentation, suggests that noteholders cannot enforce their notes against other assets of the Debtors as well.

Third, Qualcomm similarly misstates the terms of the January 2010 notes and similar notes, to suggest that the noteholders agreed to subordinate to other creditors. In fact, that too is false. The language referenced, in paragraph no. 2 of the January 2010 note form (Exhibit 11 of the Gertz declaration), simply states that any payment to noteholders from litigation proceeds shall be net of the Debtors' litigation expenses that must be paid, such as attorneys' fees and the like that encumber such proceeds. Nothing in the language suggests that noteholders have subordinated their rights or claims to other creditors, other than to acknowledge the need to pay litigation costs out of litigation proceeds.

Thus, this factor does not weigh in favor of equity, despite Qualcomm's misinterpretation of the debt instruments underlying the note claims.

-22-

DEBTORS' OPPOSITION TO QUALCOMM INCORPORATED'S MOTION
FOR DETERMINATION OF THRESHOLD ISSUES RELATING TO PLAN CONFIRMATION
28627.DOC

Case 3:13-cv-20340  Doc# 161  Filed: 07/17/13  Entered: 07/17/13 17:04:31  Page 26 of 33

**10.**     **Use of Advances to Acquire Capital Assets**

Use of advances to meet the daily operating needs of the corporation, rather than to purchase capital assets, is indicative of bona fide indebtedness. *In re AutoStyle Plastics, Inc.*, 269 F.3d *supra* at 752-3. Here, the notes were issued in exchange for loans used to pay the Debtors' operating costs – payments to their attorneys and other litigation costs, in addition to salaries and administrative expenses. There is no evidence that any of the funds were used to purchase any capital assets. This factor therefore weighs in favor of debt.

**11.**     **Presence of Sinking Fund for Repayments**

The absence of a sinking fund to pay the note can be an indication of equity, but it is mitigated by providing security for the note. *In re Autostyle Plastics, Inc.*, 269 F.3d *supra* at 753. Here, whereas no sinking fund existed (nor does it typically exist), many of the notes in question were in fact secured. This factor therefore is inconclusive in determining whether the notes were debt or equity.

**C.**     **Until Proven Otherwise, Claims Must Be Treated By Plan As Claims.**

Qualcomm argues that because, allegedly, all of the note claims must be recharacterized as equity, the Plan's classification of them as claims is inappropriate. The argument is false, however, for two reasons: First, as discussed above, Qualcomm's premise that the note claims must be recharacterized as equity as a matter of law is wrong, given the highly fact-dependent analysis that must be made and the many factors, as described above, that militate toward a conclusion that the claims are in fact debt. Second, absent a full adjudication of the claims' recharacterization, through a claims objection process that provides due process to the claimants, the Plan cannot simply recharacterize the claims summarily -- it must assume the claims to be properly asserted as claims, while preserving the estate's ability to challenge the claims at a later time. That is precisely what the Plan provides, properly.

The note claims that Qualcomm challenges (though not directly against noteholders themselves) are properly scheduled or filed claims in these chapter 11 cases, and must be respected as claims unless and until disallowed. A properly executed proof of claim constitutes prima facie evidence of its validity, and parties objecting to a claim bear the burden of going forward to "meet,

-23-

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

LAW OFFICES
MEYERS LAW GROUP, P. C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

overcome, or, at minimum, equalize the valid claim." *In re Be-Mac Transport Co., Inc.* 83 F.3d 1020, fn. 3 (8th Cir. 1996). Section 502(a) of the Bankruptcy Code provides, in pertinent part, that "[a] claim ... is deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a). Thus, despite Qualcomm's theoretical challenges to scores of note claims, the claims themselves have been duly and properly scheduled or filed, and thereby represent valid claims in these cases.

As such, regardless of Qualcomm's recharacterization theory, the note claims must be recognized and treated as claims in the Plan. Section 1126(a) of the Bankruptcy Code provides that "[t]he holder of a claim or interest allowed under section 502 of this title may accept or reject a plan." 11 U.S.C. § 1126(a). Bankruptcy Rule 3018(a) provides in part "[a] plan may be accepted or rejected in accordance with § 1126 of the Code within the time fixed by the court pursuant to Rule 3017." Any holder of an "allowed claim" under § 502(a) of the Bankruptcy Code at the time of Plan voting is therefore entitled to vote on the Plan under § 1126(a) of the Bankruptcy Code. *In re SCC Kyle Partners, Ltd.*, 2013 WL 2903453 *32 (Bankr. W.D.Tex. 2013).

The requirement that a plan classify disputed claims as asserted, unless and until the claims have been disallowed or avoided in compliance with applicable due process and prescribed procedures, has long been settled by the Ninth Circuit Court of Appeals, in a decision entitled *In re Commercial Western Finance Corporation*, 761 F.2d 1329 (9th Cir. 1985) ("*CWF*").[4] In *CWF*, the chapter 11 trustee sought to avoid liens asserted by 333 noteholders by virtue of the terms of his proposed plan, based on the strong-arm provisions of Section 544(a)(1) of the Bankruptcy Code. The Court of Appeals, however, ruled that such plan provisions improperly deprived the noteholders of their right to be sued in an adversary proceeding before any liens could be avoided, with all of the procedural protections, and the benefit of the burden of proof, that the commencement of an adversary proceeding would accord them:

> More importantly, in trying to avoid the investors' property interests by the court's approval of the plan, the Trustee sought to place on the investors the burden of challenging the Trustee's ability to avoid their interests by requiring them to object to the plan. Normally, when a creditor files a proof of claim, it becomes prima facie evidence of the claims' validity and amount. Fed.R.Bankr.P. 301. The burden is then

---

[4] The Court will no doubt recall this decision, despite the passage of 28 years, given the eminent appearance of counsel noted by the Court of Appeals.

-24-

on the Trustee to produce evidence and facts to defeat the claim through an adversary proceeding under rule 701. *See* 3 *Collier on Bankruptcy* ¶ 502.01 at 502-17 (15th ed. 1984). The Trustee's attempt to avoid the investors' interests by confirmation of a plan, if successful, would have circumvented the Trustee's duty to prove that he was entitled to such relief.

*CWF*, *supra* at 1337. So it is here: the Plan cannot unilaterally recharacterize noteholders' claims as equity, where those claims have been properly filed or scheduled as claims, unless the claims have already been adjudicated to be equity interests, through a properly conducted claim objection process.

In particular, any attempt to recharacterize a claim must begin with an objection to the claim or a complaint commencing an adversary proceeding, in compliance with Rules 3007(a) or (b) of the Federal Rules of Bankruptcy Procedure. The claim objection, if separate from an adversary proceeding, must be accompanied by a notice of hearing pursuant to Rule 3007(a), and if opposed by the claimant, must entail the processes and protections applicable in a contested matter pursuant to Rule 9014 of the Bankruptcy Rules, including most or all of the discovery, motion practice and trial procedures of an adversary proceeding.

Under the holding of *CWF*, these procedural protections and rights, together with the burden of proof imposed upon an objector, must be provided to each note claimant, and the Plan cannot simply presume that the claims can be disallowed or recharacterized as equity. Instead, the Plan must classify the note claims as they are asserted and preserve for the benefit of the estate the ability to challenge the claims after confirmation. The Plan does so expressly.

The decision in *CWF* has been upheld in subsequent published decisions as well. For example, in *In re Golden Plan of California, Inc.*, 829 F.2d 705 (9th Cir. 1987), the Ninth Circuit again reversed the efforts of a trustee to avoid liens or interests of claimants without initiating adversary proceedings, and instead seeking instructions of the court, citing its decision in *CWF* as support. See also *In re Sentry Operating Company of Texas, Inc.*, 264 B.R. 850, 858-859 (Bankr. S.D.Tex. 2001), in which the court held that where claims had been filed as secured claims and no objection and adjudication of the claims to the contrary had occurred, the claims were necessarily classified and voted as secured claims, not as unsecured claims, despite contentions that they were in fact unsecured.

In short, the Plan cannot treat note claims as equity simply because Qualcomm argues that

-25-

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

DEBTORS' OPPOSITION TO QUALCOMM INCORPORATED'S MOTION
FOR DETERMINATION OF THRESHOLD ISSUES RELATING TO PLAN CONFIRMATION
28627.DOC

Case 13-30340   Doc# 161   Filed: 07/17/13   Entered: 07/17/13 17:04:31   Page 29 of 33

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

1    recharacterization may be possible. Each claimant is entitled to the full procedural and substantive

2    protections of the claims objection process before any recharacterization can be ordered, particularly

3    here where many factual issues must first be decided, as discussed above. The proper approach,

4    given the issues that Qualcomm has raised, is to expressly preserve any right to object to claims on

5    the basis of recharacterization, and treat the claims in the interim as they are asserted, as claims. The

6    Plan accomplishes this precisely – all appropriate grounds for objection are preserved and assigned to

7    an independent Litigation Trustee, and if challenged, the claims will receive no payments until the

8    challenges are resolved.

9         The Plan can no more presume note claims are equity, based on Qualcomm's theory of

10   recharacterization, than it can presume that Qualcomm's claim will be disallowed based on the

11   Debtors' pending appeal in the Federal Circuit. Until the a filed or scheduled claim such as the note

12   claims are disallowed, they must be treated as allowed claims entitled to the same distributions as all

13   other claims, subject to reserves in the event that they are disputed. This is as provided in the Plan,

14   and therefore, the Plan properly classifies the note claims. The Plan is therefore in full compliance

15   with the principal set forth in *CWF*, and Qualcomm's argument that the Plan should unilaterally treat

16   the claims as equity is not.

17   **D.    No Recharacterized Equity Interest Will Share in Creditor Distributions Under Plan.**

18        As stated above, an essential premise of the Qualcomm Motion is that note claims, although

19   allegedly subject to recharacterization as equity, will receive distributions alongside other creditors,

20   in violation of the absolute priority rule. In making the argument, however, Qualcomm never cites to

21   the actual Plan or explains how any such distributions will occur. In fact, no such distributions will

22   occur under the Plan, and the premise, along with the argument as a whole, fails.

23        Under the Plan, no claim is allowed automatically, and every claim is subject to disallowance

24   if successfully challenged. A claim is deemed to be within a particular class only if and to the extent

25   that it becomes an allowed claim within that class (see, for example, Sections 2.1 and 5.9 of the Plan).

26   In particular, all claims are subject to challenge by the Litigation Trustee, an independent fiduciary,

27   on the basis of recharacterization as equity, pursuant to Sections 7.4.2-7.4.3 of the Plan. Challenges

28   based on recharacterization, along with subordination, avoidance and other grounds, are "Committee

-26-

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

Claims" over which the Litigation Trustee has absolute discretion to prosecute, forgo or settle. If the Litigation Trustee successfully challenges a claim on the basis that it is not a claim, but rather equity, the claim will be disallowed or treated as equity. Either way, the claim, if successfully challenged, will not be entitled to any distributions as an allowed claim. Moreover, while a claim is in dispute, no distributions can be made to the holder of that claim, and any distributions that would otherwise be made thereon must be held in reserve, pursuant to Section 7.14 of the Plan.

Thus, if, as Qualcomm argues, a note claim is subject to recharacterization as equity under applicable law and facts, the Litigation Trustee will successfully challenge the claim and it will be disallowed. As a disallowed claim, the note claim will receive no distribution as a claim, and will either be relegated to Class F (equity interests) or disallowed altogether. Therefore, no distribution will be made on such a disallowed claim unless from a surplus after all allowed claims have been paid in full.

In short, the essential premise of the Qualcomm Motion, that note claims that should be treated as equity will be treated as claims under the Plan, is false. It is no wonder that the premise is not supported by any analysis of the Plan itself, because any such analysis would reveal its lack of merit.

**E.    There Is No Violation Of Absolute Priority Rule.**

The sole basis of the Qualcomm Motion for arguing that the Plan is unconfirmable is an alleged violation of the absolute priority rule of Section 1129(b)(2)(B) of the Bankruptcy Code: Qualcomm argues that because, allegedly, the Plan allows note claims that should be treated as equity to be paid alongside other unsecured claims, it permits distributions on equity interests before unsecured claims have been paid in full.

But that conclusion is as false as its underlying premises. In fact, not only is it not at all clear that any claims should be treated as equity, it is beyond serious dispute that if they are to be treated as equity, the Plan contemplates their challenge and disallowance. As explained above, no claims are automatically allowed by the Plan, and the Plan expressly provides that the independent Litigation Trustee can challenge claims on the basis of recharacterization, among other grounds. If the Litigation Trustee is successful in such a challenge, the claim will be disallowed and will not receive

-27-

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

1  any distributions alongside other creditors.

2  In short, the Plan provides a mechanism for challenging claims on the basis of

3  recharacterization, and does not permit any distributions on account of recharacterized claims until

4  allowed claims have been paid in full. Absent full payment of all allowed claims, no payment at all

5  will be made on equity interests, including recharacterized note claims, if any. Therefore, there is no

6  violation of the absolute priority rule of Section 1129(b)(2)(B) of the Bankruptcy Code. The

7  Qualcomm Motion must therefore be denied.

8  **F.   Usury and Champerty Arguments Are Irrelevant.**

9  Qualcomm blithely argues that the note claims are unenforceable under usury and champerty

10 laws, but the arguments are both unsupported by facts and irrelevant to confirmation issues in any

11 event.

12 On the usury argument, aside from many defenses that may be applicable, Qualcomm

13 concedes that New York usury laws do not apply to loans above specified levels, but persists in its

14 argument nonetheless. More to the point, Qualcomm assumes, without any calculations or support,

15 that the loans exceed maximum rates of interest of 16% and 25%, but given the decade-long term of

16 the notes and the contingency nature of portions of the repayment obligations, that is not at all clear.

17 As to champerty arguments, Qualcomm cites the New York statute as prohibiting "assignment of a

18 claim for the purpose of bringing an action thereon," but no such assignment has occurred. Not only

19 have the Debtors not assigned their claims against Qualcomm to anyone, no one has brought an

20 action on those claims other than the Debtors themselves. The Debtors have simply granted security

21 interests in the claims against Qualcomm, not for the purpose of the secured creditors bringing an

22 action but rather to secure loans made to the Debtors. This is not champerty even under Qualcomm's

23 dubious theory.

24 More importantly, the arguments are irrelevant here. The issue here is whether the Plan is

25 unconfirmable as a matter of law, as Qualcomm has posited. Whether particular claims, or even an

26 entire category of claims, are unenforceable and therefore subject to disallowance, has no bearing on

27 confirmability. As described above, if any claims are subject to meritorious defenses or challenges,

28 their disallowance can and will be pursued by the Litigation Trustee and no distributions will be

-28-

LAW OFFICES
**MEYERS LAW GROUP, P. C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

1   made upon them.  No claims, including the note claims, are automatically allowed under the Plan,

2   and all remain subject to challenge.  Therefore, any arguments as to the unenforceability of particular

3   claims will be addressed in the implementation of the Plan and do not impair the Plan's

4   confirmability.

5                                   **IV.  CONCLUSION**

6           For each of the reasons set forth above, the Qualcomm Motion must be denied.  First, contrary

7   to Qualcomm's argument, it is not clear that the note claims are subject to recharacterization as

8   equity.  Recharacterization is dependent on a case-by-case analysis, fact-dependent and varying in

9   result depending on the parties' actual intent.  Recharacterization cannot be established across the

10  board for scores of different notes without a contest involving the claimants themselves, none of

11  which has occurred here.  Second, it would not be appropriate to place claims in an equity class even

12  though they are asserted as claims, absent a determination to that effect, following due process

13  provided to the claimants.  The only proper treatment of such claims in a plan is to treat them as debt

14  subject to challenge before any distribution is made.  That is precisely what the Plan does.  Third,

15  even if it was incontrovertible that some of the note claims can be recharacterized as equity, the Plan

16  adequately accounts for that possibility, but allowing the independent Litigation Trustee to prosecute

17  challenges to the claims on just that basis.  If any such challenge is successful, then no distribution

18  will be made on the disallowed claim until all debt has been paid in full.  Finally, it follows from each

19  of the foregoing grounds that the Plan does not violate the absolute priority rule as Qualcomm

20  alleges, because the Plan does not permit claims that are successfully challenge to receive any

21  distributions at all.

22          Accordingly, the Qualcomm Motion must be denied.

23  DATED: July 17, 2013

24                                  MEYERS LAW GROUP, P.C.

25                          By    /s/  Merle C. Meyers
26                                  Merle C. Meyers, Esq.
                                    Attorneys for Debtors-in-Possession

27

28

                                        -29-

DEBTORS' OPPOSITION TO QUALCOMM INCORPORATED'S MOTION
FOR DETERMINATION OF THRESHOLD ISSUES RELATING TO PLAN CONFIRMATION
28627.DOC

Case 13-30340   Doc# 161   Filed: 07/17/13   Entered: 07/17/13 17:04:31   Page 33 of
33