COOLEY LLP
ALI M. M. MOJDEHI (123846)
(AMOJDEHI@COOLEY.COM)
JANET D. GERTZ (231172) (JGERTZ@COOLEY.COM)
4401 Eastgate Mall
San Diego, CA 92121
Telephone: (858) 550-6000
Facsimile: (858) 550-6420

Attorneys for Creditor
Qualcomm Incorporated

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>**GABRIEL TECHNOLOGIES CORP., et al.,**<br><br>Debtors.<br><br>Chapter Number: 11 | Case No. 13-30340-DM<br>(Case No. 13-30341)<br><br>CHAPTER 11<br><br>(Jointly Administered)<br><br>**BRIEF IN RESPONSE TO COURT'S REQUEST FOR BRIEFING ON SUSPENSION OF PROCEEDINGS PURSUANT TO 11 U.S.C. SECTION 105(A) OR 305(A)**<br><br>**HEARING**<br>Date: September 10, 2013<br>Time: 1:00 p.m.<br>Judge: Hon. Dennis Montali<br>Court: Courtroom No. 22<br>235 Pine Street, 22nd Floor<br>San Francisco, CA |

Creditor, Qualcomm Incorporated ("Qualcomm") hereby submits its briefing in response to the request of the Court regarding the propriety of the Court suspending the proceedings in these consolidated bankruptcy cases pursuant to *section* 105(a) and/or 305(a) of the Bankruptcy Code, pending the final resolution of the Debtors' two appeals to the Federal Circuit (collectively, the "Appeal")[1] of the orders of the District Court for the Southern District of California ("District

---
[1] The two appeals are docketed as *Gabriel Technologies Corp. v. Qualcomm Incorporated*, No. 2013-1058 (appeal on the merits) and No. 2013-1205 (appeal of sanctions award), in the U.S. Court of Appeals for the Federal Circuit.

Court") in Case No. 3:08-cv-01992-AJB-MDD, *Gabriel Technologies et al v. Qualcomm Incorporated et al*.

Qualcomm respectfully submits that it would be contrary to the plain language of the statute, would violate legislative intent, and would be inequitable to stay these proceedings pending the outcome of the Appeal. Any abstention by this Court under *section* 305(a) must be demonstrated to be in the best interests of the Debtors and creditors. Here, at a minimum, suspension of these proceedings would be contrary to the best interest of the Debtors' largest (and probably only substantial) creditor. That fact alone makes *section* 305(a) unavailable here.

Similarly, *section* 105(a) may only be utilized by this Court to "carry out the provisions of" the Bankruptcy Code and cannot be applied where "inconsistent with another provision of [the Bankruptcy Code] or with applicable Federal Rules of Bankruptcy Procedure." 11 U.S.C. §§ 105(a) and (d)(2). Necessarily, therefore, a suspension cannot be granted where, as here, it would be contrary to orders entered in this case and would negate the provisions and policies of Chapter 11 that guarantee creditors certain rights, including the right to have the case converted to chapter 7 under, *e.g.*, § 1112(b)(4)(J), or to allow Qualcomm to propose its own chapter 11 plan, if the Debtors do not do so within a reasonable and limited time frame. Here the Court has entered an order defining August 30, 2013 to be the outer limits of what is a reasonable time frame for confirmation of the Debtors' plan, under the circumstances here.

## I. STATEMENT REGARDING TIME FOR DISPOSITION OF THE APPEAL

The Court requested that the parties present their positions on the facts regarding the likely timeframe for the disposition of the Appeal. The timeframe for an appeal in the Federal Circuit is variable and can be impacted by many factors, including the workload of the Federal Circuit, the complexity of this Appeal, and the amount of time needed to review the excerpts of record submitted in this case. While it is not possible to say with certainty how long the Appeal will take, Qualcomm's best estimate is that decision will not be issued until May or June 2014.

Here, there are two appeals involved – (i) relating to the merits of the District Court's disposition of the underlying case on summary judgment; and (ii) relating to the propriety of the costs and fees sanctions that were assessed against the Debtors and their professionals. The two

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

864756 v5/SD

2.

**BRIEFING ON SUSPENSION OF PROCEEDINGS**

Case: 13-30340    Doc# 202    Filed: 09/05/13    Entered: 09/05/13 23:52:17    Page 2 of 15

docketed appeals were consolidated to the extent that they will be treated as companion cases and are now on the same schedule to be heard by the same panel at the same hearing. The Debtors have already filed their opening briefs. Qualcomm's responses are due October 8, 2013. The Debtors' reply briefs are due October 22, 2013, and the Debtors must serve and file the joint appendix within seven days of filing their reply briefs. Absent any request by Debtors for an extension on the time for filing their reply briefs, the Appeal will be fully briefed and ready for argument by the end of October 2013.

Taking these variables into account and based on the following statistics, Qualcomm estimates that disposition of the Appeal will not occur until May or June 2014, at the earliest. Arguments are typically scheduled within two months and held within three months of the completion of briefing. *See* Fed. Cir. Rule 34, Practice Notes.[2] With respect to the time before an opinion is rendered, the available statistical data indicates that the timing may be quite variable, depending on the facts of the appeal at issue. Online sources that have compiled and analyzed appeals in the Federal Circuit estimate that for "precedential" opinions,[3] the timeline between argument and decision is up to six months.[4] The time that any particular appeal may take is necessarily influenced by the nature of the underlying action, and patent cases generally take longer. Sources breaking the *patent* decisions down by type (ITC, district court, or PTO) reflect longer median times than those sources that include all cases.[5] Likewise, the source of the underlying action will affect the timing of the determination. Information available from the Federal Circuit states that the median time from docketing to decision in appeals from the federal district courts is 11.8 months in FY2012.[6] Moreover, this figure excludes consolidated appeals,

---

[2] The Practice Note for Federal Circuit Rule 35 provides:

> Appeals are usually calendared for oral argument or submission without argument within 2 months after the briefs and joint appendix are filed. Counsel are advised of the firm date of hearing approximately 30 days before the session. Once scheduled, a case will not be postponed except on motion showing compelling reasons. Counsel should advise the clerk in writing within 30 days once briefing is completed of potential scheduling conflicts or as soon as they are known and should not wait until an actual conflict arises.

[3] Non-precedential opinions include summary affirmances, which issue in a matter of days after oral argument.
[4] *See* http://www.patentlyo.com/ patent/2013/02/waiting-for-federal-circuit-decisions.html.
[5] *See* http:// www.patentlyo.com/patent/2013/01/federal-circuit-statistics-fy-2012.html.
[6] *See* http://www.cafc.uscourts.gov/images/stories/the-court/statistics/Median_Disposition_Time_Table_2003-

1 which necessarily would take longer.

2 Because here, the operative date will not be the docketing of the appeal, but rather the date the stay was lifted, the Appeal is likely to be decided, at the earliest, in approximately late May or June 2014 (that is, 11.8 months from June 2013 when the stay was lifted). Because the Appeal is consolidated, the time frame could be longer. Unfortunately, no publicly-available data exists for how much longer a consolidated appeal is likely to take.

The time that it will take for the Appeal to be determined is, however, irrelevant to the propriety of a suspension of these proceedings. This is because the standards for abstention under either *section* 305(a) or 105(a) are not satisfied in the first instance.

## II. THE USE OF *SECTION* 305(A) TO SUSPEND THE PROCEEDINGS IS INAPPROPRIATE HERE BECAUSE NEITHER THE INTERESTS OF CREDITORS NOR THE INTERESTS OF THE DEBTORS ARE SERVED

*Section* 305(a) provides a means for the bankruptcy court to abstain from asserting jurisdiction over a bankruptcy case. Under this section, a bankruptcy court may abstain by either dismissing a case, or suspending all proceedings in a case "if … the interests of creditors and the debtor would be better served by such dismissal or suspension …." 11 U.S.C. § 305(a)(1). Before abstaining, the bankruptcy court is required to "make specific and substantiated findings" that the interests of creditors and the debtor will be better served by dismissal or suspension. *Marciano v. Fahs (In re Marciano)*, 459 B.R. 27, 46 (B.A.P. 9th Cir. 2011) (quoting *Wechsler v Macke Int'l Trade, Inc., (In re Macke Int'l Trade, Inc.)*, 370 B.R. 236, 247 (B.A.P. 9th Cir. 2007)). To abstain from asserting jurisdiction under *section* 305(a), whether such takes the form of a dismissal or a suspension of the proceedings, is "an extraordinary remedy." *In re Eastman*, 188 B.R. 621, 624 (B.A.P. 9th Cir. 1995). It is not a "balancing test" of the relative harms to the debtor and creditors. Rather, it can only be invoked when it can be shown that abstaining will affirmatively *benefit* both creditors and the debtor. *See In re Monitor Single Lift I, Ltd.*, 381 B.R. 455, 462 (Bankr. S.D.N.Y. 2008) (citing *In re Globo Comunicacoes e Participacoes S.A.*, 317 B.R. 235, 255 (S.D.N.Y. 2004) (itself citing *Eastman*, *supra*, 188 B.R. at 624-25)).

In light of the requirement that both creditors and the debtor be benefitted, "few fact

2012.pdf

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

864756 v5/SD            4.            **BRIEFING ON SUSPENSION OF PROCEEDINGS**
Case: 13-30340   Doc# 202   Filed: 09/05/13   Entered: 09/05/13 23:52:17   Page 4 of 15

patterns fall within *section* 305(a)." 2-305 COLLIER ON BANKRUPTCY ¶ 305.02 (16th ed. 2013). *Collier* also notes that *section* 305(a) is not intended to be used as a remedy for the debtor's inability to satisfy the Bankruptcy Code's requirements for emergence. Rather, in chapter 11, *section* 1112(b) should instead be used for that purpose. *Id*.

Moreover, it is extremely rare for abstention to be invoked in a *voluntary* proceeding, in which the debtor has presumably invoked the protections of the Bankruptcy Code on the basis of true need. Indeed, the legislative history provides two examples of when the remedy is appropriate, neither of which is relevant here: (i) "if an arrangement is being worked out by creditors and the debtor out of court" and (ii) where "an involuntary case has been commenced by a few recalcitrant creditors" in order to extract concessions. *Monitor Single Lift*, 381 B.R. at 464 n.5 (quoting H.R. Rep. No. 95-595 at 325 (1978)). While these exemplars may not be exclusive, they demonstrate that abstention should be used only where the continued assertion of jurisdiction by the bankruptcy court over the case and parties serves no bankruptcy purpose.

### A. The Interests of Creditors Are Harmed Here Where the Suspension Will Undo Settled Expectations and Reasonable Reliance

As stated above, the primary question to be answered in connection with the determination of whether to abstain under *section* 305(a) of the Bankruptcy Code is whether the interests of *both* creditors and the debtor would be better served by such dismissal or suspension. In terms of its impact on creditors, there is no way to make that determination where a contested matter currently exists that places in serious question which parties in interest comprise the true creditor base in these proceedings.[7] Thus, Qualcomm's Motion for Determination of Threshold Issues Relating to Plan Confirmation [Doc. No. 145] ("Motion to Recharacterize") should be determined as a threshold matter prior to any consideration of the applicability of *section* 305 and its impact on creditors here.

Moreover, suspension of the case at this juncture would be unfair, where the Court has previously issued orders upon which Qualcomm has acted in reliance. Specifically, in its Memorandum Decision denying Qualcomm's Motion for Conversion to Chapter 7 or to Appoint

---

[7] At the hearing on the Motion to Recharacterize, this Court indicated that the motion was meritorious.

a Chapter 11 Trustee, entered on May 28, 2013 [Doc. No. 116] ("Motion to Convert"), the Court ruled as follows:

> The Plan, or some variation of it, may or may not be confirmable, and Debtors and the Committee will have to deal with anticipated objections to confirmation that Qualcomm will likely make. That is for another day. On the face of it, the court cannot say that the Plan is unconfirmable as a matter of law. **What the court can say, however, is that if Debtors do not obtain confirmation <u>within the timetable to be set</u>, Qualcomm will have its wish, albeit under § 1112(b)(4)(J) ("failure to file a disclosure statement, or to file or confirm a plan, within the time fixed ... by order of the court;**").

[*Id.* at 7, lines 4-13 (emphasis added)]. Also, in that Decision, the Court set a status conference for June 10, 2013, at which it said it would "set a tight schedule" for consideration of a final disclosure statement to accompany either the Plan or any revised plan Debtors may file before then. The Order further required that the hearings for approval on a final disclosure statement and confirmation of any plan must be concluded by the end of August, 2013. [*Id.* at lines 17-27.]

At the June 10, 2013 Status Conference, the Court placed a briefing schedule for the Debtors' proposed plan and disclosure statement on the record. The Debtors were ordered to notice out their disclosure statement by June 27, 2013. A hearing date on the approval of the disclosure statement was set for July 30, 2013. Qualcomm was also ordered to file any motion seeking recharacterization of the investor claims by June 27, 2013. In respect to that motion, the Court stated, "if as a matter of law you persuade me that all of these investors except a small number of trade debt are really equity, then I think the plan's doomed. . . . You're not going to leave here on July 30th with a confirmed plan. [Debtors' counsel] might be leaving here with a fatally defective plan, which I think we all recognize *will mean the case will be converted*. . . . [6/10/13 Hr'g Tr. at 81, line 19 through 82, line 3 (emphasis added).] Following that hearing, the Debtors, the Committee and Qualcomm entered into a stipulation to memorialize the dates set by the Court on the record. An order approving that stipulation was entered on June 20, 2013 [Doc. No. 130], as amended by order entered on July 16, 2013 [Doc. No. 157].

Qualcomm proceeded to act in reliance on these rulings and the declarations made by the Court, including by expending the significant time and expense in filing its Motion to

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

864756 v5/SD

6.

**BRIEFING ON SUSPENSION OF PROCEEDINGS**

Case: 13-30340   Doc# 202   Filed: 09/05/13   Entered: 09/05/13 23:52:17   Page 6 of 15

Recharacterize. For the Court to now decline to rule on that motion or on the disclosure statement and plan, but to "suspend" the case instead could not possibly be deemed to "benefit" Qualcomm.

### B. The Interests of the Debtors Will Not Be Benefitted by Suspension

Before moving precipitously to embrace suspension of the proceedings, the Debtors should carefully consider exactly what "suspension" means and the implications of such a remedy. As noted above, the doctrine is one of abstention. The legislative history describes the effect of section 305(a) as the court "declin[ing] jurisdiction" by means of "[a]bstention under this section." 2-305 COLLIER ON BANKRUPTCY ¶ 305.01. In *In re Mazzocone*, 183 B.R. 402, 420 (Bankr. E.D. Pa 1995), the bankruptcy court described the effect as the court "temporarily ***relinquish[ing] jurisdiction*** over a case." (emphasis added). A court that relinquishes its jurisdiction has no jurisdiction. There is no middle ground. The necessary corollary to a lack of jurisdiction over a case or the parties—including the jurisdiction and/or power to enforce—is that "the Bankruptcy Code and Rules will not apply during the suspension period." *In re Picacho Hills Utility Co., Inc.,* 2013 WL 1788298 (Bankr. D.N.M. April 26, 2013) (citing *In re Mazzocone*, 183 B.R. at 420). In fact, the only real difference between a suspension and an outright dismissal is that a suspension will maintain the filing date and thus will preserve avoidance actions. This is exactly what the bankruptcy court did in *Mazzocone*—maintaining the avoidance look back period, while otherwise "relinquishing" any jurisdiction or power over the parties or the cases during the period of suspension.

The automatic stay is thus abated during the time that the bankruptcy proceedings are suspended. This only makes sense, where the primary legislative purpose of abstention under *section* 305(a) is to permit non-bankruptcy workouts to proceed, unhampered by the automatic stay. If a suspension is granted here, the Debtors will therefore have to live with the fact that, absent the jurisdiction of this Court over these cases and parties in interest, their creditors will be able to enforce all available state law remedies. If *section* 305(a) were construed otherwise, the Debtors would get all of the benefits of bankruptcy, but none of the burdens.

The Debtors claim that they filed these cases because they needed the protection of the automatic stay for purposes of pursuing the Appeal. It stretches the imagination how the Debtors

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

864756 v5/SD

7.

**BRIEFING ON SUSPENSION OF PROCEEDINGS**

Case: 13-30340   Doc# 202   Filed: 09/05/13   Entered: 09/05/13 23:52:17   Page 7 of 15

would then be "benefitted" if the stay is now suspended. Furthermore, to the extent they are now affirmatively supporting the use of *section* 305(a) and suspension of the stay for a period of time (to avoid, *e.g.*, the Court ruling on the Motion to Recharacterize), it raises the question of whether they actually needed the protection of this Court, in the first instance.

### C. The Principal Case in the Ninth Circuit Interpreting Section 305(a) Does Not Support Abstention Here

The principal case in the Ninth Circuit to interpret *section* 305(a) in the context of what is being proposed here—a suspension of the proceedings—is *In re Marciano*, 446 B.R. 407 (C.D. Cal. 2010), *aff'd Marciano v. Fahs (In re Marciano)*, 459 B.R. 27 (B.A.P. 9th Cir. 2011). Similar to the Court's apparent goal here, the debtor in that case argued that a suspension would "preserve the status quo and will avoid unnecessary time and expense 'until it is known based on the outcome of the appeals whether the petitioning creditors really have judgments that will be affirmed, or at least will be affirmed in a large enough amount beyond which [the debtor] could not pay them." *Id*. at 432. The bankruptcy court in *Marciano* rejected this analysis, noting that *section* 305(a) is of very "narrow breadth" and, in general, is a tool to "prevent the commencement and continuation of disruptive involuntary cases." *Id*. (*citing Macke Int'l Trade*, *supra*, 370 B.R. at 247.

The bankruptcy court utilized a seven-factor test first articulated in *Monitor Single Lift*, *supra*, 381 B.R. at 464-65.[8] Here, where this is not an involuntary proceeding and where there is no state insolvency proceeding or out-of-court workout pending, the only relevant factors— economy and efficiency of administration and the nature of the debtors' motives—do not support *suspension* of the proceedings. In particular, abstention cannot be based on a desire to cut costs or minimize administrative expenses. *See Marciano*, 446 B.R. at 433. Rather, the analysis is

---

[8] Those factors primarily focus on facts not present here, in that they pertain to cases of an involuntary proceeding or one where an alternative insolvency proceeding exists in state court. They are as follows: (1) the economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court; (3) whether federal [bankruptcy] proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving an equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought. The factors are the same, regardless of whether a stay or dismissal is sought. *Marciano*, 459 B.R. at 45.

counterbalanced by the need for "efficiency of administration," which places a primacy on the need to resolve disputes expeditiously. *Id.* The need to adhere to expeditious decision making is further reinforced by Fed. R. Bankr. Proc. 1001, which requires that all of the rules must be "construed to secure the just, speedy, and inexpensive determination of every cause and proceeding." As such, they cannot be utilized in an unjust and/or unnecessarily delaying manner to serve a pecuniary purpose.

Nor is the pendency of the Appeal a basis for suspension. The bankruptcy court in *Marciano* made the observation that suspension is not appropriate "where there [is] no alternative forum to deal with competing efforts to collect judgments," such as a non-bankruptcy insolvency or receivership proceeding. *Marciano*, 459 B.R. at 47. Here, as was the case in *Marciano*, there is no pending state insolvency proceeding to resolve creditors' claims. There is no out-of-court workout, such as an assignment for the benefit of creditors, nor is a receivership action pending.

Moreover, the disposition of the Appeal will not "resolve" creditors' claims, particularly if it is, as expected, affirmed. The reason is that the Appeal will not adjudicate rights to the assets that Qualcomm could resort to to satisfy its claim. Qualcomm is currently being prevented by the automatic stay from foreclosing on other tangible and intangible assets held by the Debtors, such as causes of action against third parties and other interests, such as the membership interest in Trace held by Gabriel. Under the status quo, the bankruptcy proceedings—principally through the appointment of a neutral chapter 7 trustee—are Qualcomm's only means of monetizing these other assets, in order to obtain any satisfaction on its claims.

Although, as stated above, a suspension would provide an adequate alternative forum[9] for adjudication of the parties' rights because Qualcomm would be allowed to proceed to exercise its state law remedies, *In re Mazzocone*, 183 B.R. at 420, Qualcomm believes the Debtor's Plan is facially void and that the conversion of this case to chapter 7 is the right result—and indeed the statutorily required result—under such circumstances. As stated above, *section* 305(a) is not

---

[9] The Ninth Circuit Bankrutpcy Appellate Panel has wisely noted the similarity of the test under section 305(a) to a *forum non conveniens* determination. That is, to justify an abstention by a stay or dismissal there must be a truly "adequate" alternative forum for the bankruptcy court to defer to for resolution of the bankruptcy claims and issues. *Gelb v. United States Trustee (In re Gelb)*, 2013 Bankr. LEXIS 1415 *15 n.15 (B.A.P. 9th Cir. Mar. 22, 2013). Suspension or dismissal does not void creditor rights. It diverts their exercise to another forum.

intended to be used as a remedy for the debtor's inability to satisfy the Bankruptcy Code's requirements for emergence. Rather, in chapter 11, *section* 1112(b) should be used instead.

Likewise, here the propriety of a suspension cannot be based simply on any efficiencies or cost savings that might be obtained from a stay. Indeed, here, the need to rule promptly on the confirmability of the Debtors' plan is of primary importance in ensuring that there is not a continuing abuse of process resulting from the Debtors' use of chapter 11 for an improper purpose. *See Marciano*, 459 B.R. at 49 ("There is a 'premise that a prompt determination of whether a bankruptcy case is to proceed is needed.'" (*quoting In re Kidwell*, 158 B.R. 203, 210 (Bankr. E.D. Cal. 1993)). In its Order denying Qualcomm's Motion to Convert, the Court set firm deadlines by which the Debtors were required to propose a confirmable plan. [*See* Doc. No. 116 at 7]. The "timetable" that was set, which defined the parameter for a reasonable time for confirming a plan in these cases—August 30, 2013—has not be met here. The consequences of that failure should now be enforced, pursuant to the court's Order, and under each of 11 U.S.C. §1112(b)(1) and §1112(b)(4)(J).

### D. To the Extent *Section* 305(a) is Utilized, It Should Be for Dismissal, Not Suspension

As noted above, the last factor to consider in regard to the use of *section* 305(a) is the motives of the debtor, which relates to the issue of good faith and need for a dismissal, for lack thereof. The use of *section* 305(a) to *suspend* proceedings where the Debtors have no assets, no employees, and no business is especially inappropriate, because a case that is filed under such circumstances has no proper bankruptcy purpose and thus should be dismissed. The Ninth Circuit has held that the use of a bankruptcy proceeding to serve as a substitute for an appeal bond is in bad faith, where the debtor's objective is not to prevent business disruptions, *e.g.*, preserve jobs and going concern values. *In re Marsch*, 36 F.3d 825, 828-29 (9th Cir. 1994). While *Marsch* involved a debtor which, unlike the ones here, had the means to post a bond from non-business assets, its core fundamental teaching is that bankruptcy needs to have an overriding purpose other than simply securing a stay to pursue an appeal. *Id*. Citing *In re Arnold*, 806 F2d 937, 939 (9th Cir. 1986), *Marsch* reiterated that the "test is whether the debtor is attempting to unreasonably

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

864756 v5/SD

10.

**BRIEFING ON SUSPENSION OF PROCEEDINGS**

Case: 13-30340   Doc# 202   Filed: 09/05/13   Entered: 09/05/13 23:52:17   Page 10 of 15

deter and harass creditors or attempting to effect a *speedy, efficient reorganization on a feasible basis.*" *Id*. at 828 (emphasis added).

Thus, if the Court finds that the requirements of *section* 305(a) are met, the appropriate use of the statute is to *dismiss* the case, under circumstances here where there is no proper purpose that can be served by the proposing of a chapter 11 plan. For example in *In re Nahas*, 95 B.R. 387 (Bankr. W.D. Pa. 1989), the bankruptcy court determined dismissal was proper, under circumstances substantially similar to those here. Specifically in *Nahas*, the debtors, as here, had only one unsecured creditor, a judgment creditor. They filed their bankruptcy to take advantage of the automatic stay and avoid having to post a supersedes bond. If the pre-petition judgment was affirmed, the debtors could not reorganize, due to their inability to fund a plan. If the judgment was reversed, the debtors would have no need to reorganize. The case was dismissed, because the issues could be addressed effectively outside of bankruptcy. *Id*. at 387; *see also Cinema Service Corp. v. Edbee Corp*, 774 F.2d 584 (3d Cir. 1985) (holding that the use of bankruptcy to enable an appeal of a judgment is an "abuse of process"); *In re first Fin'l Enter., Inc.*, 99 B.R. 751, 754 (Bankr. W.D. Tex 1989) (dismissal proper where chapter 11 used as a litigation strategy).

There is no tangible benefit to remaining in bankruptcy where these Debtors have no business to conduct, no present ability to reorganize, and are incurring debt to fund administrative expenses. *See In re L&M Video Productions, Inc.*, 2007 WL 1847387 (Bankr. N.D. Ohio June 25, 2007) (dismissal under *section* 305(a) proper where debtor had no business to conduct, no present ability to reorganize, and was continuing to incur debt to fund administrative expenses). Therefore, to the extent the Court would be inclined to utilize *section* 305(a) at all, Qualcomm requests that it would use that power to dismiss, rather than suspend, the case, without prejudice to it being refiled, under chapter 7.

### III. SECTION 105(A) CANNOT BE USED AS AN ALTERNATIVE BASIS TO SUSPEND THESE PROCEEDINGS

*Section* 105(a) provides that a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." It is settled law that a bankruptcy court may only invoke *section* 105(a) to the extent it preserves a right provided

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

864756 v5/SD 11. **BRIEFING ON SUSPENSION OF PROCEEDINGS**
Case: 13-30340  Doc# 202  Filed: 09/05/13  Entered: 09/05/13 23:52:17  Page 11 of 15

elsewhere in the Bankruptcy Code and only so long as not *inconsistent* with the substantive rights provided by the Bankruptcy Code. *See Committee of Creditors Holding Unsecured Claims v. Koch Oil Co. (In re Powerine Oil Co.)*, 59 F.3d 969, 973 (9th Cir. 1995); *accord New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.)*, 351 F.3d 86, 91-92 (2d Cir. 2003). Moreover, *section* 105 was amended in 2005 to expressly mandate that any order issued relating to the timing for the filing of a disclosure statement and plan may not be "inconsistent with another provision of this title or with applicable Federal Rules of Bankruptcy Procedure." 11 U.S.C. § 105(d)(2)(B)(i). Suspension here would be inconsistent with, among others, *section* 1112(b), which mandates dismissal or conversion if a plan is not able to be timely confirmed; and *section* 1121, which provides for a debtor's exclusivity period to be limited.

Likewise, absent an express finding of abuse of process by the Debtors—which fact would be a basis for *dismissal*, not suspension—*section* 105 requires that any *sua sponte* suspension of the deadlines for confirmation of a plan would have to support "enforce[ment] or implement[ation]" of court orders or rules. Here, any order suspending the proceedings would run contrary to the requirements of *section* 1112(b)(4)(J). Moreover, the Court's Order denying Qualcomm's Motion to Convert required the Debtors to confirm a plan by a date certain and noted that absent compliance, conversion would be required pursuant to *section* 1112(b)(4)(J).

Finally, under the express language of *section* 105, there must be "a connection between the relief requested and an additional statutory basis in the Bankruptcy Code." *In re Rubenstein*, 2010 WL 3765952 (Bankr. D. Conn. Sept. 20, 2010) (citing *Dairy Mart*, *supra*, 351 F.3d at 92). No independent support can be found in the Code for the suspension of these proceedings pending the determination of the Appeal. It is therefore not clear what other provision of the Bankruptcy Code could possibly be enforced here to effectuate such a result by the use of *section* 105(a).

Nor is the decision in *In re Duratech Industries, Inc.*, 241 B.R. 283 (E.D.N.Y. 1999), persuasive here. First, *Duratech* is no longer good law, where the court there did not base the relief on an independent provision in the Bankruptcy Code, as it would now be required to do

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

864756 v5/SD

12.

**BRIEFING ON SUSPENSION OF PROCEEDINGS**

Case: 13-30340   Doc# 202   Filed: 09/05/13   Entered: 09/05/13 23:52:17   Page 12 of 15

under *Dairy Mart*, *supra*, 351 F.3d at 92.[10] Moreover, its rationale conflicts with the later changes made to *section* 105(d) in the 2005 amendments to the Bankruptcy Code, which added the restriction that any orders regarding case administration may not be "inconsistent with another provision of this title or with applicable Federal Rules of Bankruptcy Procedure." 11 U.S.C. § 105(d)(2). The proper construction of *section* 105 in its current codification is articulated in *Rubenstein*, 2010 WL 3765952, discussed above.

Second, even setting aside the fact that it is no longer good law in the Second Circuit (which has a substantially similar approach to *section* 105(a) as does the Ninth Circuit), *Duratech* is inapposite here. The court there was reacting to extraordinary facts of a creditor's bad faith and perceived abuse of process, which are not in the picture here. The non-debtor in *Duratech*, Nu-Chem, had sued a third party for theft and misappropriation of its trade secrets. The debtor had intervened in the lawsuit, alleging that Nu-Chem had itself stolen the trade secrets from the debtor. The district court granted the debtor a preliminary injunction against Nu-Chem. After the debtor had filed its bankruptcy petition, Nu-Chem filed a strategically defensive proof of claim for alleged trade libel and related business torts. The district court determined the proof of claim was, in essence, a counter-claim to the existing lawsuit and the claim was withdrawn and consolidated by the district court with the pending complaint. *Duratech*, 241 B.R. at 285.

After it had its claims withdrawn from the bankruptcy proceeding, Nu-Chem tried to manipulate the process by purchasing a claim against the debtor in the amount of $1,118.17 for $500.00. The debtor's exclusivity period had run, and Nu-Chem, based on the purchased claim, filed a plan of reorganization and invoked the discovery provisions of Rule 2004. *Id.* at 286. The bankruptcy court was visibly outraged by Nu-Chem's maneuvers, clearly viewing them as an abuse of process. In making the *sua sponte* determination that the case proceedings should be suspended, the bankruptcy court relied primarily on the fact that "Nu-Chem's current rights as a creditor did not even arise until Nu-Chem acquired a $1,118 claim against Duratech for the bargain rate of $500." *Id.* at 287. The court concluded that, under such circumstances, use of

---

[10] Nor is *Duratech* good law to support a suspension under *section* 305(a). Creditor bad faith is not a ground for abstention. It is clear that the court was in fact utilizing a freewheeling form of its equitable power to try to bolster the propriety of the bankruptcy court's use of *section* 305(a). See 241 B.R at 287.

*section* 105(a) was appropriate because "Nu-Chem is merely attempting to continue its tactical warfare at the expense of the bankruptcy court." *Id.* at 289. Clearly, the court was using *section* 105(a) as a form of sanctions.

The facts of *Duratech* are not present here, nor are the equitable considerations at all comparable. Qualcomm is a judgment creditor holding a fully liquidated claim against the Debtors. Qualcomm has gone to great expense to brief and submit a motion that would serve to clarify the relative rights and priorities of the parties in interest in this case, which the Court has indicated is meritorious. Structurally, there are no other significant creditors in this case other than Qualcomm—the balance of the "claims" that have been filed are the claims of the investors in the litigation, which have the same priority as equity under applicable state law. This is essentially a two-party dispute, and the Debtors have filed these cases as a substitute for a supersedes bond. The Debtors are presently buying time by going though the motions of proposing a plan. But, the Debtors' Disclosure Statement and Plan appears to be facially defective[11] and needs to be promptly scrutinized to determine if the Plan is unconfirmable as a matter of law. Throughout all of this, Qualcomm has reasonably relied on this Court's statements and prior orders to the effect that the Court would require a timely confirmation process to be adhered to by the Debtors.

Although this Court seems to be reticent to act in a desire to maintain the status quo, in fact, maintaining the required status under the Bankruptcy Code means honoring the checks and balances that the Bankruptcy Code provides. A debtor's privilege of remaining protected by the automatic stay comes with certain counterbalances, limitations and duties—such as those imposed under 11 U.S.C. §1112, which Congress has developed to protect creditors' pre-existing state law rights. If those are lost, the statutory balance is also lost. Qualcomm is prejudiced if, among other things, it is divested of its statutory rights under the Bankruptcy Code to receive a reasonably timely determination of (i) its Motion to Recharacterize; (ii) whether the Debtors' plan is unconfirmable as a matter of law; and (iii) whether, now, as a result, conversion to chapter 7 is appropriate.

---

[11] Among other things, the Plan proposes to grant the Debtors a discharge.

Under such circumstances, use of *section* 105 to impose a stay would not be equitable. In the end analysis, it only makes sense that *section* 105(a)—which is a function of this Court's *equitable* power—cannot be utilized to work inequity or impose harm or diminish a creditor's statutory protections and rights under the Bankruptcy Code.

## IV. CONCLUSION

For the reasons set forth herein, Qualcomm respectfully requests that this Court would not suspend the proceedings in these cases. Instead, Qualcomm requests that the Court would proceed expeditiously to the determination of the Recharacterization Motion and, and accordingly, to make a prompt determination of whether the Debtors' plan is unconfirmable as a matter of law and that the Debtors' cases should be promptly converted to chapter 7.

Dated: September 5, 2013

Respectfully submitted,

COOLEY LLP
ALI M. M. MOJDEHI (123846)
JANET D. GERTZ (231172)


By: /s/ Ali M.M. Mojdehi
       Ali M. M. Mojdehi (123846)

Attorneys for Creditor
Qualcomm Incorporated

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

864756 v5/SD

15.

**BRIEFING ON SUSPENSION OF PROCEEDINGS**

Case: 13-30340  Doc# 202  Filed: 09/05/13  Entered: 09/05/13 23:52:17  Page 15 of 15