MEYERS LAW GROUP, P.C.
MERLE C. MEYERS, ESQ. CA Bar #66849
MICHELE THOMPSON, ESQ. CA Bar #241676
44 Montgomery Street, Suite 1010
San Francisco, CA 94104
Telephone: (415) 362-7500
Facsimile: (415) 362-7515

Counsel for Gabriel Technologies Corporation
and Trace Technologies, LLC, Debtors

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 13-30340 - DM |
| GABRIEL TECHNOLOGIES CORP. et al., | (Case no. 13-30341) |
| Debtors. | Chapter 11 |
| | (Jointly Administered) |
| E.I.N.s 22-3062052; 20-1711149 | Date: October 18, 2013 |
| | Time: 10:00 a.m. |
| | Court: Courtroom No. 22 |
| | 235 Pine Street, 22nd Floor |
| | San Francisco, CA |
| | Judge: Honorable Dennis Montali |

**DEBTORS' MOTION FOR ENTRY OF ORDER PURSUANT
TO 11 U.S.C. § 363; AND BANKRUPTCY RULE 9019 APPROVING SETTLEMENT**

GABRIEL TECHNOLOGIES CORPORATION ("Gabriel") and TRACE TECHNOLOGIES,
LLC ("Trace"), the debtors-in-possession herein (collectively, the "Debtors"), by and through their
undersigned counsel, hereby submit this motion seeking an order approving and authorizing a
settlement agreement titled *Settlement Agreement And Release* (the "Settlement"), a copy of which is
attached hereto as **Exhibit "A,"** free and clear of all liens and other encumbrances that may affect the
claims to be released under the terms of the Settlement.

The Settlement has been entered into by and between Gabriel, as plaintiff in a civil action
titled *Gabriel Technologies Corp., etc. v. Keith Feilmeier, etc., et al.*, Doc. 1092 No. 798 (the
"Whittle Litigation"), pending in state court in Omaha, Nebraska (the "State Court"), and the

1

DEBTORS' MOTION FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 363; AND BANKRUPTCY RULE 9019 APPROVING SETTLEMENT OF THE WHITTLE LITIGATION
28799.DOC/20102

Case: 13-30340    Doc# 209    Filed: 09/18/13    Entered: 09/18/13 11:54:07    Page 1 of
15

personal representatives of the probate estate (the "Whittle Estate") of Rick Whittle ("Mr. Whittle"). The Debtors seek approval of the Settlement, free and clear of liens, pursuant to Section 363 of the United States Bankruptcy Code (the "Bankruptcy Code") and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## I.   JURISDICTION AND VENUE

The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper before the Court pursuant to 28 §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157 (b)(2).

## II.   BACKGROUND

The record of this Court, together with the declaration of Byron Nelson filed concurrently herewith, establishes the following pertinent facts:

**A.    The Debtors and Their Chapter 11 Cases**

1.    On February 14, 2013 (the "Petition Date"), each of the Debtors commenced a chapter 11 case by filing a voluntary petition for relief under the provisions of chapter 11 of the Bankruptcy Code.

2.    Each of the Debtors remains in possession of its property and estate, no trustee having been appointed.  By order entered on February 25, 2013, this Court granted the Debtors' motions seeking joint administration of their chapter 11 cases.

3.    Gabriel, a Delaware corporation, is a publicly traded company, and Trace, a Nevada limited liability company, is its wholly owned subsidiary.

4.    On June 7, 2013, the *Debtors filed the First Amended Joint Plan of Reorganization* (the "Plan," docket no. 119).  The Plan provides, *inter alia*, for the disposition of any proceeds of claims asserted in the Whittle Litigation, whether by settlement or through enforcement of a judgment, in a sharing arrangement between secured and unsecured creditors.

5.    Recently, following briefing, this Court has stated its intention to suspend the Debtors' chapter 11 cases, pursuant to the provisions of Section 305(a) of the Bankruptcy Code, pending the determination of an appeal before the Federal Circuit Court of Appeals regarding a civil action between the Debtors and Qualcomm Incorporated ("Qualcomm").  At the Debtors' request, the Court

2

has stated that it intends to exclude from such suspension the subject matter of this motion.

**B.    The Whittle Litigation**

6.    The Whittle Litigation consists of a civil action in which Gabriel is the plaintiff and the only remaining defendant is the Whittle Estate.  The claims asserted by Gabriel against the Whittle Estate arise from the 2004 issuance to Mr. Whittle by Gabriel's prior management of shares of stock of Gabriel, for apparently no consideration to Gabriel.  It appears that the issuance was made instead to satisfy a debt owed by a third party.

7.    The Debtors believe that at the time of the issuance of the stock to Mr. Whittle, the shares had an aggregate value of between $800,000 and $900,000, according to market trading. Gabriel asserts claims against the Whittle Estate (now that Mr. Whittle is deceased) in that amount, based on allegations of unjust enrichment and constructive trust, among other causes of action.

8.    In 2012, the Whittle Estate's representatives filed a motion for summary judgment in the Whittle Litigation, based on the alleged expiration of a statute of limitations.  In August 2012, the State Court denied the motion, on the basis that the statute of limitations defense raised genuine issues of material fact that must be determined at trial.

9.    The Whittle Litigation is presently in the discovery stage, which has been suspended pending settlement discussions among counsel.  If the case is not settled, the Debtors anticipate that discovery will be completed and the civil action will be tried relatively soon.

10.    Completion of discovery and trial is expected to cost approximately $25,000, plus the fees of the Debtors' state court counsel.  All such costs must be advanced by the Debtors in order to proceed to trial.  Prospects of success at trial are unknown, as are the collection risks against the Whittle Estate.

**C.    Liens Encumbering Claims Against Whittle Estate**

11.    As of September 2, 2011, the Debtors and most of their creditors entered into a Note Purchase Agreement (the "Note Purchase Agreement"), pursuant to which, among other terms, Trace granted security interests in all of its assets, including all claims asserted in the Whittle Litigation or against the Whittle Estate or its representatives (collectively, the "Whittle Claims"), to its primary lender, Northwater Intellectual Property Fund L.P. 3A ("Northwater"), and certain other secured

3

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

DEBTORS' MOTION FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 363; AND BANKRUPTCY RULE 9019 APPROVING SETTLEMENT OF WHITTLE LITIGATION
28799.DOC/20102

Case: 13-30340    Doc# 209    Filed: 09/18/13    Entered: 09/18/13 11:54:07    Page 3 of 15

creditors (collectively, the "Primary Lienholders").

12. Also pursuant to the Note Purchase Agreement, under Section 8.1(c) thereof, the Primary Lienholders subordinated their security interests in the Whittle Claims to the claims, in an aggregate principal amount of approximately $500,000, of certain other noteholders, *to wit*, Robert C. Buford, David B. Clark, Gary D. Elliston, Robert Lamse, Meridian Investors, Stephen D. Moore, Dan Robison and Robert F. Vickers (collectively, the "Whittle Noteholders").[1]

13. Thus, liens are asserted against the Whittle Claims by the Whittle Noteholders, based on subordination of the liens held by the Primary Lienholders.

14. The liens asserted by the Whittle Noteholders are a matter of bona fide dispute. In particular, Qualcomm has asserted in unrelated motion practice that most or all claims and liens asserted by holders of notes issued by the Debtors must be recharacterized as equity interests rather than claims. Qualcomm has also argued that the liens held by the Primary Lienholders (from which the Whittle Noteholders' lien rights derive) were not properly perfected or did not attach to any collateral. Other issues as to the liens may also exist, and the Debtors reserve all rights in that regard.

15. In addition, the Debtors are informed that the law firm of Hotz, Weaver, Flood, Breitkreutz & Grant (the "Hotz Firm"), former counsel for the Debtor in the Whittle Litigation, may assert an attorney's lien in the amount of 14,851, for legal services rendered prior to the firm's withdrawal as counsel in September 2009. It is unclear whether the attorney's lien was properly perfected under applicable law, and the Debtors believe that they may dispute the value of the underlying services rendered by the firm. Any lien asserted by such firm is therefore a matter of bona fide dispute as well.

16. Further, as to all liens asserted against the Whittle Claims, the Debtors believe that they are entitled to assert a surcharge under Section 506(c) of the Bankruptcy Code, for legal fees incurred since the Petition Date in seeking to resolve the Whittle Litigation, leading to the present Settlement. Because any such surcharge would have higher priority than any of the asserted liens against the Whittle Claims, all such liens are disputed for that reason as well.

LAW OFFICES
MEYERS LAW GROUP, P. C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

---

[1] Mr. Clark is an officer of the Debtors, and Messrs. Lamse and Elliston are members of the Official Committee of Unsecured Creditors (the "Committee") appointed herein.

4

### III.  TERMS OF SETTLEMENT AND LIEN DISPOSITION

Under the terms of the Settlement, the Whittle Claims and the Whittle Litigation will be finally and fully resolved by mutual releases between the Debtors, on the one hand, and the Whittle Estate and its representatives, on the other hand.  In exchange for the releases, the Whittle Estate will pay to the Debtors the cash sum of $40,000 (the "Settlement Proceeds").

Upon implementation of the Settlement, the Debtors' counsel, Meyers Law Group, P.C., will hold the Settlement Proceeds in trust for the Debtors' estate, pending further order of the Bankruptcy Court.  It is anticipated by the Debtors that once the suspension of the chapter 11 cases is terminated, the Settlement Proceeds will be disposed of either by treatment under the Plan, once confirmed, or by transfer to a trustee, if the cases are converted to chapter 7.

The Debtors propose that all liens asserted by the Hotz Firm, the Primary Lienholders or the Whittle Noteholders will be released from the Whittle Claims upon the implementation of the Settlement, and shall attach to the Settlement Proceeds pending further order of the Bankruptcy Court.  The liens shall retain the same validity, enforceability, relative priority and challenges to amounts as they had immediately prior to release from the Whittle Claims.

The Debtors believe that the Settlement is in the best interest of the Debtors' estates.  The terms of the Settlement reflect the Debtors' and their counsel's evaluation of the potential risks and costs of continued prosecution of the Whittle Litigation, and the merits of the parties' respective claims and defenses.  The Debtors believe that the remaining costs of litigating the dispute would be significant relative to the prospects for a successful outcome, and that the risks of collection of a successful judgment are unknown.  The Debtors believe that this outcome is preferable to the uncertainty of continued litigation and accumulation of professional fees and costs.

In addition, the Debtors' counsel has discussed the terms of the Settlement, together with an evaluation of the pending litigation, with Northwater representatives, the Committee and two of the principal Whittle Noteholders, and based on those discussions, the Debtors believe that those parties agree with the Debtors' assessment that the Settlement is in the best interests of the Debtors' estates.

### IV.  RELIEF REQUESTED

By this motion, the Debtors seek entry of an order containing the following relief:

DEBTORS' MOTION FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 363; AND BANKRUPTCY RULE 9019 APPROVING SETTLEMENT OF WHITTLE LITIGATION
28799.DOC/20102

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

A.      Approving the Settlement and authorizing the Debtors to implement its terms, pursuant to Bankruptcy Rule 9019; and

B.      Directing that all liens and other encumbrances asserted or held by the Hotz Firm, the Primary Lienholders or the Whittle Noteholders (i) be deemed released and discharged from the Whittle Claims as of the completion of the Settlement; and (ii) attach to the Settlement Funds, pending further order of the Bankruptcy Court, with the same validity, enforceability, relative priority and challenges to amounts as they had immediately prior to release from the Whittle Claims.

## V.   DISCUSSION

For the reasons set forth below, the Debtors submit that the Settlement should be approved and the liens asserted against the Whittle Claims should be transferred to the Settlement Funds, as requested herein.

### A.   Approval Under Bankruptcy Rule 9019(a)

Rule 9019(a) of the Bankruptcy Rules provides, in relevant part, that "on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Section 1107(a) of the Bankruptcy Code vests a debtor with the rights and powers of a trustee serving in a chapter 11 case. See 11 U.S.C. § 1107(a). Thus, for the purposes of enforcing Bankruptcy Rule 9019(a), the Debtors step into the shoes of a trustee and may therefore bring a motion to approve settlement.

In evaluating a settlement, the court must determine whether the proposed settlement is fair and equitable and in the best interest of the estate. *In re A&C Properties,* 784 F.2d at 1381. It has been held that the court's proper role is "to canvas the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re Pacific Gas & Electric Company*, 304 B.R. 395, 416 (Bankr. N.D. Cal. 2004) citing *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 496-97 (Bankr. S.D.N.Y. 1991).

"The purpose of a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *In re A&C Properties*, 784 F.2d 1377, 1380-81 (9th Cir. 1986). Accordingly, "[t]he law favors compromise and

6

LAW OFFICES
**MEYERS LAW GROUP, P. C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA  94104

Case: 13-53840     Doc# 209     Filed: 09/18/13     Entered: 09/18/13 11:54:07     Page 6 of 15

not litigation for its own sake, and as long as the bankruptcy court amply considered the various factors that determined the reasonableness of the compromise, the court's decision must be affirmed." *In re A&C Properties,* 784 F.2d at 1381.

The decision to approve a compromise is within the discretion of the Court and is warranted where the settlement is found to be reasonable and fair in light of the particular circumstances of the case. *See Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424-25 (1968). The settlement need not be the best that could have been achieved, but need only fall "within the reasonable range of litigation possibilities," *In re Penn Central Transp. Co.*, 596 F.2d 1102, 1114 (3d Cir. 1979), and not "below the lowest point in the range of reasonableness." *U.S. v. Oncology Associates, P.C.*, 269 B.R. 139, 149-50 (D. Md. 2001), citing *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983).

In *A&C Properties*, the Ninth Circuit Court of Appeals articulated four factors that a bankruptcy court must consider when evaluating a proposed settlement:

> In determining the fairness, reasonableness and adequacy of a proposed settlement agreement, the court must consider: (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises. *A&C Properties*, 784 F.2d at 1381.

The four-factor test established by the Court of Appeals in *A&C Properties*, as set forth above, balances the probability of litigation success and potential litigation costs against the costs and benefits of a proposed settlement. In applying that balance, "[t]he court's role is not to conduct a trial or mini-trial, or to decide the merits of individual issues…Rather, it is to determine whether the settlement as a whole is fair and equitable." *In re Lehigh Valley Professional Sports Club, Inc.*, 2002 WL 1349586 (Bankr. E.D. Pa 2002), citing *Protective Comm. For Indep. Stockholders for TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 423 (1968).

In this case, the Ninth Circuit's four-factor test favors the Settlement proposed by the Debtors. First, the inherent uncertainty in the outcome of litigation in this case weighs in favor of a reasonable settlement. While the Debtors believe that they have a reasonable likelihood of prevailing in the

LAW OFFICES
MEYERS LAW GROUP, P.C.
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

Whittle Litigation, the Debtors' believe that the Settlement establishes a favorable outcome given existing challenges.

The second factor, the difficulties to be encountered in the matter of collection, is unknown, and therefore weighs in favor of settlement.

Third, in the Debtors' view, the complexity and expense of the litigation is an important factor to consider with respect to this Settlement. Specifically, the Debtors anticipate that any recovery at trial would be primarily based on testimony of accounting and financial experts, thereby exacting a complicated and costly pretrial preparation and trial.

Fourth, the Debtors believe that the terms and conditions of the Settlement embody a satisfactory resolution to the Whittle Litigation. The Settlement would resolve the Whittle Litigation and immediately provide for payment of $40,000, thus providing funds from which partial payment to creditors and administrative claimants is possible. Further, as stated, the Debtors have discussed the terms of the Settlement with major creditor constituencies having an interest in the outcome of the Whittle Litigation – secured creditors and unsecured creditors – and it is the Debtors' understanding that those creditor representatives support the approval of the Settlement.

In sum, the Settlement reflects the Debtors' evaluation of the risks and costs of potentially protracted litigation and the merits of the respective claims and defenses. The Debtors believe that the costs of litigating the disputes could be significant due to the need for expert testimony, as well as the accrual of additional attorneys' fees. While the Debtors believe that they would ultimately prevail, the Debtors believe that the balance of the respective risks and benefits weigh in favor of the proposed Settlement. As such, the Debtors submit that the proposed Settlement meets the criteria for approval under Bankruptcy Rule 9019(a).

**B.** **Implementation Free And Clear of Liens, Pursuant to Section 363(f)(4)**

The Debtors seek an order authorizing implementation of the Settlement, and discharge of the Whittle Claims, free and clear of all liens, claims and interests asserted by the Hotz Firm, the Primary Lienholders and the Whittle Noteholders. Effectively, the Debtors seek the ability to "sell" the Whittle Claims to the Whittle Estate in exchange for payment of the Settlement Funds.

8

Section 363(b)(1) of the Bankruptcy Code authorizes a trustee, after notice and a hearing, to "use, sell, or lease, other than in the ordinary course of business, property of the estate...." 11 U.S.C. § 363(b)(1). The Debtors' power to sell estate property under Section 363 is not limited to tangible personalty. See *In re Dow Corning Corp.*, 198 B.R. 214, 247 (Bankr. E.D. Mich. 1996). The power to sell property of the estate is extremely broad and includes "a trustee's alienation of a chose in action . . . " *In re Dow Corning Corp.*, 198 B.R. at 247.

As the *Dow* court recognized, where a compromise involves the exchange of property, the line between a sale and compromise begins to blur. *In re Dow Corning Corp.*, 198 B.R. at 245; citing *In re Telesphere Communications, Inc.*, 179 Bankr. 544, 552 n.7, (Bankr. N.D. Ill. 1994) ("The settlement of a cause of action held by the estate is plainly the equivalent of a sale of that claim. There is no difference in the effect on the estate between the sale of a claim (by way of assignment) to a third party and a settlement of the claim with an adverse party.").

Moreover, property of the estate may be sold free and clear of any interests in the property held by an entity other than the estate, when that interest is "in bona fide dispute." 11 U.S.C. § 363(f)(4); *In re Nicole Energy Servs., Inc.*, 385 B.R. 201 (Bankr. S.D. Ohio 2008). "A 'bona fide dispute' exists under § 363(f)(4) when there is an objective basis for either factual or legal dispute as to the validity of an interest in property." *In re Downour*, 2007 WL 963258 at *1 (Bankr. N.D.Ohio 2007). There is an objective basis for such a dispute here.

A stated above, the liens held by noteholders in these cases, including all of the Primary Lienholders and the Whittle Noteholders, are a matter of dispute, as argued by Qualcomm, based on issues of recharacterization, perfection and attachment. Further, the Hotz Firm's asserted lien, if any, may be subject to perfection and quantification issues. Yet further, all of the liens are subject to Section 506(c) surcharges to be asserted by the Debtors, as discussed further below. Therefore, on an objective basis, all of the liens in question are subject to bona fide dispute.

The Court need not decide whether any allegations of a bona-fide dispute are valid for purposes of Section 363(f)(4). "The case law construing § 363(f)(4) is uniform in holding that the standard does not require the court to resolve the dispute, just to determine its existence." *In re Downour*, 2007 WL 963258 at *1 (Bankr. N.D.Ohio 2007); see also *In re Gaylord Grain L.L.C.*, 306

9

DEBTORS' MOTION FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 363; AND BANKRUPTCY RULE 9019 APPROVING SETTLEMENT OF THE WHITTLE LITIGATION
28799.DOC/20102

Case: 13-53846   Doc# 209   Filed: 09/18/13   Entered: 09/18/13 11:54:07   Page 9 of 15

LAW OFFICES
**MEYERS LAW GROUP, P. C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

1    B.R. 624, 627 (8th Cir. BAP 2004) (application of 363(f)(4) "does not require the court to resolve the

2    underlying dispute, just to determine its existence"). The Debtors therefore submit that the requested

3    release of the liens in question from the Whittle Claims, and their attachment to the proceeds of

4    settlement as adequate protection, satisfy the requirements of Section 363(f)(4).

5    **C.    Surcharge Under Section 506(c)**

6            As discussed above, one of the reasons for dispute of the liens in question is the fact that the

7    Debtors will assert a priming surcharge under Section 506(c) of the Bankruptcy Code, and that

8    surcharge must first be quantified and approved before any junior liens can be paid. This is in accord

9    with applicable law.

10           A trustee or debtor in possession may recover from property securing an allowed secured

11   claim the "reasonable, necessary costs and expenses of preserving or disposing of, such property to

12   the extent of any benefit to the holder of such claim …." 11 U.S.C. § 506(c); *In re Visual Ind., Inc.*,

13   57 F.3d 321, 325 (3rd Cir. 1995); *In re Flagstaff Foodservice Corp.*, 739 F.2d 73, 76 (2nd Cir. 1984).

14   Generally, the normal administrative expenses of the bankruptcy estate may not be recovered from

15   secured claim holders because the trustee acts not for their benefit but for the benefit of the estate and

16   its unsecured claimants. *In re Flagstaff Foodservice Corp.* 739 F.2d at 76. Section 506(c), however,

17   is the exception to the general rule, applicable when expenses of preservation are incurred primarily

18   for the benefit of the secured interest or where the secured claim holder caused or consented to the

19   accrual of such expenses. *In re Flagstaff Foodservice Corp.* 739 F.2d at 76.

20           Section 506(c) allows costs to be charged against a secured party "for acts which directly

21   protect or preserve the collateral in a specific and limited sense." *In re Sonoma V.,* 24 B.R. 600, 603,

22   (9th Cir. 1982). Attorneys' fees may properly be recovered under Section 506(c) to the extent of the

23   benefit provided, so long as (i) the services were necessary in order to preserve or dispose of the

24   secured creditor's property; (ii) the amounts charged for such services were reasonable; and (iii) the

25   expenses were incurred for the primary benefit of the secured creditor. *In re Flagstaff Foodservice*

26   *Corp*. 762 F.2d at 12.

27           Here, the Debtors' attorneys have provided a direct benefit through substantial efforts to

28   prosecute the Whittle Litigation and reach a compromise. Once an estate has incurred expenses, it

                                                        10

LAW OFFICES
**MEYERS LAW GROUP, P. C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

may be reimbursed out of secured collateral upon a showing that the expenses incurred were reasonable, necessary and beneficial to the secured creditor. *In re Compton Impressions Ltd.*, 217 F.3d 1256, 1262 (9th Cir.2000). As such, the Debtors are entitled to a surcharge, ahead of all liens asserted against the Whittle Claims, for the fees charged by their counsel in pursuing the very Settlement that will now produce proceeds within the scope of the subject liens.

## VI. CONCLUSION

WHEREFORE, the Debtors respectfully request entry of an order (a) approving and authorizing the Settlement, and (b) directing release of the liens identified above from the Whittle Claims, and attaching them to the Settlement Proceeds, all as set forth above in the "Relief Requested" section of this motion.

DATED: September 18, 2013

MEYERS LAW GROUP, P.C.

By    /s/ Merle C. Meyers
     Merle C. Meyers, Esq
     Attorneys for Debtors-in-Possession

LAW OFFICES
**MEYERS LAW GROUP, P.C.**
44 MONTGOMERY STREET, SUITE 1010
SAN FRANCISCO, CALIFORNIA 94104

DEBTORS' MOTION FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 363; AND BANKRUPTCY RULE 9019 APPROVING SETTLEMENT OF WHITTLE LITIGATION

28799.DOC/20102

# EXHIBIT A

Case: 13-30340   Doc# 209   Filed: 09/18/13   Entered: 09/18/13 11:54:07   Page 12 of 15

## SETTLEMENT AGREEMENT AND RELEASE

FOR AND IN CONSIDERATION of the sum of Forty Thousand ($40,000.00), conditioned upon payment and approval as specified below (herein "the Conditions"), the undersigned (herein "Releasor") hereby releases and forever discharges the Estate of Rick Whittle, Dianna Whittle, and Elanna Whittle-Daggett, and their respective principals, servants, agents, employees, heirs, assigns, attorneys, successors, adjusters and all other persons, firms and corporations (herein "Released Parties") from all damages arising out of the claims set forth in that certain Complaint filed in the District Court of Douglas County Nebraska captioned Gabriel Technologies Corporation v Keith Feilmeier et. al. filed at Doc. 1092 pg. 798.

FURTHER, FOR AND IN CONSIDERATION of the release set forth above, the Released Parties hereby release and forever discharge the Releasor and its principals, servants, agents, employees, heirs, assigns, attorneys, successors, adjusters and all other persons, firms and corporations acting on its behalf from any and all damages or claims of any kind, known or unknown, mature or unmatured, liquidated or unliquidated.

IT IS UNDERSTOOD AND AGREED that the releases set forth above may be pleaded by any of the Released Parties or the Releasor as a full and complete defense and may be produced by such releasees as a basis for an injunction against any action, suit or claim or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such release. Each of the releasing parties hereby acknowledges that it is familiar with Section 1542 of the Civil Code of the State of California, and any similar federal or state statute, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

IT IS FURTHER UNDERSTOOD AND AGREED that, subject to the Conditions, this is a full and complete settlement of the liability of Released Parties and includes all damages Releasors have sustained or will sustain as a result of said matter and includes all future developments therefrom whether now known or hereafter to become known.

IT IS FURTHER UNDERSTOOD AND AGREED that, subject to the Conditions, this is a compromise settlement of a disputed claim, the liability for which has been and hereby is expressly denied by Released Parties and this release is not to be construed as an admission of liability.

IT IS FURTHER UNDERSTOOD AND AGREED that, subject to the Conditions,

1

Releasors will indemnify and hold harmless Released Parties from any and all liability, loss, damages, costs, expenses, lien claims, claims and demands for contribution, indemnification, subrogation or reimbursement which may be sought from Released Parties by reason of said breach.

IT IS SPECIFICALLY REPRESENTED AND WARRANTED by the undersigned that, subject to the Conditions, any individual or entity holding any valid, enforceable and unavoidable subrogation right or lien against the proceeds will be paid from these settlement proceeds.

CONDITIONS FOR SETTLEMENT (the "Conditions"): Released Parties and Releasor acknowledge:

1. That Releasor has filed a petition for relief under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California, San Francisco Division ("Bankruptcy Court") ;

2. That this settlement and release agreement must be approved by the Bankruptcy Court pursuant to Bankruptcy Rule 9019(a) and Section 363(f)(4) of the Bankruptcy Code ("Bankruptcy Court Approval") in order to become final;

3. That Releasees shall be obligated to transfer $40,000 (the "Settlement Funds") to Releasees' counsel's trust account, the Demerath Law Office Trust Account, on or before September 30, 2013, with such funds to be held in the Demerath Law Office Trust Account pending Bankruptcy Court Approval;

4. That following Bankruptcy Court Approval, Demerath Law Office shall be obligated to wire transfer the Settlement Funds to Releasors c/o their bankruptcy counsel, Meyers Law Group, P.C., within seven (7) days of notice of said approval;

5. That upon receipt of the Settlement Funds by Releasors' counsel, and conditioned upon Bankruptcy Court Approval, this Release and Settlement shall become final and Releasors' attorney Larry E. Welch, JR. shall dismiss the suit against Releasees with prejudice;

6. That in the event that Bankruptcy Court Approval has not been entered within sixty (60) days of full execution of this Settlement Agreement, the same shall become null and void and the Settlement Fund shall be returned to Releasees; and

7. That fully executed facsimiles or email counterparts of this Agreement shall be considered and given the same force and effect as a fully executed original document.

[SIGNATURES ARE ON NEXT PAGE]

2

DATED this __16__ day of _September_ __2013.__ ~~2006.~~

THIS IS A FINAL RELEASE. READ BEFORE SIGNING. CONSULT YOUR ATTORNEY.

Gabriel Technologies Corporation

Witness **ISABEL C. GARCIA**

By: Byron Nelson, President

Estate of Rick Whittle

Dianna Whittle

Elanna Whittle-Daggett

3