Signed and Filed: October 7, 2013



_____
**DENNIS MONTALI**
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

```
In re                              ) Bankruptcy Case
                                   ) No. 13-30340DM
GABRIEL TECHNOLOGIES CORP., et al.,) (No. 13-30341)
                                   )
                       Debtors.    ) Chapter 11
_____)
```

MEMORANDUM DECISION REGARDING SECTION 305 SUSPENSION

I.  INTRODUCTION

By Tentative Ruling Re Section 305 Suspension entered on September 9, 2013, (Docket No. 204), the court announced its tentative ruling to drop from calendar a hearing scheduled for September 10, on the motion by Qualcomm Incorporated ("Qualcomm") described below.  It further promised the parties a written decision setting forth its consideration of the applicable factors in support of suspension, and an appropriate order.

Qualcomm, through counsel, reported that it would not seek to have the court withdraw its tentative decision.  By this Memorandum Decision Regarding Section 305 Suspension, the court is setting forth in detail its reasoning for suspending these cases and is concurrently entering its Order Suspending Cases Under Section 305.

-1-

## II. DISCUSSION

### A. Background

Gabriel Technologies, Inc. ("Gabriel") was founded in 2003, and is a publicly traded corporation. Its subsidiary, Trace Technologies, LLC ("Trace" and with Gabriel, "Debtors") holds intellectual property assets involved in products using global positioning systems. Trace acquired the assets of Locate Networks, Inc., including rights and interests that that company maintained under a license agreement with SnapTrack, Inc.

In 2002 Qualcomm acquired SnapTrack, Inc. Gabriel and Trace contend that various trade secrets and patents acquired in connection with that acquisition were derived from or identical to intellectual properties they owned.

They commenced an action against Qualcomm and other defendants in the United States District Court for the Southern District of California (the "District Court") in October, 2008. In the complaint they alleged misappropriation of trade secrets, breach of contract, fraud and other claims.

Extensive and expensive litigation ensued and was not favorable to Gabriel and Trace as Qualcomm obtained partial summary judgment on March 13, 2012, and then final summary judgment on September 28, 2012, (the "Qualcomm Judgment"). Thereafter Qualcomm obtained a Fee Order granting Qualcomm and the other defendants an award of attorneys' fees of $12,401,014.51, against Gabriel and Trace plus a significantly lesser amount against their local counsel.

Gabriel and Trace filed timely notices of appeal of the Qualcomm Judgment and the Fee Order. Those appeals ("the

Appeals") are now pending in the United States Court of Appeals for the Federal Circuit (the "Federal Circuit"). They have filed their opening briefs and Qualcomm is expected to file its appellee's briefs shortly. Both sides agree that the Appeals are likely to be argued early in 2014 and that a decision is likely to be handed down by the Federal Circuit around mid-2014.

Even before the District Court action was commenced, Gabriel and Trace began to experience financial reverses. They had ceased filing audited financials after fiscal year 2006 and as early as July, 2007, they began borrowing funds largely to finance the District Court action under a series of financings that are complex and spanned several years, culminating in a September, 2011 Note Purchase Agreement by which nearly all of their present secured and unsecured debt (other than the Fee Award) was either incurred or refinanced from the prior financings. By and large the creditors of Debtors who are dealt with in their proposed Plan are various participants in those financings; there is also general unsecured debt, unpaid professional fees, and Qualcomm's multi-million dollar Fee Award.

B. Procedural History

Debtors filed their voluntary Chapter 11 petitions on February 14, 2013. By Order entered on February 26, 2013 (Docket No. 19), the court ordered the joint administration of these two cases.

On April 3, 2013, Qualcomm filed a motion to convert these cases to Chapter 7 or for appointment of a Chapter 11 Trustee. The court held a hearing on that motion on May 17, 2013, and on May 28, entered a Memorandum Decision and a companion Order

Denying Motion For Conversion To Chapter 7 or Appointment of a Chapter 11 Trustee. In that Memorandum the court anticipated that Debtors' plan of reorganization might not be confirmable and that Qualcomm was likely to object to confirmation. It stated further,

> . . . if Debtors do not obtain confirmation within the timetable to be set, Qualcomm will have its wish, albeit under § 1112(b)(4)(J) (a failure to file a disclosure statement, or to file or confirm a plan, within the time fixed . . . by order of the court.)

Debtors filed their Amended Chapter 11 Plan (the "Plan") on June 7, 2013 (Docket No. 119) and a proposed Disclosure Statement on the same date (Docket No. 120).

At a June 10, 2013, status conference the court established a briefing schedule for consideration of the Plan and Disclosure Statement, and directed Qualcomm to file any motion seeking recharacterization of certain claims in this case by a deadline.

Qualcomm filed its Motion For Determination Of Threshold Issues Relating To Plan Confirmation (Docket No. 145) (the "Recharacterization Motion")on July 1, 2013. In the Recharacterization Motion Qualcomm argued that a vast majority of Debtors' lenders are in fact equity holders and that even if any of them hold true obligations, no payments were due to them as of the date of Debtors' Chapter 11 petition. It stressed that Debtors are out of business and that their only hope for any recovery is to prevail on the Appeals and thereafter on a subsequent retrial of the District Court action.

Indeed, in reviewing the Recharacterization Motion, it is apparent that virtually all of Debtors' creditors (except Qualcomm) and Debtors' professionals, expect payment, if at all, not from any future business operation of Debtors, but rather

-4-

solely from ultimate success in the District Court action.

Qualcomm contends that those creditors really hold "Investor Claims" that should be treated as equity, and thus subordinated to legitimate creditors. Qualcomm is far and away the major "legitimate" creditor of this case. Thus it contends that the court should deny confirmation of Debtors' Plan outright.

In opposition to Qualcomm's Recharacterization Motion, and to support its own revised Plan and Disclosure Statement, Debtors argued that the court should confirm the Plan promptly even though the only likely recovery under any circumstances (other than some relatively minor matters) would be success on the Appeals and thereafter further success in a renewed District Court action.

In other words, Confirmation would not itself facilitate any present reorganization or effective liquidation. It would simply fix certain of the parties' rights and obligations while the Appeals go forward.

C. <u>Court Suggestion of Suspension of the Case</u>

From the court's point of view, as expressed specifically at the July 30, 2013 hearing, an enormous amount of expense and effort has already gone into the preparation and presentation of, as well as the opposition to, the Recharacterization Motion and the Plan. To decide the Motion is not simply a "yes" or "no" matter, because there are so many classes of creditors that Qualcomm lumps together under its Investor Claim label. Each class, if not each member of the class, might have to be considered separately.

To deal with confirmation issues would also involve more briefing and arguments, and seems premature and unnecessary at

-5-

present since the outcome of the Appeals is so critical to the ultimate disposition of these cases, whether they are prosecuted by Debtors as Chapter 11 debtors in possession, or by a trustee either in Chapter 7 or Chapter 11.

Stated more simply, if the Appeals are resolved favorably to Qualcomm with affirmance of the decisions by the District Court, then Debtors have nothing left but liquidation in Chapter 7 with no expectation of any meaningful recovery for creditors.[1] They have acknowledged as much already.

Because the court envisioned an enormous waste of resources, both the parties' and its own, when the ultimate outcome of these cases is so dependent upon the final resolution of the Appeals, the court asked the parties to brief whether or not suspension under § 305 would be appropriate.[2] Having raised the issue of suspension, the court is not unmindful of the fact that it entered a Stipulated Scheduling Order on June 20, 2013 (Docket No. 130), that set forth a schedule for a consideration of Debtors' Plan and Disclosure Statement and Qualcomm's Recharacterization Motion.

---

[1] As an aside, some parties believe that Debtors have causes of action against their former officers and directors who chose to initiate the District Court action in the first place. Of course, if the Appeals are successful, it is inconceivable that those directors and officers have any liability; if the Appeals are unsuccessful, then maybe there is some right of recovery against some directors or officers or their insurers. That speculative outcome is not relevant to the decision to suspend and is obviously for another day.

[2] 11 U.S.C. § 305 provides, in part:

> (a) the court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if -
>
> (1) the interest of creditors and debtor would be better served by such dismissal or suspension. . . .

-6-

Case: 13-30340   Doc# 214   Filed: 10/07/13   Entered: 10/08/13 08:44:08   Page 6 of 14

And further, that stipulated order suggested that at a hearing on July 30, 2013, the court would consider deadlines for transmittal, voting, discovery and briefing on the confirm ability of Debtors' Plan.

By virtue of the sua sponte suspension possibility, the court admittedly has redirected the parties' attention from what they originally expected to be a hard-fought contest over whether or not numerous claims could be recharacterized as equity and whether or not Debtors' Plan could be confirmed. But now that the parties have weighed in on the question of suspension, the court in its discretion believes it far more appropriate to suspend these Chapter 11 cases (with exceptions noted below) and await the disposition of the Appeals.

D. <u>Factors Applicable To § 305 Disposition</u>

Section 305, entitled Abstention, permits the court to dismiss or suspend a case under the Bankruptcy Code. In this court's experience, dismissal is the typical option and suspension rare.[3] More importantly, a decision under § 305 is subject to limited appellate review and therefore is a power that should be utilized only under extraordinary circumstances. <u>In re Eastman</u>, 188 B.R. 621 (9th Cir. BAP 1995); <u>In re Paper One Partners</u>, LP 283 B.R. 661, 678 (Bankr. S.D.N.Y. 2002). But the fact that a decision under § 305 is only subject to review by the district court or the Bankruptcy Appellate Panel does not mean that this court should not make a decision under that section to suspend

---

[3] "Abstention", a word present in the caption, does not even appear in the statute itself, unlike that option in 28 U.S.C. § 1334(c).

-7-

rather than dismiss where appropriate.  The statute plainly
directs the court to dismiss or suspend if the interest of
creditors and the debtor would be better served by dismissal or
suspension.  <u>Eastman</u>, 188 B.R. at 624.

Nor is § 305 available only in involuntary cases, such as two recent notable decisions in the Ninth Circuit, <u>In re Marciano</u>, 459 B.R. 27, 47 (9th Cir. BAP 2011), aff'd, 708 F.3d 1123 (9th Cir. 2013), and <u>In re Macke Int'l Trade</u>, 370 B.R. 236 (9th Cir. BAP 2007).  The availability of that section for voluntary cases was summarized in <u>In re Monitor Single Lift I, Ltd.</u> (Bankr. S.D.N.Y. 2008) 381 B.R. 455, 464:

> Moreover, the case law interpreting § 305(a)(1), while dominated by cases concerning involuntary petitions filed by creditors, is not limited to this situation. Courts have also abstained pursuant to § 305(a)(1) based upon the absence of a proper purpose for filing a bankruptcy, *In re Duratech Indus., Inc.,* 241 B.R. 291, 300 (Bankr.E.D.N.Y.1999) (dismissing bankruptcy where the petition was filed to affect the outcome of a two-party dispute between the debtor and one creditor in state court, and where resolution of the bankruptcy depended entirely on the outcome of the state court proceeding); where questions of state law needed to be resolved by the district court before a bankruptcy could proceed, *In re Milestone Educ. Inst., Inc.,* 167 B.R. 716 (Bankr.D.Mass.1994) (suspending proceedings before bankruptcy court pursuant to § 305(a)(1) to allow district court to first resolve novel issues involving receivership law, as doing so was in the interest of debtors and all creditors); and where a bankruptcy was filed in response to a two-party dispute between a debtor and a single creditor. *In re Spade,* 258 B.R. 221 (Bankr.D.Colo.2001) (dismissing involuntary chapter 7 petition when creditor conceded that the bankruptcy petition was used mainly as a strategy to more easily obtain discovery, after debtor had resisted discovery in a state court action filed by the same creditor to collect on a guaranty); *see also* 2 Collier on Bankruptcy ¶ 305.02[2] (noting that "[w]hile these courts are correct that fact patterns satisfying the three-part test [for dismissal of an involuntary proceeding] undoubtedly justify abstention, section 305(a)(1) is not so limited and additional fact patterns may warrant abstention"). Therefore, while reasons for abstaining may be less common in voluntary cases than in involuntary bankruptcies filed by creditors attempting to gain leverage over the debtor, this does not foreclose the

-8-

possibility that a § 305(a)(1) motion will be granted in a voluntary case.

Thus suspension or dismissal is clearly available on voluntary petitions, and "suspend" cannot mean the same as "dismiss".

The Bankruptcy Appellate Panel in the Marciano case, affirming a court's refusal to dismiss an involuntary petition, revisited the traditional factors to be considered in a § 305 decision, previously set forth in Monitor Single 381 B.R. at 464-5. The applicable factors here are:

- Economy and efficiency of administration;
- Whether another forum is available to protect the interests of both parties where there is already a pending proceeding in state court;
- Whether federal proceedings are necessary to reach a just and equitable solution;
- Whether there is an alternative means of achieving an equitable distribution of assets;
- Whether the debtor and creditors are able to work out a less expensive arrangement;
- The purpose for which bankruptcy jurisdiction has been sought.

As noted in the statute, the overriding considerations are, of course, the interests of creditors and the debtor. Plainly, Qualcomm opposes any disposition under § 305 and prefers to have the Recharacterization Motion decided in its favor. Against that position, however, are the wishes of the Debtors and the Official Unsecured Creditors' Committee. The court does not count votes to

decide this issue but weighs the competing interests of the various creditor constituencies and the Debtor, and then applying the applicable factors to the peculiar circumstances of any individual case, exercises its sound discretion to make a decision for or against suspension or dismissal.

Here, the overwhelming interests of creditors generally support suspending these Chapter 11 cases and letting the Appeals run their course. If Qualcomm wins there are not many options left for Debtors and if Debtors prevail, the court can revisit the future conduct of these cases.

### E. Application of the § 305 Factors

Turning more specifically to the most applicable factors, they all weigh in favor of suspension rather than either dismissal or continued prosecution of these cases at present.

#### 1. Efficiency of administration.

A great deal of time and effort has gone into Qualcomm's preparation of its motion to convert, Debtor's opposition, oral argument, the court's Memorandum Decision, and Qualcomm's unsuccessful attempt to appeal denial of that motion, followed by a similarly enormous effort on both sides for preparation and opposition to the Recharacterization Motion and for and against confirmation of a Plan. That is all in the past and the expense cannot be recouped.

The time has now come to be more economical and efficient, avoid unnecessary judicial involvement, minimize further briefing, and possibly extensive and uncertain follow-up hearings to decide which, if any, of the many holders of "Investor Claims" should be treated as equity. Similarly, consideration of debtor's Plan and

-10-

Disclosure Statement in the context of a costly and uncertain confirmation battle makes no sense at this time. As noted above, if the Appeals are adverse to Debtors, then all of that unexpended and expensive time and effort is avoided and efficiency will prevail.

### 2. Alternative Forum.

The Federal Circuit is not an alternative forum to the bankruptcy court for a solution to Debtors' financial woes, but it plainly is the only forum presently available to dispose, once and for all perhaps, of Debtors' disputes with Qualcomm. Stated otherwise, the obvious option for Debtors if the Appeal is adversely decided is to convert this case to Chapter 7. Allowing the matter to play out in that alternative forum, at least until mid-2014, is not only consistent with the concept of efficient administration, but is where the principal disputes will possibly end.

### 3. Necessity of Federal Proceedings.

If the Appeals are adverse to Debtors, Qualcomm's victory will be assured and its desire to have Debtors' cases converted to Chapter 7 will most likely be fulfilled. Then it will remain for a trustee to realize what other assets might be available to share among various classes of creditors, of which Qualcomm is clearly the largest. Then this court and these bankruptcy cases will serve the needs of all parties.

### 4. Alternative means.

There really does not seem to be an alternative means to this bankruptcy case (after the disposition of the Appeals) for an equitable distribution of assets. If the Fee Award survives the

Appeals, Qualcomm will get the lion's share of what ever value is left after payment of valid secured and priority claims and Chapter 7 expenses of administration. This is the proper forum, sometime in the future, to resolve the competing priorities of creditors' claims consistent with the scheme of the Bankruptcy Code.

     5.  <u>Less expensive alternative arrangement</u>.

Were Debtors and Qualcomm to resolve their differences consensually, it may well be that the remainder of Debtor's claims could be resolved outside of the bankruptcy court. While that outcome might be an aspirational goal of the court, the long history of determined and hard-fought litigation between them does not suggest that such an end game is likely.

     6.  <u>Purpose for seeking bankruptcy jurisdiction</u>.

The court believes the Debtors' purposes in filing bankruptcy were proper, and even Qualcomm did not seek dismissal of the cases other than as an option under § 305. As stated above, if the Appeals go against Debtors, the likely course of these cases is liquidation ibn Chapter 7. If the Appeals go against Qualcomm, the court will need to revisit the future of these cases then.

  F.  <u>Activities During Case Suspension</u>

Debtors have filed an application to compromise an existing controversy that is set for hearing later this month. Because the terms of that compromise were negotiated prior to the court's suggestion of suspension, it would be unfair to the parties to that compromise to refuse to consider it prior to mid-2014. Accordingly, and notwithstanding the order being entered with this Memorandum Decision, the court will dispose of that matter as

-12-

appropriate.

Further, while Debtors should not need the assistance of counsel or of professionals other than its appellate counsel, it would be unfair to refuse to consider any request for employment of professionals that might come up under §§ 327 or 328 of the Bankruptcy Code. Thus any such matters (excluding requests for compensation) will not be suspended.

In addition, Debtors still have basic administrative responsibilities of filing monthly operating reports and paying United States Trustee fees. Those activities will continue notwithstanding the suspension.

Finally, the court cannot rule out some unforeseen circumstance that might require it to attend to something such as permission to file a late claim, a motion for relief from stay by someone not previously involved in the case, or some similar routine matter. If and when such arise, the court will decide then, on a case by case basis, whether to consider them.

III. CONCLUSION

For the foregoing reasons the court will suspend these Chapter 11 cases until the Appeals have been decided by the Federal Circuit. Within thirty days after a decision on the merits is rendered (whether or not there is any request for reconsideration or a petition for certiorari is filed), Debtors are to set a status conference through the court's courtroom deputy, give notice of that status conference to Qualcomm, the Creditors' Committee and other parties who have requested notice, and to file a status conference statement at least fifteen days prior to that hearing.

The court is concurrently entering its Order Suspending Cases Under Section 305.

**END OF MEMORANDUM DECISION**

-14-