1  LARRY W. GABRIEL – Bar No. 68329
   COREY R. WEBER – Bar No. 205912
2  JASON B. KOMORSKY – Bar No. 155677
   BRUTZKUS GUBNER
3  21650 Oxnard Street, Suite 500
   Woodland Hills, CA 91367
4  Telephone:  (818) 827-9000
   Facsimile:   (818) 827-9099
5  Email:  lgabriel@brutzkusgubner.com
           cweber@brutzkusgubner.com
6          jkomorsky@brutzkusgubner.com

7  Special Litigation Counsel for
   Kavita Gupta, Chapter 7 Trustee
8

9              **UNITED STATES BANKRUPTCY COURT**

10             **NORTHERN DISTRICT OF CALIFORNIA**

11                **SAN FRANCISCO DIVISION**

| | |
|---|---|
| 12  In re: | Case No.  13-30340-DM |
| 13  GABRIEL TECHNOLOGIES<br>CORPORATION *et al.*, | (Jointly Administered with Case No. 13-30341) |
| 14                     Debtors. | Chapter 7 Proceedings |
| 15 | **MEMORANDUM OF POINTS AND** |
| 16 | **AUTHORITIES IN SUPPORT OF CHAPTER 7** |
|     E.I.N.  22-3062052; 20-1711149 | **TRUSTEE'S MOTION FOR APPROVAL OF** |
| 17 | **SETTLEMENT WITH HUGHES HUBBARD &**<br>**REED LLP** |
| 18 | **[Fed. R. Bankr. P. 9019]** |
| 19 | [Notice of Motion, Motion, and supporting Declarations |
| 20 | filed concurrently herewith] |
| 21 | Hearing: |
| 22 | Date:   September 16, 2016 |
|     | Time:  10:00 a.m. |
| 23 | Place:  Courtroom 17 |
| 24 |           United States Bankruptcy Court |
|     |           450 Golden Gate Avenue, 16th Floor |
| 25 |           San Francisco, California 94102 |
| 26 | |
| 27 | |
| 28 | |

# **TABLE OF CONTENTS**

Page

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................2

I.      JURISDICTION AND VENUE ...........................................................................2

II.     INTRODUCTION ................................................................................................2

III.    BACKGROUND ON THE CLAIMS..................................................................3

        A.      The Underlying Litigation. ...................................................................3

                1.      Background Regarding the Claims in the Underlying
                        Litigation..................................................................................3

                2.      The Underlying Litigation and the Retention of Hughes
                        Hubbard..................................................................................5

        B.      The Bankruptcy Proceedings. ...............................................................6

        C.      The Trustee's Claims .............................................................................6

        D.      Tolling Stipulations................................................................................7

        E.      The Mediations with Hughes Hubbard and the Debtors' Other
                Counsel ...................................................................................................7

        F.      The Trustee's Remaining Claims Against Other Counsel ....................8

        G.      The Settlement Agreement Terms .........................................................8

IV.     THE COURT SHOULD APPROVE THE SETTLEMENT AGREEMENT.....................9

        A.      The Probability of Success in the Litigation........................................10

        B.      The Difficulties, If Any, To Be Encountered In The Matter Of
                Collection..............................................................................................11

        C.      The Complexity of the Litigation Involved and the Expense,
                Inconvenience and Delay Necessarily Attending It.............................11

        D.      Paramount Interests of Creditors .........................................................12

V.      CONCLUSION..................................................................................................13

1594969

# TABLE OF AUTHORITIES

Page

## CASES

*Gabriel Technologies Corporation v. Qualcomm Incorporated,*
560 Fed. Appx. 966 (Fed. Cir. 2014) ........................................................................................6

*Gabriel Technologies,*
2013 WL 410103 (S.D. Cal. 2013) ...........................................................................................3

*In re Milden,*
111 F.3d 138, 2 (9th Cir. 1997) ................................................................................................9

*In re Pac. Gas and Elec. Co.,*
304 B.R. 395, 417 (Bankr. N.D. Cal. 2004) ............................................................................10

*In re W.T. Grant Co.,*
699 F.2d 599, 608 (2d Cir. 1983) (*quoting Newman v. Stein,*
464 F.2d 683, 693 (2d Cir. 1972)) .............................................................................................9

*In re Walsh Construction, Inc.,*
669 F.2d 1325, 1328 (9th Cir. 1982) .....................................................................................9, 10

*In re Washington Public Power Supply System Sec. Litigation,*
823 F.2d 1349 (9th Cir. 1987) ...................................................................................................9

*Martin v. Kane (In re A&C Properties),*
784 F.2d 1377 (9th Cir. 1986) .......................................................................................9, 10, 13

*Woodson v. Fireman's Fund Insurance Co. (In re Woodson),*
839 F.2d 610, 620 (9th Cir. 1987) .............................................................................................9

## FEDERAL STATUTES

11 U.S.C. § 105 ...............................................................................................................1, 2
28 U.S.C. § 157 ....................................................................................................................2
28 U.S.C. §157(b)(2) ............................................................................................................2
28 U.S.C. § 1334 ..................................................................................................................2
28 U.S.C. § 1408 ..................................................................................................................2
28 U.S.C. § 1409 ..................................................................................................................2

## STATE STATUTES

California Code of Civil Procedure § 877.6 ...............................................................................8
California Code of Civil Procedure § 1542 ................................................................................8

## RULES

Federal Rules of Bankruptcy Procedure, Rule 9019 ...........................................................1, 2, 8, 9

ii

Case: 13-30340   Doc# 322   Filed: 08/11/16   Entered: 08/11/16 14:12:13   Page 3 of 17

1594969

**TO THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY COURT JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL PARTIES IN INTEREST:**

Kavita Gupta, the chapter 7 trustee (the "Trustee") for the bankruptcy estates of Debtor Gabriel Technologies Corporation, Bankruptcy Case No. 13-30340, and Debtor Trace Technologies, LLC, Bankruptcy Case No. 13-30341 (collectively, the "Estates"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. § 105, provides the following Memorandum of Points and Authorities in support of her Motion for Approval of Settlement Agreement With Hughes Hubbard & Reed LLP (filed concurrently herewith), seeking an order authorizing and approving a settlement (the "Settlement") by and between the Trustee and Hughes Hubbard & Reed LLP ("Hughes Hubbard"), and for a finding that the Settlement is fair and reasonable and in the best interest of the creditors of the Estates (the "9019 Motion").


Dated: August 10, 2016                BRUTZKUS GUBNER


By: /s/ Larry W. Gabriel
      Larry W. Gabriel
Special Litigation Counsel for Kavita Gupta,
Chapter 7 Trustee for the bankruptcy estates
of Gabriel Technologies Corporation and
Trace Technologies, LLC

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. JURISDICTION AND VENUE

The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2). The statutory predicate for the relief sought in the Motion is Federal Rule of Bankruptcy Procedure 9019 and 11 U.S.C. § 105.

### II. INTRODUCTION

This 9019 Motion requests that the Court approve an agreement to settle and resolve any and all claims that the Trustee alleges she has or may have against the Debtors' former litigation counsel, Hughes Hubbard, including certain present and former lawyers at Hughes Hubbard and others related to Hughes Hubbard, in connection with and arising out of (a) its representation of the Debtors in the action titled *In re Gabriel Technologies Corporation and Trace Technologies, LLC v. Qualcomm Incorporated, Snaptrack, Inc. and Norman Krasner*, Case No. 08-CV-1992, which was pending in the United States District Court for the Southern District of California, and the appeal thereof entitled *Gabriel Technologies Corporation and Trace Technologies, LLC v. Qualcomm Incorporated, Snaptrack, Inc. and Norman Krasner*, Case No. 13-1205, which was pending in the United States Court of Appeals for the Federal Circuit (collectively, the "Action"), and (b) their alleged efforts and opinions provided to secure funds from any Person or entity to pay the fees, expenses and costs of the Action (all of the foregoing claims and any other matter related in any way to the Debtors or the Estates are referred to collectively as the "Professional Negligence Claims").

The settlement will result in the Trustee's recovery of $7.25 million for the benefit of the Estates. The settlement was reached after the Parties engaged in a full-day mediation with the Honorable Edward Infante (Ret. Chief Magistrate Judge of the United States District Court for the Northern District of California) of JAMS on March 7, 2016, and continued discussions between the mediator and the Parties following the mediation, and subsequently, the Parties' acceptance of a mediator's proposal.

1594969

Given the amount of the settlement, the claims to be resolved, and the cost of litigation saved by the estate, the Trustee believes that the settlement is in the best interests of the Estates, and should result in providing significant funds to distribute to creditors. (Gupta Declaration ¶¶ 14-20.) Based on the grounds stated herein and in the Gupta Declaration and Gabriel Declaration, the Trustee respectfully requests that the Court grant this Motion and enter an order:

1.   Approving the terms and conditions of the settlement as embodied in the Settlement Agreement;

2.   Authorizing the Trustee to execute any documents or take any actions reasonably necessary to effectuate the terms of the Settlement Agreement; and

3.   Granting such other and further relief as the Court may deem just and proper.

## III.   BACKGROUND ON THE CLAIMS[1]

### A.   The Underlying Litigation

#### 1.   Background Regarding the Claims in the Underlying Litigation

Gabriel Technologies Corporation ("Gabriel") was a publicly traded Delaware corporation that focused on technologies related to asset tracking and physical security. In late 1998, the founders of another company, Locate Networks, LLC ("Locate"), and its principals started discussing joint development projects with Norman Krasner ("Krasner") and SnapTrack Inc. ("SnapTrack"). Locate focused on location determining devices and location-based services; SnapTrack developed broadband network and assisted Global Positioning System ("aGPS") technology.

---

[1] The facts presented are based upon the factual findings as described in various court decisions involving the Debtors and Qualcomm. *See generally*, *Gabriel Technologies Corporation et al. v. Qualcomm Inc., et al.*, Case No. 3:2008-cv-01992-AJB-MDD; *Gabriel Technologies*, 2013 WL 410103 (S.D. Cal. 2013) (the "Fee Order"); *Gabriel Technologies Corporation and Trace Technologies, LLC v. Qualcomm Incorporated, Snaptrack, Inc. and Norman Krasner*, Case No. 13-1205 (Fed. Cir.). Copies of these pleadings are attached to the Request for Judicial Notice in Support of: (1) Trustee's Motion for Approval of Settlement with Hughes Hubbard & Reed, LLP and, (2) Trustee's Motion for Good Faith Determination Regarding the Settlement Between Kavita Gupta, as Chapter 7 Trustee for Consolidated Estates, and Hughes Hubbard & Reed, LLP (the "RJN").

1594969

On August 20, 1999, SnapTrack and Locate entered into a license agreement (the "1999 Agreement"). The 1999 Agreement set forth the terms under which Locate obtained from SnapTrack a license to use SnapTrack's aGPS software in exchange for paying SnapTrack licensing and royalty fees. The parties also agreed to jointly own "Program Technology," defined as work product carried out by the parties in connection with the 1999 Agreement, and identified as Program Technology in the agreement.

Gabriel believed that SnapTrack and Krasner used the relationship created by the 1999 Agreement to obtain millions of dollars from Locate to keep SnapTrack afloat while negotiating a billion dollar buyout of SnapTrack.

In March 2000, Qualcomm Inc. ("Qualcomm") acquired SnapTrack for $1 billion, stating in its press release that SnapTrack's patents were necessary for the commercial viability of any Wireless Assisted GPS System."

In 2004, Locate sold its assets to Trace Technologies, LLC ("Trace"), transferred its interest in Trace to Gabriel, and went out of business. Qualcomm then presented Trace, the successor in interest to Locate's assets, with a proposed amended license agreement. The proposed amended license agreement deleted the relevant section of the 1999 Agreement which stated that "[a]ll Program Technology was jointly owned by the parties."

On January 16, 2006, Trace and Qualcomm entered into the amended license agreement. Gabriel believed at the time that SnapTrack had misappropriated Locate's intellectual property and technology without Trace's knowledge or consent. Gabriel also believed that Krasner secretly filed and obtained numerous patents based on Locate's technology, which he was able to access when the parties entered into the 1999 Agreement. Once Qualcomm acquired SnapTrack, Gabriel believed that Qualcomm continued filing patents based on Locate's technology.

Gabriel believed that at least 92 U.S. and foreign patents and patent applications filed by Krasner and Qualcomm should have listed Locate employees as the sole inventors, or at least joint inventors. Over time, as the patents became publicly available, Gabriel discovered certain patents that incorporated Locate's pre-existing technology and jointly owned Program Technology. Gabriel brought its issues to the attention of Qualcomm in an attempt to resolve the issues before

1594969

instituting litigation. This effort proved unsuccessful, and Gabriel decided to file suit based upon the claims it perceived Gabriel owned.

### 2. The Underlying Litigation and the Retention of Hughes Hubbard

Gabriel filed its original complaint against Qualcomm on October 24, 2008 (the Action"). At the time, Gabriel was represented by a Texas-based law firm, Munck Carter, P.C. In April 2009, Gabriel retained another firm, WHGC, P.L.C., and Wang Hartman Gibbs & Cauley, P.L.C ("WHGC"), as local counsel.

The original complaint contained eleven causes of action against Qualcomm. The complaint asserted that SnapTrack had misappropriated intellectual property belonging to Locate, Gabriel's predecessor in interest. Gabriel claimed that Qualcomm used Locate's technology without giving Locate proper attribution as the inventors or co-inventors.

In or around December 2009, Munck Carter withdrew based on a conflict of interest. In about March 2010, Gabriel's board of directors retained Hughes Hubbard to replace Munck Carter as lead counsel.

On July 2, 2010, Qualcomm moved to have Gabriel post a bond pursuant to California Code of Civil Procedure § 1030 to secure costs and fees. In support of its request, Qualcomm argued that it had defeated seven of Gabriel's eleven claims, that Gabriel had failed to produce any facts during discovery to support the remaining causes of action and that certain claims were barred by the applicable statute of limitations. In opposition, Gabriel argued, among other things, that multiple experts supported its position and that various discovery orders by the magistrate judge had deprived Gabriel of important discovery.

On September 20, 2010, U. S. District Judge Michael M. Anello granted Qualcomm's motion for a bond and ordered Gabriel to post an $800,000 bond.[2] Gabriel posted the bond on December 16, 2010.

During the course of the litigation, the trial court determined that Gabriel was unable to articulate its trade secrets with adequate particularity. Gabriel filed various briefs explaining why

---

[2] *Gabriel Technologies Corporation et al. v. Qualcomm Inc., et al.*, Case No. 3:2008-cv-01992-AJB-MDD, Docket No. 110 (the "Bond Order"). A copy of the Bond Order is attached to the RJN.

it believed it had articulated its trade secrets with sufficient particularity. Based on its conclusion that Gabriel had not done so, and a later finding that some claims were barred by the statute of limitations, the trial court granted Qualcomm's two successive motions for summary judgment, eventually dismissing the Action and all of the Debtors' claims.

The dismissal of the Action was followed by a motion by Qualcomm, pursuant to 35 U.S.C. § 285, seeking an award of attorneys' fees against Gabriel and its attorneys of record, Hughes Hubbard and its local counsel, WHGC, in an amount exceeding $13.5 million. Hughes Hubbard, due to a conflict of interest, retained its own counsel, Latham & Watkins, LLP, and arranged for the firm Fitzgerald Knaier LLP, f/k/a Chapin Fitzgerald Knaier LLP, ("Fitzgerald"), to represent the Debtors. After presenting its opposition to the motion, Hughes Hubbard settled with Qualcomm prior to the hearing on the Motion. After the hearing, the Court awarded Qualcomm all of its fees incurred in defense of the action, less the amount of the bond previously posted.

Pursuant to the Fee Order, the Debtors were ordered to pay attorneys' fees in the amount of $12,401,014.51, including forfeiture of the $800,000 bond posted by the Debtors.

On February 14, 2013, the Debtors filed for bankruptcy. The judgment against the Debtors was thereafter affirmed on appeal. *Gabriel Technologies Corporation v. Qualcomm Incorporated*, 560 Fed. Appx. 966 (Fed. Cir. 2014).

### B.    The Bankruptcy Proceedings

On February 14, 2013, Gabriel and Trace commenced these bankruptcy cases by each filing a voluntary petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court, Northern District of California, San Francisco Division (the "Court"), under the jointly administered Case No. 13-30340-DM. (Docket Nos. 1, 19.)

On July 8, 2014, this Court entered an order converting the Debtors' Chapter 11 cases to Chapter 7 cases. (Docket No. 239.) The Trustee was subsequently selected to serve as the Chapter 7 Trustee. (Docket No. 250.)

### C.    The Trustee's Claims

The Trustee's claims against Hughes Hubbard are essentially for negligence and breach of fiduciary duty in relation to Hughes Hubbard's representation of the Debtors in the Action. The

1594969

Trustee's claims are identified in more detail in the Settlement Agreement.  Hughes Hubbard will likely contend that the claims have no merit and are subject to applicable defenses.

**D.     Tolling Stipulations**

At the outset of the bankruptcy proceedings, Hughes Hubbard, along with the other law firms that represented the Debtors in the Action, were put on notice of the Trustee's potential claims against them.  The Trustee thereafter entered into tolling stipulations and amendments extending the time for the Trustee to file an action against Hughes Hubbard through December 31, 2016.  Based on the tolling stipulations and amendments, the Trustee has not yet filed an adversary proceeding or arbitration proceeding against Hughes Hubbard.

**E.     The Mediations with Hughes Hubbard and the Debtors' Other Counsel**

The Trustee originally retained Brown Rudnick LLP as her special litigation counsel to analyze and pursue claims against Hughes Hubbard and WHGC.  (Docket No. 289.)  Shortly thereafter a mediation took place between the Trustee and Hughes Hubbard with Robert A. Meyer of Loeb & Loeb LLP serving as the mediator.  That mediation was unsuccessful as the Trustee and Hughes Hubbard were unable to reach an agreement.  (Gupta Declaration, ¶¶ 8-9.)

In September 2015, the Trustee terminated Brown Rudnick LLP and substituted Brutzkus Gubner Rozansky Seror Weber LLP ("Brutzkus Gubner") as her special litigation counsel. (Docket Nos. 259, 306.) (Gupta Declaration, ¶10.)

On March 7, 2016, another mediation took place using the services of Judge Edward Infante (Ret.) of JAMS serving as the mediator.  Unlike the first mediation, this mediation was a global mediation involving the Trustee, Hughes Hubbard, WHGC and Fitzgerald (Fee Motion and appellate counsel) that also represented the Debtors in the Action.  At the mediation, the Trustee resolved her claims against WHGC and that settlement is being presented to this Court for approval concurrently with the filing of this motion. Following the mediation, Judge Infante, the Trustee, and Hughes Hubbard continued discussions, and the Trustee and Hughes Hubbard agreed to the mediator's proposal.  The mediator's proposal resulted in the Settlement Agreement with Hughes Hubbard.  (Gupta Declaration, ¶¶ 11, 13.)

/ / /

### F.     The Trustee's Remaining Claims Against Other Counsel

The Trustee has also asserted claims against Fitzgerald.   The Trustee was unable to resolve her claims against Fitzgerald, and she is proceeding with an arbitration on those claims. (Gupta Declaration, ¶ 12.)

### G.     The Settlement Agreement Terms

All parties in interest are directed to the Settlement Agreement which is attached as **Exhibit 1** to the Gupta Declaration, for the specific terms of the Settlement Agreement.  A summary of the essential terms in the Settlement Agreement are set forth below.  To the extent that any terms listed below are inconsistent with the Settlement Agreement, the terms of the Settlement Agreement govern:

1. The Settlement Agreement is conditional upon the Bankruptcy Court's approval of the Settlement Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019.

2. The Settlement Agreement is conditional upon the Bankruptcy Court's finding that the Settlement Agreement was entered into in good faith, pursuant to California Code of Civil Procedure § 877.6.

3. Hughes Hubbard shall pay the Trustee the total sum of $7,250,000.00 (the "Settlement Amount") within five business days after: (a) the Court order approving this Settlement Agreement becomes Final, and (b) a Court order approving the Good Faith Settlement Motion becomes Final.

4. Hughes Hubbard will waive any claim it has or may have against the Debtors or their Estates in their bankruptcy cases.  To the extent that Hughes Hubbard filed a claim(s), such claims are disallowed in their entirety.

5. The Parties have agreed to mutual and general releases and a Civil Code § 1542 waiver.

6. There is a carve-out regarding claims against certain parties as provided for in paragraphs 7 and 8 of the Settlement Agreement.

7. Each Party will bear its own fees, costs and expenses.

8. The Bankruptcy Court will retain jurisdiction to enforce the terms of the Settlement Agreement.

## IV.    THE COURT SHOULD APPROVE THE SETTLEMENT AGREEMENT

Federal Rule of Bankruptcy Procedure 9019 states, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Under Rule 9019(a), the Bankruptcy Court has "great latitude in approving compromise agreements" and may approve a proposed compromise so long as it is fair and equitable. *Woodson v. Fireman's Fund Insurance Co. (In re Woodson),* 839 F.2d 610, 620 (9th Cir. 1987).

The Ninth Circuit has set forth certain factors relevant to determining whether a settlement is fair and equitable. In determining whether a settlement is fair and equitable and in the best interests of the estate and creditors, the court must consider: "(a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of creditors and a proper deference to their reasonable views in the premises." *Martin v. Kane (In re A&C Props.),* 784 F.2d 1377, 1381 (9th Cir. 1986), *overruled on other grounds by In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 823 F.2d 1349 (9th Cir. 1987).

The decision of whether to approve or reject a proposed compromise is addressed to the sound discretion of the Court and is to be determined by the particular circumstances of each case. *In re Walsh Construction, Inc.,* 669 F.2d 1325, 1328 (9th Cir. 1982); *In re Woodson, supra,* at 620; *In re A & C Properties, supra,* at 1381.

In addressing this Motion, the Court need not decide the questions of law and fact raised in the controversies sought to be settled and need not determine whether the settlement presented is the best one that could possibly have been achieved. Rather, the Court's responsibility is only "to canvass the issues to see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *In re W.T. Grant Co.,* 699 F.2d 599, 608 (2d Cir. 1983) (*quoting Newman v. Stein*, 464 F.2d 683, 693 (2d Cir. 1972); *see In re Milden*, 111 F.3d 138, 2 (9th Cir. 1997); *In re Pac. Gas and Elec. Co.,* 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004). The bankruptcy court need

not conduct an exhaustive investigation into the validity or a mini-trial on the merits of the claims sought to be compromised. *In re Walsh Constr.,* 669 F.2d at 1328.

An analysis of the *A&C Properties* factors in this case, as set forth below and in the Gupta Declaration and Gabriel Declaration, demonstrates that the settlement is fair and equitable, and should be approved.

## A. The Probability of Success in the Litigation

The Settlement Agreement represents the product of an extensive evaluation of the potential claims the Estates have or may have against Hughes Hubbard. (Gupta Declaration, ¶ 15.) The Trustee believes that it is probable that she would prevail if she pursued litigation against Hughes Hubbard. *Id.* The claims themselves present fairly straight-forward issues as to Hughes Hubbard's advice as to the propriety of continuing litigation after the Bond Order was issued by the District Court. *Id.* However, the Trustee recognizes that, as with all litigation, the outcome is ultimately uncertain and ultimately rests with the trier of fact. *Id.* The claims would likely require expert testimony, likely with two or three experts providing testimony on the issue of patent law, legal malpractice and billing practices. (Gabriel Declaration, ¶ 7.) In addition, it is possible that the claims would have to be arbitrated given the terms of the Hughes Hubbard's retention agreement with the Debtors. (Gupta Declaration, ¶ 18; Gabriel Declaration, ¶¶ 7, 10.) That agreement requires that the arbitration take place in New York, with New York law being applied to the claims presented. *Id.* Such an arbitration may result in increasing the expense for the prosecution of the claims, require the need to retain local counsel, and subject the claims to the vagaries of New York law. (Gabriel Declaration, ¶ 7.) Moreover, even if the Trustee prevailed in litigation against Hughes Hubbard, the amount of recovery is subject to dispute. (Gupta Declaration, ¶ 15; Gabriel Declaration, ¶ 8.) The Trustee has also analyzed the damage claim that could be pursued *vis a vis* the Hughes Hubbard claims. (Gupta Declaration, ¶ 16.) It is the Trustee's view that the approximate range of the Estates' potential damages against Hughes Hubbard is between $13 million - $20 million. (Gupta Declaration, ¶ 16; Gabriel Declaration, ¶ 8.) That amount includes the $13 million Fee Order, interest on the Fee Order from the date it was entered, attorney fees, and the additional debt (now claims) the Debtors would not have otherwise

incurred but for the continuation of the Action. *Id.* Hughes Hubbard has asserted numerous defenses to the claims. (Gabriel Declaration, ¶ 9.) For example, it will likely contend that the Fee Order erroneously included approximately $5 million in fees that were incurred prior to the Bond Order and that Fitzgerald, not Hughes Hubbard, is liable for failing to recognize and challenge this error. *Id.* Hughes Hubbard may further contend that the Debtors' board of directors was fully advised of the risk of litigation and that the Debtors would have likely continued with the Action because they had no profitable business operations. *Id.* Taking litigation risk and the time value of money into consideration, the Trustee believes that the settlement of $7.25 million represents a reasonable and fair compromise that is between 36% - 56% of the Estates' total potential claim against Hughes Hubbard. (Gupta Declaration, ¶ 16.) The settlement takes into account the probability of success in litigation, and the Trustee believes that it is in the best interests of the Estates and their creditors. (Gupta Declaration, ¶¶ 15-19.) The Trustee does not believe that it is prudent to subject the Estates to the risks and costs associated with litigating the claims against Hughes Hubbard given the settlement amount of $7.25 million should provide a substantial benefit to the creditors of the administratively insolvent estates. (Gupta Declaration, ¶ 16.) The Trustee believes, in her business judgment, that the proposed settlement is more beneficial to the Estates than the litigation of the claims against Hughes Hubbard. (Gupta Declaration, ¶¶ 16, 20.)

**B.      The Difficulties, If Any, To Be Encountered In The Matter Of Collection.**

This test is not relevant. In the event of a judgment, the Trustee believes that she would be able to recover in full from Hughes Hubbard. (Gupta Declaration, ¶ 17.)

**C.      The Complexity of the Litigation Involved and the Expense, Inconvenience and Delay Necessarily Attending It.**

The litigation against Hughes Hubbard would present fairly complex legal issues and hurdles. (Gupta Declaration, ¶ 18.) As has been made clear by Hughes Hubbard's counsel, the issues would be heavily litigated. (Gabriel Declaration, ¶ 10.) First, the Trustee will have to address a number of jurisdictional and choice of laws issues in regard to whether the claims would need to be arbitrated, and if so, where the arbitration would take place. (Gupta Declaration, ¶ 18; Gabriel Declaration, ¶ 10.) The retention agreement with Hughes Hubbard provides that any claim

against the firm be arbitrated in New York, and that New York law applies. (Gupta Declaration, ¶ 18; Gabriel Declaration, ¶ 7.) The Trustee believes that the Bankruptcy Court should adjudicate the claims against Hughes Hubbard, but it is possible that Hughes Hubbard would prevail in its argument that the claims should be arbitrated in New York. (Gupta Declaration, ¶ 18; Gabriel Declaration, ¶ 10.) Arbitration is often time-consuming and extremely costly. *Id.* To the extent that the arbitration was to take place in New York, and if New York law was applied, the Trustee and her counsel would likely incur significant travel expenses, and may also need to retain local counsel in New York to advise as to New York law. (Gupta Declaration, ¶ 18; Gabriel Declaration, ¶ 7.)

The Trustee has claims against Fitzgerald as heretofore expressed. (Gupta Declaration, ¶ 12.) Fitzgerald's retainer agreement with the Debtors requires an arbitration of the claims against it to be held in San Diego County. *Id.* Motions, and potentially time-consuming appeals, could take place over whether the claims are to be arbitrated, whether the claims against Hughes Hubbard and the other firms must be jointly arbitrated, where the arbitration would take place, and what state's law would be applied. (Gabriel Declaration, ¶ 10.)

Moreover, it is possible Hughes Hubbard would seek to have a "trial within a trial" in order to prove causation. Although the Trustee does not believe that a "trial within a trial" approach would apply, if it did, such an approach would be time-consuming, would likely involve two or more expert witnesses on each side, and would be costly. (Gabriel Declaration, ¶ 11.) The expert witness costs would likely exceed several hundred thousand dollars, at a minimum, and could ultimately reach close to $1 million depending on the number of expert witnesses needed. *Id.* Even though the Trustee's counsel is retained on a contingency fee basis, fees and costs for arbitration, expert witnesses and other costs could be substantial if the Trustee were to litigate the claims against Hughes Hubbard. *Id.* In addition, while the Trustee is confident in her analysis of the claims and the likelihood of success on the merits, there is never any certainty to such claims, and the amount of the settlement is reasonable given the risks of litigation, and the years the litigation could take to conclude. (Gupta Declaration, ¶¶ 15-16; Gabriel Declaration, ¶ 11.)

The complexity of the litigation, expense, and potential delay due to issues regarding arbitration, all weigh in favor of resolving the claims against Hughes Hubbard to avoid significant cost, delay and risk. (Gupta Declaration, ¶¶ 15-19.) However, the amount of the settlement still must be fair and reasonable given the probability of success at trial. (Gupta Declaration, ¶ 18.) As discussed above, the Trustee believes that the Settlement Amount appropriately takes into account the range of potential outcomes for the claims taking into account the probability of success at trial. (Gupta Declaration, ¶¶ 18-19; Gabriel Declaration, ¶¶ 7-12.)

### D. Paramount Interests of Creditors.

The Settlement Amount of $7.25 million is significant and should provide for a substantial benefit to the Estates and creditors without the significant risks and costs of litigation. (Gupta Declaration, ¶ 19.) Given that the Estates are currently administratively insolvent, the Settlement Agreement should provide for a meaningful recovery for creditors of the Estates. *Id.* As will be set forth in a separate motion to approve a settlement agreement with WHGC, the Trustee has also resolved her claims against WHGC. *Id.* The Settlement Agreement preserves the Trustee's ability to pursue her claims against Fitzgerald, which may result in additional recovery for the Estates. *Id.*

Based on the *A&C Properties* factors, the Settlement Agreement is fair and equitable and in the best interest of the Estates and their creditors. (Gupta Declaration, ¶ 20.)

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

**V.    CONCLUSION**

Based on the grounds stated herein and in the Gupta Declaration and Gabriel Declaration, the Trustee respectfully requests that the Court grant this Motion and enter an order:

1.    Approving the Settlement Agreement;

2.    Authorizing the Trustee to execute any documents or take any actions reasonably necessary to effectuate the terms of the Settlement Agreement; and

3.    Granting such other and further relief as the Court may deem just and proper.

Dated: August 10, 2016                    BRUTZKUS GUBNER


By: /s/ Larry W. Gabriel
        Larry W. Gabriel
Special Litigation Counsel for Kavita Gupta,
Chapter 7 Trustee for the bankruptcy estates
of debtors Gabriel Technologies Corporation
and Trace Technologies, LLC

1594969