LARRY W. GABRIEL – Bar No. 68329
COREY R. WEBER – Bar No. 205912
JASON B. KOMORSKY – Bar No. 155677
BRUTZKUS GUBNER
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000
Facsimile: (818) 827-9099
Email: lgabriel@brutzkusgubner.com
       cweber@brutzkusgubner.com
       jkomorsky@brutzkusgubner.com

Special Litigation Counsel for
Kavita Gupta, Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>GABRIEL TECHNOLOGIES CORPORATION *et al.*,<br><br>Debtors.<br><br>E.I.N. 22-3062052; 20-1711149 | Case No. 13-30340-DM<br><br>(Jointly Administered with Case No. 13-30341)<br><br>Chapter 7 Proceedings<br><br>**NOTICE OF HEARING ON CHAPTER 7 TRUSTEE'S MOTION FOR APPROVAL OF SETTLEMENT WITH HUGHES HUBBARD & REED LLP**<br><br>**[Fed. R. Bankr. P. 9019]**<br><br>[Motion, Memorandum of Points and Authorities, and supporting Declarations filed concurrently herewith]<br><br>Hearing:<br>Date: September 16, 2016<br>Time: 10:00 a.m.<br>Place: Courtroom 17<br>      United States Bankruptcy Court<br>      450 Golden Gate Avenue, 16th Floor<br>      San Francisco, California 94102 |

///

///

1

**TO THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY COURT JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that on September 16, 2016 at 10:00 a.m. in Courtroom 17 of the United States Bankruptcy Court located at 450 Golden Gate Avenue, 16th Floor, San Francisco, California 94102, Kavita Gupta, the chapter 7 trustee (the "Trustee") for the bankruptcy estates of Debtor Gabriel Technologies Corporation, Bankruptcy Case No. 13-30340, and Debtor Trace Technologies, LLC, Bankruptcy Case No. 13-30341 (collectively, the "Estates"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. § 105, will and hereby does move for the entry of an order authorizing and approving a settlement (the "Settlement") by and between the Trustee and Hughes Hubbard & Reed LLP ("Hughes Hubbard"), and for a finding that the Settlement is fair and reasonable and in the best interest of the creditors of the Estates (the "9019 Motion"). The Settlement resolves any and all claims that the Trustee asserts the Estates have or may have against the Debtors' former counsel, Hughes Hubbard, including certain present and former lawyers at Hughes Hubbard and others related to Hughes Hubbard, in connection with and arising out of (a) its representation of the Debtors in the action entitled *In re Gabriel Technologies Corporation and Trace Technologies, LLC v. Qualcomm Incorporated, Snaptrack, Inc. and Norman Krasner*, Case No. 08-CV-1992, which was pending in the United States District Court for the Southern District of California, and the appeal thereof entitled, *Gabriel Technologies Corporation and Trace Technologies, LLC v. Qualcomm Incorporated, Snaptrack, Inc. and Norman Krasner*, Case No. 13-1205, which was pending in the United States Court of Appeals for the Federal Circuit (the "Action"), and (b) their alleged efforts and opinions provided to secure funds from any Person or entity to pay the fees, expenses and costs of the Action.

**PLEASE TAKE FURTHER NOTICE THAT ANY PARTY INTERESTED IN RECEIVING A COPY OF THE 9019 MOTION AND ANY SUPPORTING PLEADINGS AND DOCUMENTATION MAY CONTACT SPECIAL LITIGATION COUNSEL FOR THE TRUSTEE, WHOSE NAME AND CONTACT INFORMATION APPEARS ON THE**

FRONT, TOP LEFT CORNER OF THIS NOTICE, AND WHO WILL PROVIDE SUCH COPIES UPON REQUEST.

**PLEASE TAKE FURTHER NOTICE** that the Settlement is memorialized in a Settlement Agreement, a true and correct copy of which is attached as Exhibit 1 to the Declaration of Kavita Gupta (the "Gupta Declaration"), the terms of which are incorporated herein by reference (the "Settlement Agreement").

**PLEASE TAKE FURTHER NOTICE THAT** all parties in interest are directed to the Settlement Agreement for the specific terms of the Settlement Agreement. A summary of the essential terms in the Settlement Agreement are set forth below. To the extent that any terms listed below are inconsistent with the Settlement Agreement, the terms of the Settlement Agreement govern:

1. The Settlement Agreement is conditional upon the Bankruptcy Court's approval of the Settlement Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019.
2. The Settlement Agreement is conditional upon the Bankruptcy Court's finding that the Settlement Agreement was entered into in good faith, pursuant to California Code of Civil Procedure § 877.6.
3. Hughes Hubbard shall pay the Trustee the total sum of $7,250,000.00 (the "Settlement Amount") within five business days after: (a) the Court order approving this Settlement Agreement becomes Final, and (b) a Court order approving the Good Faith Settlement Motion becomes Final.
4. Hughes Hubbard will waive any claim it has or may have against the Debtors or their Estates in their bankruptcy cases. To the extent that Hughes Hubbard filed a claim(s), such claims are disallowed in their entirety.
5. The Parties have agreed to mutual and general releases and a Civil Code § 1542 waiver.
6. There is a carve-out regarding claims against certain parties as provided for in paragraphs 7 and 8 of the Settlement Agreement.
7. Each Party will bear its own fees, costs and expenses.

3

8. The Bankruptcy Court will retain jurisdiction to enforce the terms of the Settlement Agreement.

**PLEASE TAKE FURTHER NOTICE** that, as set forth in full in the Gupta Declaration and the Declaration of Larry W. Gabriel ("Gabriel Declaration") filed concurrently herewith, in determining to enter into the Settlement, the Trustee has analyzed the reasonableness of the Settlement and has considered the four factors established by the Ninth Circuit in *Martin v. Kane (In re A&C Properties)*, 784 F.2d 1377 (9th Cir. 1986) ("A&C Properties"), including: (a) probability of success in litigation; (b) the difficulties, if any, to be encountered in collection; (c) the complexity of the litigation, and the expense, inconvenience and delay attending it; and (d) the paramount interests of creditors, and has concluded,[1] as follows:

> Federal Rule of Bankruptcy Procedure 9019 states, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Under Rule 9019(a), the Bankruptcy Court has "great latitude in approving compromise agreements" and may approve a proposed compromise so long as it is fair and equitable. *Woodson v. Fireman's Fund Insurance Co. (In re Woodson),* 839 F.2d 610, 620 (9th Cir. 1987).
>
> The Ninth Circuit has set forth certain factors relevant to determining whether a settlement is fair and equitable. In determining whether a settlement is fair and equitable and in the best interests of the estate and creditors, the court must consider: "(a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of creditors and a proper deference to their reasonable views in the premises." *Martin v. Kane (In re A&C Props.),* 784 F.2d 1377, 1381 (9th Cir. 1986), *overruled on other grounds by In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 823 F.2d 1349 (9th Cir. 1987).
>
> The decision of whether to approve or reject a proposed compromise is addressed to the sound discretion of the Court and is to be determined by the particular circumstances of each case. *In re Walsh Construction, Inc.,* 669 F.2d 1325, 1328 (9th Cir. 1982); *In re Woodson, supra,* at 620; *In re A & C Properties, supra,* at 1381.
>
> In addressing the 9019 Motion, the Court need not decide the questions of law and fact raised in the controversies sought to be settled and need not determine whether the settlement presented is the best one that could possibly have been achieved. Rather, the Court's responsibility is only "to canvass the issues to see whether the settlement 'fall[s] below the lowest point in the

---

[1] *Memorandum of Points and Authorities in Support of Chapter 7 Trustee's Motion for Approval of Settlement with Hughes Hubbard & Reed LLP*, pp. 9-13.

4

range of reasonableness.'" *In re W.T. Grant Co.,* 699 F.2d 599, 608 (2d Cir. 1983) (*quoting Newman v. Stein*, 464 F.2d 683, 693 (2d Cir. 1972); *see In re Milden*, 111 F.3d 138, 2 (9th Cir. 1997); *In re Pac. Gas and Elec. Co.,* 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004). The bankruptcy court need not conduct an exhaustive investigation into the validity or a mini-trial on the merits of the claims sought to be compromised. *In re Walsh Constr.,* 669 F.2d at 1328.

An analysis of the *A&C Properties* factors in this case, as set forth below and in the Gupta Declaration, demonstrates that the settlement is fair and equitable, and should be approved.

**A. <u>The Probability of Success in the Litigation</u>**

The Settlement Agreement represents the product of an extensive evaluation of the potential claims the Estates have or may have against Hughes Hubbard. (Gupta Declaration, ¶ 15.) The Trustee believes that it is probable that she would prevail if she pursued litigation against Hughes Hubbard. *Id*. The claims themselves present fairly straight-forward issues as to Hughes Hubbard's advice as to the propriety of continuing litigation after the Bond Order was issued by the District Court. *Id*. However, the Trustee recognizes that, as with all litigation, the outcome is ultimately uncertain and ultimately rests with the trier of fact. *Id*. The claims would likely require expert testimony, likely with two or three experts providing testimony on the issue of patent law, legal malpractice and billing practices. (Gabriel Declaration, ¶ 7.) In addition, it is possible that the claims would have to be arbitrated given the terms of the Hughes Hubbard's retention agreement with the Debtors. (Gupta Declaration, ¶ 18; Gabriel Declaration, ¶¶ 7, 10.) That agreement requires that the arbitration take place in New York, with New York law being applied to the claims presented. *Id.* Such an arbitration may result in increasing the expense for the prosecution of the claims, require the need to retain local counsel, and subject the claims to the vagaries of New York law. (Gabriel Declaration, ¶ 8.) Moreover, even if the Trustee prevailed in litigation against Hughes Hubbard, the amount of recovery is subject to dispute. (Gupta Declaration, ¶ 15; Gabriel Declaration, ¶ 8.) The Trustee has also analyzed the damage claim that could be pursued *vis a vis* the Hughes Hubbard claims. (Gupta Declaration, ¶ 16.) It is the Trustee's view that the approximate range of the Estates' potential damages against Hughes Hubbard is between $13 million - $20 million. (Gupta Declaration, ¶ 16; Gabriel Declaration, ¶ 8.) That amount includes the $13 million Fee Order, interest on the Fee Order from the date it was entered, attorney fees, and the additional debt (now claims) the Debtors would not have otherwise incurred but for the continuation of the Action. *Id.* Hughes Hubbard has asserted numerous defenses to the claims. (Gabriel Declaration, ¶ 9.) For example, it will likely contend that the Fee Order erroneously included approximately $5 million in fees that were incurred prior to the Bond Order and that Fitzgerald, not Hughes Hubbard, is liable for failing to recognize and challenge this error. *Id*. Hughes Hubbard may further contend that the Debtors' board of directors was fully advised of the risk of litigation and that the Debtors would have likely continued with the Action because they had no profitable business operations. *Id.* Taking litigation risk and the time value of money into consideration, the Trustee believes that the settlement of $7.25 million represents a reasonable and fair compromise that is between 36% - 56% of the Estates' total potential claim against Hughes Hubbard. (Gupta Declaration, ¶ 16.) The settlement takes into account the probability of success in litigation, and the Trustee believes that it is in the best interests of the Estates and their creditors. (Gupta

5

Declaration, ¶¶ 15-19.) The Trustee does not believe that it is prudent to subject the Estates to the risks and costs associated with litigating the claims against Hughes Hubbard given the settlement amount of $7.25 million should provide a substantial benefit to the creditors of the administratively insolvent estates. (Gupta Declaration, ¶ 16.) The Trustee believes, in her business judgment, that the proposed settlement is more beneficial to the Estates than the litigation of the claims against Hughes Hubbard. (Gupta Declaration, ¶¶ 16, 20.)

**B. The Difficulties, If Any, To Be Encountered In The Matter Of Collection.**

This test is not relevant. In the event of a judgment, the Trustee believes that she would be able to recover in full from Hughes Hubbard. (Gupta Declaration, ¶ 17.)

**C. The Complexity of the Litigation Involved and the Expense, Inconvenience and Delay Necessarily Attending It.**

The litigation against Hughes Hubbard would present fairly complex legal issues and hurdles. (Gupta Declaration, ¶ 18.) As has been made clear by Hughes Hubbard's counsel, the issues would be heavily litigated. (Gabriel Declaration, ¶ 10.) First, the Trustee will have to address a number of jurisdictional and choice of laws issues in regard to whether the claims would need to be arbitrated, and if so, where the arbitration would take place. (Gupta Declaration, ¶ 18; Gabriel Declaration, ¶ 10.) The retention agreement with Hughes Hubbard provides that any claim against the firm be arbitrated in New York, and that New York law applies. (Gupta Declaration, ¶ 18; Gabriel Declaration, ¶ 7.) The Trustee believes that the Bankruptcy Court should adjudicate the claims against Hughes Hubbard, but it is possible that Hughes Hubbard would prevail in its argument that the claims should be arbitrated in New York. (Gupta Declaration, ¶ 18; Gabriel Declaration, ¶ 10.) Arbitration is often time-consuming and extremely costly. *Id.* To the extent that the arbitration was to take place in New York, and if New York law was applied, the Trustee and her counsel would likely incur significant travel expenses, and may also need to retain local counsel in New York to advise as to New York law. (Gupta Declaration, ¶ 18; Gabriel Declaration, ¶ 7.)

The Trustee has claims against Fitzgerald as heretofore expressed. (Gupta Declaration, ¶ 12.) Fitzgerald's retainer agreement with the Debtors requires an arbitration of the claims against it to be held in San Diego County. *Id.* Motions, and potentially time-consuming appeals, could take place over whether the claims are to be arbitrated, whether the claims against Hughes Hubbard and the other firms must be jointly arbitrated, where the arbitration would take place, and what state's law would be applied. (Gabriel Declaration, ¶ 10.)

Moreover, it is possible Hughes Hubbard would seek to have a "trial within a trial" in order to prove causation. Although the Trustee does not believe that a "trial within a trial" approach would apply, if it did, such an approach would be time-consuming, would likely involve two or more expert witnesses on each side, and would be costly. (Gabriel Declaration, ¶ 11.) The expert witness costs would likely exceed several hundred thousand dollars, at a minimum, and could ultimately reach close to $1 million depending on the number of expert witnesses needed. *Id.* Even though the Trustee's counsel is retained on a contingency fee basis, fees and costs for arbitration, expert

6

witnesses and other costs could be substantial if the Trustee were to litigate the claims against Hughes Hubbard. *Id.* In addition, while the Trustee is confident in her analysis of the claims and the likelihood of success on the merits, there is never any certainty to such claims, and the amount of the settlement is reasonable given the risks of litigation, and the years the litigation could take to conclude. (Gupta Declaration, ¶¶ 15-16; Gabriel Declaration, ¶ 11.)

The complexity of the litigation, expense, and potential delay due to issues regarding arbitration, all weigh in favor of resolving the claims against Hughes Hubbard to avoid significant cost, delay and risk. (Gupta Declaration, ¶¶ 15-19.) However, the amount of the settlement still must be fair and reasonable given the probability of success at trial. (Gupta Declaration, ¶ 18.) As discussed above, the Trustee believes that the Settlement Amount appropriately takes into account the range of potential outcomes for the claims taking into account the probability of success at trial. (Gupta Declaration, ¶¶ 18-19; Gabriel Declaration, ¶¶ 7-12.)

### D. Paramount Interests of Creditors.

The Settlement Amount of $7.25 million is significant and should provide for a substantial benefit to the Estates and creditors without the significant risks and costs of litigation. (Gupta Declaration, ¶ 19.) Given that the Estates are currently administratively insolvent, the Settlement Agreement should provide for a meaningful recovery for creditors of the Estates. *Id.* As will be set forth in a separate motion to approve a settlement agreement with WHGC,[2] the Trustee has also resolved her claims against WHGC. *Id.* The Settlement Agreement preserves the Trustee's ability to pursue her claims against Fitzgerald, which may result in additional recovery for the Estates. *Id.*

Based on the *A&C Properties* factors, the Settlement Agreement is fair and equitable and in the best interest of the Estates and their creditors. (Gupta Declaration, ¶ 20.)

**PLEASE TAKE FURTHER NOTICE THAT** approval of the Settlement and the Settlement Agreement is conditional upon approval by this Court of the Trustee's Motion for Determination of Good Faith Settlement (the "Good Faith Settlement Motion"), pursuant to California Code of Civil Procedure § 877.6 *et seq.*, which also is filed concurrently herewith.

**PLEASE TAKE FURTHER NOTICE** that the 9019 Motion is supported by this Notice, and the following documents filed concurrently herewith: (i) the 9019 Motion, (ii) the Memorandum of Points and Authorities in support of the 9019 Motion, (iii) the Gupta Declaration, (iv) the Gabriel Declaration, (v) the Request for Judicial Notice in Support of the 9019 Motion filed concurrently herewith, the entire record before the Court, those matters of which this Court

---

[2] WHGC P.L.C. and Wang, Hartman, Gibbs & Cauley, P.L.C. (together, "WHGC")

may take judicial notice, and such further evidence and argument that may be presented at or before the hearing on this 9019 Motion.

**PLEASE TAKE FURTHER NOTICE that pursuant to Bankruptcy Local Rule 9014-1(c)(1), any opposition to the 9019 Motion shall be filed and served on Special Litigation Counsel for the Trustee at least 14 days prior to the hearing date. Any replies must be filed and served at least 7 days before the scheduled hearing date on the 9019 Motion. Any objection or request for a hearing must be accompanied by any declarations or memoranda of law any requesting party wishes to present in support of its position. If there is no timely objection to the requested relief, the court may enter an order granting the relief.**

Dated: August 10, 2016

BRUTZKUS GUBNER

By: /s/ Larry W. Gabriel
    Larry W. Gabriel
Special Litigation Counsel for Kavita Gupta,
Chapter 7 Trustee for the bankruptcy estates of
Gabriel Technologies Corporation and Trace
Technologies, LLC