LARRY W. GABRIEL – Bar No. 68329
COREY R. WEBER – Bar No. 205912
JASON B. KOMORSKY – Bar No. 155677
BRUTZKUS GUBNER
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000
Facsimile: (818) 827-9099
Email: lgabriel@brutzkusgubner.com
       cweber@brutzkusgubner.com
       jkomorsky@brutzkusgubner.com

Special Litigation Counsel for
Kavita Gupta, Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>GABRIEL TECHNOLOGIES CORPORATION *et al.*,<br><br>Debtors.<br><br>E.I.N. 22-3062052; 20-1711149 | Case No. 13-30340-DM<br><br>(Jointly Administered with Case No. 13-30341)<br><br>Chapter 7 Proceedings<br><br>**NOTICE OF HEARING ON CHAPTER 7 TRUSTEE'S MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION REGARDING THE SETTLEMENT BETWEEN KAVITA GUPTA, AS CHAPTER 7 TRUSTEE FOR CONSOLIDATED ESTATES, AND HUGHES HUBBARD & REED LLP**<br><br>[Filed concurrently with Motion for Good Faith Determination, the Memorandum of Points and Authorities and Declarations in Support Thereof. Also filed concurrently herewith are the Notice of Motion, Motion for Order Approving Settlement Pursuant to Fed. R. Bankr. P. 9019, and supporting Memorandum of Points and Authorities, and Declarations and Request for Judicial Notice in Support Thereof]<br><br>Hearing:<br>Date: September 16, 2016<br>Time: 10:00 a.m.<br>Place: Courtroom 17<br>         United States Bankruptcy Court<br>         450 Golden Gate Avenue, 16th Floor<br>         San Francisco, California 94102 |

1

**TO THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY COURT JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL PARTIES IN INTEREST:**

**PLEASE TAKE NOTICE** that on September 16, 2016 at 10:00 a.m. in Courtroom 17 of the United States Bankruptcy Court located at 450 Golden Gate Avenue, 16th Floor, San Francisco, California 94102, Kavita Gupta, the chapter 7 trustee (the "Trustee") for the bankruptcy estates of Debtor Gabriel Technologies Corporation, Bankruptcy Case No. 13-30340, and Debtor Trace Technologies, LLC, Bankruptcy Case No. 13-30341 (collectively, the "Estates"), will and hereby does move for the entry of an order finding that the settlement (the "Settlement") by and between the Trustee and Hughes Hubbard & Reed LLP ("Hughes Hubbard") was made and entered into in good faith pursuant to California Code of Civil Procedure § 877.6 (the "Good Faith Settlement Motion"). The Settlement resolves any and all claims that the Trustee asserts the Estates have or may have against the Debtors' former counsel, Hughes Hubbard, including certain present and former lawyers at Hughes Hubbard and others related to Hughes Hubbard, in connection with and arising out of (a) its representation of the Debtors in the action entitled *In re Gabriel Technologies Corporation and Trace Technologies, LLC v. Qualcomm Incorporated, Snaptrack, Inc. and Norman Krasner*, Case No. 08-CV-1992, which was pending in the United States District Court for the Southern District of California, and the appeal thereof entitled, *Gabriel Technologies Corporation and Trace Technologies, LLC v. Qualcomm Incorporated, Snaptrack, Inc. and Norman Krasner*, Case No. 13-1205, which was pending in the United States Court of Appeals for the Federal Circuit (the "Action"), and (b) their alleged efforts and opinions provided to secure funds from any Person or entity to pay the fees, expenses and costs of the Action.

**PLEASE TAKE FURTHER NOTICE THAT ANY PARTY INTERESTED IN RECEIVING A COPY OF THE GOOD FAITH SETTLEMENT MOTION AND ANY SUPPORTING PLEADINGS AND DOCUMENTATION MAY CONTACT SPECIAL LITIGATION COUNSEL FOR THE TRUSTEE, WHOSE NAME AND CONTACT INFORMATION APPEARS ON THE FRONT, TOP LEFT CORNER OF THIS NOTICE, AND WHO WILL PROVIDE SUCH COPIES UPON REQUEST.**

**PLEASE TAKE FURTHER NOTICE** the Settlement with Hughes Hubbard is conditional upon: (1) the Court entering a final order approving the *Chapter 7 Trustee's Motion for Approval of Settlement with Hughes Hubbard & Reed LLP* pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "9019 Motion"), that is being filed concurrently herewith; and (2) the Court entering a final order approving the Good Faith Settlement Motion.

**PLEASE TAKE FURTHER NOTICE** that the Settlement is memorialized in a Settlement Agreement, a true and correct copy of which is attached as Exhibit 1 to the Declaration of Kavita Gupta (the "Gupta Declaration") filed concurrently herewith, the terms of which are incorporated herein by reference (the "Settlement Agreement"). A true and correct copy of the Trustee's *Memorandum of Points and Authorities* in support of the 9019 Motion is attached as Exhibit 2 to the Gupta Declaration in support of the Good Faith Settlement Motion, filed concurrently herewith.

**PLEASE TAKE FURTHER NOTICE THAT** California Code of Civil Procedure § 877.6 provides:

(a)(1) Any party to an action in which it is alleged that two or more parties are joint tortfeasors or co-obligors on a contract debt shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors, upon giving notice in the manner provided in subdivision (b) of Section 1005. Upon a showing of good cause, the court may shorten the time for giving the required notice to permit the determination of the issue to be made before the commencement of the trial of the action, or before the verdict or judgment if settlement is made after the trial has commenced.

(2) In the alternative, a settling party may give notice of settlement to all parties and to the court, together with an application for determination of good faith settlement and a proposed order. The application shall indicate the settling parties, and the basis, terms, and amount of the settlement. The notice, application, and proposed order shall be given by certified mail, return receipt requested. Proof of service shall be filed with the court. Within 25 days of the mailing of the notice, application, and proposed order, or within 20 days of personal service, a nonsettling party may file a notice of motion to contest the good faith of the settlement. If none of the nonsettling parties files a motion within 25 days of mailing of the notice, application, and proposed order, or within 20 days of personal service, the court may approve the settlement. The notice by a nonsettling party shall be given in the manner provided in subdivision (b) of Section 1005. However, this paragraph shall not apply to settlements in which a confidentiality agreement has been entered into regarding the case or the terms of the settlement.

(b) The issue of the good faith of a settlement may be determined by the court on the basis of affidavits served with the notice of hearing, and any counteraffidavits filed in response, or the court may, in its discretion, receive other evidence at the hearing.

(c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault.

(d) The party asserting the lack of good faith shall have the burden of proof on that issue.

(e) When a determination of the good faith or lack of good faith of a settlement is made, any party aggrieved by the determination may petition the proper court to review the determination by writ of mandate. The petition for writ of mandate shall be filed within 20 days after service of written notice of the determination, or within any additional time not exceeding 20 days as the trial court may allow.

(1) The court shall, within 30 days of the receipt of all materials to be filed by the parties, determine whether or not the court will hear the writ and notify the parties of its determination.

(2) If the court grants a hearing on the writ, the hearing shall be given special precedence over all other civil matters on the calendar of the court except those matters to which equal or greater precedence on the calendar is granted by law.

(3) The running of any period of time after which an action would be subject to dismissal pursuant to the applicable provisions of Chapter 1.5 (commencing with Section 583.110) of Title 8 of Part 2 shall be tolled during the period of review of a determination pursuant to this subdivision.

**PLEASE TAKE FURTHER NOTICE THAT** as set forth in full the concurrently filed Gupta Declaration and declaration of Larry W. Gabriel ("Gabriel Declaration"), and the Good Faith Settlement Motion, the Settlement represents the product of an extensive evaluation of the Estates' claims and potential claims against Hughes Hubbard and the other attorneys who represented the Debtors in the Action, and has concluded,[1] as follows:

> The relevant factors used by courts in making a good faith settlement determination include (1) whether the settlement amount reasonably relates to the settlor's proportionate share of liability (the "ball park" test), (2) the total settlement amount, (3) the idea that a settling defendant should generally pay less than one found liable at trial, (4) the financial conditions and insurance policy limits of settling defendants, and (5) whether the settling parties colluded to hurt the non-settling defendants' interests. *See Tech-Bilt, Inc. v*

---

[1] *Memorandum of Points and Authorities in Support of Chapter 7 Trustee's Motion for Good Faith Settlement Determination Regarding the Settlement Between Kavita Gupta, as Chapter 7 Trustee for Consolidated Estates, and Hughes Hubbard & Reed LLP*, pp. 10-15.

4

*Woodward-Clyde & Associates,* 38 Cal.3d 488 (1985)("<u>Tech-Bilt</u>") at 499-500.

1. **The Settlement Amount Reasonably Relates To Hughes Hubbard's Proportionate Share of Liability, and It Is Appropriate that Hughes Hubbard Pay Less Than If the Case Was Fully Litigated**

The Settlement Agreement represents the product of an extensive evaluation of the Trustee's claims and potential claims against Hughes Hubbard and the other attorneys who represented the Debtors in the Action (WHGC[2] and Fitzgerald[3]). (Gupta Declaration, ¶ 15.) The Trustee considered her claims and potential issues of relative liability as to each of Hughes Hubbard, WHGC (local counsel) and Fitzgerald (counsel regarding the Fee Motion and appeal). *Id.* The Trustee believes that it is probable that she would prevail if she pursued litigation against Hughes Hubbard. *Id.* The claims themselves present fairly straight-forward issues as to Hughes Hubbard's advice as to the propriety of continuing litigation after the Bond Order was issued by the District Court. *Id.* However, the Trustee recognizes that, as with all litigation, the outcome is ultimately uncertain and ultimately rests with the trier of fact. *Id.* The claims would likely require expert testimony, likely with two or three experts providing testimony on the issue of patent law, legal malpractice and billing practices. (Gabriel Declaration, ¶ 7.) In addition, it is possible that the claims would have to be arbitrated given the terms of the Hughes Hubbard's retention agreement with the Debtors. That agreement requires that the arbitration take place in New York, with New York law being applied to the claims presented. (Gupta Declaration, ¶ 19; Gabriel Declaration, ¶ 7.) Such an arbitration may result in increasing the expense for the prosecution of the claims, require the need to retain local counsel, and subject the claims to the vagaries of New York law. *Id.*

Moreover, even if the Trustee prevailed in litigation against Hughes Hubbard, the amount of recovery is subject to dispute. (Gupta Declaration, ¶ 15; Gabriel Declaration, ¶ 8.) The Trustee has also analyzed the damage claim that could be pursued *vis a vis* the Hughes Hubbard claims. (Gupta Declaration, ¶ 16.) It is the Trustee's view that the approximate range of the Estates' potential damages against Hughes Hubbard is between $13 million - $20 million. (Gupta Declaration, ¶ 16; Gabriel Declaration, ¶ 8.) That amount includes the $13 million Fee Order, interest on the Fee Order from the date it was entered, attorney fees, and the additional debt (now claims) the Debtors would not have otherwise incurred but for the continuation of the Action. *Id.* Hughes Hubbard has asserted numerous defenses to the claims. (Gabriel Declaration, ¶ 9.) For example, it will likely contend that the Fee Order erroneously included approximately $5 million in fees that were incurred prior to the Bond Order and that Fitzgerald, not Hughes Hubbard, is liable for failing to recognize and challenge this error. *Id.* Hughes Hubbard may also contend that the Debtors' board of directors was fully advised of the risk of litigation and that the Debtors would have likely continued with the Action because they had no profitable business operations. *Id.* Taking litigation risk and the time value of money into consideration, the Trustee believes that the settlement of $7.25 million represents a reasonable and fair compromise that is between 36% - 56% of the Estates' total potential claim against Hughes Hubbard. (Gupta Declaration, ¶ 16.) The Settlement takes

---

[2] WHGC, P.L.C., and Wang Hartman Gibbs & Cauley, P.L.C. ("<u>WHGC</u>").
[3] Fitzgerald Knaier LLP, f/k/a Chapin Fitzgerald Knaier LLP ("<u>Fitzgerald</u>").

into account the probability of success in litigation, and the Trustee believes that it is in the best interests of the Estates and their creditors. (Gupta Declaration, ¶¶ 16, 19.) The Trustee does not believe that it is prudent to subject the Estates to the risks and costs associated with litigating the claims against Hughes Hubbard given the settlement amount of $7.25 million should provide a substantial benefit to the creditors of the administratively insolvent estates. (Gupta Declaration, ¶ 16.) The Trustee believes, in her business judgment, that the proposed Settlement is more beneficial to the Estates than the litigation of the claims against Hughes Hubbard. *Id*.

The litigation against Hughes Hubbard would present fairly complex legal issues and hurdles. (Gupta Declaration, ¶ 19; Gabriel Declaration, ¶¶ 7-11.) As has been made clear by Hughes Hubbard's counsel, the issues would be heavily litigated. (Gabriel Declaration, ¶ 10.) First, the Trustee will have to address a number of jurisdictional and choice of laws issues in regard to whether the claims would need to be arbitrated, and if so, where the arbitration would take place. (Gupta Declaration, ¶ 19; Gabriel Declaration, ¶ 10.) The retention agreement with Hughes Hubbard provides that any claim against the firm be arbitrated in New York, and that New York law applies. (Gupta Declaration, ¶ 19.) The Trustee believes that the Bankruptcy Court should adjudicate the claims against Hughes Hubbard, but it is possible that Hughes Hubbard would prevail in its argument that the claims should be arbitrated in New York. *Id*. Arbitration is often time-consuming and extremely costly. (Gupta Declaration, ¶ 19; Gabriel Declaration, ¶ 10.) To the extent that the arbitration was to take place in New York, and if New York law was applied, the Trustee and her counsel would likely incur significant travel expenses, and may also need to retain local counsel in New York to advise as to New York law. (Gupta Declaration, ¶ 19; Gabriel Declaration, ¶ 7.)

The Trustee has claims against Fitzgerald as heretofore expressed. (Gupta Declaration, ¶¶ 12, 17, 21). Fitzgerald's retainer agreement with the Debtors requires an arbitration of the claims against it to be held in San Diego County. (Gupta Declaration, ¶ 12). Motions, and potentially time-consuming appeals, could take place over whether the claims are to be arbitrated, whether the claims against Hughes Hubbard and the other firms must be jointly arbitrated, where the arbitration would take place, and what state's law would be applied. (Gabriel Declaration, ¶ 10.)

Moreover, it is possible Hughes Hubbard would seek to have a "trial within a trial" in order to prove causation. (Gabriel Declaration, ¶ 11.) Although the Trustee does not believe that a "trial within a trial" approach would apply, if it did, such an approach would be time-consuming, would likely involve two or more expert witnesses on each side, and would be costly. *Id*. The expert witness costs would likely exceed several hundred thousand dollars, at a minimum, and could ultimately reach close to $1 million depending on the number of expert witnesses needed. *Id*. Even though the Trustee's counsel is retained on a contingency fee basis, fees and costs for arbitration, expert witnesses and other costs could be substantial if the Trustee were to litigate the claims against Hughes Hubbard. *Id*. In addition, while the Trustee is confident in her analysis of the claims and the likelihood of success on the merits, there is never any certainty to such claims, and the amount of the settlement is reasonable given the risks of litigation, and the years the litigation could take to conclude. (Gupta Declaration, ¶ 16.)

6

The complexity of the litigation, expense, and potential delay due to issues regarding arbitration, all weigh in favor of resolving the claims against Hughes Hubbard to avoid significant cost, delay and risk. (Gupta Declaration, ¶ 19.) However, the amount of the settlement still must be fair and reasonable given the probability of success at trial. *Id.* As discussed above, the Trustee believes that the Settlement Amount appropriately takes into account the range of potential outcomes for the claims taking into account the probability of success at trial. *Id.*

As set forth in the WHGC Motion for Approval of Settlement, filed concurrently herewith, the settlement amount to be paid by WHGC is substantially less than the amount to be paid by Hughes Hubbard because WHGC acted as local counsel for the Debtors in the Action. (Gupta Declaration, ¶ 17.) While WHGC is responsible for its actions, and the advice and counsel provided to the Debtors, the Trustee considered that WHGC, as local counsel, presumably followed the instructions of Hughes Hubbard. *Id.* Therefore, based on WHGC's likely limited autonomy to provide advice separate from that of Hughes Hubbard, the amount to be paid by WHGC is far less than the amount to be paid by Hughes Hubbard. *Id.* The Trustee's claims against Fitzgerald (counsel in relation to the Fee Motion and appeal) are estimated to be in excess of $5 million. *Id.* Given the total amount of the Fee Order of approximately $13 million, the share to be paid by Hughes Hubbard in the Settlement ($7.25 million) reasonably relates to its proportionate liability and satisfies the "ball park" test in *Tech-Bilt*. Because it is also appropriate pursuant to *Tech-Bilt* that Hughes Hubbard pay less than it would be required to pay if the Trustee were to prevail on her claims at trial, the Settlement Amount of $7.25 million is less than the approximate range of potential damages of $13 million to $20 million. (Gupta Declaration, ¶¶ 15-17; Gabriel Declaration, ¶¶ 7-12.)

2. **The Financial Conditions And Insurance Policy Limits Of Settling Defendants**

This is not a factor given that the Trustee believes that if she obtained a judgment against Hughes Hubbard, she would be able to collect in full on the judgment. (Gupta Declaration ¶ 18.)

3. **The Settlement Was Reached After Mediation with Hughes Hubbard, WHGC and Fitzgerald, Which Also Provided Fitzgerald An Adequate Opportunity To Resolve The Trustee's Claims. There Was No Collusion *Vis A Vis* The Settlement Obtained**

The mediation with Judge Infante included the Trustee, Hughes Hubbard, WHGC and Fitzgerald. (Gupta Declaration, ¶¶ 11, 20.) The Settlement was reached after the mediation with Judge Infante and after the Trustee and her lawyers evaluated the evidence and merits of the case. The Settlement was achieved by the Trustee and Hughes Hubbard's acceptance of a "mediator's proposal" for settlement of the claims. *Id.* WHGC and the Trustee also resolved the Trustee's claims at the mediation, as set forth in the WHGC Motion for Approval of Settlement. *Id.* Fitzgerald and its counsel were present at the mediation but Fitzgerald chose not to resolve the Trustee's claims. *Id.* Therefore, the Trustee is currently litigating her claims against Fitzgerald. (Gupta Declaration, ¶ 12.) In other words, the Debtors' counsel in the Action (Hughes Hubbard, WHGC and Fitzgerald) all had a fair opportunity to resolve their claims with the Trustee at the mediation, and while Hughes Hubbard and WHGC agreed to resolve the Trustee's claims,

7

Fitzgerald chose to not resolve those claims.  Given the global mediation, the reputation of Judge Infante, and the ability of each of the former attorneys for the Debtors in the Action to resolve the claims through the mediation process, there was no collusiveness as between the Trustee and Hughes Hubbard.  Moreover, as previously noted, the Settlement Amount was presented in the form of a mediator's proposal. (Gupta Declaration, ¶¶ 11, 20.)  Under such circumstances there can be no inference drawn that somehow the parties colluded to deprive Fitzgerald any rights of contribution or indemnity. (Gupta Declaration, ¶¶ 9, 11, 12, 20.)

4. **Paramount Interests of Creditors**

Although not a factor for good faith determination, the Settlement Amount of $7.25 million is significant and will likely provide a substantial benefit to the Estates and creditors without the significant risks and costs of litigation.  Given that the Estates are currently administratively insolvent, the Settlement should provide for meaningful recovery for creditors of the Estates. (Gupta Declaration, ¶ 21.)

**PLEASE TAKE FURTHER NOTICE THAT** given, among other things, the settlement amount in the Settlement Agreement, the claims to be resolved, the cost of litigation saved by the Estates, and the Settlement having resulted from a mediation in which the Trustee, Hughes Hubbard and other prior counsel for the Debtors in the Action all participated, the Trustee believes that not only is the Settlement in the best interests of the Estates, and should result in providing significant funds to distribute to creditors, but that the Settlement satisfies the criteria for determining that the Settlement was made and entered into in "good faith" as set forth according to the *Tech-Bilt* factors, as set forth above and in full in the Good Faith Settlement Motion.

**PLEASE TAKE FURTHER NOTICE** that the Good Faith Settlement Motion is supported by this Notice, and the following documents filed concurrently herewith:  (i) the Good Faith Settlement Motion, (ii) the Memorandum of Points and Authorities in support of the Good Faith Settlement Motion, (iii) the Gupta Declaration, (iv) the Gabriel Declaration, (v) the Request for Judicial Notice in Support of the Good Faith Settlement Motion filed concurrently herewith, the entire record before the Court, those matters of which this Court may take judicial notice, and such further evidence and argument that may be presented at or before the hearing on the Good Faith Settlement Motion.

**PLEASE TAKE FURTHER NOTICE that pursuant to Bankruptcy Local Rule 9014-1(c)(1), any opposition to the Good Faith Settlement Motion shall be filed and served on Special Litigation Counsel for the Trustee at least 14 days prior to the hearing date.  Any**

**replies must be filed and served at least 7 days before the scheduled hearing date on the Good Faith Settlement Motion. Any objection or request for a hearing must be accompanied by any declarations or memoranda of law any requesting party wishes to present in support of its position. If there is no timely objection to the requested relief, the court may enter an order granting the relief.**

Dated: August 10, 2016  BRUTZKUS GUBNER

By: /s/ Larry W. Gabrie_____
  Larry W. Gabriel
Special Litigation Counsel for Kavita Gupta,
Chapter 7 Trustee for the bankruptcy estates of
Gabriel Technologies Corporation and Trace
Technologies, LLC