LARRY W. GABRIEL – Bar No. 68329
COREY R. WEBER – Bar No. 205912
JASON B. KOMORSKY – Bar No. 155677
BRUTZKUS GUBNER
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000
Facsimile: (818) 827-9099
Email: lgabriel@brutzkusgubner.com
       cweber@brutzkusgubner.com
       jkomorsky@brutzkusgubner.com

Special Litigation Counsel for
Kavita Gupta, Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>GABRIEL TECHNOLOGIES CORPORATION *et al.*,<br><br>             Debtors.<br><br>E.I.N. 22-3062052; 20-1711149 | Case No. 13-30340-DM<br><br>(Jointly Administered with Case No. 13-30341)<br><br>Chapter 7 Proceedings<br><br>**DECLARATION OF KAVITA GUPTA IN SUPPORT OF CHAPTER 7 TRUSTEE'S MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION REGARDING THE SETTLEMENT BETWEEN KAVITA GUPTA, AS CHAPTER 7 TRUSTEE FOR CONSOLIDATED ESTATES, AND HUGHES HUBBARD & REED LLP**<br><br>Hearing:<br>Date: September 16, 2016<br>Time: 10:00 a.m.<br>Place: Courtroom 17<br>     United States Bankruptcy Court<br>     450 Golden Gate Avenue, 16th Floor<br>     San Francisco, CA 94102 |

1603405

# DECLARATION OF KAVITA GUPTA

I, Kavita Gupta, declare:

1.     I am an attorney at law admitted to appear before the courts of the State of California, the United States District Courts for the Eastern, Central, Northern and Southern Districts of California, and the United States Court of Appeals for the Ninth Circuit.

2.     I am the Chapter 7 Trustee (the "Trustee") for the bankruptcy estates of debtors Gabriel Technologies Corporation and Trace Technologies, LLC (the "Debtors"). The facts contained in this declaration are based on my personal knowledge, and, if called as a witness, I could and would competently testify to these facts.

3.     Any capitalized terms used but not identified herein shall have the same meaning as in the *Chapter 7 Trustee's Motion for Good Faith Settlement Determination Regarding the Settlement Between Kavita Gupta, as Chapter 7 Trustee for Consolidated Estates, and Hughes Hubbard & Reed LLP* (the "Motion").

4.     On February 14, 2013, Gabriel Technologies Corporation and Trace Technologies, LLC commenced these bankruptcy cases by each filing a voluntary petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court, Northern District of California, San Francisco Division (the "Bankruptcy Court"), under the jointly administered Case No. 13-30340-DM. (Docket Nos. 1, 19.)

5.     On July 8, 2014, this Bankruptcy Court entered an order converting the Debtors' Chapter 11 cases to Chapter 7 cases. (Docket No. 239.)

6.     On August 19, 2014 a Notice of Selection of Trustee and Setting of Bond Amount was filed in the United States Bankruptcy Court for the Northern District of California, selecting me as the Chapter 7 Trustee in these Bankruptcy Cases (Docket No. 250), and I filed my Notice of Acceptance on August 25, 2014. (Docket Nos. 253, 255.)

7.     Immediately after my appointment, I put Hughes Hubbard, along with the other law firms that represented the Debtors in the Action, on notice of my potential claims against them.

8.     I originally retained the law firm, Brown Rudnick LLP as my special litigation counsel to analyze and pursue claims against the Debtors' former attorneys, Hughes Hubbard and WHGC (local

Case: 13-30340   Doc# 329   Filed: 08/11/16   Entered: 08/11/16 14:40:17   Page 2 of 36

1603405

counsel). (Docket No. 289.) Through my prior and current special litigation counsel, I entered into tolling stipulations and amendments extending the time to file an action against Hughes Hubbard through December 31, 2016. Based on the tolling stipulations and amendments, I have not yet filed an adversary proceeding against Hughes Hubbard.

9.     In or around September 2015, I participated in mediation with Hughes Hubbard using the services of Robert A. Meyer of Loeb & Loeb LLP as the mediator. That mediation was unsuccessful as Hughes Hubbard and I were unable to reach an agreement.

10.     In September 2015, I terminated Brown Rudnick LLP and substituted Brutzkus Gubner Rozansky Seror Weber LLP ("Brutzkus Gubner") as my special litigation counsel. (Docket Nos. 295, 306.)

11.     On March 7, 2016, mediation took place with Judge Edward Infante (Ret.) of JAMS serving as the mediator. Unlike the first mediation, this mediation was a global mediation involving me, Hughes Hubbard, WHGC and Fitzgerald. Following the mediation, the mediator, my special litigation counsel and counsel for Hughes Hubbard continued discussions. These discussions eventually led to a mediator's proposal for settlement with Hughes Hubbard agreeing to make a payment to me as the representative of the Estates of $7,250,000 in exchange for mutual general releases in favor of Hughes Hubbard and its attorneys and representatives, in addition to other consideration.

12.     I have also asserted claims against WHGC and Fitzgerald, the other attorneys that represented the Debtors in the Action. I settled my claims against WHGC at the mediation, and the motion for approval of which will be filed concurrently with this Motion. Fitzgerald and its counsel were present at the mediation but I was unable to resolve my claims against Fitzgerald and I am currently in the process of arbitrating those claims with Fitzgerald. Fitzgerald's retainer agreement with the Debtors requires an arbitration of the claims against it to be held in San Diego County.

13.     On or about July 21, 2016, Hughes Hubbard and I agreed to terms of the Settlement Agreement. A true and correct copy of the Settlement Agreement is attached hereto as **Exhibit 1** and is incorporated herein by reference.

14.     Through my special litigation counsel, I am concurrently filing the *Chapter 7 Trustee's Motion For Approval of Settlement with Hughes Hubbard & Reed LLP* pursuant to Federal Rule of

Bankruptcy Procedure 9019 (the "9019 Motion"). A true and correct copy of the *Memorandum of Points and Authorities in Support of Chapter 7 Trustee's Motion for Approval of Settlement with Hughes Hubbard & Reed, LLP* in support of the 9019 Motion is attached hereto as **Exhibit 2**.

15. The Settlement Agreement represents the product of an extensive evaluation of the Estates' claims and potential claims against Hughes Hubbard and the other attorneys who represented the Debtors in the Action (WHGC and Fitzgerald). I considered the Estates' claims and potential claims, and issues of relative liability as to each of Hughes Hubbard, WHGC (local counsel) and Fitzgerald (counsel regarding the Fee Motion and appeal). Based thereon, I believe that it is probable that I would prevail if I pursued litigation against Hughes Hubbard. The claims themselves present fairly straight-forward issues as to Hughes Hubbard's advice as to the propriety of continuing litigation after the Bond Order was issued by the District Court. However, I recognize that, as with all litigation, the outcome is ultimately uncertain and ultimately rests with the trier of fact. Moreover, even if I prevailed in litigation against Hughes Hubbard, the amount of recovery is subject to dispute.

16. I have also analyzed the damage claim that could be pursued *vis a vis* the Hughes Hubbard claims. Based thereon, I believe that the approximate range of the Estates' potential damage claim against Hughes Hubbard is between $13 million - $20 million. That amount includes the $13 million Fee Order, the additional debt (now claims) that the Debtors would not have otherwise incurred but for the continuation of the Action, interest on the Fee Order from the date it was entered, and recovery of attorney fees paid to Hughes Hubbard. After taking litigation risk and the time value of money into consideration, I believe that the $7.25 million settlement – which is 36% - 56% of the Estates' potential damage claim – represents a reasonable and fair compromise that is in the best interests of the Estates and their creditors. I do not believe that it is prudent to subject the Estates to the risks and costs associated with litigating the claims against Hughes Hubbard given the $7.25 million settlement should provide a substantial benefit to the creditors of the administratively insolvent estates. In sum, I believe in my business judgment, that the proposed settlement is more beneficial to the Estates than the litigation of their claims against Hughes Hubbard.

/ / /

/ / /

17.     The settlement amount to be paid by WHGC is substantially less than the amount to be paid by Hughes Hubbard because WHGC acted as local counsel for the Debtors in the Action. While WHGC is responsible for its actions, and the advice and counsel provided to the Debtors, I considered that WHGC, as local counsel, presumably followed the instructions of Hughes Hubbard. Therefore, based on WHGC's likely limited autonomy to provide advice separate from that of Hughes Hubbard, the amount to be paid by WHGC is far less than the amount to be paid by Hughes Hubbard. My claims against Fitzgerald (counsel in relation to the Fee Motion and appeal) are estimated to be in excess of $5 million. Given the total amount of the Fee Order of approximately $13 million, the share to be paid by Hughes Hubbard in the Settlement ($7.25 million) reasonably relates to its proportionate liability. Because it is also appropriate that Hughes Hubbard pay less than it would be required to pay the Estates if the Estates were to prevail on their claims at trial, the Settlement Amount of $7.25 million is less than the approximate range of potential damages of $13 to $20 million.

18.     The financial condition and insurance policy limits of Hughes Hubbard are not an issue, because, in the event of a judgment, I believe that I would be able to recover in full from Hughes Hubbard.

19.     The litigation against Hughes Hubbard would present fairly complex legal issues and hurdles. First, my special litigation counsel would have to address a number of jurisdictional and choice of laws issues in regard to whether the claims would need to be arbitrated, and if so, where and using what state's laws. The retention agreement with Hughes Hubbard provides that any claim against the firm be arbitrated in New York, and that New York law applies. Although there may be an appropriate basis to have the Bankruptcy Court adjudicate the claims against Hughes Hubbard, it is possible that Hughes Hubbard would prevail in requiring that the claims be arbitrated. Arbitration is often time-consuming and extremely costly. If the arbitration were to take place in New York and New York law was applied, the Estates would likely need to retain local counsel in New York to advise as to New York law and would also incur travel expenses. The complexity of the litigation, expense, and potential delay due to issues regarding arbitration, all weigh in favor of resolving the claims against Hughes Hubbard to avoid significant cost, delay and risk. However, the amount of the settlement still must be fair and reasonable given the probability of success at trial. As discussed above, I believe that

the settlement amount appropriately takes into account the range of potential outcomes for the claims taking into account the probability of success at trial.

20.    The Debtors' counsel in the Action (Hughes Hubbard, WHGC and Fitzgerald) all had a fair opportunity to resolve the claims against them at the mediation, and while Hughes Hubbard and WHGC agreed to resolve the claims, Fitzgerald chose not to resolve the claims. Given, among other things, the global mediation, the reputation of Judge Infante, and the ability of each of the former attorneys for the Debtor in the action to resolve the Estates' claims through the mediation process, there was no collusiveness between me and Hughes Hubbard in the Settlement. Moreover, the Settlement Amount was presented in the form of a mediator's proposal.

21.    The $7.25 million settlement is significant and provides funds that should provide for a substantial benefit to Estates and creditors without the significant risks and costs of litigation. Given that the Estates are currently administratively insolvent, the Settlement Agreement should provide for meaningful recovery for creditors in the Bankruptcy Cases. As will be set forth in a separate motion to approve a settlement agreement with WHGC, I have also resolved my claims, on behalf of the Estates, against WHGC. The Settlement Agreement preserves my ability to pursue claims against Fitzgerald, which may result in additional recovery for the Estates.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 10, 2016 at Newport Beach, California.

_Kavita Gupta_
Kavita Gupta

## SETTLEMENT AGREEMENT AND MUTUAL GENERAL RELEASE

This Settlement Agreement and Mutual General Release (the "Agreement") is entered into by and between Kavita Gupta, solely in her capacity as the Chapter 7 Trustee (the "Trustee") for the bankruptcy estates of debtors Gabriel Technologies Corporation, Bankruptcy Case No. 13-30340, and Trace Technologies, LLC, Bankruptcy Case No. 13-30341 (collectively, the "Estates"), which are jointly administered and pending in the United States Bankruptcy Court for the Northern District of California, San Francisco Division (collectively with all related bankruptcy cases and adversary proceedings, the "Bankruptcy Cases"), on the one hand, and Hughes Hubbard & Reed LLP ("Hughes Hubbard"), on the other hand. The Trustee on behalf of the Estates and Hughes Hubbard (referred to herein as the "Parties" and each a "Party") agree as follows:

## I.     RECITALS

A.     WHEREAS, the provisions of this section are substantive and are not intended as mere recitals; and

B.     WHEREAS, on February 14, 2013, Gabriel Technologies Corporation and Trace Technologies, LLC (collectively, the "Debtors") each filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* in the United States Bankruptcy Court for the Northern District of California, San Francisco Division (the "Bankruptcy Court"), the Honorable Dennis Montali, United States Bankruptcy Court Judge presiding; and

C.     WHEREAS, on July 8, 2014, the Debtors' Chapter 11 cases were converted to Chapter 7 cases, and the Trustee was subsequently appointed as the Chapter 7 Trustee for the Debtors' Estates (Docket No. 249); and

D.     WHEREAS, pursuant to applicable statutes and case law, the Trustee is authorized to pursue and prosecute claims and may, subject to Bankruptcy Court approval, enter into settlements and compromises of claims; and

E.     WHEREAS, the Trustee asserts that the Trustee, on behalf of the Estates, has professional negligence, malpractice, breach of fiduciary duty, and related claims against Hughes Hubbard and certain present and former lawyers at Hughes Hubbard arising out of (a) their representation of the Debtors in the action entitled *Gabriel Technologies Corporation and Trace Technologies, LLC v. Qualcomm Incorporated, Snaptrack, Inc. and Norman Krasner*, Case No.

1

08-CV-1992, which was pending in the United States District Court, Southern District of California, and the appeal thereof entitled *Gabriel Technologies Corporation and Trace Technologies, LLC v. Qualcomm Incorporated, Snaptrack, Inc. and Norman Krasner*, Case No. 13-1205, which was pending in the United States Court of Appeals for the Federal Circuit (collectively, the "Action"), and (b) their alleged efforts and opinions provided to secure funds from any Person or entity to pay the fees, expenses and costs of the Action. (All of the foregoing Claims and any other matter related in any way to the Debtors or the Estates are referred to collectively as the "Professional Negligence Claims"); and,

F.  WHEREAS, Hughes Hubbard contends that the Professional Negligence Claims have no merit and are subject to applicable defenses; and,

G.  WHEREAS, the Trustee and Hughes Hubbard had previously entered into tolling stipulations and amendments extending the time for the Trustee to file an action against Hughes Hubbard through August 1, 2016; and, based thereon, the Trustee has not yet filed a formal proceeding against Hughes Hubbard for the Professional Negligence Claims she alleges she is entitled to pursue; and,

H.  WHEREAS, the Parties recently participated in a full-day mediation with the Honorable Edward Infante (Ret. Chief Magistrate Judge of the United States District Court for the Northern District of California) of JAMS on March 7, 2016; and continued settlement discussions following the mediation using Judge Infante as the mediator; and,

I.  WHEREAS, as a result of the mediation and the post-mediation efforts of Judge Infante, the Parties accepted a mediator's proposal which will resolve all Claims between the Parties.

NOW, THEREFORE, in consideration of the mutual terms, covenants and conditions contained herein, the Parties hereby agree as follows:

## II.  DEFINITIONS

In addition to any terms defined elsewhere in this Agreement, the following definitions shall apply to this Agreement.

A.  "Claim" shall mean any actual or potential claim, action, cause of action, defense, liability, obligation, right, suit, debt, sum of money, damage, judgment, demand of any nature whatsoever, proceeding to recover money or property, or proceeding against a Person or entity or

2

his, her or its property, whether or not reduced to judgment, and whether or not liquidated, unliquidated, fixed, contingent, matured, unmatured, known, unknown, disputed, undisputed, legal, equitable, secured or unsecured.

B.     "Estates' Related Parties" means and refers to the Debtors, the Estates, the Trustee in her representative and personal capacities, and the Trustee's professionals, including but not limited to Gupta Ferrer LLP, Brutzkus Gubner Rozansky Seror Weber LLP, Squar Milner, LLP, as well as their respective current and former lawyers, partners, shareholders, associates, and employees.

C.     "Final Order" means the later of: (i) the date on which the time to file an objection and/or a notice of appeal as to the orders for approving the Rule 9019 Motion (defined in Section III(1)(a) below) and the Good Faith Settlement Motion (defined in Section III(1)(c) below) entered pursuant to this Agreement has run without a timely objection and/or notice of appeal having been filed, or (ii) the date on which any appeal of the orders approving the Rule 9019 Motion and the Good Faith Settlement Motion and entered pursuant to this Agreement (or any further appeal from that appeal) is finally dismissed or otherwise affirmed, no further appeals may be taken, and a mandate has issued.

D.     "Hughes Hubbard Related Parties" means and refers to Hughes Hubbard & Reed, LLP and all of its respective past and present members, partners, associates, counsel, of counsel, senior counsel, owners, affiliates, officers, directors, board members, related entities, employees, employers, independent contractors, contractors, shareholders, professional corporations, servants, professionals, agents, attorneys (including but not limited to, Gibson, Dunn & Crutcher LLP, as well as their respective current and former lawyers, partners, shareholders, associates, and employees), as well as all of their current and former predecessors, successors, insurers, reinsurers, heirs, spouses, partners, trusts, trustees, beneficiaries, assigns, and any other representatives and agents.

E.     "Person" means individual, partnership, and corporation.

3

## III. TERMS OF AGREEMENT

1. **Conditions Precedent.** This Agreement is contingent upon the following, and if any of the following conditions precedent are not met, this Agreement shall be void and of no force and effect:

    a.    The filing of a motion by the Trustee seeking the approval of the terms of this Agreement in accordance with Federal Rules of Bankruptcy Procedure 9019 (the "Rule 9019 Motion"). The Trustee agrees to serve all documents pertaining to the Rule 9019 Motion in accordance with the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules;

    b.    The Bankruptcy Court enters an order approving the Rule 9019 Motion and such order becomes a Final Order;

    c.    The filing of a motion by the Trustee seeking confirmation that this Agreement was made and entered into in good faith within the meaning of California Code of Civil Procedure Section 877.6 (the "Good Faith Settlement Motion"). The Trustee agrees to serve all documents pertaining to the Good Faith Settlement Motion in accordance with the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rules; and

    d.    The Bankruptcy Court enters an order approving the Good Faith Settlement Motion and such order becomes a Final Order.

2. **Effective Date of Agreement.** This Agreement shall be effective three (3) calendar days after the order approving the Rule 9019 Motion and the order approving the Good Faith Settlement Motion become Final Orders (the "Effective Date").

3. **Settlement Payment and Manner of Settlement Payment.** On or within five (5) business days after the Effective Date, Hughes Hubbard or its insurers shall cause to be delivered Seven Million Two Hundred Fifty Thousand Dollars ($7,250,000.00) (the "Settlement Payment") to the Trustee, by an electronic wire transfer, pursuant to wire transfer instructions to be provided in writing by the Trustee. The Settlement Payment reflects the total sum of funds that Hughes Hubbard and its insurers will pay. None of the other Hughes Hubbard Related Parties is obligated to make any monetary payment or to provide any other consideration pursuant to this Agreement. The Hughes Hubbard Related Parties are not responsible in any way whatsoever for the proper distribution of the Settlement Payment or for any taxes, offsets, or any other deductions or similar payments.

4

4. **Mutual General Releases.** The releases provided below (collectively, the "Releases") will become mutually effective on the Effective Date. The Releases and California Civil Code Section 1542 waiver set forth in paragraphs 4 and 5 of this Agreement do not apply to any of the parties named in paragraphs 7 and 8 of this Agreement. The Releases and California Civil Code Section 1542 waiver set forth in paragraphs 4 and 5 of this Agreement do not apply to Claims to enforce this Agreement.

a. **Releases by the Trustee.** The Trustee, on behalf of the Estates, themselves and on behalf of their respective successors and assigns, and anyone claiming through or under any of the foregoing, and each of them, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully release and forever discharge the Hughes Hubbard Related Parties from any and all actual or potential Claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys' fees and liabilities, including but not limited to claims for indemnity or contribution, whether known or unknown, suspected or unsuspected, arising from, relating to or in any way connected with the Professional Negligence Claims (including but not limited to any preference Claims or any Claims related to any payment of fees, expenses, costs or other sums to Hughes Hubbard). It is intended that the scope of this release be construed as broadly as possible with respect to the Hughes Hubbard Related Parties.

b. **Releases By Hughes Hubbard.** Hughes Hubbard, for itself and on behalf of its successors and assigns, and anyone claiming through or under any of the foregoing, and each of them, without the necessity of executing any other document or agreement, and effective upon the Effective Date, as defined above, hereby fully release and forever discharge the Estates' Related Parties from any and all actual or potential Claims, demands, obligations, losses, causes of action, damages, penalties, costs, expenses, attorneys' fees and liabilities, including but not limited to claims for indemnity or contribution, whether known or unknown, suspected or unsuspected, arising from, relating to or in any way connected with the Professional Negligence Claims (including but not limited to any preference Claims or any Claims related to any payment of fees, expenses, costs or other sums to Hughes Hubbard). It is intended that the scope of this release be construed as broadly as possible with respect to the Estates' Related Parties.

5

5.     **General Release of Unknown Claims.** The Parties warrant, represent and agree that they are fully aware that certain jurisdictions may limit the general release of unknown Claims, of any nature whatsoever, such as, for example, California Civil Code Section 1542 (set forth below), but agree that the intent of the Parties is to waive such limitations to the fullest extent permitted by applicable law and otherwise.

> **CAL. CIV. CODE SEC. 1542. GENERAL RELEASE. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

By executing this Agreement, the Parties hereby waive and relinquish every right or benefit that they have or might have under California Civil Code Section 1542 or any other similar or equivalent federal provision, provision of California state law, provision of any other State in the United States, provision of common law, or otherwise to the fullest extent under any such law that the Parties may lawfully waive such right or benefit with regard to the subject matter of this Agreement. The Parties acknowledge that they are aware that they might later discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of this Agreement, but that it is their intention hereby fully, finally and forever to settle and release all matters, known or unknown, suspected or unsuspected, which now exist, might exist, or previously existed between the Parties. Nothing contained in the Releases or general release of unknown claims herein shall negate or impair the Parties' right to enforce this Agreement, including but not limited to the payment of the Settlement Payment.

6.     **No Right to Allowed Claim.** The Hughes Hubbard Related Parties shall waive their respective rights to file or obtain an allowed Claim in the Bankruptcy Cases on any basis, including but not limited to a claim based on the Settlement Payment (or any portion thereof). To the extent that the Hughes Hubbard Related Parties filed proof(s) of claim in the Bankruptcy Cases, any and all such claims are deemed disallowed in their entirety.

7.     **The Estates' Non-Released Claims.** Notwithstanding the general Releases in favor of the Hughes Hubbard Related Parties set forth above, and the general release of unknown claims, and without limiting the scope or application of those Releases, the Parties expressly understand and agree that nothing in this Agreement is intended to release any Claims of the

6

Estates against any other Persons or other entities, including, without limitation, any of the following:

        a.      The Debtors' former or current officers or directors including, without limitation, George Tingo, Jack Manning, and David Clark;

        b.      Wang Hartmann Gibbs & Cauley, P.L.C., WHGC, P.L.C., any predecessor or successor firm or entity and their present or former attorneys;

        c.      Chapin Fitzgerald Knaier, LLP, Fitzgerald Knaier LLP, any predecessor or successor firm or entity and their present or former attorneys; and

        d.      Wilmer Cutler Pickering Hale and Dorr, LLP, any predecessor or successor firm or entity and their present or former attorneys.

8.    **Hughes Hubbard Non-Released Claims.**  Notwithstanding the general Releases in favor of the Estates' Related Parties set forth above, and the general release of unknown claims, and without limiting the scope or application of those Releases, the Parties expressly understand and agree that nothing in this Agreement is intended to release any Claims by the Hughes Hubbard Related Parties against any other Persons or entities, including without limitation those identified in paragraph 7 above.

9.    **Authority.**  Each of the signatories to this Agreement warrants that he or she or it has the authority to sign on behalf of the Party to this Agreement and that no other signature is required.

10.    **Jurisdiction.**  Once the Bankruptcy Court enters the order approving the Rule 9019 Motion and the order approving the Good Faith Settlement Motion and those orders become Final Orders, the Bankruptcy Court shall retain jurisdiction over this Agreement, even after dismissal of the Bankruptcy Cases, and the Bankruptcy Court has the authority and jurisdiction to resolve any disputes arising under this Agreement or the Final Orders. If this Agreement is not approved and/or becomes or is deemed void, or the order approving the Rule 9019 Motion and the order approving the Good Faith Settlement Motion do not become Final Orders, neither this Agreement nor the act of entering into it shall be construed as constituting or indicating or in any other way indicative of any consent by the Hughes Hubbard Related Parties to the Bankruptcy Court's jurisdiction over any current or future Claims of any nature whatsoever, made by the Trustee, Debtors, Estates or any other Persons or entities.

7

11.    **Choice of Law.**  This Agreement shall be governed and construed in accordance with the internal laws of the State of California and, where applicable, federal law, including but not limited to the United States Bankruptcy Code.

12.    **No Admission of Liability.**  It is understood and agreed by the Parties hereto that this Agreement and the consideration therefor is a full, final and complete compromise and settlement of disputed Claims. This Agreement is not to be construed as an admission of liability on the part of any of the Parties. While agreeing to this settlement, Hughes Hubbard denies any liability to the Trustee, the Estates, the Debtors, or otherwise and further denies that Hughes Hubbard, or any of its lawyers, have violated any federal, state or local statute, rule or ordinance, or any common law principle, in connection with the Professional Negligence Claims or in their dealings with the Debtors or the Estates. Neither this Agreement, nor any of its terms, nor any negotiations or proceedings in connection with this Agreement, shall constitute or be construed as or be deemed to be evidence of an admission on the part of any Party of any liability or wrongdoing whatsoever, or the truth or untruth, or merit or lack of merit, of any claim or defense of any party; nor shall this Agreement, or any of the terms hereof, nor any negotiations or proceedings in connection herewith, nor any performance or forbearance hereunder, be offered or received in evidence or used in any proceeding against any party, or used in any proceeding for any purpose whatsoever except with respect to the effectuation and enforcement of this Agreement. Notwithstanding the foregoing, the Parties agree that this provision is not intended to be a confidentiality provision or a non-disparagement provision. The Trustee may file this Agreement as evidence in support of the Rule 9019 Motion and for any other purpose whatsoever that is related to or connected with the Estates or the Bankruptcy Cases.

13.    **Counterparts.**  This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument at such time as counterparts are executed which shall, in total, contain the signatures of all the Parties hereto.

14.    **Construction.**  This Agreement shall be construed as if all Parties hereto, and each of them, jointly prepared it, and any uncertainty or ambiguity shall not be interpreted against any one Party.

8

15. **Survival.** All of the representations, warranties and covenants provided herein shall survive the Effective Date.

16. **Binding Nature of Agreement.** This Agreement, to the fullest extent possible, shall be binding upon, inure to the benefit of, and be enforceable by the Estates' Related Parties and the Hughes Hubbard Related Parties.

17. **Integration/Entire Agreement.** This Agreement constitutes a single, fully integrated contract expressing the entire agreement of the Parties hereto. No promise, inducement or agreement other than that expressed herein has been made by any Party. Each Party for itself represents, warrants, covenants, understands and agrees that this Agreement sets forth all of the agreements, covenants and understandings of the Parties, superseding all other prior and contemporaneous oral and written agreements, representations, discussions, or promises, if any, whether written or oral, express or implied. There are no third party beneficiaries to this Agreement other than the Persons or other entities released pursuant to the Releases or otherwise as expressly provided for in this Agreement.

18. **Voluntary Agreement.** This Agreement is freely and voluntarily executed by the Parties. Each Party represents, warrants, covenants, and agrees that: (a) they have carefully and thoroughly read this Agreement; (b) they have obtained the advice of counsel of their own choosing with respect to the Agreement and its legal interpretation and implications; (c) they fully understand the terms of this Agreement and their significance; (d) they have had a full and complete opportunity to review this Agreement and to make suggestions or changes; and (e) they have bargained for this Agreement in arms-length negotiations and without acting under duress.

19. **No Assignment or Transfer of Claims.** As a condition precedent to this Agreement, the Parties each expressly represent, warrant, and covenant that they have not assigned, sold, conveyed, transferred, or otherwise disposed of any of the Professional Negligence Claims or portion thereof or any other Claims covered by the Releases herein that they may have possessed at any time that are being released by this Agreement.

20. **Attorneys' Fees and Costs.** The Parties each shall bear their own attorneys' fees expert fees, and costs with regard to or relating to all past and pending matters between the Parties, the Professional Negligence Claims, and this Agreement.

9

21.     **Covenant Not To Sue.** The Parties agree and understand that the one or both of them may file an action or proceeding against the Persons or entities listed in paragraphs 7 and/or 8 of this Agreement. Each Party to this Agreement agrees not to sue the parties they have released based on the released matters.

22.     **Termination/Modification.** This Agreement can be amended, revised, modified or terminated only by a writing signed by all of the Parties to this Agreement, and any modifications, revisions, or changes to this Agreement must be done in a written instrument signed by all of the Parties to this Agreement. Any amendment is subject to the approval of the Bankruptcy Court.

23.     **Facsimile, Copy and .pdf Signatures.** An original, facsimile, copy or .pdf signature on this Agreement shall have the same force and effect as an original signature thereto.

24.     **Notices.** All notices and other communications required by or relating to this Agreement shall be in writing and shall be deemed given when delivered by a nationally recognized overnight courier service and email to the Parties at the following addresses (or at such other address for a Party as shall be specified in writing by like notice, provided that a notice of change of address(es) shall be effective only from the date of its receipt by the other Party):

> (a)     if to the Estates, then to:
>
> Kavita Gupta
> Gupta Ferrer LLP
> 1300 Bristol Street North, Suite 100
> Newport Beach, California 92660
> Tel.:    (949) 387-4470
> Fax:    (949) 258-9786
> Email: kgupta@guptaferrer.com
>
> With a copy to:
>
> Brutzkus Gubner Rozansky Seror Weber LLP
> Attention: Larry Gabriel and Corey R. Weber
> Warner Center
> 21650 Oxnard St., Suite 500
> Woodland Hills, California 91367-4911
> Tel.:    (818) 827-9000
> Fax:    (818) 827-9099
> Email: lgabriel@brutzkusgubner.com

10

cweber@brutzkusgubner.com

(b)    if to Hughes Hubbard, then to:

       Hughes Hubbard and Reed LLP
       Attention: James B. Kobak, Jr.
       One Battery Park Plaza
       New York, New York  10004-1482
       Tel.:   (212) 837-6757
       Fax:   (212) 422-4726
       Email: james.kobak@hugheshubbard.com

       and

       Hughes Hubbard and Reed LLP
       Attention: Rita Haeusler
       350 South Grand Avenue, Suite 3600
       Los Angeles, California 90071
       Tel.:   (213) 613-2896
       Fax:   (213) 330-3296
       Email: rita.haeusler@hugheshubbard.com

       With a copy to:

       Gibson, Dunn & Crutcher LLP
       Attention: Kevin S. Rosen
       333 South Grand Avenue
       Los Angeles, California 90071
       Tel.:   (213) 229-7635
       Fax:   (213) 229-6635
       Email: krosen@gibsondunn.com

IN WITNESS WHEREOF, the Parties have executed this Agreement on the dates opposite their respective signatures.

DATED: _July 21, 2016_

HUGHES HUBBARD & REED LLP

By: _James B. Kobak_

James B. Kobak, Jr.,

Solely In His Capacity As Its General Counsel and Authorized Representative and Not Individually

[SIGNATURES CONTINUED ON NEXT PAGE]

11

DATED: _July 21, 2016_          THE ESTATES

By: _Kavita Gupta_
         Kavita Gupta,

Solely In Her Capacity As the Trustee for the Estates
and Not Individually


APPROVED AS TO FORM:

DATED: _7/21/2016_          GIBSON, DUNN & CRUTCHER LLP

By: _Kevin S. Rosen_
         Kevin S. Rosen,

Solely As Counsel to Hughes Hubbard & Reed LLP


DATED: _____          BRUTZKUS GUBNER ROZANSKY SEROR WEBER LLP

By: _____
         Larry Gabriel,

Solely As Counsel to Kavita Gupta in her capacity as
the Trustee for the Estates

12

DATED: _____    THE ESTATES

                                 By: _____
                                       Kavita Gupta,

                                 Solely In Her Capacity As the Trustee for the Estates
                                 and Not Individually

APPROVED AS TO FORM:

DATED: _7/21/2016_               GIBSON, DUNN & CRUTCHER LLP

                                 By: _____
                                       Kevin S. Rosen,

                                 Solely As Counsel to Hughes Hubbard & Reed LLP

DATED: _7/21/2016_               BRUTZKUS GUBNER ROZANSKY SEROR WEBER LLP

                                 By: _____
                                       Corey Gabriel,

                                 Solely As Counsel to Kavita Gupta in her capacity as
                                 the Trustee for the Estates

12

LARRY W. GABRIEL – Bar No. 68329
COREY R. WEBER – Bar No. 205912
JASON B. KOMORSKY – Bar No. 155677
BRUTZKUS GUBNER
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000
Facsimile: (818) 827-9099
Email: lgabriel@brutzkusgubner.com
        cweber@brutzkusgubner.com
        jkomorsky@brutzkusgubner.com

Special Litigation Counsel for
Kavita Gupta, Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>GABRIEL TECHNOLOGIES CORPORATION *et al.*,<br><br>                  Debtors.<br><br>E.I.N.  22-3062052; 20-1711149 | Case No.  13-30340-DM<br><br>(Jointly Administered with Case No. 13-30341)<br><br>Chapter 7 Proceedings<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CHAPTER 7 TRUSTEE'S MOTION FOR APPROVAL OF SETTLEMENT WITH HUGHES HUBBARD & REED LLP**<br><br>**[Fed. R. Bankr. P. 9019]**<br><br>[Notice of Motion, Motion, and supporting Declarations filed concurrently herewith]<br><br>Hearing:<br>Date:  September 16, 2016<br>Time:  10:00 a.m.<br>Place: Courtroom 17<br>        United States Bankruptcy Court<br>        450 Golden Gate Avenue, 16th Floor<br>        San Francisco, California 94102 |

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................2

I.  JURISDICTION AND VENUE ...........................................................................2

II. INTRODUCTION .............................................................................................2

III. BACKGROUND ON THE CLAIMS.....................................................................3

    A.  The Underlying Litigation. ...................................................................3

        1.  Background Regarding the Claims in the Underlying Litigation...........................................................................................3

        2.  The Underlying Litigation and the Retention of Hughes Hubbard...............................................................................................5

    B.  The Bankruptcy Proceedings. ...............................................................6

    C.  The Trustee's Claims ...........................................................................6

    D.  Tolling Stipulations..............................................................................7

    E.  The Mediations with Hughes Hubbard and the Debtors' Other Counsel ...............................................................................................7

    F.  The Trustee's Remaining Claims Against Other Counsel .......................8

    G.  The Settlement Agreement Terms ..........................................................8

IV. THE COURT SHOULD APPROVE THE SETTLEMENT AGREEMENT.....................9

    A.  The Probability of Success in the Litigation...........................................10

    B.  The Difficulties, If Any, To Be Encountered In The Matter Of Collection..........................................................................................11

    C.  The Complexity of the Litigation Involved and the Expense, Inconvenience and Delay Necessarily Attending It.................................11

    D.  Paramount Interests of Creditors ..........................................................12

V.  CONCLUSION..................................................................................................13

i

# TABLE OF AUTHORITIES

Page

## CASES

*Gabriel Technologies Corporation v. Qualcomm Incorporated,*
560 Fed. Appx. 966 (Fed. Cir. 2014) ........................................................6

*Gabriel Technologies,*
2013 WL 410103 (S.D. Cal. 2013) .........................................................3

*In re Milden,*
111 F.3d 138, 2 (9th Cir. 1997) ..............................................................9

*In re Pac. Gas and Elec. Co.,*
304 B.R. 395, 417 (Bankr. N.D. Cal. 2004) ...........................................10

*In re W.T. Grant Co.,*
699 F.2d 599, 608 (2d Cir. 1983) (*quoting Newman v. Stein,*
464 F.2d 683, 693 (2d Cir. 1972)) ...........................................................9

*In re Walsh Construction, Inc.,*
669 F.2d 1325, 1328 (9th Cir. 1982) ....................................................9, 10

*In re Washington Public Power Supply System Sec. Litigation,*
823 F.2d 1349 (9th Cir. 1987) .................................................................9

*Martin v. Kane (In re A&C Properties),*
784 F.2d 1377 (9th Cir. 1986) .......................................................9, 10, 13

*Woodson v. Fireman's Fund Insurance Co. (In re Woodson),*
839 F.2d 610, 620 (9th Cir. 1987) ...........................................................9

## FEDERAL STATUTES

11 U.S.C. § 105 .....................................................................................1, 2
28 U.S.C. § 157 .........................................................................................2
28 U.S.C. §157(b)(2) .................................................................................2
28 U.S.C. § 1334 .......................................................................................2
28 U.S.C. § 1408 .......................................................................................2
28 U.S.C. § 1409 .......................................................................................2

## STATE STATUTES

California Code of Civil Procedure § 877.6 ..............................................8
California Code of Civil Procedure § 1542 ...............................................8

## RULES

Federal Rules of Bankruptcy Procedure, Rule 9019 ........................1, 2, 8, 9

**TO THE HONORABLE DENNIS MONTALI, UNITED STATES BANKRUPTCY COURT JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL PARTIES IN INTEREST:**

Kavita Gupta, the chapter 7 trustee (the "Trustee") for the bankruptcy estates of Debtor Gabriel Technologies Corporation, Bankruptcy Case No. 13-30340, and Debtor Trace Technologies, LLC, Bankruptcy Case No. 13-30341 (collectively, the "Estates"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. § 105, provides the following Memorandum of Points and Authorities in support of her Motion for Approval of Settlement Agreement With Hughes Hubbard & Reed LLP (filed concurrently herewith), seeking an order authorizing and approving a settlement (the "Settlement") by and between the Trustee and Hughes Hubbard & Reed LLP ("Hughes Hubbard"), and for a finding that the Settlement is fair and reasonable and in the best interest of the creditors of the Estates (the "9019 Motion").

Dated: August 10, 2016

BRUTZKUS GUBNER

By: /s/ Larry W. Gabriel
 Larry W. Gabriel
 Special Litigation Counsel for Kavita Gupta,
 Chapter 7 Trustee for the bankruptcy estates
 of Gabriel Technologies Corporation and
 Trace Technologies, LLC

1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. JURISDICTION AND VENUE

The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2). The statutory predicate for the relief sought in the Motion is Federal Rule of Bankruptcy Procedure 9019 and 11 U.S.C. § 105.

## II. INTRODUCTION

This 9019 Motion requests that the Court approve an agreement to settle and resolve any and all claims that the Trustee alleges she has or may have against the Debtors' former litigation counsel, Hughes Hubbard, including certain present and former lawyers at Hughes Hubbard and others related to Hughes Hubbard, in connection with and arising out of (a) its representation of the Debtors in the action titled *In re Gabriel Technologies Corporation and Trace Technologies, LLC v. Qualcomm Incorporated, Snaptrack, Inc. and Norman Krasner*, Case No. 08-CV-1992, which was pending in the United States District Court for the Southern District of California, and the appeal thereof entitled *Gabriel Technologies Corporation and Trace Technologies, LLC v. Qualcomm Incorporated, Snaptrack, Inc. and Norman Krasner*, Case No. 13-1205, which was pending in the United States Court of Appeals for the Federal Circuit (collectively, the "Action"), and (b) their alleged efforts and opinions provided to secure funds from any Person or entity to pay the fees, expenses and costs of the Action (all of the foregoing claims and any other matter related in any way to the Debtors or the Estates are referred to collectively as the "Professional Negligence Claims").

The settlement will result in the Trustee's recovery of $7.25 million for the benefit of the Estates. The settlement was reached after the Parties engaged in a full-day mediation with the Honorable Edward Infante (Ret. Chief Magistrate Judge of the United States District Court for the Northern District of California) of JAMS on March 7, 2016, and continued discussions between the mediator and the Parties following the mediation, and subsequently, the Parties' acceptance of a mediator's proposal.

Given the amount of the settlement, the claims to be resolved, and the cost of litigation saved by the estate, the Trustee believes that the settlement is in the best interests of the Estates, and should result in providing significant funds to distribute to creditors. (Gupta Declaration ¶¶ 14-20.) Based on the grounds stated herein and in the Gupta Declaration and Gabriel Declaration, the Trustee respectfully requests that the Court grant this Motion and enter an order:

1. Approving the terms and conditions of the settlement as embodied in the Settlement Agreement;

2. Authorizing the Trustee to execute any documents or take any actions reasonably necessary to effectuate the terms of the Settlement Agreement; and

3. Granting such other and further relief as the Court may deem just and proper.

## III. BACKGROUND ON THE CLAIMS[1]

### A. The Underlying Litigation

#### 1. Background Regarding the Claims in the Underlying Litigation

Gabriel Technologies Corporation ("Gabriel") was a publicly traded Delaware corporation that focused on technologies related to asset tracking and physical security. In late 1998, the founders of another company, Locate Networks, LLC ("Locate"), and its principals started discussing joint development projects with Norman Krasner ("Krasner") and SnapTrack Inc. ("SnapTrack"). Locate focused on location determining devices and location-based services; SnapTrack developed broadband network and assisted Global Positioning System ("aGPS") technology.

---

[1] The facts presented are based upon the factual findings as described in various court decisions involving the Debtors and Qualcomm. *See generally, Gabriel Technologies Corporation et al. v. Qualcomm Inc., et al.*, Case No. 3:2008-cv-01992-AJB-MDD; *Gabriel Technologies*, 2013 WL 410103 (S.D. Cal. 2013) (the "Fee Order"); *Gabriel Technologies Corporation and Trace Technologies, LLC v. Qualcomm Incorporated, Snaptrack, Inc. and Norman Krasner*, Case No. 13-1205 (Fed. Cir.). Copies of these pleadings are attached to the Request for Judicial Notice in Support of: (1) Trustee's Motion for Approval of Settlement with Hughes Hubbard & Reed, LLP and, (2) Trustee's Motion for Good Faith Determination Regarding the Settlement Between Kavita Gupta, as Chapter 7 Trustee for Consolidated Estates, and Hughes Hubbard & Reed, LLP (the "RJN").

On August 20, 1999, SnapTrack and Locate entered into a license agreement (the "1999 Agreement"). The 1999 Agreement set forth the terms under which Locate obtained from SnapTrack a license to use SnapTrack's aGPS software in exchange for paying SnapTrack licensing and royalty fees. The parties also agreed to jointly own "Program Technology," defined as work product carried out by the parties in connection with the 1999 Agreement, and identified as Program Technology in the agreement.

Gabriel believed that SnapTrack and Krasner used the relationship created by the 1999 Agreement to obtain millions of dollars from Locate to keep SnapTrack afloat while negotiating a billion dollar buyout of SnapTrack.

In March 2000, Qualcomm Inc. ("Qualcomm") acquired SnapTrack for $1 billion, stating in its press release that SnapTrack's patents were necessary for the commercial viability of any Wireless Assisted GPS System."

In 2004, Locate sold its assets to Trace Technologies, LLC ("Trace"), transferred its interest in Trace to Gabriel, and went out of business. Qualcomm then presented Trace, the successor in interest to Locate's assets, with a proposed amended license agreement. The proposed amended license agreement deleted the relevant section of the 1999 Agreement which stated that "[a]ll Program Technology was jointly owned by the parties."

On January 16, 2006, Trace and Qualcomm entered into the amended license agreement. Gabriel believed at the time that SnapTrack had misappropriated Locate's intellectual property and technology without Trace's knowledge or consent. Gabriel also believed that Krasner secretly filed and obtained numerous patents based on Locate's technology, which he was able to access when the parties entered into the 1999 Agreement. Once Qualcomm acquired SnapTrack, Gabriel believed that Qualcomm continued filing patents based on Locate's technology.

Gabriel believed that at least 92 U.S. and foreign patents and patent applications filed by Krasner and Qualcomm should have listed Locate employees as the sole inventors, or at least joint inventors. Over time, as the patents became publicly available, Gabriel discovered certain patents that incorporated Locate's pre-existing technology and jointly owned Program Technology. Gabriel brought its issues to the attention of Qualcomm in an attempt to resolve the issues before

instituting litigation. This effort proved unsuccessful, and Gabriel decided to file suit based upon the claims it perceived Gabriel owned.

### 2. The Underlying Litigation and the Retention of Hughes Hubbard

Gabriel filed its original complaint against Qualcomm on October 24, 2008 (the Action"). At the time, Gabriel was represented by a Texas-based law firm, Munck Carter, P.C. In April 2009, Gabriel retained another firm, WHGC, P.L.C., and Wang Hartman Gibbs & Cauley, P.L.C ("WHGC"), as local counsel.

The original complaint contained eleven causes of action against Qualcomm. The complaint asserted that SnapTrack had misappropriated intellectual property belonging to Locate, Gabriel's predecessor in interest. Gabriel claimed that Qualcomm used Locate's technology without giving Locate proper attribution as the inventors or co-inventors.

In or around December 2009, Munck Carter withdrew based on a conflict of interest. In about March 2010, Gabriel's board of directors retained Hughes Hubbard to replace Munck Carter as lead counsel.

On July 2, 2010, Qualcomm moved to have Gabriel post a bond pursuant to California Code of Civil Procedure § 1030 to secure costs and fees. In support of its request, Qualcomm argued that it had defeated seven of Gabriel's eleven claims, that Gabriel had failed to produce any facts during discovery to support the remaining causes of action and that certain claims were barred by the applicable statute of limitations. In opposition, Gabriel argued, among other things, that multiple experts supported its position and that various discovery orders by the magistrate judge had deprived Gabriel of important discovery.

On September 20, 2010, U. S. District Judge Michael M. Anello granted Qualcomm's motion for a bond and ordered Gabriel to post an $800,000 bond.[2] Gabriel posted the bond on December 16, 2010.

During the course of the litigation, the trial court determined that Gabriel was unable to articulate its trade secrets with adequate particularity. Gabriel filed various briefs explaining why

---

[2] *Gabriel Technologies Corporation et al. v. Qualcomm Inc., et al.*, Case No. 3:2008-cv-01992-AJB-MDD, Docket No. 110 (the "Bond Order"). A copy of the Bond Order is attached to the RJN.

it believed it had articulated its trade secrets with sufficient particularity. Based on its conclusion that Gabriel had not done so, and a later finding that some claims were barred by the statute of limitations, the trial court granted Qualcomm's two successive motions for summary judgment, eventually dismissing the Action and all of the Debtors' claims.

The dismissal of the Action was followed by a motion by Qualcomm, pursuant to 35 U.S.C. § 285, seeking an award of attorneys' fees against Gabriel and its attorneys of record, Hughes Hubbard and its local counsel, WHGC, in an amount exceeding $13.5 million. Hughes Hubbard, due to a conflict of interest, retained its own counsel, Latham & Watkins, LLP, and arranged for the firm Fitzgerald Knaier LLP, f/k/a Chapin Fitzgerald Knaier LLP, ("Fitzgerald"), to represent the Debtors. After presenting its opposition to the motion, Hughes Hubbard settled with Qualcomm prior to the hearing on the Motion. After the hearing, the Court awarded Qualcomm all of its fees incurred in defense of the action, less the amount of the bond previously posted.

Pursuant to the Fee Order, the Debtors were ordered to pay attorneys' fees in the amount of $12,401,014.51, including forfeiture of the $800,000 bond posted by the Debtors.

On February 14, 2013, the Debtors filed for bankruptcy. The judgment against the Debtors was thereafter affirmed on appeal. *Gabriel Technologies Corporation v. Qualcomm Incorporated*, 560 Fed. Appx. 966 (Fed. Cir. 2014).

**B.    The Bankruptcy Proceedings**

On February 14, 2013, Gabriel and Trace commenced these bankruptcy cases by each filing a voluntary petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court, Northern District of California, San Francisco Division (the "Court"), under the jointly administered Case No. 13-30340-DM. (Docket Nos. 1, 19.)

On July 8, 2014, this Court entered an order converting the Debtors' Chapter 11 cases to Chapter 7 cases. (Docket No. 239.) The Trustee was subsequently selected to serve as the Chapter 7 Trustee. (Docket No. 250.)

**C.    The Trustee's Claims**

The Trustee's claims against Hughes Hubbard are essentially for negligence and breach of fiduciary duty in relation to Hughes Hubbard's representation of the Debtors in the Action. The

Trustee's claims are identified in more detail in the Settlement Agreement. Hughes Hubbard will likely contend that the claims have no merit and are subject to applicable defenses.

### D. Tolling Stipulations

At the outset of the bankruptcy proceedings, Hughes Hubbard, along with the other law firms that represented the Debtors in the Action, were put on notice of the Trustee's potential claims against them. The Trustee thereafter entered into tolling stipulations and amendments extending the time for the Trustee to file an action against Hughes Hubbard through December 31, 2016. Based on the tolling stipulations and amendments, the Trustee has not yet filed an adversary proceeding or arbitration proceeding against Hughes Hubbard.

### E. The Mediations with Hughes Hubbard and the Debtors' Other Counsel

The Trustee originally retained Brown Rudnick LLP as her special litigation counsel to analyze and pursue claims against Hughes Hubbard and WHGC. (Docket No. 289.) Shortly thereafter a mediation took place between the Trustee and Hughes Hubbard with Robert A. Meyer of Loeb & Loeb LLP serving as the mediator. That mediation was unsuccessful as the Trustee and Hughes Hubbard were unable to reach an agreement. (Gupta Declaration, ¶¶ 8-9.)

In September 2015, the Trustee terminated Brown Rudnick LLP and substituted Brutzkus Gubner Rozansky Seror Weber LLP ("Brutzkus Gubner") as her special litigation counsel. (Docket Nos. 259, 306.) (Gupta Declaration, ¶10.)

On March 7, 2016, another mediation took place using the services of Judge Edward Infante (Ret.) of JAMS serving as the mediator. Unlike the first mediation, this mediation was a global mediation involving the Trustee, Hughes Hubbard, WHGC and Fitzgerald (Fee Motion and appellate counsel) that also represented the Debtors in the Action. At the mediation, the Trustee resolved her claims against WHGC and that settlement is being presented to this Court for approval concurrently with the filing of this motion. Following the mediation, Judge Infante, the Trustee, and Hughes Hubbard continued discussions, and the Trustee and Hughes Hubbard agreed to the mediator's proposal. The mediator's proposal resulted in the Settlement Agreement with Hughes Hubbard. (Gupta Declaration, ¶¶ 11, 13.)

/ / /

**F.    The Trustee's Remaining Claims Against Other Counsel**

The Trustee has also asserted claims against Fitzgerald.   The Trustee was unable to resolve her claims against Fitzgerald, and she is proceeding with an arbitration on those claims. (Gupta Declaration, ¶ 12.)

**G.    The Settlement Agreement Terms**

All parties in interest are directed to the Settlement Agreement which is attached as **Exhibit 1** to the Gupta Declaration, for the specific terms of the Settlement Agreement.  A summary of the essential terms in the Settlement Agreement are set forth below.  To the extent that any terms listed below are inconsistent with the Settlement Agreement, the terms of the Settlement Agreement govern:

1.   The Settlement Agreement is conditional upon the Bankruptcy Court's approval of the Settlement Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019.

2.   The Settlement Agreement is conditional upon the Bankruptcy Court's finding that the Settlement Agreement was entered into in good faith, pursuant to California Code of Civil Procedure § 877.6.

3.   Hughes Hubbard shall pay the Trustee the total sum of $7,250,000.00 (the "Settlement Amount") within five business days after: (a) the Court order approving this Settlement Agreement becomes Final, and (b) a Court order approving the Good Faith Settlement Motion becomes Final.

4.   Hughes Hubbard will waive any claim it has or may have against the Debtors or their Estates in their bankruptcy cases.  To the extent that Hughes Hubbard filed a claim(s), such claims are disallowed in their entirety.

5.   The Parties have agreed to mutual and general releases and a Civil Code § 1542 waiver.

6.   There is a carve-out regarding claims against certain parties as provided for in paragraphs 7 and 8 of the Settlement Agreement.

7.   Each Party will bear its own fees, costs and expenses.

8. The Bankruptcy Court will retain jurisdiction to enforce the terms of the Settlement Agreement.

## IV. THE COURT SHOULD APPROVE THE SETTLEMENT AGREEMENT

Federal Rule of Bankruptcy Procedure 9019 states, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Under Rule 9019(a), the Bankruptcy Court has "great latitude in approving compromise agreements" and may approve a proposed compromise so long as it is fair and equitable. *Woodson v. Fireman's Fund Insurance Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1987).

The Ninth Circuit has set forth certain factors relevant to determining whether a settlement is fair and equitable. In determining whether a settlement is fair and equitable and in the best interests of the estate and creditors, the court must consider: "(a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of creditors and a proper deference to their reasonable views in the premises." *Martin v. Kane (In re A&C Props.)*, 784 F.2d 1377, 1381 (9th Cir. 1986), *overruled on other grounds by In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 823 F.2d 1349 (9th Cir. 1987).

The decision of whether to approve or reject a proposed compromise is addressed to the sound discretion of the Court and is to be determined by the particular circumstances of each case. *In re Walsh Construction, Inc.*, 669 F.2d 1325, 1328 (9th Cir. 1982); *In re Woodson, supra,* at 620; *In re A & C Properties, supra,* at 1381.

In addressing this Motion, the Court need not decide the questions of law and fact raised in the controversies sought to be settled and need not determine whether the settlement presented is the best one that could possibly have been achieved. Rather, the Court's responsibility is only "to canvass the issues to see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983) (*quoting Newman v. Stein*, 464 F.2d 683, 693 (2d Cir. 1972); *see In re Milden*, 111 F.3d 138, 2 (9th Cir. 1997); *In re Pac. Gas and Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004). The bankruptcy court need

not conduct an exhaustive investigation into the validity or a mini-trial on the merits of the claims sought to be compromised. *In re Walsh Constr.,* 669 F.2d at 1328.

An analysis of the *A&C Properties* factors in this case, as set forth below and in the Gupta Declaration and Gabriel Declaration, demonstrates that the settlement is fair and equitable, and should be approved.

## A. The Probability of Success in the Litigation

The Settlement Agreement represents the product of an extensive evaluation of the potential claims the Estates have or may have against Hughes Hubbard. (Gupta Declaration, ¶ 15.) The Trustee believes that it is probable that she would prevail if she pursued litigation against Hughes Hubbard. *Id.* The claims themselves present fairly straight-forward issues as to Hughes Hubbard's advice as to the propriety of continuing litigation after the Bond Order was issued by the District Court. *Id.* However, the Trustee recognizes that, as with all litigation, the outcome is ultimately uncertain and ultimately rests with the trier of fact. *Id.* The claims would likely require expert testimony, likely with two or three experts providing testimony on the issue of patent law, legal malpractice and billing practices. (Gabriel Declaration, ¶ 7.) In addition, it is possible that the claims would have to be arbitrated given the terms of the Hughes Hubbard's retention agreement with the Debtors. (Gupta Declaration, ¶ 18; Gabriel Declaration, ¶¶ 7, 10.) That agreement requires that the arbitration take place in New York, with New York law being applied to the claims presented. *Id.* Such an arbitration may result in increasing the expense for the prosecution of the claims, require the need to retain local counsel, and subject the claims to the vagaries of New York law. (Gabriel Declaration, ¶ 7.) Moreover, even if the Trustee prevailed in litigation against Hughes Hubbard, the amount of recovery is subject to dispute. (Gupta Declaration, ¶ 15; Gabriel Declaration, ¶ 8.) The Trustee has also analyzed the damage claim that could be pursued *vis a vis* the Hughes Hubbard claims. (Gupta Declaration, ¶ 16.) It is the Trustee's view that the approximate range of the Estates' potential damages against Hughes Hubbard is between $13 million - $20 million. (Gupta Declaration, ¶ 16; Gabriel Declaration, ¶ 8.) That amount includes the $13 million Fee Order, interest on the Fee Order from the date it was entered, attorney fees, and the additional debt (now claims) the Debtors would not have otherwise

incurred but for the continuation of the Action. *Id.* Hughes Hubbard has asserted numerous defenses to the claims. (Gabriel Declaration, ¶ 9.) For example, it will likely contend that the Fee Order erroneously included approximately $5 million in fees that were incurred prior to the Bond Order and that Fitzgerald, not Hughes Hubbard, is liable for failing to recognize and challenge this error. *Id.* Hughes Hubbard may further contend that the Debtors' board of directors was fully advised of the risk of litigation and that the Debtors would have likely continued with the Action because they had no profitable business operations. *Id.* Taking litigation risk and the time value of money into consideration, the Trustee believes that the settlement of $7.25 million represents a reasonable and fair compromise that is between 36% - 56% of the Estates' total potential claim against Hughes Hubbard. (Gupta Declaration, ¶ 16.) The settlement takes into account the probability of success in litigation, and the Trustee believes that it is in the best interests of the Estates and their creditors. (Gupta Declaration, ¶¶ 15-19.) The Trustee does not believe that it is prudent to subject the Estates to the risks and costs associated with litigating the claims against Hughes Hubbard given the settlement amount of $7.25 million should provide a substantial benefit to the creditors of the administratively insolvent estates. (Gupta Declaration, ¶ 16.) The Trustee believes, in her business judgment, that the proposed settlement is more beneficial to the Estates than the litigation of the claims against Hughes Hubbard. (Gupta Declaration, ¶¶ 16, 20.)

**B.     The Difficulties, If Any, To Be Encountered In The Matter Of Collection.**

This test is not relevant. In the event of a judgment, the Trustee believes that she would be able to recover in full from Hughes Hubbard. (Gupta Declaration, ¶ 17.)

**C.     The Complexity of the Litigation Involved and the Expense, Inconvenience and Delay Necessarily Attending It.**

The litigation against Hughes Hubbard would present fairly complex legal issues and hurdles. (Gupta Declaration, ¶ 18.) As has been made clear by Hughes Hubbard's counsel, the issues would be heavily litigated. (Gabriel Declaration, ¶ 10.) First, the Trustee will have to address a number of jurisdictional and choice of laws issues in regard to whether the claims would need to be arbitrated, and if so, where the arbitration would take place. (Gupta Declaration, ¶ 18; Gabriel Declaration, ¶ 10.) The retention agreement with Hughes Hubbard provides that any claim

against the firm be arbitrated in New York, and that New York law applies. (Gupta Declaration, ¶ 18; Gabriel Declaration, ¶ 7.) The Trustee believes that the Bankruptcy Court should adjudicate the claims against Hughes Hubbard, but it is possible that Hughes Hubbard would prevail in its argument that the claims should be arbitrated in New York. (Gupta Declaration, ¶ 18; Gabriel Declaration, ¶ 10.) Arbitration is often time-consuming and extremely costly. *Id.* To the extent that the arbitration was to take place in New York, and if New York law was applied, the Trustee and her counsel would likely incur significant travel expenses, and may also need to retain local counsel in New York to advise as to New York law. (Gupta Declaration, ¶ 18; Gabriel Declaration, ¶ 7.)

The Trustee has claims against Fitzgerald as heretofore expressed. (Gupta Declaration, ¶ 12.) Fitzgerald's retainer agreement with the Debtors requires an arbitration of the claims against it to be held in San Diego County. *Id.* Motions, and potentially time-consuming appeals, could take place over whether the claims are to be arbitrated, whether the claims against Hughes Hubbard and the other firms must be jointly arbitrated, where the arbitration would take place, and what state's law would be applied. (Gabriel Declaration, ¶ 10.)

Moreover, it is possible Hughes Hubbard would seek to have a "trial within a trial" in order to prove causation. Although the Trustee does not believe that a "trial within a trial" approach would apply, if it did, such an approach would be time-consuming, would likely involve two or more expert witnesses on each side, and would be costly. (Gabriel Declaration, ¶ 11.) The expert witness costs would likely exceed several hundred thousand dollars, at a minimum, and could ultimately reach close to $1 million depending on the number of expert witnesses needed. *Id.* Even though the Trustee's counsel is retained on a contingency fee basis, fees and costs for arbitration, expert witnesses and other costs could be substantial if the Trustee were to litigate the claims against Hughes Hubbard. *Id.* In addition, while the Trustee is confident in her analysis of the claims and the likelihood of success on the merits, there is never any certainty to such claims, and the amount of the settlement is reasonable given the risks of litigation, and the years the litigation could take to conclude. (Gupta Declaration, ¶¶ 15-16; Gabriel Declaration, ¶ 11.)

The complexity of the litigation, expense, and potential delay due to issues regarding arbitration, all weigh in favor of resolving the claims against Hughes Hubbard to avoid significant cost, delay and risk. (Gupta Declaration, ¶¶ 15-19.) However, the amount of the settlement still must be fair and reasonable given the probability of success at trial. (Gupta Declaration, ¶ 18.) As discussed above, the Trustee believes that the Settlement Amount appropriately takes into account the range of potential outcomes for the claims taking into account the probability of success at trial. (Gupta Declaration, ¶¶ 18-19; Gabriel Declaration, ¶¶ 7-12.)

### D.      Paramount Interests of Creditors.

The Settlement Amount of $7.25 million is significant and should provide for a substantial benefit to the Estates and creditors without the significant risks and costs of litigation. (Gupta Declaration, ¶ 19.) Given that the Estates are currently administratively insolvent, the Settlement Agreement should provide for a meaningful recovery for creditors of the Estates. *Id.* As will be set forth in a separate motion to approve a settlement agreement with WHGC, the Trustee has also resolved her claims against WHGC. *Id.* The Settlement Agreement preserves the Trustee's ability to pursue her claims against Fitzgerald, which may result in additional recovery for the Estates. *Id.*

Based on the *A&C Properties* factors, the Settlement Agreement is fair and equitable and in the best interest of the Estates and their creditors. (Gupta Declaration, ¶ 20.)

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## V.  CONCLUSION

Based on the grounds stated herein and in the Gupta Declaration and Gabriel Declaration, the Trustee respectfully requests that the Court grant this Motion and enter an order:

1.  Approving the Settlement Agreement;

2.  Authorizing the Trustee to execute any documents or take any actions reasonably necessary to effectuate the terms of the Settlement Agreement; and

3.  Granting such other and further relief as the Court may deem just and proper.

Dated: August 10, 2016                     BRUTZKUS GUBNER


By: /s/ Larry W. Gabriel
    Larry W. Gabriel
    Special Litigation Counsel for Kavita Gupta,
    Chapter 7 Trustee for the bankruptcy estates
    of debtors Gabriel Technologies Corporation
    and Trace Technologies, LLC