LARRY W. GABRIEL – Bar No. 68329
COREY R. WEBER – Bar No. 205912
JASON B. KOMORSKY – Bar No. 155677
BRUTZKUS GUBNER
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000
Facsimile: (818) 827-9099
Email: lgabriel@brutzkusgubner.com
       cweber@brutzkusgubner.com
       jkomorsky@brutzkusgubner.com

Special Litigation Counsel for
Kavita Gupta, Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>GABRIEL TECHNOLOGIES CORPORATION *et al.*,<br><br>Debtors.<br><br>E.I.N. 22-3062052; 20-1711149 | Case No. 13-30340-DM<br><br>(Jointly Administered with Case No. 13-30341)<br><br>Chapter 7 Proceedings<br><br>**DECLARATION OF LARRY W. GABRIEL IN SUPPORT OF CHAPTER 7 TRUSTEE'S MOTION FOR GOOD FAITH SETTLEMENT DETERMINATION REGARDING THE SETTLEMENT BETWEEN KAVITA GUPTA, AS CHAPTER 7 TRUSTEE FOR CONSOLIDATED ESTATES, AND HUGHES HUBBARD & REED LLP**<br><br>Hearing:<br>Date: September 16, 2016<br>Time: 10:00 a.m.<br>Place: Courtroom 17<br>      United States Bankruptcy Court<br>      450 Golden Gate Avenue, 16th Floor<br>      San Francisco, California 94102 |

# DECLARATION OF LARRY W. GABRIEL

I, Larry Gabriel, hereby declare:

1. I am an attorney admitted to practice in the State of California and before this Court and I am counsel to the law firm, Brutzkus Gubner Rozansky Seror Weber LLP ("Brutzkus Gubner"), special litigation counsel to Kavita Gupta, Chapter 7 Trustee.

2. The matters set forth herein are made of my own personal knowledge and, if called and sworn as a witness, I could and would testify competently thereto. I make this declaration in support of the Motion.

3. Any capitalized terms used but not identified herein shall have the same meaning as in the *Chapter 7 Trustee's Motion for Good Faith Settlement Determination Regarding the Settlement Between Kavita Gupta, Chapter 7 Trustee for Consolidated Estates, and Hughes Hubbard & Reed LLP* (the "Motion").

4. As part of the application to be retained, I provided my resume and those of Corey Weber and Jason Komorsky, who worked with me on this matter. (Docket No. 298.) As reflected in my resume, I have an extensive background in bankruptcy litigation, including malpractice matters and have practiced law since 1975. *Id.*, at pp. 10-12.

5. In or around September 2015, Brutzkus Gubner was retained by the Trustee as special litigation counsel for the purpose of analyzing, and if appropriate, prosecuting claims against the Debtors' former litigation counsel, Hughes Hubbard & Reed LLP, ("Hughes Hubbard"), WHGC, P.L.C., and Wang Hartman Gibbs & Cauley, P.L.C. ("WHGC"), and Fitzgerald Knaier LLP, f/k/a Chapin Fitzgerald Knaier LLP, ("Fitzgerald") (Docket Nos. 259, 306.)

6. The malpractice claim against Hughes Hubbard arose from its role as lead counsel for the Debtors in the matter styled *Gabriel Technologies Corporation et al. v. Qualcomm Inc., et al.*, Case No. 3:2008-cv-01992-AJB-MDD (S.D. Cal.) (the "Action"). As trial counsel for the Trustee on this matter, I have spent considerable time familiarizing myself with the underlying record including, most notably, the District Court's Bond Order [Qualcomm Dkt No. 110] and briefing thereon [*id.*, at Dkt Nos. 81, 93, 105], the District Court's Fee Order [*id.*, at Dkt No. 371], and briefing thereon [*id.*, at Dkt Nos. 332, 353, 358], rulings on pleadings and discovery [*id.*, at Dkt Nos.

1

65, 84, 88, 89, 104, 170, 229], the District Court's rulings on motions to dismiss and summary judgment [*id.*, at Dkt Nos. 35, 48, 326], and briefing thereon, the District Court's judgment [*id.*, at Dkt Nos. 327], and the Court of Appeal's appellate decision thereon [Gabriel Technologies, 560 Fed. Appx. 966, 969-970 (Fed.Cir. (Cal.) 2014)], in light of controlling case law. Working with Messrs. Weber and Komorsky, I also reviewed the files turned over by Hughes Hubbard. I also reviewed Hughes Hubbard's efforts in soliciting investors to fund the litigation and the modifications to Hughes Hubbard's retention agreement as a result thereof. As counsel for the Trustee on this matter, I, as well as Messrs. Komorsky and Weber, have spent considerable time analyzing the claims and reviewing the evidence in light of controlling case law. I believe that the facts, as reflected in the underlying record, exposed Hughes Hubbard to claims for breach of the duty of loyalty and breach of the duty of care.

7. However, as with all litigation, the outcome of the prosecution of the claims is ultimately uncertain and ultimately rests with the trier of fact. The cost and the expense of the prosecution of the Trustee's claims would be significant. The claims would likely require expert testimony, likely with two or three experts providing testimony on the issue of patent law, legal malpractice and billing practices. In addition, the Hughes Hubbard retention agreement with the Debtors provides for arbitration of any claims arising out of the performance of its services. That agreement requires that the arbitration take place in New York, with New York law being applied to the claims presented. If enforceable, the arbitration would result in increasing the expense for the prosecution of the claims and require the need to retain local counsel.

8. Moreover, even if the Trustee prevailed in litigation against Hughes Hubbard, the amount of recovery is subject to dispute. The Trustee's range of the Estates' potential damages against Hughes Hubbard is estimated to be between $13 million - $20 million. That amount includes the $13 million Fee Order entered in the Action, interest on the Fee Order from the date it was entered, attorney fees, and the additional debt (now claims) the Debtors would not have otherwise incurred but for the continuation of the Action.

9. Conversely, I anticipate that Hughes Hubbard would assert numerous defenses to the claims. For example, it was contemplated that Hughes Hubbard might assert that the Fee Order

2

Case: 13-30340  Doc# 330  Filed: 08/11/16  Entered: 08/11/16 14:42:59  Page 3 of 5

should only have been in the amount of $8 million, not $13 million, insofar as the Fee Order was solely for fees incurred after the Bond Order and that the responsibility for this error belonged to the Fitzgerald firm. After all, Fitzgerald was specifically retained to represent the Trustee on the motion for fees and the appeal of the Fee Order and its appeal. Accordingly, Fitzgerald, not Hughes Hubbard, may be principally liable for failing to recognize and challenge this error. It was also anticipated that Hughes Hubbard would contend that the Debtors' board of directors was fully advised of the risk of litigation and that the Debtors would have likely continued with the Action because they had no profitable business operations. Taking litigation risk and the time value of money into consideration, it is my opinion that the settlement, which provides for a payment by Hughes Hubbard of $7.25 million to the Estates, represents a reasonable and fair compromise.

10. As indicated by Hughes Hubbard's counsel, the issues would be heavily litigated. First, the Trustee will have to address a number of jurisdictional and choice of laws issues in regard to whether the claims would need to be arbitrated, and if so, where the arbitration would take place and what substantive law would apply to the claims. I believe that the Bankruptcy Court should adjudicate the claims against Hughes Hubbard, but it is possible that Hughes Hubbard would prevail in its argument that the claims should be arbitrated in New York. Arbitration is often time-consuming and extremely costly. The Trustee also has claims against Fitzgerald and WHGC (although the claims against WHGC have been resolved, subject to Court approval). Fitzgerald's retainer agreement with the Debtors requires an arbitration of the claims to be held in San Diego County. Motions, and potentially time consuming appeals, could take place over whether the claims are to be arbitrated, whether the claims against Hughes Hubbard and the other law firms must be jointly arbitrated, where the arbitration would take place and what state's laws would be applied.

11. Second, it is also likely that Hughes Hubbard would seek to have a "trial within a trial" in order to prove causation. Such an approach, if allowed, would be time-consuming, likely involve two or more expert witnesses on each side, and would be costly as indicated by the $13 million fee award in the Action. The expert witness costs would likely exceed several hundred thousand dollars, at a minimum, and could ultimately reach close to $1 million depending on the

1603407

number of expert witnesses needed. Even though Brutzkus Gubner is retained on a contingency fee basis, fees and costs for arbitration, expert witnesses and other costs could be substantial if the Trustee were to litigate the claims against Hughes Hubbard. In addition, there is never any certainty to such claims, and I believe that the amount of the settlement is reasonable given the risks of litigation, the expensive involved, and the years the litigation could take to conclude.

12. The Settlement Amount appropriately takes into account the range of potential outcomes for the claims considering the probability of success at trial, and the cost of prosecution of the same. Further, the Settlement Agreement preserves the Trustee's ability to pursue her claims against Fitzgerald, which may result in additional recovery for the Estates.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 10, 2016 at Woodland Hills, California.

_____
Larry W. Gabriel